MATT GONZALEZ (SBN 153486)
G. WHITNEY LEIGH (SBN 153457)
MATT SPRINGMAN (SBN 252508)
GONZALEZ & LEIGH, LLP
Two Shaw Alley, Third Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile: (415) 512-2001

Attorneys for Defendant
SUSAN POLGAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA CHESS FEDERATION, an Illinois non-for profit corporation, RANDALL D. HOUGH, an individual,

Plaintiffs,

vs.

SUSAN POLGAR, an individual, GREGORY ALEXANDER, an individual, and DOES 1-10, inclusive,

Defendants.

CASE NO. 3:08-cv-05126-MHP

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF DEFENDANT SUSAN POLGAR'S AFFIRMATIVE DEFENSE OF *ULTRA VIRES* ACT AGAINST PLAINTIFF UNITED STATES OF AMERICA CHESS FEDERATION, INC.**

Hearing Date: July 13, 2009
Time: 2:00 p.m.
Courtroom: Courtroom 15, 18th Floor
Judge: Hon. Marilyn Hall Patel

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 2

II. GOVERNING LEGAL STANDARD .......... 3

III. FACTUAL AND PROCEDURAL BACKGROUND .......... 3

A. The USCF's Bylaws .......... 3

B. Mottershead, Sloan, and the"Investigatory Subcommittee" .......... 5

C. The Unauthorized Filing of This Lawsuit .......... 7

IV. ARGUMENT .......... 10

A. Polgar May Assert an *Ultra Vires* Defense .......... 10

B. The Actions of the Interested Executives Board Members in Pursuing This Litiation are *Ultra Vires* .......... 11

C. Polgar's Ultra Vires Defense is Ripe for Adjudication .......... 13

V. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## CASES

Page

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986) ..... 3

*Bd. of Managers of Weathersfield Condominium Ass'n. v. Schaumburg Ltd. P'ship.* 307 Ill.App.3d 614 (1999) ..... 10

*Buntrock v. Terra* 348 Ill. App. 875 (2004) ..... 11

*Carlton v. Hallinan* 925 A.2d 506 (2006) ..... 13

*Celotex Corp. v. Catrett* 477 U.S. 317 (1986) ..... 3

*Matsushita Elec. Indus. v. Zenith Radio* 475 U.S. 574 (1986) ..... 3

*Sawko v. Dominion Plaza One Condominium Ass'n.* 218 Ill. App.3d 521 (1991) ..... 11, 12

*Schweickart v. Powers* 245 Ill. App. 3d 281 (1993) ..... 11

*Sloan v. TruongP.C.* 574 F.Supp. 2d 823 (S.D.N.Y. 2008) ..... 5

## STATUTES AND AUTHORITIES

Fed. R. Civ. P. 56 (b) ..... 3

Fed. R. Civ. P. 56 (c) ..... 3

805 ILCS 105/101.01 ..... 10

805 ILCS 105/103.15 ..... 11

805 ILCS 105/103.20 ..... 13

PLEASE TAKE NOTICE that on July 13, 2009 at 2:00 p.m., or as soon thereafter as the matter can be heard in Courtroom 15 of this Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Susan Polgar will move this Court pursuant to Federal Rule of Civil Procedure, Rule 56 and Northern District of California Civil Local Rules 7-2, 7-4, and 7.5 for an order granting summary judgment of the United States Chess Federation, Inc.'s claims against her.

This Motion for Summary Judgment is based upon this Notice of Motion, Motion and Memorandum of Points and Authorities, the Declaration of Matt Springman in support of this motion filed herewith, the pleadings and papers on file in this action, and upon such other and further matters as the Court may consider at the hearing of this motion.

