**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Plaintiffs UNITED STATES OF AMERICA CHESS FEDERATION, INC. and RANDALL D. HOUGH

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA CHESS FEDERATION, INC.,** *et al*,<br><br>    Plaintiffs,<br>v.<br><br>**SUSAN POLGAR,** *et al.*,<br><br>    Defendants. | Case No. 3:08-CV-05126-MHP<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SUSAN POLGAR'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF DEFENDANT POLGAR'S AFFIRMATIVE DEFENSE OF *ULTRA VIRES* ACT AGAINST PLAINTIFF UNITED STATES OF AMERICA CHESS FEDERATION, INC.**<br><br>DATE:   July 13, 2009<br>TIME:   2:00 p.m.<br>CTRM:   15, 18th Floor<br>JUDGE:  The Hon. Marilyn H. Patel |

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................... 1

II. Background ......................................................................................................... 1

III. Authorization for the "John Doe" Litigation in California ............................................. 5

IV. Authorization for amending the "John Doe" complaint to add Polgar and Alexander as defendants ................................................................................................... 6

V. Argument ............................................................................................................ 7

    A. The USCF Properly Authorized all Pertinent Acts ........................................... 7

    B. Polgar Has Failed to Plead a Viable Ultra Vires Defense ............................... 8

        1. The USCF's Actions Do Not Qualify as Ultra Vires Acts under Illinois Law ................................................................................................. 8

        2. Polgar Misinterprets the Illinois Statute Regarding Ultra Vires Acts of Corporation ................................................................................... 10

    C. Polgar's Argument that a Plaintiff Should be Able to Sue All the Directors of a Corporation in Order to Resolve all Disputes at the Shareholder Level is Untenable. ................................................................................................. 11

VI. Conclusion ........................................................................................................ 12

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

# TABLE OF AUTHORITIES

*Buntrock v. Terra,* 348 Ill.App.3d 875, 886 (2004) ......................................................... 11

*In People ex.rel. Barrett, Auditor v. Bank of Peoria et. al,* 295
   Ill. App. 543, 15 N.E.2d 333, 336 (2nd District, 1938) .................................................. 9

*Independent Order of Svithiod v. Ring Lodge No. 8,* 261 Ill. App. 289 (1931) ................. 9

*Keith Ryan v. Warren Township High School District No. 121,* 155
   Ill. App. 3d 203, 206 (1987) .......................................................................................... 9

*Robinson v. City of Geneseo,* 89 Ill. App. 2d 415, 418 (1967) ......................................... 9

*Sawko v. Dominion Plaza One Condominium Ass'n No. 1-A,* 218
   Ill.App.3d 521, 525 (1991) .......................................................................................... 11

**Statutes**

General Not For Profit Corporation Act (805 ILCS 105/103.10) section 103.10. ............. 9

General Not For Profit Corporation Act (805 ILCS 105/103.10) section 108.40(a) ........ 10

Illinois Compiled Statute (805 ILCS 105/103.15) ........................................................... 10

Cal. Corp. C. §208 ........................................................................................................... 11

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Plaintiffs UNITED STATES OF AMERICA CHESS FEDERATION, INC. ("USCF") and RANDALL HOUGH ("Hough") hereby oppose Defendant Susan Polgar's Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Defendant Polgar's Affirmative Defense of Ultra Vires Act Against Plaintiff United States of America Chess Federation, Inc. (hereinafter, "Motion").

## Introduction

All acts of the USCF were approved and later ratified by a majority of the USCF Executive Board in accordance with USCF Bylaws and with USCF practices and governance. Additionally, the full Executive Board of the USCF, in a vote noticed to all Executive Board members including Polgar and her husband Truong, ratified <u>all prior actions related to this litigation</u>.[1] Polgar can point to no authority that prohibits such ratification.

Regarding the authority on which Polgar relies, the purported unauthorized acts of the USCF, even if assumed to be unauthorized, do not qualify as ultra vires acts under the Illinois statute. Polgar simply misinterprets the pertinent Illinois statute, and her resulting arguments are unpersuasive.

Polgar argues that she should be able to sue all of the USCF Executive Board members and then claim that such Executive Board members cannot engage in decision-making regarding Polgar's own alleged misconduct. This argument is untenable and, if allowed, would lead to judicial gridlock where defendants would simply sue all of the decision-makers in a corporation in order to force the resolution of disputes at the shareholder level.