Dated: June 8, 2009

Respectfully submitted,

GONZALEZ & LEIGH, LLP

By: *_/s/ G. Whitney Leigh_*
G. Whitney Leigh
Attorneys for Defendant
SUSAN POLGAR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After Susan Polgar moved to amend her answer to the United States Chess Federation's ("USCF" or "the federation") complaint on the grounds that this lawsuit is *ultra vires*, the Court asked a prescient question:

THE COURT: Is there any reason why you didn't bring a motion to dismiss on the basis that they never obtained a resolution; that they didn't have a right to bring this lawsuit?[1]

In response, Polgar's counsel noted plaintiffs' claim that they had evidence that the lawsuit was duly authorized by the federation, though they had yet to produce that record. The Court then ordered plaintiffs to produce all evidence supporting their assertion that lawsuit was authorized – evidence that plaintiffs represented to the Court "absolutely" existed.

But instead of such evidence, plaintiffs produced a set of after the fact rationalizations that do not withstand scrutiny. The record now demonstrates plaintiffs' abuse of the responsibility entrusted to them by the USCF's members, and disregard of the federation's bylaws and the law governing the conduct of officers and directors of nonprofit corporations. The rules were designed to prevent such individuals from diverting the resources entrusted to them to further their personal interests. Had plaintiffs adhered to the rules, the federation would not find itself in its present, precarious financial position. It's time for the USCF's Executive Director and a handful of interested board members to stop playing with house (or federation) money.

The USCF's affirmative claims in this lawsuit seek a remedy for a set of alleged intrusions into an Executive Board member's private email account. Despite the USCF's reckless pronouncements to the contrary, there is not a shred of evidence that Polgar was involved in that hacking. But the Court need go no further. Randall Hough, the board member whose emails were allegedly viewed and copied, may pursue his lawsuit and seek adjudication of his claims as he sees fit. The USCF's governing Board of Delegates, however, has never

---

[1] Declaration of Matt Springman in Support of Motion for Summary Judgment or, in the alternative, Summary Adjudication ("Springman Decl."), Ex. A at 15:7-9.

consented to pay for that action. If the Court grants Polgar's motion now, it may stanch plaintiffs' misappropriation of the USCF's funds early enough that the members still have some hope of recovery from their purported fiduciaries. The undisputed evidence establishes that the federation's pursuit of this lawsuit is an *ultra vires* act, and that the Court should grant judgment against it.

## II. GOVERNING LEGAL STANDARD

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of a claim." Fed. R. Civ. P. 56(b). A court should grant summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of material fact means that there is sufficient evidence in favor of the non-moving party to allow a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is not enough for the non-moving party to produce a mere "scintilla" of evidence. *Id.* at 252. Nor is it enough for the non-moving party to show that there is some "metaphysical doubt as to the material facts," provided that any inferences from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986). The burden is on the non-moving party to designate specific facts showing a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. The USCF's Bylaws

The USCF is a not-for-profit organization organized under Illinois law. *See* Docket No. 1, Ex. A (First Amended Complaint ("FAC")), at ¶ 4. The federation is pledged "[t]o operate exclusively for educational, recreational, and social welfare purposes." *See* Docket No. 97 (4/27/09 Decl. of Bill Hall in Response to Civil Minute Order ("4/27/09 Hall Decl.")), Ex. G at 26 ("Bylaws"), Art. II, § 2A. "[N]o part of [the USCF's] contributions, dues, or net income shall inure to the benefit of any individual[.]" *Id.*, Art. II, § 2B.

//

The federation is governed by a "Board of Delegates," comprised of a seven-member Executive Board, 125 delegates apportioned among the states in proportion to their resident USCF membership, and various delegates at large. Bylaws, Art. 5, § 2. The members of the Executive Board and the delegates are elected by the USCF's membership, and are not compensated for their service to the organization. *Id.*, Art. IV, § 2; Art. V, § 5; Art. 6, § 5. Executive Board members are automatically accorded delegate status. *Id.*, Art. V, § 2.