## Background

Pursuant to USCF Bylaws Article V, the USCF is governed by the Board of Delegates, which is composed of the Executive Board members, the Delegates at

---

[1] On April 13, 2009, the Court ordered the USCF "to produce evidence re votes/authorizations/minutes/bylaws by 4/27/2009". Despite Polgar's contentions, the USCF complied with this order of the Court by supplying a comprehensive declaration of Bill Hall, with eight exhibits of documents. [D.E. 97.]

Case No. 3:08-CV-05126-MHP    1    **PLAINTIFFS' OPP. TO POLGAR'S MTN FOR SUMMARY JUDGMENT**

1. Large, and 125 Delegates, apportioned among the states in proportion to their resident USCF membership. The Board of Delegates meets annually for the purposes of hearing annual reports, installing officers, and considering other USCF business. While special Delegates meetings can be called by the President or by more than half the members of the Executive Board, the Board of Delegates has never called a special Delegates meeting in USCF's 70 year history. The delegates are dispersed geographically across the country; further, it would highly doubtful that the USCF could achieve a quorum in a Special Delegates meeting. (Declaration of Bill Hall in Response to Civil Minute Order Dated April 13, 2009 (hereinafter, "Hall Decl.") ¶4.)

Pursuant to USCF Bylaws Article VI, Section 2, the Executive Board manages USCF's affairs between meetings of the Board of Delegates, and performs other duties as specified in USCF's Bylaws. (Hall Decl. ¶5.) Pursuant to USCF Bylaws Article VI, Section 1, the Executive Board consists of seven elected members. However, due to the resignation of Executive Board member Joel Channing in April 2008, the Executive Board currently only has six members, who are as follows:

- A. Bill Goichberg – President, who resides in Salisbury Mills, New York;
- B. Jim Berry – Vice President, who resides in Stillwater, Oklahoma;
- C. Randy Bauer – Vice President of Finance, who resides in Urbandale, Iowa;
- D. Randy Hough – Secretary, who resides in Alhambra, California;
- E. Susan Polgar – Member-at-Large, who resides in Lubbock, Texas;
- F. Paul Truong – Member-at-Large, who resides in Lubbock, Texas; and
- G. Bill Hall – (non-voting member) Executive Director, who resides in Crossville, Tennessee;

(Hall Decl. ¶6.)

Under the USCF Bylaws Article VI, Section 3, the Executive Board is required to meet at least twice per year, the day and place to be fixed by vote of the Executive Board. The longstanding policy has been for the Executive Board to meet on a quarterly basis, with occasional meetings by conference call for time sensitive matters. Special meetings, including conference calls or Internet conferences, may be called by the

President or upon the written request of any three members of the Executive Board. Notification to the Executive Board members can be made via mail, fax, telephone, email, or other means approved by the Executive Board. Pursuant to USCF Bylaws Article VI, Section 3, Executive Board votes may be taken by email, with members having five days to discuss and vote. Because the members of the Executive Board reside throughout the country, any decisions that need to be made in between meetings are decided by voting via email. As soon as all Executive Board members vote, or the five days have passed, the Executive Board vote becomes official. (Hall Decl. ¶8.)

In September of 2007, allegations of misconduct were made against Truong, who is married to Polgar. Truong was alleged to have impersonated a former USCF Executive Board member and other USCF members in over 2500 Internet message board postings (*aka*, the "Fake Sam Sloan" postings). As a result of the 2500 Internet postings, one of the Executive Board members who had been impersonated, Sam Sloan (who, at the time was no longer on the Executive Board), filed an action in the District Court for the Southern District of New York, against, among others, Polgar, Truong, and USCF (the "New York Litigation") (Hall Decl. ¶9.)

Because of the Sam Sloan litigation, the conflict of interest arising from Polgar's and Truong's marital relationship, and the potential conflict of interest created by Polgar's own threats of litigation against the USCF, the USCF needed legal counsel: a) to investigate the claims alleged against Truong, b) to advise the USCF regarding matters related to the Sloan litigation, d) to advise the USCF on matters related to various threats to sue by Polgar, and e) to provide confidential legal counsel on all such issues and related issues. (Hall Decl. ¶11.)