The Board of Delegates "is responsible for the management of the USCF. It shall formulate general policy, adopt the annual budget, and write the Bylaws." Bylaws, Art. V, § 1. The Board of Delegates meets at least annually. *Id.*, Art V, § 7.[2] Between meetings of the Board of Delegates, the Executive Board manages the affairs of the federation, with the caveat that the "Executive Board shall be subject to the authority of the Board of Delegates, and none of its acts shall conflict with actions taken by the Board of Delegates." *Id.*, Art. VI, § 2. Further, "[a]ny transaction questioned in any suit brought by any member on the grounds of lack of authority, . . . adverse interest of any director, officer, employee, or member, [or] nondisclosure . . . may be ratified before or after judgment by the Board of Delegates[.]" *Id.*, Art. IX, § 13. The Executive Board has no independent ratification power. *See id.*

All Executive Board members must be notified of all Executive Board meetings, and all such members "have the right to be involved in the determination of all Board decisions." *Id.*, Art. VI, § 3; *see also* 4/27/09 Hall Decl., Ex. G at 33-40 (Delegate Actions of Continuing Interest ("Delegate Actions")), 27(1)(b). "A Board majority has no authority except as a majority vote within the context of a properly called Board meeting in which all members have had the opportunity to participate." *Id.*, Delegate Actions, 27(1)(b). Executive Board members must disclose any potential conflicts of interest: "[a]ny potential conflict of interest, whether due to financial, political, personal, geographical, organizational, familial, or other considerations, must be prevented from affecting any Board member in the discharge of his or her duties." Delegate Actions, 27(2). The Executive Board must record its meetings (including conference calls), "in

---

[2] The federation's president or a majority of its Executive Board may also call for a special delegates meeting, with 30 days notice. *Id.*, Art. V, § 8.

their entirety with a clear, permanent record," post minutes of its meetings on the USCF's website within six weeks, send minutes to all USCF Delegates, and send copies of video and audio tapes of meetings to all Executive Board members within two weeks of any meeting. Bylaws, Art. VI, § 3.

The organization's bylaws contemplate the possibility of "closed sessions" of the Executive Board where, for example, legal matters or individual privacy rights so dictate. Delegate Actions, 27(c), (e). Executive Board members "must strictly observe confidentiality of closed sessions." *Id.* Nevertheless, "any motions made in Closed session must be voted in Open session as well[.] . . . No motions are to be voted on [in] the absence of the stenographer. If it is not on the Open session transcripts it did not happen!" Delegate Actions, 31(3), (4).

**B. Mottershead, Sloan, and the "Investigatory Subcommittee"**

In October 2007, Brian Mottershead, a volunteer administrator of the USCF's online forums, alleged in a purportedly confidential report that Paul Truong had impersonated Sam Sloan, a former USCF Executive Board member, in hundreds of internet postings. Mottershead did not allege that Polgar played any role in the postings. Springman Decl., Ex. B.[3] The USCF's Executive Board retained Kronenberger Burgoyne, LLP to investigate Mottershead's allegations later that month. *Id.*, Ex. C. Polgar and Truong were granted the opportunity to vote on that retention in their capacity as members of the USCF's Executive Board. *See id.* The following month, at a regularly scheduled Executive Board meeting, the Executive Board passed a resolution (RB 08-022) calling for the appointment of "a Board Subcommittee to consider issues related to charges made by B. Mottershead." 4/27/09 Hall Decl., Ex. A. The subcommittee investigating Mottershead's allegations was to consist of the five voting USCF Executive Board members other than Polgar and Truong: Randy Bauer, Jim Berry, Bill Goichberg, Randy Hough, and Joel Channing. 4/27/09 Hall Decl., Ex. A.[4] The subcommittee was not formed to

---

[3] Sloan's *pro se* lawsuit against the USCF, several of its past and present board members, "supporters and sycophants" of Polgar, and "The United States of America," was eventually dismissed with prejudice and costs. *See Sloan v. Truong*, 574 F. Supp. 2d 823, 825-31 (S.D.N.Y. 2008).