The Executive Board held a meeting on November 4, 2007 where it sought to designate a Board Subcommittee of impartial directors to evaluate the Sloan lawsuit and the threats of legal action by Polgar, and Polgar and Truong's complicity in the misconduct alleged by Sloan as raised in a report prepared by Brian Mottershead (the "Mottershead Report"). Pursuant to Article VII, Section 3B of the USCF Bylaws, which

1  authorizes the Executive Board "to appoint such subcommittees of the Board or
2  committees as it deems appropriate," Mr. Goichberg moved the Executive Board to
3  appoint a Board Subcommittee, consisting of Mr. Bauer (chair), Mr. Berry, Mr. Channing,
4  Mr. Goichberg, and Mr. Hough.  The Board Subcommittee specifically excluded Polgar
5  and Truong in order to permit confidential communications about the investigation and
6  about USCF's legal options.  The motion passed with a 5-0 vote (RB 08-022).  Polgar
7  and Truong were notified at the meeting that the motion would be made, but because
8  Polgar and Truong left the meeting early, they did not vote on the motion.  However,
9  Polgar and Truong indicated that they did not object to the motion.  The minute entry
10 from that meeting states:

> Issues related to charges made by Brian Mottershead were discussed. Bill Goichberg made the following motion:
>
> **RB08-022 – Goichberg –** Moved, that the EB appoints a Board Subcommittee to consider issues related to charges made by B. Mottershead. The subcommittee is to consist of Randy Bauer (chair), Jim Berry, Joel Channing, Bill Goichberg, and Randy Hough. **PASSED 5-0.** Please note that Susan Polgar and Paul Truong had to leave early but were aware that this would be considered and consented to it.

16 (Hall Decl. ¶12; a full version of the minutes is attached as **Exhibit A)**.
17        It is the practice of the Executive Board to circulate minutes for Executive Board
18 member review, providing the opportunity to Executive Board members to change
19 minutes before they become final.  After the above-referenced minutes were circulated,
20 neither Truong nor Polgar ever contacted anyone on the Executive Board to notify the
21 Executive Board that the meeting minutes were in any way inaccurate, nor did they
22 object during the confidential review period prior to the release of these minutes.
23 Further, neither Polgar nor Truong ever objected to the formation of the Board
24 Committee, or to the required confidentiality between and among members of the Board
25 Committee, as was required to address issues related to the investigation of the Fake
26 Sam Sloan matter and other facts that were the subject of Polgar's threats to sue the
27 USCF. (Hall Decl. ¶13.)
28        Under Article VII, Section 4 of the USCF Bylaws, which authorizes the Executive

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Board to hire legal counsel, the Board Subcommittee, approved the hiring of the law firms of Kronenberger Burgoyne, LLP, Hirsch & Westheimer, P.C., Giffin, Winning, Cohen & Bodewes P.C., and Jones, Flygare, Brown & Wharton, P.C.  (Hall Decl. ¶14.)

### Authorization for the "John Doe" Litigation in California

On multiple occasions between December 2007 through June 22, 2008, members of the Board Subcommittee discovered that their confidential –and attorney client privileged-- emails were viewed, copied, and distributed by an unknown individual. Polgar obtained copies of these stolen emails.  However, Polgar refused to inform the Executive Board from where she obtained the emails.  Later, Polgar gave conflicting stories about how she obtained the stolen emails.  Importantly, Polgar refused to provide a copy of the full stolen emails in her possession or otherwise cooperate in investigating the source of the breach of security.  (Hall Decl. ¶15.)

To discover who had hacked into the Board members' email accounts and stolen their confidential emails, Executive Director Bill Hall directed the filing by USCF counsel of a "John Doe" lawsuit in California.  (Hall Decl. ¶16.)  At the time of the filing of the Doe lawsuit, the USCF did **not** know about Polgar's involvement in the theft of confidential emails.  The USCF has a history of allowing its Executive Director to authorize, initiate, and defend litigation on behalf of the USCF, and the USCF Executive Director has invoked this power—with no objections—multiple times over the USCF's history. (Supplemental Declaration of Bill Hall in Support of the Plaintiffs' Opposition to Defendant Susan Polgar's Motion for Summary Judgment, ¶2.)

Based on the foregoing authority, the USCF filed a complaint against Doe defendants 1-10 in the San Francisco County Superior Court on June 25, 2008.  Each Board Subcommittee member thereafter provided his/her consent to the authorization of the Doe lawsuit, as reflected in written consent forms provided to ISPs pursuant to the Doe lawsuit.  (Hall Decl. ¶18.)

On August 9, 2008, the full Board of Delegates held its annual meeting in Dallas, Texas, during which the Board of Delegates discussed and ratified all the prior actions of

1   the Executive Board, which included the creation of the Board Subcommittee. (Hall
2   Decl., **Exhibit B** (at p. 4, DM08-07 - ADM 08-06).)