[4] Channing later resigned from the Executive Board and the investigatory subcommittee. *See* 4/27/09 Hall Decl., ¶ 6.

investigate Polgar, was granted no authority to initiate litigation on the federation's behalf, and did not include the USCF's Executive Director Bill Hall, or indeed anyone else who was not a voting member of the Executive Board.[5] *See id.*

It is now apparent, however, that the members of the investigatory subcommittee, together with other individuals who were not on that subcommittee (or even the USCF's Executive Board), had already discussed "litigation strategy" before the November 2007 Executive Board meeting, without notice to Polgar and Truong. Springman Decl., Ex. D.[6]

In December 2007, Polgar learned that Kronenberger had been conspiring with various USCF Executive Board members and others to interfere with her defense of the Sloan litigation. Polgar Decl., ¶2. Specifically, Polgar discovered correspondence between Kronenberger and other members of the Executive Board on an internet website that revealed that Kronenberger was encouraging the USCF's insurer to deny her coverage during the same time that he was asking her to provide him with information to assist him with the USCF's investigation into Mottershead's allegations. *Id.* ¶2.[7] When Polgar confronted the other Board Members with this disclosure, they did not respond. Polgar Decl., ¶2.

//

//

---

[5] In a March 23, 2009 declaration filed in opposition to Polgar's motion to transfer, Hall averred that he "hold[s] a position on the Executive Board's Litigation Subcommittee, which was formed to investigate allegations made against Defendant Susan Polgar . . . and her husband Paul Truong . . . who also are members of the Executive Board. *See* Docket No. 70 (March 23, 2009 Declaration of Bill Hall in Support of Plaintiffs' Opposition to Motion to Transfer), ¶ 2. Hall's subsequent April 27, 2009 declaration, revealed this statement to be false, on three grounds: (1) Hall was not a member of the investigatory subcommittee formed through Resolution RB 08-022; (2) the investigatory subcommittee was not formed to investigate any allegations against Polgar; and (3) the "Litigation Subcommittee" was not formed until April 2009, after the Court ordered plaintiffs to produce evidence that this lawsuit had been properly authorized. *See* 4/27/09 Hall Decl.

[6] Plaintiffs produced a privilege log in the Texas action, where Hough and the other members of the "investigatory committee" are defendants. *Id.*

[7] Polgar discovered the correspondence on a website titled "Google Rec Games Politics," at http://groups.google.com/group/rec.games.chess.politics/topics. Polgar Decl., ¶2. Polgar notified the other members of the Executive Board in December 2007 that she had discovered this correspondence on the "Rec Games Chess Politics" website, and asked them why the USCF's counsel was interfering with her and her husband's legal defense in the New York action *Id.* Nevertheless, plaintiffs have falsely claimed that Polgar refused to disclose how she obtained the emails. *See* 4/27/09 Hall Decl., ¶ 15; *see also* Docket No. 70, ¶ 4; Docket No. 71 (March 23, 2009 Declaration of Randall Hough), ¶ 4.

### C. The Unauthorized Filing of This Lawsuit

Six months later, on June 25, 2008, plaintiffs filed a complaint in San Francisco County Superior Court for computer fraud under state law, violation of the federal Computer Fraud and Abuse Act, and conversion, all in the USCF's name. Springman Decl., Ex. E. The lawsuit alleged that an unknown actor or actors had accessed, viewed, and copied emails from a USCF board member's account. The suit listed only "doe" defendants. *See id.* Hall – despite the fact that he was never named to the November 2007 investigatory subcommittee, and thus should have been excluded from its closed sessions – declared that he directed its filing "[t]o protect the USCF, and due to Polgar's threats to litigate against the USCF, after confirming with each member of the Board Subcommittee." 4/27/09 Hall Decl., ¶ 16.[8]

At its annual meeting in August 2008, the Board of Delegates ratified "all actions of the Executive Board made available to the Delegates in the form of either Executive Board Resolutions or Executive Board Minutes since the conclusion of the 2007 Delegates meeting." 4/27/09 Hall Decl., Ex. B. The delegates' ratification encompassed RB 08-022, the November 2007 Executive Board resolution that directed a subcommittee to investigate issues related to Mottershead's allegations against Truong. 4/27/09 Hall Decl., Ex. G at 11. But the record of 53 Executive Board Motions from August 5, 2007 through May 28, 2008 lists no resolution to form a "Litigation Committee" or a committee to investigate Polgar, or indeed any Executive Board resolution to initiate this or any other lawsuit on behalf of the USCF. *See* Hall Decl., Ex. G at 9-14. Thus, the Board of Delegates ratified no such action.