3   Out of an abundance of caution, on December 16, 2008, Mr. Goichberg moved,
4   via email, the Board Subcommittee to officially ratify the legal action taken by USCF in
5   California against the "John Doe" defendants. The members of the Board
6   Subcommittee, consisting of a majority of the Executive Board members, voted for the
7   motion via email and ratified the "John Doe" action in California. The motion passed
8   with all four members of the Board Subcommittee voting in favor of the motion, which
9   also constituted a majority of the full Executive Board. (Hall Decl. ¶20; a copy of this
10  motion and the voting record is attached as **Exhibit C**.)

11  In response to this Court's April 13, 2009 request for clarity on the USCF's
12  authorization to defend itself against Polgar and initiate the California litigation, on April
13  18, 2009, pursuant to USCF Bylaws Article VI Section 1, Executive Director Bill Hall
14  moved the full Executive Board, including Polgar and Truong, via email, to ratify,
15  confirm, and approve in all respects all actions taken by the Board Subcommittee,
16  including the Executive Board's authorization to file the "John Doe" action. (Hall Decl.
17  ¶21; a copy of this motion and the voting record is attached as **Exhibit D**.) The full
18  Executive Board so expressly ratified the litigation.

19  **Authorization for amending the "John Doe" complaint to add Polgar and**
20  **Alexander as defendants**

21  The discovery conducted in the "John Doe" action produced evidence that Polgar
22  and her agent/employee, Gregory Alexander ("Alexander") gained unauthorized access
23  to Executive Board member Randall Hough's email account, and thereafter copied and
24  distributed confidential communications from Randall Hough's email account. (Hall Decl.
25  ¶22.)

26  On October 7, 2008, a special meeting was called, via telephone, of the Board
27  Subcommittee to discuss adding Polgar and Alexander as defendants in the "John Doe"
28  lawsuit. While the Executive Board typically notifies members regarding special

Case No. 3:08-CV-05126-MHP     6     **PLAINTIFFS' OPP. TO POLGAR'S MTN FOR SUMMARY JUDGMENT**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

meetings via email, because of concerns about Board Subcommittee members' email accounts being compromised, the notification to the Board Subcommittee was given via telephone call. (Hall Decl. ¶23.)

During this special meeting, the Board Subcommittee voted unanimously in favor of amending the "John Doe" complaint to add Polgar and Alexander as defendants. (Hall Decl. ¶24.) On October 24, 2008, USCF filed its First Amended Complaint in the San Francisco County Superior Court, adding Polgar and Alexander as defendants. (Hall Decl. ¶25.)

Out of an abundance of caution, on December 16, 2008, Mr. Goichberg moved, via email, the Board Subcommittee to ratify the legal action taken by USCF in California against Alexander and Polgar. The Board Subcommittee unanimously voted via email to ratify the California action against Alexander and Polgar. (Hall Decl. ¶26; a copy of this motion and the voting record is attached as **Exhibit C**.) And on April 18, 2009, pursuant to USCF Bylaws Article VI Section 1, Executive Director Bill Hall moved the full Executive Board, including Polgar and Truong, via email, to ratify, confirm, and approve in all respects all actions taken by the Board Subcommittee, including the Executive Board's ratification of the legal action taken by USCF against Alexander and Polgar in the California action. The motion passed 4-0, with Polgar and Truong abstaining. (Hall Decl. ¶27; a copy of this motion and the voting record is attached as **Exhibit D**.)

## Argument

### A. The USCF Properly Authorized all Pertinent Acts.

In the current action, all acts of the USCF were approved and later ratified by a majority of the USCF Executive Board in accordance with USCF Bylaws and with USCF practices and governance. Additionally, the full Executive Board of the USCF, in a vote noticed to all Executive Board members including Polgar and her husband Truong, ratified <u>all prior actions related to this litigation</u>. This is perfectly acceptable. Polgar can point to no authority which prohibits a corporation from ratifying prior actions.

The Executive Board manages the affairs of the USCF between meetings of the

Case No. 3:08-CV-05126-MHP            7            **PLAINTIFFS' OPP. TO POLGAR'S MTN FOR SUMMARY JUDGMENT**

Board of Delegates. A majority of the Executive Board ratified the filing of this litigation and the amendment to add Polgar and Alexander as defendants, and thereafter, in a properly noticed email vote of the full Executive Board including Polgar and Truong, the Executive Board ratified all prior actions relating to this litigation.