Immediately after the Board of Delegates meeting the USCF began to issue subpoenas in this lawsuit that expressly sought information relating to Polgar, and not the identity of undisclosed "doe" defendants, without notice to her. Springman Decl., Ex. F. It was not until October 24, 2008, that the USCF filed an amended complaint listing Polgar and Gregory Alexander as defendants, and Randy Hough, a USCF Executive Board member, as a plaintiff.

---

[8] Hall's admission that he directed the filing of this lawsuit in part "due to Polgar's threats to litigate against the USCF," also contradicts the stance the USCF took in opposing Polgar's motion to transfer the case: that the present action is unrelated to Polgar's lawsuit in Texas.

*See* FAC, ¶¶ 1-10. The complaint does not identify any alleged fraudulent act on Polgar's part (as opposed to on the part of defendants collectively, and attributed to Polgar on an agency theory). Nor has the USCF identified a single item of evidence that it obtained during the "doe" discovery period, from June 25, 2008 through October 24, 2008, that could have justified its naming of Polgar as a defendant.[9] The Court later granted Polgar leave to file an amended answer that raised an *ultra vires* defense, and Polgar filed that pleading on June 3, 2009. *See* Docket No. 114.

The Executive Board's investigatory subcommittee purported, on Kronenberger's suggestion, to vote "to ratify the California action" and to "initiate the Illinois litigation" on December 16-18, 2008, months after this case had commenced. 4/27/09 Hall Decl., ¶ 20 and Ex. C. Kronenberger also purported to obtain waivers from various Executive Board members (but not the Board of Delegates) of potential and actual conflicts in his representation of the USCF and the Executive Board members in December 2008 (six months after this action was filed). Springman Decl., Ex. D.[10] Of course, all of the Executive Board members, and Kronenberger himself, were by that time interested parties, as they were individual defendants to Polgar's claims in Texas. Springman Decl., Ex. H. In an April 13, 2009 hearing on Polgar's motion to transfer this case, the Court questioned whether the lawsuit was authorized:

> THE COURT: Well, you anticipate one of the questions I was going to ask, and that is, was there a resolution by the board authorizing this lawsuit?
>
> MR. KRONENBERGER: Absolutely, your Honor.
>
> MR. LEIGH: There was not.
>
> THE COURT: Well, I would presume that if there is one it would be in the minutes of the -- I presume they take minutes or is that too optimistic?
>
> MR. KRONENBERGER: Your Honor, we have a record of everything, and we were actually going to be turning over things in discovery before it was stayed.

---

[9] Indeed, the only evidence offered by the plaintiffs that they allege shows that Ms. Polgar was involved in accessing Mr. Hough's email account came from a November 13, 2009 subpoeana, well after plaintiffs named Ms. Polgar as a defendant. Springman Decl., Ex. G

[10] These "waivers" are among the documents plaintiffs have purported to withhold from disclosure on the grounds that they are protected by the attorney-client privilege. *Id.*

> Of course, there was a vote. Even if there was not a vote it's something that could be ratified within an hour. It's just a non-issue.
>
> THE COURT: No, no. It is an issue, because the viability of this organization is important, and I'm sure there are a lot of members out there who are concerned about what's going on, how their money is being spent; and, you know, their ability to compete, for example, worldwide may be affected. All kinds of things can be affected by this behavior that's going on.

Springman Decl., Ex. A at 12:15-13:9. The Court ordered the USCF to produce, both to it and to opposing counsel, "any and all information – minutes, recordings – whatever there may be that show that there was a vote taken authorizing this particular action[.]" *Id.* at 16:4-12. The Court ordered production of such "minutes, resolutions, et cetera, bylaws" by April 17, 2009, and ordered the parties to resolve other discovery issues by April 27, 2009. *Id.* at 44:5-13.