The decision of Bill Hall to initiate the Doe litigation in June 2008 was made by him alone, against the backdrop of the history of the USCF Executive Director hiring counsel and initiating litigation without prior formal approval of the full Executive Board. Mr. Hall's actions were ratified twice later, first by a vote of a majority of the Executive Board, and second by a formerly noticed vote of the entire Executive Board, including Polgar and Truong.

Polgar ignores the express right of the Executive Board to conduct voting via email, in accordance with USCF Bylaws Article VI, Section 3, which allows votes to be taken by email, with members having five days to discuss and vote. The April 18, 2009 motion, made by Bill Hall, stated, "NOW, THEREFORE, BE IT RESOLVED, that all actions heretofore taken by the Executive Board subcommittee established at the November 4, 2007 Executive Board Meeting (RB 08-022) **are hereby ratified, confirmed and approved in all respects**; …" (Hall Decl. ¶30, Exhibit D.) (emphasis added) This motion was properly noticed to all Executive Board members via email, and the Executive Board waited five days before closing the vote on this motion.

The Executive Board is permitted to ratify prior actions of its Executive Director and a majority of the board. Thus, all of USCF's actions at issue were wholly consistent with its Bylaws and with its practice of governance.

**B. Polgar Has Failed to Plead a Viable Ultra Vires Defense.**
  **1. The USCF's Actions Do Not Qualify as Ultra Vires Acts under Illinois Law.**

Illinois case law distinguishes situations where a corporation does not have power to take an action (ultra vires) from those situations where the corporation has the power, but the power was exercised in an irregular manner.[2] In situations where the corporation

---
[2] USCF agrees with Polgar that Illinois law applies to this inquiry into potential ultra vires

does not have the power, the courts have found the ultra vires action voidable. However, in situations where the corporation had the power, but the authority was exercised irregularly, those actions were <u>not</u> ultra vires.

In *Keith Ryan v. Warren Township High School District No. 121*, 155 Ill. App. 3d 203, 206 (1987), the court distinguished between corporate actions that are without power and those actions taken with appropriate power, but with some irregularity. The Court found the School District's act of contracting with plaintiff Ryan was not ultra vires as it was authorized by the implied powers to disseminate information to the community. *See also, Robinson v. City of Geneseo*, 89 Ill. App. 2d 415, 418 (1967) ("There is a distinction between contracts which are Ultra vires and contracts which are within the power of the city to make, but which have been irregularly or illegally made, but have been performed in good faith."); *In People ex.rel. Barrett, Auditor v. Bank of Peoria et. al*, 295 Ill. App. 543, [no page number available], 15 N.E.2d 333, 336 (2nd District, 1938) (finding the action of an Insurance Company to invest in a Bank was not an ultra vires action, even though there may have been some irregularities in the board's actions); *Independent Order of Svithiod v. Ring Lodge No. 8*, 261 Ill. App. 289, *6 (1931) (stating that an ultra vires act is the exercise of, "a power wholly outside of and beyond the purpose for which the corporation was organized".)

There is no question that USCF had the authority to initiate this lawsuit against Polgar. Section 103.10 of the General Not For Profit Corporation Act (805 ILCS 105/103.10) authorizes a corporation to "sue and be sued, complain and defend, in its corporate name, and shall have standing to sue when one or more of its members would otherwise have standing to sue in his or her own rights, providing the interests it seeks to protect are germane to the corporation's purposes, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Moreover, the USCF bylaws inherently delegate this power to initiate litigation to the Executive Board as part of its broad management authority. Also, the Executive Board acts.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

has clear authority pursuant to Article VII, Section 3 (B) of USCF bylaws "to appoint such subcommittees as it deems appropriate." Further, Section 108.40 (a) of the Illinois General Not For Profit Corporation Act provides that if the articles of incorporation or the bylaws so provide, which the bylaws do in this case, a majority of the directors may create one or more committees and appoint directors or such other persons as the board designates to serve on the committee or committees.

Even Polgar cannot dispute that the USCF has the authority to initiate lawsuits. Thus, because the USCF's initiation, approval and ratification of this lawsuit does not, and cannot, constitute an ultra vires act under Illinois, Polgar's affirmative defense must fail.