Plaintiffs, however, failed to produce any such evidence by the April 17 deadline. Instead, on April 18, 2009, USCF Executive Director Bill Hall—who has apparently accepted Kronenberger's representation that "[e]ven if there was not a vote it's something that could be ratified within an hour," notwithstanding the federation's rules to the contrary—moved the Executive Board to ratify "all actions heretofore taken by the Executive Board subcommittee established at the November 4, 2007 Executive Board Meeting," and to "hereby create[] a subcommittee to be known as the Legal Subcommittee[.]" *See* 4/27/09 Hall Decl., Ex. D. This proposed "Legal Subcommittee" was to be comprised of Hall and the four voting members of the USCF's Executive Board other than Polgar and Truong. *See id.* Hall's April 18 motion proposed to invest the new "Legal Subcommittee" with "the ability to sue, and complain and defend, in the name of USCF, its agents and employees." *Id.* (emphasis added).

On April 23, 2009, Hall's motion passed 4-0, with Polgar and Truong not voting. *See id.* The four individuals who did vote for the formation of the new "Legal Subcommittee" –Bauer, Berry, Goichberg, and Hough – will, along with Hall, comprise its entire membership. *See id.* All five of these men are currently defendants in the litigation in the Northern District of Texas, and counterclaim or third-party defendants in this case. Springman Decl., Ex. I; Docket No. 114.

On April 27, 2009, plaintiffs filed a belated response to the Court's order to produce evidence "that there was a vote taken authorizing this particular action[.]" In lieu of minutes,

transcripts, or recordings of any Executive Board or Board of Delegates meeting where the filing of the present lawsuit was considered, plaintiffs offered Hall's Declaration. *See* 4/27/09 Hall Decl.

While the USCF's held insurance to *defend* against lawsuits[11], the USCF is now approaching insolvency (it is now apparently imposing a four-day workweek for USCF employees and has set up a legal defense fund) because of the affirmative lawsuits it has filed against Ms. Polgar both here and in Illinois. Both suits have cost the USCF, based on the USCF's latest financial report, nearly $600,000 in legal fees over the past two years. Springman Dec., I. While it is apparent that the USCF's financial problems are a result of the affirmative lawsuits (and thus not covered by insurance) that the plaintiffs (now counter-defendants) are engaged in a disinformation campaign blaming Ms. Polgar for the cost of the USCF's legal bills. *Id.*

## IV. ARGUMENT

This motion turns on a single determination: can the USCF initiate and pursue litigation at the whim of its Executive Director and subject to the *post hoc* "ratification" of a handful of interested Executive Board members, or must its officers instead seek first the consent of the Executive Board as a whole before filing a lawsuit, and second the informed ratification of its governing Board of Delegates when they have the opportunity to do so? If the latter is true, as Polgar contends, the USCF's claims against her are barred under the *ultra vires* doctrine, and the Court should grant summary judgment.

### A. Polgar May Assert an *Ultra Vires* Defense

The USCF is a nonprofit organized under Illinois law. *See* FAC, ¶ 4; Bylaws, Art. IX, § 1. As such, the federation must comply with the state's General Not for Profit Corporation Act, 805 ILCS 105/101.01 *et seq*, as well as its own bylaws. *See, e.g., Bd. of Managers of Weathersfield Condominium Ass'n. v. Schaumburg Ltd. P'ship*, 307 Ill. App. 3d 614, 622 (1999) (nonprofit board's exercise of fiduciary duty requires strict compliance with organization's

---

[11] *See c.f.,* Springman Dec., A, 10:4-18 (Plaintiffs' counsel informing the Court that the related action in NY was "being financed by insurance.")

bylaws); *Schweickart v. Powers* 245 Ill. App. 3d 281, 290 (1993) (granting preliminary injunction to enjoin director action that violated nonprofit's bylaws).