### 2. **Polgar Misinterprets the Illinois Statute Regarding Ultra Vires Acts of a Corporation.**

The relevant portions of the statute governing the Defense of Ultra Vires under the Illinois Compiled Statutes (805 ILCS 105/103.15) states:

> No act of a corporation….shall be invalid by reason of the fact that the corporation was without capacity or power to do such act…, but such lack of capacity or power may be asserted:
> (a)   In a proceeding by a member entitled to vote or by a director against the corporation to enjoin the doing of any act or acts…;
> (b)   In a proceeding by the corporation….against the officers or directors of the corporation for exceeding their authority; or
> (c)   In a proceeding by the State…to dissolve the corporation…

Polgar misinterprets the statute governing the Defense of Ultra Vires in several respects when referencing subsection (b). The obvious intent of the legislature in enacting subsection (b) was to authorize corporations to bring an ultra vires action against officers or directors of the corporation to enjoin their actions taken on behalf of the corporation. The intent was not—as Polgar seeks to use the Act—to allow a director to nullify the act of a corporation.

Nor does Polgar's reliance on subsection (a) fare any better. Polgar has not filed an action against the USCF to "enjoin the doing of any act or acts," which is required under the express language of the statute. Polgar's claims against the USCF are for abuse of process and breach of fiduciary duty and are not brought under the Illinois

statute she cites (805 ILCS 105/103.15).

In support of her ultra vires defense, Polgar misconstrues case law. In *Sawko*, cited by Polgar, the court addressed a plaintiff's affirmative ultra vires claim (not a defense). *Sawko v. Dominion Plaza One Condominium Ass'n No. 1-A*, 218 Ill.App.3d 521, 525 (1991). Similarly, in *Buntrock*, also cited by Polgar, the court also addressed an affirmative ultra vires claim (not a defense), expressly authorized by the Illinois Not for Profit Act. *Buntrock v. Terra*, 348 Ill.App.3d 875, 886 (2004). As these cases demonstrate, the Illinois statute on which Polgar relies distinguishes a "defense of ultra vires" (which does not exist) from an affirmative claim for injunctive relief based on an ultra vires act. Polgar has made no affirmative claim for relief under the Illinois statute for injunctive relieve against the USCF, and accordingly her use of this Illinois statute is incorrect.[3]

### C. Polgar's Argument that a Plaintiff Should be Able to Sue All the Directors of a Corporation in Order to Resolve all Disputes at the Shareholder Level is Untenable.

Polgar's position assumes that she should be permitted to sue the USCF and all of its Executive Directors as a way to somehow conflict them out of any decision-making regarding Polgar's own alleged misconduct. If this tactic were permitted by courts, plaintiffs could simply sue all the officers and directors of a company as a way to force all disputes to be resolved by a vote of the stockholders. Aside from the obvious ethical issues for counsel in the use of such tactics, this would create judicial gridlock and encourage the filing of frivolous litigation.

While Polgar was steadfastly denying involvement in the theft of USCF email, she was on notice of the Doe litigation and the USCF's attempts to depose her as a non-

---

[3] Even if Polgar's ultra vires defense were viable as to the USCF, it is not viable as to Randall Hough, who is an individual and brought this lawsuit on behalf of himself. Furthermore, to the extent the Court looks to California law on this issue, it is doubtful that Polgar has standing generally to raise an ultra vires defense under Cal. Corp. C. §208, which expressly limits the ability to bring an action challenging the authority of a corporation to act. *See* 9 WITSUM Ch. XIII, §120 (stating that, "In 1929, the [ultra vires] doctrine was abolished insofar as it affects relations with third parties." Such prohibition was later codified in Cal. Corp. C. §208).

party. Simply put, she knew that her role in the email theft would soon be exposed. As a preemptive act, Polgar sued the USCF and all of its Executive Board in a defamation complaint filed in Texas that recited almost no facts whatsoever. Her Texas suit was clearly a preemptive action, based on her knowledge that the USCF would soon discover her conspiracy with her business partner, Gregory Alexander.

Polgar's position would also prevent a corporation from filing any civil actions related to criminal and other wrongful acts against the corporation, if the defendant first files a preemptive lawsuit against the corporation and all of its directors. A corporation must have the opportunity to defend itself when it is harmed, and the Court should recognize Polgar's tactics as the game playing that they are.

## Conclusion

For the foregoing reasons, the Court should deny the Motion.

Dated: June 22, 2009         KRONENBERGER BURGOYNE, LLP

By: s/ Karl S. Kronenberger
    Karl S. Kronenberger

Attorneys for UNITED STATES OF AMERICA CHESS FEDERATION, INC. and RANDALL D. HOUGH