The *ultra vires* defense – that a corporation "was without capacity or power" to carry out a particular act – "may be asserted: (a) In a proceeding by a member entitled to vote or by a director against the corporation to enjoin the doing of any act or acts . . . by . . . the corporation." 805 ILCS 105/103.15. Polgar is both a USCF member and director,[12] and thus has standing to claim *ultra vires*. *See Buntrock v. Terra*, 348 Ill. App. 3d 875, 885 (2004); *see also Sawko v. Dominion Plaza One Condominium Ass'n.*, 218 Ill. App. 3d 521, 527 (1991) (plaintiff's pecuniary interest as member of nonprofit association conferred standing to dispute *ultra vires* disposition of association funds).

**B. The Actions of the Interested Executive Board Members in Pursuing This Litiation are *Ultra Vires***

"It is well-established that a charitable foundation is required to use its assets in conformity with its charitable purposes, as determined by the court in case of any doubt." *Buntrock*, 348 Ill. App. 3d at 895 (citations omitted). "The Foundation's articles of incorporation constitute the starting point for ascertaining these purposes." *Id.* The USCF's bylaws expressly provide that the federation is pledged "[t]o operate exclusively for educational, recreational, and social welfare purposes," and that "no part of its contributions, dues, or net income shall inure to the benefit of any individual[.]" Bylaws, Art. III., § 2. Here, however, a handful of USCF directors determined to use the federation's funds to pursue an unknown actor who'd accessed an Executive Board member's personal email account, while ignoring the strict restrictions that the federation's bylaws impose on executive action and expenditure of funds. But that is not allowed under the law.

Hall's April 27 declaration is a tacit admission that the USCF has engaged in *ultra vires* acts. It is now undisputed that the interested Executive Board members instituted this litigation

[12] "'Member' means a person having membership rights in a corporation in accordance with the provisions of its articles of incorporation or bylaws." 805 ILCS 105/101.80(k). The USCF's bylaws permit anyone membership on payment of the federation's annual dues. Bylaws, Art. III, § 1. Polgar has paid her dues, and is a member in good standing. Polgar Decl., ¶1. Further, Polgar is an Executive Board member. *See* FAC, ¶ 6.

without a vote of the entire Executive Board. *See* 4/27/09 Hall Decl., ¶¶ 16-17. Such an action is invalid on its face. *See* Delegate Actions, 27(1)(b) ("A Board majority has no authority except as a majority vote within the context of a properly called Board meeting in which all members have had the opportunity to participate"). Plaintiffs cannot rely on any purported vote of the subcommittee investigating Mottershead's allegations against Truong (even if that subcommittee had the authority to investigate Polgar, or file lawsuits), because Hall, who was not a member of that subcommittee, directed the filing of this lawsuit, while Polgar, herself an Executive Board member, was not given "the opportunity to participate" in that deliberation. Hall Dec., Ex. A at RB08-022 (vote creating subcommittee) and Delegate Actions, 27(1)(b).

Further, the Executive Board did not seek ratification from the USCF's Board of Delegates, the federation's governing authority, for its institution of the present action when it had the opportunity to do so at the August 2008 annual meeting. The interested Executive Board members, and their counsel, did not disclose any actual or potential conflicts of interest to the federations' delegates, despite the fact that these executives and directors were by then individual defendants to Polgar's claims in Texas. Thus, the Executive Board denied the delegates the opportunity to make an informed determination as to whether the present litigation is an appropriate use of the federation's funds, or whether any potential claims against Polgar could best be investigated and adjudicated according to the internal procedures established by the federation's bylaws. *See* III.C., p.7

A lawsuit not properly instituted and approved, with a full disclosure of risks and benefits to the federation's governing body, is an improper expenditure of the federation's funds. Because the institution of such an action contravenes the express purposes of the charitable federation, it is *ultra vires*. *See Sawko*, 218 Ill. App. 3d at 527 (1991) (nonprofit board's expenditure of funds in a manner not delineated in organization's charter was an *ultra vires* act).

Because this lawsuit was never properly authorized under the USCF's bylaws, its filing and prosecution lies outside the scope of the federation's powers, and is thus void.