# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP -1 0 2008

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

SUSAN POLGAR,                          §
            Plaintiff,                  §
                                        §
                                        §
    v.                                  §
                                        §   Civil Action No. 5:08-CV-169-C
                                        §   ECF
                                        §
UNITED STATES OF AMERICA                §          ANSWER AND
CHESS FEDERATION, INC.                  §          COUNTERCLAIM
and                                     §
BILL GOICHBERG, JIM BERRY,              §
RANDY BAUER, and                                §
RANDALL HOUGH, all Individually and in their    §
Representative Capacities as Members of the     §
Executive Board of the United States of         §
America Chess Federation;                        §
BILL HALL, Individually and in his               §
Representative Capacity as Executive Director    §
of the United States of America Chess            §
Federation;                                      §
BRIAN MOTTERSHEAD;                               §
HAL BOGNER;                                      §
CHESS MAGNET, L.L.C.;                            §
CONTINENTAL CHESS INCORPORATED;                  §
JEROME HANKEN;                                   §
BRIAN LAFFERTY;                                  §
SAM SLOAN;                                       §
KARL S. KRONENBERGER; and                        §
KRONENBERGER BURGOYNE, L.L.P.;                   §
                                                 §
Defendants.                                      §
                                                 §

Sam Sloan,

            Defendant-Counter-Claimant

        v.

Susan Polgar
            Plaintiff-Defendant
Hoainhan "Paul" Truong
            Third-Party-Defendant

## ANSWER AND COUNTERCLAIM

### ANSWER

Samuel H. Sloan, sued herein as Sam Sloan, being duly sworn, deposes and says:

That he:

1. Denies knowledge and information sufficient to form a belief as to the truth of allegations set forth in Section II, Paragraphs 1-15 of the complaint except that he admits that the United States of America Chess Federation is a not-for-profit Illinois corporation, that Bill Hall is the Executive Director thereof, that Bill Goichberg, Jim Berry, Randy Bauer and Randall Hough are members of the Board thereof, that Sam Sloan resides at 1664 Davidson Avenue, Apt. 1B, Bronx NY 10453-7877 and that Sam Sloan was present and available for service at the Westin Park Central Dallas Hotel, 12720 Merit Drive, Dallas Texas 75251 on Saturday, August 9, 2008 but that no service was made and no attempt of service was made on Sam Sloan on that or on any other date.

2. With regard to the allegations contained in Section IV, Statement of Facts, very little of it is completely true. The Plaintiff Susan Polgar is showing signs and symptoms of chronic and delusional psychosis and paranoia because she keeps making claims about herself that have little or no basis in fact or are exaggerations or embellishments of the truth. Most importantly, it is absolutely not true that Susan Polgar has won the Woman's World Chess Championship four times. She only won it once. That was in 1996. The following are other examples of her false, exaggerated or delusional claims:

(a) Plaintiff claims that she has become one of the most successful and widely known chess players in the world. This is somewhat true. She was the most second successful female player in the world, second only to her younger sister Judit Polgar, until 1992 when Susan Polgar retired from competitive chess. Since then, she has only played twice in recognized international competition, not counting minor warm-up or practice events. Those were the 1996 Woman's World Championship, which she won, and the 2004 Woman's World Chess Olympiad, where she had the best performance rating for a woman in the entire event. However, she was stripped of her Woman's World Championship title in 1999 for refusing to defend it and she has refused to play for the USA in any future World Chess Olympiads since 2004 unless she is paid for "training". During the 16 years from 1993 to the present, during which she has played almost no chess at all, she has become one of the most widely known chess players in the world by virtue of self-promotion, blasting her name all over the world, attaching her name to every event in which she is involved and getting her picture published everywhere. She has also become known because of her vicious personal attacks on chess officials and her lawsuits, such as her unsuccessful 1999 suit against FIDE, the World Chess Federation, in which she sought the restoration of her Woman's World Champion title. In short, she has become famous for being famous.

(b) With regard to her claim that she won ten Olympiad medals, this is probably true. She has played in four Woman's Chess Olympiads: 1988, 1990, 1994 and 2004. However, her team did not win all four. Her team, which was the Hungarian team, won in 1988 and 1990, but finished second to the Republic of Georgia in 1994. Also, in 2004, her team, which was then the USA team, finished second to China. Although she always won a medal, it was not always the gold medal. In 1994, her younger sister Sofia won the gold medal. Although it is true that she never lost a game in these four Olympiads, and that in each Olympiad she played all 14 games (a remarkable achievement) for a total of 56 games, many of her opponents were weak players and she had a lot of draws. This is one example in which she has had a great accomplishment, playing 56 games without a break is something no other chess player has ever done, but she exaggerates it by claiming that she won the "World Championship" four times, which was not true.

(c) It is not true that Susan Polgar became the first female to qualify for the "Men's World Championship". Her claim is based on the 1986 Hungarian Championship, where she finished tied for second but was given third place by a one-half tie-breaking point. The Hungarians only sent their top two players to the zonal in Warsaw and thus she did not get to go. Almost without doubt, the real reason the Hungarians did not want to send her was her constant personal attacks on Hungarian chess officials, including especially her attacks on Sandur Serenyi, President of the Hungarian Chess Federation, and on Leko, General Secretary of the Hungarian Chess Federation, and also her personal attacks on chess grandmasters including Andorjan and Veroci. These constant attacks made her *persona non grata* in chess. Being a woman had nothing to do with it and indeed enabled her to get away with a lot of things that a man would not have been able to get away with. She never played in the world championship cycle except that she played in the unofficial 1993 PCA Qualifying Tournament, where she finished dead last in a field of 54, http://members.aol.com/graemecree/chesschamps/world/int1993pca.htm Even if the Hungarians had sent her to the 1986 Zonal Tournament in Warsaw, that would have been just a qualifying tournament to another qualifying tournament and she would have been far away from competing for the "Men's World Championship".

In 2005, Grandmaster Andres Adorjan's of Hungary published a book entitled *"Black is OK Forever"* which described the "Polgar Method" of appearing to be a hurt, innocent and discriminated against victim in public while meanwhile making outrageous financial demands and threats in private. Grandmaster Adorjan wrote:

> "The doings of Laszlo Polgar concerning his daughters' participation at the Olympiads, including threats and blackmails, are well-known in Hungary. That's what we call the `Polgar-method', a `school of thought' that has unfortunately found followers."

In BINFO No. 200702520 dated 12-16-2007, Susan Polgar wrote to the other members of the Executive Board of the USCF:

> "But as you know, my Olympiad days are done thanks to the new 'Susan Polgar' rules in 2005 after coming back from the most successful Olympiad ever in 2004."

This reference to the "Susan Polgar Rule" is to to the USCF's rejection of her demand that she be paid $50,000 for training the other members of the 2004 US Woman's Olympiad Team and the subsequent letter from Bill Goichberg to her stating that in the future the USCF would have no funds to pay her to train the other players on the team.

Her demand to be paid $50,000 for "training" was based on the secret Truong-Niro Contract dated March 16, 2003. A copy of this contract is annexed hereto as an exhibit. This contract was signed on the date of a USCF board meeting which Defendant Sam Sloan attended but neither Sloan nor any of the members of the board were informed of this contract. The contract called for the allocation of $50,000 by each of the Kasparov Chess Foundation and the USCF "to develop and oversee the training activities / programs for the gifted girls of America". However, this contract never stated that this total of $100,000 was to be paid to Polgar. At that time, the USCF was nearly bankrupt but did not know it because of the fraudulent financial reporting and bogus financial statements put out by Frank Niro, the USCF Executive Director. It was not known at the time and was not discovered until 2007 that Frank Niro was the founder and a member of the board of the Susan Polgar Foundation. This contract was not known and was not discovered until some time after August 7, 2003 when Frank Niro abruptly disappeared and went on a gambling spree in Foxwoods Casino with the USCF's money, and has not been seen since. On August 20, 2003, Susan Polgar and Paul Truong entered the USCF's offices in New Windsor New York and stole the USCF's laptop computer left behind on Frank Niro's desk when he had hastily vacated the USCF offices. This laptop computer would have contained the only evidence left behind

concerning the demands by Susan Polgar to be paid $50,000 and her other demands. In November, 2006, while Defendant Sloan was on the board, he discovered that the USCF did later secretly pay $13,358.36 to Polgar in December, 2003 in partial payment of her extortionist demands. At first this payment was denied but then later it was admitted.

(d) FIDE did not stop using the term "Men's World Championship" because of Susan Polgar. They did so because of other female players including her own sister Judit Polgar, a much stronger player, plus Pia Cramling of Sweden and Rani Hamid of Bangladesh. Since Susan Polgar never even qualified to the preliminary zonal stage of the World Championship, there was no need to change the name because of her.

(e) Susan Polgar never won the "Triple Crown" in chess because there is no such event or title. Her claim to have won the Rapid and Blitz Woman's World Championships is based on an unofficial non-FIDE event organized by her father in Budapest in 1991 in which the best players, who were the Chinese players, did not play. This supposed event was not reported in any recognized chess publication such as "ChessBase", "The Week in Chess", "New in Chess", "Inside Chess" or "Chess Life" magazine.

(f) Susan Polgar was not the first woman to win the "Men's" Grandmaster title. Nona Gaprindashvili of the Soviet Union was, based on wining or tying for first in the great 1977 Lone Pine tournament in California, the strongest Swiss tournament held in the world that year. In 1977, the present day system of requiring three grandmaster norms in order for a player to be awarded the grandmaster title was not yet in effect.

(g) It is true that at the age of 15 Susan Polgar was equally tied with Maya Chiburdanidze for being the highest rated woman in the world with a rating of 2430. That is the only time that Susan Polgar has ever been officially ranked number one woman in the world, and that was just a tie for first.

(h) Susan Polgar has NOT been ranked in the top three women in the world for over the last 24 years. She has had no ranking at all for most of those years, due to inactivity. She is not even ranked as one of the top women players in the USA for the same reason. The list of the top 100 rated women in the world is online at http://ratings.fide.com/top.phtml?list=women . It can be readily seen that her name is not on the list. Her personal rating is at http://ratings.fide.com/card.phtml?event=700088 under her legal name of Zsuzsa. She has not been in the top-50 women lists since 2005. Since she has played no chess games since 2004 her name has been dropped from the lists. Similarly, her name was not in the top 50 women lists from 1993 to 1995 or from 1997 to 2004 for the same reason, inactivity.

(i) Susan Polgar claims to have won the Budapest Championship for Girls Under-11 at the age of 4 but this claim has proven to be unverifiable.

(j) Susan Polgar was awarded the title of "Grandmaster of the Year" in 2003 without playing any games because her then secret paramour Paul Truong had gotten himself appointed to the selection committee.

(k) It is completely true that it in 2004 Susan Polgar came out of retirement to lead the USA team to the silver medal. This is one of the few completely true claims she makes in her pleading.

(l) With respect to paragraph three of the "Statement of Facts", it is not really true that she has devoted herself to promoting chess. Rather, she has devoted herself to promoting herself. Note that almost every event she lists in this paragraph has her own name on it.

(m) Paragraph five of the "Statement of Facts" seems to be substantially true.

(n) Paragraph six of the Statement of Facts in which she alleges that there are those "who strive for nothing more than to ruin Polgar's reputation" because "she is a woman of foreign descent" is utterly false, especially as applied to the defendants. The defendants wish her every success. However, because of her incessant personal attacks against all of the defendants herein, especially on her websites of susanpolgar.blogspot.com and chessdiscussion.com, some of the defendants have found it necessary to defend themselves against her attacks. There has been no prejudice against Polgar or against any other player of foreign descent.

(o) It is true that Polgar was elected to the USCF Executive Board in July 2007. However, this election was achieved through the help and assistance of several of the defendants that she sues here. She is thanking the defendants for getting her elected by suing them. With the help of Bill Hall and Bill Goichberg, a photo of Susan Polgar was published in every issue of Chess Life magazine for nearly two years, even though she played almost no chess during that period, plus there were free ads for her Susan Polgar Foundation throughout every issue of Chess Life, plus she was allowed to run for election without paying the required $250 filing fee.

(p) With regard to the allegations contained in paragraph seven of the Statement of Facts, they are utterly false. Neither the defendant herein, Sam Sloan nor, upon information and belief, any of the other defendants have made telephone calls and contacts with the President, Chancellors or Provosts of Texas Tech University. The *Lubbock Avalanche Journal* and *The New York Times* have published their own articles based on the results of their own investigations. Moreover, the plaintiff, Susan Polgar, has failed to quote or to point out a single defamatory or untrue statement made about her by those publications or by any of the defendants.

3. With regard to Section V of the complaint entitled "SLANDER, LIBEL, DEFAMATION AND SLANDER PER SE" Defendant avers that this allegation is completely and utterly false. Moreover, Plaintiff fails to set forth any exact quotes or to provide any notice as to which statements are slanderous, libelous or defamatory.

Susan Polgar has been claiming that she is being defamed by allegations that she abuses her children. None of the defendants herein have made such allegations, but others who are not defendants here have made such allegations. On November 15, 2006, Judge Mildred T. Negron of the Queens Family Court specifically ordered that Paul Truong is not to be left alone with Susan Polgar's children. The court order, which is annexed hereto, states:

> RESPONDENT MOTHER IS NOT TO LEAVE CHILDREN UNDER THE SUPERVISION OF HER PARAMOUR, KNOWN AS "PAUL" PENDING FURTHER INVESTIGATION. INGESTION OF HOT SAUCE IS NOT TO BE USED AS A FORM OF DISCIPLINE. ADJOURN DATE; DECEMBER 19, 2006.
> PT-42

Judge Rhea Friedman later issued an "Order of Protection" dated January 11, 2007, prohibiting Susan Polgar from abusing her children by forcing them to play chess. Copies of these orders of Protection are annexed hereto as exhibits. The order stated:

> RESPONDENT MOTHER IS NOT TO USE CORPORAL PUNISHMENT OF ANY KIND ON THE SUBJECT CHILDREN AND RESPONDENT MOTHER IS NOT TO LEAVE THE SUBJECT CHILDREN UNDER THE SUPERVISION OF HER HUSBAND (PAUL) PENDING FURTHER INVESTIGATION AND INGESTION OF HOT SAUSE IS NOT TO BE USED AS A FORM OF DISCIPLINE.

> It is further ordered that this temporary order of protection is to remain in effect up to and including March 27, 2007.

These court orders may explain why Susan Polgar and Paul Truong moved to Texas shortly thereafter.

4. With regard to Section VI of the complaint entitled "BUSINESS DISPARAGMENT", Defendant avers that this allegation is utterly false. Starting in 2002, Paul Truong has made a plethora of false claims about himself and his business acumen and successes. He claimed to have a Ph.D. degree when he has no such degree. He claimed to have rescued and saved many billion dollar corporations and to have made millions for himself so that he was able to retire and devote himself to promoting chess at age 32. None of this was true. He claimed to have wealthy businessmen and corporations waiting in the wings ready to donate millions of dollars to the USCF as soon as he was elected. None of this was true. Truong and Polgar have not brought in one dime since winning the election (and defeating Sloan). To the contrary, it was discovered by the defendant that Truong has filed for bankruptcy twice, once in 1991 and once on June 21, 2007 and in the second bankruptcy filing he stated that his sole income was that he was living off his wife and her $1250 monthly child support check from her ex-husband, Jacob Shutzman.

While living off his wife and running for election, Truong and Polgar made many grandiose claims about Truong, including the following (note that it can only be viewed by registered members of the USCF Issues Forum):

http://main.uschess.org/forums/viewtopic.php?p=39241#39241

by ChessPromotion (Paul Truong) on Tue Apr 10, 2007 5:33 am #39241

"I started my professional career in June 1987 and I retired sometimes in 2001. Now I do things for chess because I love this game and what I can do, no one else can. It is not because I am smarter but because I have the experience in these fields and I know chess.

"What was my specialty in business? I saved companies or turned around companies. Companies sometimes have divisions, subsidiaries, products, business or projects that are not working. They hire me to come in to analyze the situation to pinpoint the problems and come up with effective solutions. Then they have 2 choices: Get someone who can fix the problems or ask me to do it. The companies that I dealt with were all multibillion dollars companies. I was quite good in what I did and I have to say that it is because of chess. That is why I am working so hard right now to promote the benefits of chess and education."

5. With regard to Section VII of the complaint entitled "TORTIOUS INTERFERENCE WITH CONTRACTS AND BUSINESS RELATIONSHIPS" Defendant avers that this allegation is utterly false and without basis.

6. With regard to the allegations set forth in Sections VIII, IX, X, XI and XII of the complaint, Plaintiff avers that these allegations are all utterly false and without basis.

7. With regard to Section XIII of the complaint, defendants KARL S. KRONENBERGER and KRONENBERGER BURGOYNE, L.L.P. Are "Internet attorneys" that were hired by the defendant United States of America Chess Federation in response to a federal suit filed by Sam Sloan, the Defendant herein, who alleged that Susan Polgar and Hoainhan "Paul" Truong had jointly issued more than five thousand obscene, defamatory or pornographic postings on the Internet under the name of "Sam Sloan" and other real or imaginary chess personalities, for the purpose of defaming Sloan and the targets that Polgar and Truong wished to attack. For example, most of the female rivals of Susan Polgar were attacked by these "Fake Sam Sloan" postings, as they are known, including all of the other members of the so-called "Dream Team" that Susan Polgar proudly says that she assembled to compete in the 2004 Woman's World Chess Olympiad. USCF President Beatriz

Marinello was called a "bull dyke" or a "bulldyke" (either one or two words) more than one hundred times by these "Fake Sam Sloan" postings. These postings can still be found on the Internet newsgroups rec.games.chess.politics , rec.games.chess.misc and alt.chess. Other newsgroup postings by Polgar and Truong called Chess Grandmaster Alexandra Kosteniuk, who was rated higher than Polgar, "a Lolita" (because as a teenager she married a much older man). There were also postings by Polgar and Truong, posting as "Sam Sloan", which stated that all of the top young rivals of Susan Polgar had had sexual intercourse with Sam Sloan. They listed Rusudan Goletiani, Jennifer Shahade, Anna Zatonskih, Tatev Abrahamyan, Chimi Batchimeg and Laura Ross as all having had intercourse with Sam Sloan. None of this was true. They also said that Jennifer Shahade, Laura Ross and Hana Itkis should pose in bikinis. All of these women are top rated chess masters and would be rivals of Susan Polgar, if Susan ever played. At the time of these defamatory postings, Laura Ross and Hana Itkis were just 17 years old (now they are 19) and Tatev Abrahamyan was just 18 (now she is 20). The other five women chess players targeted are in their early 20s.

8. The result of these investigations into the "Fake Sam Sloan" postings by KARL S. KRONENBERGER and KRONENBERGER BURGOYNE, L.L.P. was a determination that substantially all of these impersonations and defamatory postings were made by Hoainhan "Paul" Truong, the husband of Susan Polgar.

9. Some time in mid-2008, Susan Polgar contacted Jessica T. Lauser, the blind caretaker of Defendant Jerome Hanken, who is an invalid in a wheelchair, and was able to obtain the Internet passwords to Jerome Hanken's AOL account and apparently the accounts of other USCF officials. This enabled Susan Polgar and her cohorts to break into and enter the private email accounts of some of the defendants.

10. On or about August 7-8, 2008, almost simultaneously with the filing of this suit, the text of confidential emails from Karl S. Kronenberger to defendants Goichberg, Berry and Hough, dated mostly January 17, 2008, appeared on the Internet newsgroup rec.games.chess.politics by an anonymous poster, "nobody@nowhere.com" who was probably Paul Truong. These same emails, which should be protected by attorney-client privilege, had previously appeared on the Polgar-Truong website chessdiscussion.com . Because these emails contained highly confidential information, on June 25, 2008, Defendant Kronenberger representing the USCF filed a lawsuit in San Francisco Superior Court entitled United States of America Chess Federation vs. Does 1-10, et al. A copy of the complaint is attached hereto as an exhibit. The purpose of this suit was to obtain discovery to determine how Susan Polgar and Paul Truong obtained these emails so as to post them on the Internet. Copies of some of these emails are attached hereto as exhibits.

11. Susan Polgar is constantly traveling internationally. She is presently in Bilbao, Spain. Within the past year since taking office on the USCF Executive Board on August 12, 2007 replacing Sam Sloan, she has been photographed in Scotland, Germany, Hungary, India, Argentina, Sardenia, London and many other cities and countries of the world and numerous states of the United States. Because she never stays long in any one place, in order to serve her, the USCF served her at the "Susan Polgar Invitational for Girls" in Lubbock, Texas, because it was known that she had to be there. Susan Polgar and Paul Truong were served at that event and were thus given notice that they had to appear and testify at a deposition to be taken on or about August 7-8, 2008.

12. In spite of having been served, Susan Polgar and Paul Truong did not appear and testify. Instead, Susan Polgar filed this instant lawsuit. Through this lawsuit, Susan seeks a deal. She will drop this suit provided that the USCF stop investigating her involvement in the Fake Sam Sloan postings and stop trying to compel her and Paul Truong to testify under oath. On August 28, 2008, Polgar posted on the Internet an "offer of compromise and settlement" under which she offered to settle her suit against the USCF only, on payment of one dollar plus an apology from the USCF plus an agreement to stop trying to obtain her deposition and testimony under oath.

13. Defendant submits that this suit is brought for an improper purpose.

14. In further regard to the allegations contained in Section XIII of the complaint, defendant Sloan lacks knowledge and information sufficient to form a belief as to the truth of the allegation that other defendants have sought to strip Susan Polgar. However, defendant Sloan avers that it is doubtful that Susan Polgar is entitled to "insurance benefits". The suit entitled Sam Sloan vs. Paul Truong, Susan Polgar et al alleges that during the period from June 25, 2005 until October 2, 2007, the date of the filing of the suit, Paul Truong and Susan Polgar impersonated Sam Sloan and others while sending thousands of obscene, defamatory and pornographic newsgroup postings. Since Susan Polgar and Paul Truong did not take office on the USCF Executive Board until August 12, 2007, it is evident that the vast majority of the "Fake Sam Sloan" postings were sent or transmitted before they took office. It therefore seems unlikely that the "Directors and Officers" insurance policy provided by Chubb Corporation was intended to cover the sort of activity engaged in by Susan Polgar and Paul Truong by sending thousands of obscene, defamatory and pornographic Internet newsgroup postings. Please note that Susan Polgar has included Chubb Corporation on the service list of those to be served in this case. This is obviously an attempt to extort some more money from Chubb Corporation.

15. With regard to Sections XIV and XV of the complaint, Defendant denies that Susan Polgar is entitled to attorney's fees or exemplary damages.

16. With regard to Section XVI "Request for Disclosure", Defendant Sam Sloan joins with Susan Polgar in demanding that the other defendants disclose that information or material, especially since that information and material will provide further evidence that Susan Polgar and Paul Truong were "The Fake Sam Sloan". In addition, Defendant demands that Polgar and Truong produce for inspection and copying by the defendants a pornographic DVD co-produced by Susan Polgar and starring Susan Polgar showing Susan Polgar engaged in various sex acts with various individuals. This DVD has already been produced in court before Judge Hon. Sidney F. Strauss in the case entitled Polgar vs. Shutzman, Queens New York Supreme Court, No. 007118/2002. Defendant merely wants a copy of the same hard core DVD produced and provided to the judge in that court.

17. With regard to the allegations contained in Sections XVII and XVIII of the complaint, Defendant joins with Susan Polgar in demanding the production and preservation of the the documents and evidence mentioned therein, although defendant believes that there is no such conspiracy to damage and defame Polgar and that this suit by Susan Polgar is utterly frivolous and without merit.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

The Summons and Complaint have not been served on the Defendant.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief may be granted.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

The complaint is utterly frivolous and without merit and is brought for an improper purpose, namely to stop lawful investigations by the defendants to determine the origin of the "Fake Sam Sloan" postings and to determine how Susan Polgar was able to hack into the email accounts of some of the defendants and to intercept confidential emails sent by attorney Karl Kornenberger to his clients, as officers of the USCF.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

This complaint is part of a consistent pattern over at least the last 24 years since at least 1984 where Susan Polgar has claimed to be the victim of some vast conspiracy against her motivated by "jealousy", or by her religion, or now by her being "a woman of foreign descent". The first perpetrators of these supposed conspiracies were other Hungarians. Later, it shifted to FIDE as she repeatedly postponed her required Woman's World Championship title defense on various pretexts and now she is claiming that it is the Americans who are doing all these terrible things to her. All of her claims about a supposed "conspiracy" are utterly false and without basis.

WHEREFORE, the complaint should be dismissed and the Plaintiff should receive nothing.

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

18. Defendant and Counter-Claimant Sam Sloan repeats and re-alleges each and every allegation set forth above in the answer to the complaint.

19. Defendant Sam Sloan joins in this action Hoainhan "Paul" Truong who is the husband of Susan Polgar and who lives with her and shares computers with her.

20. Since 2002 when they got together, Susan Polgar and Hoainhan "Paul" Truong have engaged in a variety of scams and activities to rip-off and extort money from the United States Chess Federation, from various defendants and from various other chess personalities. They have also posted thousands of newsgroup postings to various public and private Internet forums. Because of the sheer volume of these thousands of postings plus the fact that they use the same computers and sign each other's names, it has proven impossible to determine which come from Susan Polgar and which come from Paul Truong. Because of this, ever since January 2003, Polgar and Truong have become widely known throughout the Internet by the euphemism "The Trollgars".

21. Starting in June, 2005, The Trollgars commenced a series of postings impersonating Sam Sloan, Ray Gordon, Andrew Zito, "Jackass Lafferty", Beatriz Marinello and other real or imaginary chess personalities.

22. Even before that, the Trollgars posted under a variety of fake names, including "Bob Bennett" who, it was claimed, was a restaurant owner in Utah.

23. The sender of these various impersonations, who had been obviously Paul Truong for quite some time, only used AOL addresses from June 25, 2005 (the date of the first "Fake Sam Sloan" posting) until the late Summer of 2007. AOL addresses are dynamic and change frequently. Susan Polgar keeps claiming that it was actually her ex-husband Jacob Shutzman who was "stalking" her and doing this. She made that claim again at the USCF delegates' meeting in Dallas on August 9-10, 2008 (without mentioning her ex-husband's exact name, but those of us who know her history understood to whom she was referring).

24. If the Fake Sam Sloan had continued to use only AOL addresses, it would have been impossible to prove 100% that it was Truong who was doing it.

25. However, when Truong and Susan moved to Texas they started using addresses of the cable Internet provider there and also the computers on the Texas Tech University campus. Those addresses are not dynamic and do not change often. Then, Truong and Susan went to Mexico City in September 2007 for the World Chess

Championship. There, they used the Internet connection provided by the hotel where they were staying. Again, those addresses were not dynamic. Even though the postings by the "Fake Sam Sloan" always moved to where ever they were, they always claimed that it was her ex-husband Jacob Shutzman who was stalking them. However, Jacob Shutzman has a good job working in New Jersey and he could probably easily prove through employment records that he was never in any of those places.

26. Where Truong and Polgar made their big mistake was when the Fake Sam Sloan started making anonymous attacks on Brian Mottershead, who was the USCF website administrator assigned to redesign the USCF website. Truong and Polgar attacked Mottershead after he had removed the banner ad for the Susan Polgar Foundation from the uschess.org home page. (Mr. Mottershead did not even realize that he had removed the Susan Polgar ad. He simply removed all of the dozen or so banner ads from the uschess.org home page, stating that they did not belong there, as part of the re-design of the USCF website.)

27. Once the Fake Sam Sloan started attacking Brian Mottershead, that gave him the incentive to find out who was doing it. He made a slight modification to the USCF Forum so that it made the IP addresses of whomever was posting there available for public viewing. Since the IP address of anybody who posts to rec.games.chess.politics was already available, that made it obvious and everybody could see that the IP address of Paul Truong and of the Fake Sam Sloan was always the same.

28. Turning on the IP addresses only lasted a few days until Bill Goichberg ordered them turned off, but those few days were enough to prove to all that it was Paul Truong who was doing it.

29. Since mid-2008, Susan Polgar has been taking advantage of Jessica T. Lauser, who is severely visually-impaired and played in the US Blind Championship and who is also the caretaker of Defendant Jerome Hanken, who is an invalid in a wheelchair. Through this, Susan Polgar was able to obtain the computer passwords of Jerome Hanken and possibly others with whom he has a confidential relationship.

30. Other chess personalities have failed to realize that Jessica Lauser was a Fifth Columnist or "Trojan Horse" in their midst, who was present at high level meetings and had access to confidential emails and possibly passwords. The Polgar-Truong website at chessdiscussion.com contains the following statement at: http://www.chessdiscussion.com/phpBB3/viewtopic.php?f=4&t=1410&st=0&sk=t&sd=a

> "It is also pathetic that the President and Jerry Hanken conspired to give two unknowns money and delegates status just to win this vote. Actually a free entry for political reasons is the same as stealing from the USCF."

The "two unknowns" referred to above were Jessica Lauser and her Japanese husband Hiro (a non-chessplayer) who were given delegate credentials at the August 9-10, 2008 meeting in Dallas to vote against Polgar and Truong, but then defected and spoke and voted for them. It was later discovered that they had been supplying confidential inside information to Polgar for quite some time.

31. From April 19, 1986, the 17th birthday of Zsuzsanna "Susan" Polgar, when by happenstance she was left alone for the first time in her life stranded in New York, after having been until then an over protected child who was supporting her unemployed parents from her chess winnings, until November, 1986, Sam Sloan enjoyed a close personal relationship with Susan Polgar. Sloan and Polgar traveled the world together, to such diverse places as Albena, Bulgaria, Copenhagen, Denmark, San Juan, Puerto Rico and Rio Gallegos, Argentina.

32. Sloan stayed for several weeks in Susan's apartment in Budapest, Hungary. He bought the Polgar Family expensive gifts including a computer which they promptly sold for $7,000 in Hungarian money and he provided

the entire family of five with airplane tickets to travel to the World Under-16 Championships in Rio Gallegos, Argentina.

33. In October-November, 1986 while staying in Budapest, Susan Polgar and Laszlo Polgar gave Sam Sloan a power of attorney to represent them at the FIDE Congress in Dubai, United Arab Emirates. Sloan took this power of attorney to Dubai and presented it to Florencio Campomanes, President of FIDE, the World Chess Federation. This was necessary because the Polgar Family was in effect *persona non grata* in the World Chess Federation and was not permitted to travel to Dubai for the World Chess Olympiad.

34. Sloan wrote numerous newspaper articles which were published about how great Susan and her two younger sisters were at chess, thereby making them among the most famous chess personalities in the world.

35. In subsequent years, Sam Sloan consistently and repeatedly advocated the cause of Susan Polgar, a difficult task because Susan was so widely hated in the world of chess.

36. In January, 2003, Susan Polgar called Sam Sloan and asked him to help her form a "Dream Team" to contest the 2004 Woman's World Chess Olympiad. She called Sloan and asked for his help because she did not know any of the other top female chess players or did not have good relations with them, whereas she was aware that Sloan knew all of them. In response to her request, Sloan introduced Susan to Rusudan Goletiani, a top ranked woman chess player recently arrived from the Republic of Georgia whom Sloan was helping to obtain a green card.

37. As a result of introducing Rusudan Goletiani to Susan Polgar, Rusudan became a member of Susan Polgar's "Dream Team".

38. In February, 2003, at the "*Man vs. Machine World Championship Match*" featuring World Champion Garry Kasparov against a computer, Susan Polgar asked Sam Sloan to pose for pictures with her and Rusudan Goletiani. The pictures were taken by Paul Truong, who subsequently sent them to Sam Sloan by email for posting to his website. Truong also sent more than one hundred other pictures to Sloan by email at the same time.

39. At this time, Sam Sloan was still allied with Susan Polgar and helping her with her various endeavors.

40. Starting on June 25, 2005, while Sloan was on a flight to Chicago to contest the infamous "Grudge Match" with Bill Brock which Sloan won, the first of a series of fake Internet postings signed "Sam Sloan" appeared. These eventually numbers thousands of postings and became known as "The Fake Sam Sloan" postings. Sloan immediately and persistently protested but many believed that he was the actual poster.

41. There were many suspects for being "The Fake Sam Sloan". For example, Bill Brock, who was known to dislike Sloan, was always one of the top suspects. Eventually, the list of suspects numbered about 15, but Truong and Polgar were not on the list of suspects because they were known to be friends with and closely allied with Sloan.

42. The votes were counted and Sloan was declared elected to the USCF Executive Board on July 27, 2006. Immediately, Truong and Polgar hit the Internet with a barrage of hundreds of personal attacks on Sloan. Apparently, nobody had thought that Sloan would win the election and therefore nobody had campaigned against him. Through the sheer volume, velocity and vehemence of these attacks by Polgar and Truong, it suddenly became obvious that all along Truong and Polgar had been "The Fake Sam Sloan".

43. Polgar and Truong vehemently objected to the pictures of Susan Polgar with Sam Sloan which were on Sloan's website. Their objections became known as "The PictureGate Affair". This, even though a picture of Susan Polgar with Sam Sloan in Argentina had been published in a book in Hungary by Laszlo Polgar, Susan's father, in the 1990s.

44. Susan Polgar then started broadcasting claims all over the Internet that Sloan had been a "child-molester" during their relationship in Budapest in 1986 when Polgar was "a minor at the time". In reality, Sloan had never laid a finger on her until her 17th birthday and the Age of Consent in Hungary is 14, plus the legal age in New York State is 17.

45. A bizarre claim that Polgar suddenly made on the Internet in 2006 was that in 1986 when Sloan was staying as a guest at the Polgar home in Budapest, Sloan had propositioned Polgar and asked to sleep with her when she was "a minor at the time". She claimed that she had rebuffed his advances, that Sloan had been kicked out of the family home and that she had not had anything to do with him or wanted anything to do with him ever since. It was stated that Sloan was a "child molester" for wanting to sleep with a 17-year-old girl, Susan Polgar.

46. None of this was true. Susan had never rejected his advances and indeed had encouraged them. Sloan had never been kicked out of the Polgar Family home in Budapest. He stayed there several times in 1986, the last time being when they all departed together to play in the Copenhagen Open Championship in Denmark won by Smyslov and after that they had traveled together to chess tournaments in San Juan, Puerto Rico and Rio Gallegos, Argentina. A book published by Laszlo Polgar, Susan's father, in Budapest, showed a photo of Sam Sloan and Susan Polgar together appearing very friendly to each other. In addition, Sloan pointed out that in 2003 Susan Polgar had asked Sloan to pose with her for a picture taken by Truong and that this picture is available on the Internet by a simple Google image search for "Sam Sloan Susan Polgar".

47. Meanwhile, Susan Polgar, posting as the "Fake Sam Sloan", stated the following from the email address ismailsloan@gmail.com which is an email address that the Real Sam Sloan never uses and is used exclusively by the Fake Sam Sloan:

> Article: 302304
> From: "Sam Sloan" <ismailsloan@gmail.com>
> Newsgroups: rec.games.chess.politics
> Subject: My chess goal
> Date: 7 Oct 2006 17:08:49 -0700
> I had sexual relationships with Rusudan Goletiani Jennifer Shahade, Anna Zatonskih, Tatev Abrahamyan, Chimi Batchimeg and Laura Ross. My goal is to #### every female player rated over 2200.
> Sam Sloan

48. As noted previously, all of the players listed above are top female chess masters and rivals of Susan Polgar. Sam Sloan has never had relations (other than normal, friendly non-sexual relations) with any of them and the only top rated female chess player he has ever had relations with was Susan Polgar herself.

49. The Mottershead Report compiled by the then USCF Website Administrator Brian Mottershead (who is also a defendant here) provides a list of 2464 Internet postings by the "Fake Sam Sloan" plus conclusive proof through IP address, user agent strings and other evidence that the Fake Sam Sloan was Paul Truong. These postings are contained in a file entitled fake-sam-sloan.txt that is now available on the Internet. http://www.mottershead.info/uscfdocs/fake-sam-sloan.txt This is a 5mb file thousands of pages long and therefore is not included here. Each of these 2464 Internet postings were cross-posted to two and sometimes

three Internet newsgroups and thus there were more than 5,000 postings altogether. These postings have been the subject of 12 articles in the *New York Times* plus articles in the *Lubbock Avalanche Journal* and other newspapers around the world. There have been dozens of blogs and websites devoted to this issue and thousands of emails and newsgroup postings devoted to this.

50. The Mottershead Report has been examined and vetted by three different independent Internet experts. All have agreed with its findings. All of the evidence points to Paul Truong and Susan Polgar as the perpetrators and no evidence points anywhere else. In addition, Paul Truong has refused to provide an affidavit stating that he was not the Fake Sam Sloan and has refused to testify under oath about this issue. One of his attorneys, Proskauer, Rose, has withdrawn and refused to defend them because of this.

51. Prior to the start of this dis-information campaign, Sam Sloan enjoyed a sterling reputation as an investigative reporter and was held in the highest regard by the World Chess Community. Polgar and Truong on the other hand had a bad reputation and were known collectively by the euphemism of "Trollgar". (See also for example former US Women's Champion Jennifer Shahade's acclaimed book "*Chess Bitch*" in which she refers to them as "Trulgar" on page 105.) Polgar and Truong had both been suspended for computer cheating on the Internet Chess Club and US Chess Live and they had been found guilty of computer cheating in an online chess match against Grandmaster Boris Gulko in which Polgar had supposedly defeated Gulko by 2-0.

52. During the 2007 election campaign for election to the USCF Executive Board in which Polgar, Truong and Sloan were all candidates, it was repeatedly claimed by Bill Goichberg, USCF President and a defendant here, who was at that time supporting Polgar and not opposing Truong for election, that because of Sam Sloan, Erik Anderson, a Seattle Businessman, had stopped supporting the US Chess Championship. (During the period 2001-2006, Anderson had provided over one million dollars in funding for the US Championship.) However, Sloan had never made any negative comments about Erik Anderson. Rather, the Fake Sam Sloan, now known to be Polgar and Truong, had frequently attacked Erik Anderson. Their only known reason for doing this was that Polgar had asked to be paid $10,000 extra for playing in the 2006 US Championship over and above the normal prize money and had made many financial demands and requests of Erik Anderson, all of which had been rejected. Here is one example of the many attacks by The Fake Sam Sloan on Erik Anderson:

```
Article: 304231
From: "Sam Sloan" <ismailsloan@gmail.com>
Newsgroups:
rec.games.chess.politics,rec.games.chess.misc,rec.games.chess.computer
Subject: U.S. Chess Championship - 2007 - Qualification Process
Date: 21 Nov 2006 07:15:02 -0800
NNTP-Posting-Host: 152.163.100.67
NNTP-Posting-Date: Tue, 21 Nov 2006 15:15:08 +0000 (UTC)


There will be no 2007 US Championship. It has been officially
cancelled. I don't want any stinking money from a crook like Erik
Anderson. There's no need to spend $250K for the US Championship. We
can do it for $3K in Brooklyn at the local YMCA. The USCF needs to
start saving money now.


Sam Sloan
```

53. Because of these and thousands of similar attacks by "The Fake Sam Sloan" who was actually Polgar and Truong, Sloan was defeated for re-election and Polgar and Truong were elected instead.

54. The postings impersonating Defendant and Counter-Claimant Sloan, known as the "Fake Sam Sloan postings", have been posted on Internet newsgroups rec.games.chess.politics and rec.games.chess.misc and rec.games.chess.computer and alt.chess. These groups are carried on a wide variety of Internet servers, are broadcast around the world with tens of thousands of readers, and are permanently kept and preserved on the Internet forever.

55. These Internet postings have caused permanent and irreparable harm to the name and reputation of Sam Sloan and have also caused him and his immediate family including his wife and eight children personal distress.

56. Accordingly, Sam Sloan is entitled to damages in the amount of $20 million. (She can keep the other $5 million).

WHEREFORE, Defendant and Counter-Claimant Sam Sloan Demands Judgment against Susan Polgar and Paul Truong in the amount of $20 million.

Samuel H. Sloan
1664 Davidson Ave., Apt. 1B
Bronx NY 10453

1-917-507-7226
1-917-659-3397
samhsloan@gmail.com

STATE OF NEW YORK      )
                                        ss:
COUNTY OF BRONX      )

VERIFICATION

1, the undersigned, the petitioner named in the foregoing petition, being duly sworn, says:
I have read the foregoing petition subscribed by me and know the contents thereof and the same is true of my own knowledge, except as to those matters herein stated to be alleged upon information and belief and as to those matters I believe it to be true.

Signature of Defendant-Counter-Claimant

On the 7th Day of September, 2007 before me personally came Samuel H. Sloan to me known to be the person described herein and who executed the foregoing instrument. Such person duly swore to such instrument before me and duly acknowledged that he executed the same.

NOTARY PUBLIC
KAYO KIMURA
Notary Public, State of New York
No. 01KI6112896
Qualified in Kings County
Commission Expires July 12, 2008

FROM : ICS                          PHONE NO. : 2012990532          Aug. 18 2003 09:43PM P1

# CO-OP PROMOTIONAL AGREEMENT
# FOR U.S. WOMEN'S CHESS

This Co-Op Promotional Agreement ("Agreement") is made and effective this March 10, 2003 by and between the United States Chess Federation (USCF), the Kasparov Chess Foundation (KCF), and the Susan Polgar Foundation (SPF).

NOW, THEREFORE, it is agreed:

## 1. U.S. Women's Chess Promotion

All parties agree to participate in a joint effort to promote and support chess programs for gifted girls in America and the 2004 US Women's Olympiad team.

Under this agreement, Kasparov Chess Foundation and USCF agree to establish funds totaling $100,000 for the 2-year program 2003-2004 commencing March 2003. During these 2 years, USCF allocates $50,000 and KCF donates an equal amount up to $50,000.

USCF, KCF and SPF will jointly organize the annual National Junior Championship for girls under 18 years old, which is expected to start in the fall of 2003.

KCF appoints its Vice-President Michael Khodarkovsky to conduct and oversee the overall program. SPF appoints its President Susan Polgar, in a joint effort with KCF, to develop and oversee the training activities / programs for the gifted girls in America.

Paul Truong and Michael Khodarkovsky, in a joint effort, will work on activities / programs to help the 2004 United States Women's Olympiad Team.

## 2. Term

The effective date of this agreement will begin on **March 10, 2003 and will end on December 31, 2004**, to be renewed every two years thereafter, unless a request to modify or terminate is made by one of the above parties 30 days prior to the expiration of the contract.

## 3. Use of Name

All future promotions of this program during this agreement will be known as co-sponsored by USCF, KCF and SPF.

### 4. No Waiver

The waiver or failure of any of the parties to exercise in any respect any right provided in this agreement shall not be deemed a waiver of any other right or remedy to which the parties may be entitled.

### 5. No Assignment

None of the parties shall assign this Agreement or any interest or obligation herein without the prior written consent of the other parties.

### 6. Governing Law

This agreement shall be construed and enforced according to the laws of the state of New York.

### 7. Headings

The section headings used in this agreement are provided for the convenience for the parties only and shall not be used to construe the meanings or intent of any term.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed as of the date first written above.

_____          3/19/03
Michael Khodarkovsky, KCF                 Date

_____          3/16/03
Susan (Zsuzsa) Polgar, SPF                Date

_____          3/16/03
Frank Niro, USCF                          Date

_____          3-16-03
Paul Truong, US Women's Olympiad Captain  Date





*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

On Aug 8, 8:00 pm, nobody@nowhere.com wrote:

> 17 Jan 2008
> "1. Do Nothing. With this option the board lets the NY litigation take
> its course, informing its membership that the Board cannot make any
> comments on this matter while litigation is pending.  US Chess will be
> pointing the finger directly at Truong, in the form of a cross action, if
> the lawsuit survives the motion to dismiss."
> Very unappealing.
> I believe that Sloan would drop his suit in return for Truong's
> resignation, but Truong won't resign.

> Sloan has stated that he would drop his suit if USCF hired an internet
> expert and Truong agreed to resign if the expert reported that he was the
> fake Sloan. But Truong won't agree to that either, and even if he did
> agree, if the expert reported that it was 99.99% certain Truong was the
> fake Sloan, Truong would say that wasn't good enough.
> I would like the other counsel (Mike Matsler) to speak to Sloan
> immediately, but we probably need to clear this with Jeremy Brown.  Once
> Sloan is contacted, I believe Matsler is likely to either work out a quick
> deal or report that it's hopeless; Sloan is not the type to delay anything.
> After Matsler speaks to Sloan, maybe we send the statement privately to
> Truong and give him a day or two to consider it, then make it public if he
> doesn't resign.  At that point we can better consider the options of hiring
> the expert and/or asking a judge to remove Truong.

> Bill Goichberg
> "Expert Assistance"
> 17 Jan 2008
> Hello:
> Unfortunately, I have been on vacation and traveling internationally since
> Dec 21, and I will not return until Jan 9.  I will be back in the office
> Jan 10.  As a result, I have been slow to respond to a number of your
> recent emails.  Before I left for vacation I started drafting some thoughts
> on the current status, and I have added to those thoughts below.  If any of
> the comments seem disjointed, it is because some of it was drafted before I
> read the recent emails.
> Background. As you of course know, we now have two reports that implicate
> Truong in the "Fake Sam Sloan" debacle; one report being Mottershead, and
> another report, provided without any solicitation, by a federation member.
> Additionally, my office has done some basic vetting of the data, and we did
> not find any factual errors in the Mottershead report based on this limited
> amount of work by our firm.
> We have asked Truong to formally admit or deny whether he is involved, and
> he has not responded. We have asked him to provide his IP address for his
> home computers at his current and last residence, and he has not responded.
> We have asked him to provide any proof that he is not involved in the Fake

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

> Sam Sloan postings, and the only response was a fax from his wife
> containing a plane ticket and his pay stub for his new job; this fax is not
> persuasive for me because we only need to show that Truong was behind any
> one of the many Fake Sam Sloan posting to meet our objectives (for USCF to
> defend itself in litigation, for USCF to persuade Truong to resign, and,
> potentially, for USCF to convince a judge to remove Truong as a director).

> We did also receive some allegations of him abusing the child of his
> current wife, Polgar.  While these allegations are not relevant to the
> inquiry into whether he is involved in the Fake Sam Sloan postings, they
> could perhaps be relevant in a later inquiry about whether his removal from
> the board is "in the best interest of the corporation."

> It looks like Chubb recently told US Chess that it would not be covering
> litigation costs after the 12b6 motion; I do not know the details of this,
> as I just saw it referenced in a recent email to me.
> Lastly, the Board feels like it needs to take action on this matter
> fairly quickly, and the proposed action is to ask Truong publicly to resign
> – additionally, the Board wants to determine if Sloan would drop his suit
> against Truong if Truong resigns.
> My Talks with Proskauer. As you know, it took me a number of weeks before
> I could get Proskauer on the phone, due to a number of reasons, including
> Proskauer's then pending termination of Truong and Polgar. I was able to
> have a phone conference with both Jeremy Brown and one of their corporate
> law attorneys. First, Jeremy was clear that he did not think Chubb would
> pay for an expert now, so he rebuffed me quickly on that. Second, Jeremy
> was unwilling to have any of their corporate law attorneys perform some key
> research about the ability to remove Truong as a board member because,
> again, he did not believe Chubb would pay for it. I did quiz their
> corporate attorney on the phone about her opinion about Illinois law on
> this subject, and she was not really helpful.

> My Firm's Research re: Illinois Law. We did some very basic research
> in-house here, and we quickly started to focus on a particular Illinois
> statute that allows a nonprofit organization with voting members to file a
> lawsuit requesting that a court remove a director. The standard is whether
> the board member "engaged in fraudulent or dishonest conduct or has grossly
> abused his position to the detriment of the corporation," and "removal is
> in the best interest of the corporation." This would be in the form of a
> cross claim in the current litigation or a new lawsuit with a fairly simple
> complaint, asking a judge to remove Truong, based on the Illinois statute
> that allows a court to do so. Illinois Compiled Statutes Annotated, Ch.
> 805, Act 105 (105/108.35 Removal of Directors).  Importantly, the Board
> cannot take any action on its own to remove a director.
>  Expert Assistance. If the Board feels like it is essential to determine
> whether one of its directors, Truong, has engaged in misconduct, and the
> Board feels as if it must know this before April/May/June of 2008 (after a

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

> decision on the motion to dismiss), then the Board should hire an expert
> now. I was hoping that Proskauer would be able to hire the expert, which
> would be paid through Chubb. However, this decision is many months away,
> and it looks like Chubb may be denying coverage. Proskauer feels that it
> must try to use procedural arguments first, as a way to obtain a dismissal,
> in which case an expert would not be needed at all. The hearing on the
> motion to dismiss is not scheduled until February, and assuming any
> dismissal would be granted with leave to amend, we are looking at many
> months before a potential dismissal without leave to amend.
>   What sort of expert? I feel strongly that the Board should engage a
> litigation expert who can not only vet the current "Fake Sam Sloan"
> investigative reports, but also a) conduct his own brief investigation and
> b) testify at trial if necessary. Dr. Cohen is an ideal candidate. He has
> a very strong forensic investigation background, and he is very strong in
> the area of SMTP / IP addresses / Usenet. I have used him recently in a
> significant spam litigation case in federal court, and, simply stated, he
> is head and shoulders above the other expert in terms of experience and
> persuasive abilities. Due to his background in technical forensics, he
> will be uniquely qualified to comment on the "chain of evidence," and his
> past research and own personal technical projects make him uniquely
> qualified to investigate the potential for spoofing or other allegations
> that Truong has been "set up."
>   All this said, here are some options to consider:

> 1. Do Nothing. With this option the board lets the NY litigation take
> its course, informing its membership that the Board cannot make any
> comments on this matter while litigation is pending. US Chess will be
> pointing the finger directly at Truong, in the form of a cross action, if
> the lawsuit survives the motion to dismiss.
> 2. Ask Truong Publicly to Step Down. There are two things to use
> potentially as leverage after you ask Truong to step down. First, if you
> can get Sloan to drop the lawsuit, that would obviously be best; however,
> my gut tells me that that will be difficult. Also, if Sloan keeps the
> defamation allegations in the lawsuit, the Board may want to cross claim
> against Truong, which will be more difficult if he has been dismissed by
> Sloan (i.e. the Board would have to add Truong as a party). It sounds like
> you have other counsel that has dealt with Sloan before who could contact
> Sloan; if he cannot do it, I would be happy to contact Sloan (keep in mind
> I will not be back in the office until Jan 10). Second, the board could
> threaten to initiate a separate action against Truong, in Illinois, to
> remove him from the Board, if Truong does not resign. We could even
> provide Truong with a simple draft complaint that we will threaten to file
> if he does not step down.
> I have provided some comments on your proposed letter in redline format,
> attached.
> 3. Plan to Ask the Court in NY to Remove Truong. Even though a NY court

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

> may be disinclined to take this sort of equitable action (as opposed to an
> Illinois court), it would be simple cross-claim to make.  Please note that
> we have not done the research as to whether this sort of cross claim would
> be subject to a motion to dismiss due to it being brought in NY as opposed
> to Illinois.
> 4.  File a Separate Action Against Truong in Illinois or Tennessee.  With
> or without prior notice to Truong, this action would be to remove Truong
> because he has "engaged in fraudulent or dishonest conduct or has grossly
> abused his position to the detriment of the corporation," and "removal is
> in the best interest of the corporation."  This is essentially a lawsuit
> (the same allegation of the cross claim I described above), with a fairly
> simple complaint, asking a judge to remove Truong.  Because Sloan would not
> be a party, he would not see any of the discovery materials obtained from
> ISPs.  Also, and perhaps most importantly, Truong may not be in a position
> to litigate this matter separately from the NY action, resulting in a very
> quick resolution of the matter.  I must qualify this option by saying that
> we only did limited research on this Illinois statute, and my opinion
> regarding the sufficiency of such a suit, and regarding where the suit
> could be brought, may change upon further research.
>  I wish I could provide further guidance to you on the phone before Jan
> 10, when I return, but I am in a different time zone, and my connectivity
> is spotty.  I will continue to monitor my email as much as possible this
> week before I get back to the office.
>  Very best regards,
>  Karl
>
> _____
> Karl S. Kronenberger
> KRONENBERGER BURGOYNE, LLP


On Fri,  8 Aug 2008 19:00:36 -0600 (MDT), nobody@nowhere.com wrote:
>17 Jan 2008
> "1. Do Nothing.  With this option the board lets the NY litigation take
>its course, informing its membership that the Board cannot make any
>comments on this matter while litigation is pending.  US Chess will be
>pointing the finger directly at Truong, in the form of a cross action, if
>the lawsuit survives the motion to dismiss."
> Very unappealing.
> I believe that Sloan would drop his suit in return for Truong's
>resignation, but Truong won't resign.

>Sloan has stated that he would drop his suit if USCF hired an internet
>expert and Truong agreed to resign if the expert reported that he was the

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

>fake Sloan. But Truong won't agree to that either, and even if he did
>agree, if the expert reported that it was 99.99% certain Truong was the
>fake Sloan, Truong would say that wasn't good enough.
> I would like the other counsel (Mike Matsler) to speak to Sloan
>immediately, but we probably need to clear this with Jeremy Brown.  Once
>Sloan is contacted, I believe Matsler is likely to either work out a quick
>deal or report that it's hopeless; Sloan is not the type to delay anything.
>After Matsler speaks to Sloan, maybe we send the statement privately to
>Truong and give him a day or two to consider it, then make it public if he
>doesn't resign.  At that point we can better consider the options of hiring
>the expert and/or asking a judge to remove Truong.

>Bill Goichberg
> "Expert Assistance"
> 17 Jan 2008
> Hello:
> Unfortunately, I have been on vacation and traveling internationally since
>Dec 21, and I will not return until Jan 9.  I will be back in the office
>Jan 10.  As a result, I have been slow to respond to a number of your
>recent emails.  Before I left for vacation I started drafting some thoughts
>on the current status, and I have added to those thoughts below.  If any of
>the comments seem disjointed, it is because some of it was drafted before I
>read the recent emails.
> Background.  As you of course know, we now have two reports that implicate
>Truong in the "Fake Sam Sloan" debacle; one report being Mottershead, and
>another report, provided without any solicitation, by a federation member.
>Additionally, my office has done some basic vetting of the data, and we did
>not find any factual errors in the Mottershead report based on this limited
>amount of work by our firm.
> We have asked Truong to formally admit or deny whether he is involved, and
>he has not responded.  We have asked him to provide his IP address for his
>home computers at his current and last residence, and he has not responded.
>We have asked him to provide any proof that he is not involved in the Fake
>Sam Sloan postings, and the only response was a fax from his wife
>containing a plane ticket and his pay stub for his new job; this fax is not
>persuasive for me because we only need to show that Truong was behind any
>one of the many Fake Sam Sloan posting to meet our objectives (for USCF to
>defend itself in litigation, for USCF to persuade Truong to resign, and,
>potentially, for USCF to convince a judge to remove Truong as a director).

>We did also receive some allegations of him abusing the child of his
>current wife, Polgar.  While these allegations are not relevant to the
>inquiry into whether he is involved in the Fake Sam Sloan postings, they
>could perhaps be relevant in a later inquiry about whether his removal from
>the board is "in the best interest of the corporation."

>It looks like Chubb recently told US Chess that it would not be covering

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

>litigation costs after the 12b6 motion; I do not know the details of this,
>as I just saw it referenced in a recent email to me.
> Lastly, the Board feels like it needs to take action on this matter
>fairly quickly, and the proposed action is to ask Truong publicly to resign
>– additionally, the Board wants to determine if Sloan would drop his suit
>against Truong if Truong resigns.
> My Talks with Proskauer. As you know, it took me a number of weeks before
>I could get Proskauer on the phone, due to a number of reasons, including
>Proskauer's then pending termination of Truong and Polgar. I was able to
>have a phone conference with both Jeremy Brown and one of their corporate
>law attorneys. First, Jeremy was clear that he did not think Chubb would
>pay for an expert now, so he rebuffed me quickly on that. Second, Jeremy
>was unwilling to have any of their corporate law attorneys perform some key
>research about the ability to remove Truong as a board member because,
>again, he did not believe Chubb would pay for it. I did quiz their
>corporate attorney on the phone about her opinion about Illinois law on
>this subject, and she was not really helpful.

>My Firm's Research re: Illinois Law. We did some very basic research
>in-house here, and we quickly started to focus on a particular Illinois
>statute that allows a nonprofit organization with voting members to file a
>lawsuit requesting that a court remove a director. The standard is whether
>the board member "engaged in fraudulent or dishonest conduct or has grossly
>abused his position to the detriment of the corporation," and "removal is
>in the best interest of the corporation." This would be in the form of a
>cross claim in the current litigation or a new lawsuit with a fairly simple
>complaint, asking a judge to remove Truong, based on the Illinois statute
>that allows a court to do so. Illinois Compiled Statutes Annotated, Ch.
>805, Act 105 (105/108.35 Removal of Directors). Importantly, the Board
>cannot take any action on its own to remove a director.
> Expert Assistance. If the Board feels like it is essential to determine
>whether one of its directors, Troung, has engaged in misconduct, and the
>Board feels as if it must know this before April/May/June of 2008 (after a
>decision on the motion to dismiss), then the Board should hire an expert
>now. I was hoping that Proskauer would be able to hire the expert, which
>would be paid through Chubb. However, this decision is many months away,
>and it looks like Chubb may be denying coverage. Proskauer feels that it
>must try to use procedural arguments first, as a way to obtain a dismissal,
>in which case an expert would not be needed at all. The hearing on the
>motion to dismiss is not scheduled until February, and assuming any
>dismissal would be granted with leave to amend, we are looking at many
>months before a potential dismissal without leave to amend.
> What sort of expert? I feel strongly that the Board should engage a
>litigation expert who can not only vet the current "Fake Sam Sloan"
>investigative reports, but also a) conduct his own brief investigation and
>b) testify at trial if necessary. Dr. Cohen is an ideal candidate. He has

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

>a very strong forensic investigation background, and he is very strong in
>the area of SMTP / IP addresses / Usenet. I have used him recently in a
>significant spam litigation case in federal court, and, simply stated, he
>is head and shoulders above the other expert in terms of experience and
>persuasive abilities. Due to his background in technical forensics, he
>will be uniquely qualified to comment on the "chain of evidence," and his
>past research and own personal technical projects make him uniquely
>qualified to investigate the potential for spoofing or other allegations
>that Truong has been "set up."
> All this said, here are some options to consider:

> 1. Do Nothing. With this option the board lets the NY litigation take
>its course, informing its membership that the Board cannot make any
>comments on this matter while litigation is pending. US Chess will be
>pointing the finger directly at Truong, in the form of a cross action, if
>the lawsuit survives the motion to dismiss.
> 2. Ask Truong Publicly to Step Down. There are two things to use
>potentially as leverage after you ask Truong to step down. First, if you
>can get Sloan to drop the lawsuit, that would obviously be best; however,
>my gut tells me that that will be difficult. Also, if Sloan keeps the
>defamation allegations in the lawsuit, the Board may want to cross claim
>against Truong, which will be more difficult if he has been dismissed by
>Sloan (i.e. the Board would have to add Truong as a party). It sounds like
>you have other counsel that has dealt with Sloan before who could contact
>Sloan; if he cannot do it, I would be happy to contact Sloan (keep in mind
>I will not be back in the office until Jan 10). Second, the board could
>threaten to initiate a separate action against Truong, in Illinois, to
>remove him from the Board, if Truong does not resign. We could even
>provide Truong with a simple draft complaint that we will threaten to file
>if he does not step down.
> I have provided some comments on your proposed letter in redline format,
>attached.
> 3. Plan to Ask the Court in NY to Remove Truong. Even though a NY court
>may be disinclined to take this sort of equitable action (as opposed to an
>Illinois court), it would be simple cross-claim to make. Please note that
>we have not done the research as to whether this sort of cross claim would
>be subject to a motion to dismiss due to it being brought in NY as opposed
>to Illinois.
> 4. File a Separate Action Against Truong in Illinois or Tennessee. With
>or without prior notice to Truong, this action would be to remove Truong
>because he has "engaged in fraudulent or dishonest conduct or has grossly
>abused his position to the detriment of the corporation," and "removal is
>in the best interest of the corporation." This is essentially a lawsuit
>(the same allegation of the cross claim I described above), with a fairly
>simple complaint, asking a judge to remove Truong. Because Sloan would not
>be a party, he would not see any of the discovery materials obtained from

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

>ISPs.  Also, and perhaps most importantly, Truong may not be in a position
>to litigate this matter separately from the NY action, resulting in a very
>quick resolution of the matter.  I must qualify this option by saying that
>we only did limited research on this Illinois statute, and my opinion
>regarding the sufficiency of such a suit, and regarding where the suit
>could be brought, may change upon further research.
> I wish I could provide further guidance to you on the phone before Jan
>10, when I return, but I am in a different time zone, and my connectivity
>is spotty.  I will continue to monitor my email as much as possible this
>week before I get back to the office.
> Very best regards,
> Karl
> _____
>Karl S. Kronenberger
>KRONENBERGER BURGOYNE, LLP


Subject: This is bad USCF politics
From: nobody@nowhere.com
Date: Fri,  8 Aug 2008 19:35:36 -0600 (MDT)
Message-ID: <a9a26e3d0c20cb38acd083a4ba93f4cd@pseudo.borked.net>
Bytes: 15041
Lines: 372
Path: newsread1.mlpsca01.us.to.verio.net!newspeer1.mlpsca01.us.to.verio.net!news-out.superfeed.net!
sp6iad.superfeed.net!news-in2.spamkiller.net!news.bananasplit.info!mail2news.mixmin.net
Newsgroups: alt.chess
Sender: Borked Pseudo Mailed <nobody@pseudo.borked.net>
Comments: This message did not originate from the Sender address above.
 It was remailed automatically by anonymizing remailer software.
 Please report problems or inappropriate use to the
 remailer administrator at <admin@pseudo.borked.net>.
X-No-Archive: YES


Bill shares with friends
 30 Jan 2008
 Chessoffice@aol.com wrote:
To the EB committee on Truong/Sloan matters:

This is an update on where we stand regarding getting Sloan to drop his lawsuit against USCF.  It also
contains a motion.

Because we all were asked to keep matters confidential, I had not provided info on this  matter to my

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

friend Jerry Hanken. However, from speaking to other sources, Jerry became aware of what was happening, and told me he knew that a Board statement asking Truong to resign had been approved. I then told him that we would like, in view of that statement, to have Sam withdraw his suit against USCF.

Jerry is somewhat friendly with Sam (more than most people in the chess world) because after Sam was elected, for several months Jerry was in close touch with him, defending him to some extent and trying to persuade him to act more responsibly.
Jerry had some successes, such as convincing Sam to apologize to Grant Perks for suggesting he had committed criminal acts, but eventually gave up and decided that Sam is hopeless. Even so, they talk sometimes and Sam is more likely to listen to Jerry than to any of us.

Jerry suggested that he approach Sam suggesting that if he dropped USCF from his lawsuit, the EB Committee would issue a statement calling on Paul to resign. I said no, we need a lawyer to do that in case Sam raises issues requiring legal expertise. Jerry called Sam anyway, urging him to drop USCF from the suit but not mentioning the possibility of a motion asking Paul to resign. Sam's reaction was fairly positive, he said he was considering that anyway. Jerry reported that to me and I felt that we don't need a lawyer to negotiate with Sam and Jerry would do better. I called Randy Bauer and he agreed. I think Jerry has saved us some legal fees and I appreciate that.

Jerry then called Sam again the next day (yesterday) saying he was urging the Committee to make a public statement calling on Paul to resign, and if Sam would agree to drop USCF from his suit he thought this statement was likely to be issued. Sam quickly agreed to this. Jerry reported this to me and I suggested that he confirm his understanding with Sam by email. He called Sam again today to set this up and Sam had a new demand, that I issue a public apology to him. Jerry told him he thought that was out of the question and Sam hung up on him. Jerry called back and Sam spoke to him but was adamant.

I don't know what Sam wants an apology for, but I can't think of any apology I could make to him that would be appropriate. I suppose if we decide it is proven that Paul is the fake Sloan, an apology might be in order on behalf of USCF for inappropriate postings by a Board member, but we are not ready to say that Paul is the fake Sloan, only that he has violated his fiduciary duty. So unless the Committee thinks I should apologize for something as part of a deal, I move the following:

Moved, that unless one of our attorneys recommends against this, the Committee issues the following public statement:

The USCF Executive Board has received a complaint from Brian Mottershead alleging that Executive Board member Paul Truong is responsible for making a large number of defamatory internet posts under the guise of Sam Sloan and other individuals. This allegation has received widespread attention in national and local media and chess forums, and a federal lawsuit filed by former Executive Board member Sam Sloan alleges that the forged posts, some of which used his name, damaged his reputation and impacted the outcome of last year's Executive Board election.

This lawsuit names the USCF as an organization and each of the individual board members as defendants and seeks, among other things, payment for damages in the millions of dollars. As can be

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

expected, the Executive Board takes these allegations and this lawsuit very seriously. As a result, the USCF Executive Board formed a Committee, consisting of Randy Bauer (chair), Bill Goichberg, Joel Channing, Randy Hough and Jim Berry to investigate the alleged wrongdoing. The USCF Executive Board also hired outside legal counsel with Internet law expertise, Kronenberger Burgoyne, to advise the Committee.

Because the allegations against Paul Truong include a period of time in which he was a member of the Executive Board, it is vitally important that he affirmatively assist the USCF in defending against this lawsuit. Based on the advice of counsel, a letter was sent via both email and Federal Express to Paul Truong on November 29, 2007 , seeking information that counsel deems critical to the USCF, both for defending this lawsuit and any other legal actions that may arise based on the allegations.

Specifically, the USCF asked Paul Truong to provide, by December 7, 2007 , the following:

Formally admit or deny, in writing, whether he was involved in the "Fake Sam Sloan's postings, or had knowledge of who made such postings; Provide the IP address of all his home and work Internet connections since 2005, or provide consent for the Board to obtain and cooperate in the Board obtaining, such IP addresses from ISPs and other entities; Provide all information that would support his argument that he was not located at his computer(s) at the time of alleged Fake Sam Sloan postings; to include information relating to his travel.

To date, the USCF has not received a response to items 1 and 2 and incomplete information relating to item 3.

As an Executive Board member, Paul Truong has a clear fiduciary duty to the USCF and its membership to cooperate in the USCF investigation and defense relating to the allegations. Regardless of the merits of the claims, Mr. Truong has neglected his fiduciary duties, and based on discussions between him and our attorney, there seems little likelihood this situation will change in the near future.

Given the many issues facing the USCF and the need to focus its time and attention on, among other things, its finances, organization of national events and support for US players in major international competitions, we believe that the interests of the USCF would best be served by Paul Truong voluntarily resigning from the Executive Board.

This is not and has not been our desired outcome. We each hoped that Paul Truong would cooperate with the USCF in a) formally denying the allegations, and b) expeditiously refuting the allegations that have been made, but this has not been the case. We also recognize that the original allegations against Truong were raised by Mr. Mottershead, despite a valid, written non-disclosure agreement that Mottershead entered with USCF

Regardless of the circumstances, the fact is that a lawsuit has been filed, and all Executive Board members have a duty to help us defend against it. Given Paul Truong's unwillingness to do so, we believe that there is no other recourse than to ask that he resign from the Executive Board of the USCF.

The Committee asks Randy Bauer as chairman to post this statement on the USCF Issues Forum three days after passage of this motion, and to send the motion to Paul Truong as soon as possible after

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

passage, along with the planned posting date, to give him a final opportunity to resign before its release. Paul can say that he admits no guilt and is resigning for the good of the Federation. If he resigns before the statement is posted, the statement shall become void, and the Committee will issue a new statement thanking him for resolving the issue.

Note: based on previous discussion, I expect Joel Channing to vote no on this motion. Joel, if you do so could you add a note of explanation so members will know that you are not supporting Truong's actions, but rather would like to see a motion directed against both Truong and Mottershead?

Bill Goichberg


Bill says run!
17 Jan 2008
"1. Do Nothing. With this option the board lets the NY litigation take
its course, informing its membership that the Board cannot make any comments on this matter while litigation is pending. US Chess will be pointing the finger directly at Truong, in the form of a cross action, if the lawsuit survives the motion to dismiss."
Very unappealing.
I believe that Sloan would drop his suit in return for Truong's resignation, but Truong won't resign.

Sloan has stated that he would drop his suit if USCF hired an internet expert and Truong agreed to resign if the expert reported that he was the fake Sloan. But Truong won't agree to that either, and even if he did agree, if the expert reported that it was 99.99% certain Truong was the fake Sloan, Truong would say that wasn't good enough.
I would like the other counsel (Mike Matsler) to speak to Sloan immediately, but we probably need to clear this with Jeremy Brown. Once Sloan is contacted, I believe Matsler is likely to either work out a quick deal or report that it's hopeless; Sloan is not the type to delay anything. After Matsler speaks to Sloan, maybe we send the statement privately to Truong and give him a day or two to consider it, then make it public if he doesn't resign. At that point we can better consider the options of hiring the expert and/or asking a judge to remove Truong.


Bill Goichberg
"Expert Assistance"
17 Jan 2008
Hello:
Unfortunately, I have been on vacation and traveling internationally since Dec 21, and I will not return until Jan 9. I will be back in the office Jan 10. As a result, I have been slow to respond to a number of your recent emails. Before I left for vacation I started drafting some thoughts on the current status, and I have added to those thoughts below. If any of the comments seem disjointed, it is because some of it was drafted before I read the recent emails.
Background. As you of course know, we now have two reports that implicate Truong in the "Fake Sam Sloan" debacle; one report being Mottershead, and another report, provided without any solicitation, by a federation member. Additionally, my office has done some basic vetting of the data, and we did not find any factual errors in the Mottershead report based on this limited amount of work by our firm.

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

We have asked Truong to formally admit or deny whether he is involved, and he has not responded. We have asked him to provide his IP address for his home computers at his current and last residence, and he has not responded. We have asked him to provide any proof that he is not involved in the Fake Sam Sloan postings, and the only response was a fax from his wife containing a plane ticket and his pay stub for his new job; this fax is not persuasive for me because we only need to show that Truong was behind any one of the many Fake Sam Sloan posting to meet our objectives (for USCF to defend itself in litigation, for USCF to persuade Truong to resign, and, potentially, for USCF to convince a judge to remove Truong as a director).

We did also receive some allegations of him abusing the child of his current wife, Polgar. While these allegations are not relevant to the inquiry into whether he is involved in the Fake Sam Sloan postings, they could perhaps be relevant in a later inquiry about whether his removal from the board is "in the best interest of the corporation."

It looks like Chubb recently told US Chess that it would not be covering litigation costs after the 12b6 motion; I do not know the details of this, as I just saw it referenced in a recent email to me. Lastly, the Board feels like it needs to take action on this matter fairly quickly, and the proposed action is to ask Truong publicly to resign – additionally, the Board wants to determine if Sloan would drop his suit against Truong if Truong resigns.

My Talks with Proskauer. As you know, it took me a number of weeks before I could get Proskauer on the phone, due to a number of reasons, including Proskauer's then pending termination of Truong and Polgar. I was able to have a phone conference with both Jeremy Brown and one of their corporate law attorneys. First, Jeremy was clear that he did not think Chubb would pay for an expert now, so he rebuffed me quickly on that. Second, Jeremy was unwilling to have any of their corporate law attorneys perform some key research about the ability to remove Truong as a board member because, again, he did not believe Chubb would pay for it. I did quiz their corporate attorney on the phone about her opinion about Illinois law on this subject, and she was not really helpful.

My Firm's Research re: Illinois Law. We did some very basic research in-house here, and we quickly started to focus on a particular Illinois statute that allows a nonprofit organization with voting members to file a lawsuit requesting that a court remove a director. The standard is whether the board member "engaged in fraudulent or dishonest conduct or has grossly abused his position to the detriment of the corporation," and "removal is in the best interest of the corporation." This would be in the form of a cross claim in the current litigation or a new lawsuit with a fairly simple complaint, asking a judge to remove Truong, based on the Illinois statute that allows a court to do so. Illinois Compiled Statutes Annotated, Ch. 805, Act 105 (105/108.35 Removal of Directors). Importantly, the Board cannot take any action on its own to remove a director.

Expert Assistance. If the Board feels like it is essential to determine whether one of its directors, Truong, has engaged in misconduct, and the Board feels as if it must know this before April/May/June of 2008 (after a decision on the motion to dismiss), then the Board should

Newsgroups: rec.games.chess.politics,rec.games.chess.computer,rec.games.chess.misc,alt.chess
Subject: Re: Frustrated Kronenberger

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

Message-ID: <489cf787.21569468@ca.news.verio.net>
References: <eb6d903a137d6948aa36d5203cb6815a@pseudo.borked.net>
Date: Sat, 09 Aug 2008 01:49:39 GMT

On Fri, 8 Aug 2008 18:58:28 -0600 (MDT), nobody@nowhere.com wrote:

>28 Dec 2008
> Hello:
> I wanted to give you a quick update. I must say that I am a bit
>frustrated with how slow this process has taken, but we did have a bit of a
>breakthrough today. To summarize, when I spoke to the Proskauer firm, they
>were able to get one of their corporate law attorneys on the call to review
>some of my thoughts and potential recommendations to the committee.
> Unfortunately, they are unwilling to push Chubb to pay for an expert now,
>which is the main reason I wanted to talk to them. The corporate counsel
>did give me, to an extent, her comments on my suggestions. However, they
>were unwilling to put any time into researching the important Illinois
>corporate law issues I wanted them to look into. They said they know Chubb
>would reject this, due to where they are in the case right now (moving into
>a motion to dismiss). Thereafter, my associate did some research, and
>today we did reach some conclusions on the corporate law matter. I will
>work diligently to summarize my thoughts.
> Regarding the demand to Truong, he did not comply with the demand, except
>for a fax Polgar sent containing a Southwest ticket confirmation and a pay
>stub at his new job. As I told Polgar, all US Chess needs to do is to
>prove one, just one, instance where Truong impersonated Sloan in order to
>prevail. More importantly, Truong has not provided confirmation of his IP
>addresses, consented to us obtaining is IP addresses, or denied in writing
>that he has any knowledge or involvement in the Fake Sam Sloan postings (I
>believe that one person on this committee commented that Truong has denied
>this in an email, but a) I could not find that email and b) I want a clear
>denial in writing faxed or FedEx'ed to my office – which I will clarify to
>him later).
> As I said, I will work diligently to get my recommendations to you now
>that I have this research under my belt.
> Thanks,
> Karl
> Mottershead
> 3 Jan 2007:
> It has already been confirmed in writing, publicly, and he was told that
>if he didn't step down he would be suspended. Are you suggesting we make a
>public announcement now that if he hadn't stepped down he would have been
>suspended? I don't like this because we urged him to step down precisely
>to avoid that type of announcement being made, so we would not be keeping
>our word.
> Bill Goichberg

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

> I concur that we do not want to let Mottershead off the hook. What he
>did was clearly wrong, and he likely knew it was wrong at the time. What I
>am suggesting is that we create a private paper trail that evidences how we
>have dealt with Mottershead.
> Kronenberger

Sender: Borked Pseudo Mailed <nobody@pseudo.borked.net>
Comments: This message did not originate from the Sender address above.
        It was remailed automatically by anonymizing remailer software.
        Please report problems or inappropriate use to the
        remailer administrator at <admin@pseudo.borked.net>.
Subject: Second forensic expert finds problems
From: nobody@nowhere.com
X-No-Archive: YES
Message-ID: <f8e1cab384c89a7ead96d27ddf07539b@pseudo.borked.net>
Date: Fri, 8 Aug 2008 18:54:08 -0600 (MDT)
Newsgroups: rec.games.chess.politics
Path: newsread1.mlpsca01.!140.142.12.140.MISMATCH!news.u.washington.edu!news.alt.net!
news.wiretrip.org!news.bananasplit.info!mail2news.mixmin.net


26 Oct 2007
Good Morning, Joel:
I appreciate your concern but I strongly suspect that any investigation
that we or another company does will not yield results of "evidential
value"; by that I mean provable, by a preponderance of facts, evidence upon
which one would rely to not just bring a complaint to court, but to
actually prevail on that complaint at trial. Rather, what I expect that we
could find, depending on how your emails have been preserved since the time
of these incidents, is evidence that someone was "spoofing", that is,
impersonating another's email.
The way this is usually discerned is in the differences in the IP
addresses of the email owner and the impersonator. Assuming that one did
find a difference in IP addresses, then the different IP address would have
to be traced. And it is in that step that I believe we would come up empty,
as the canny spoofer will have covered his/her tracks. Thus, the best
outcome I would foresee is that we could show that an unknown someone was
impersonating the true email account holder. And even then, one couldn't
rule out the possibility that the true email account holder was spoofing
him/herself, a tactic one imagines a skilled chess player might use.

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

We also discussed yesterday that some of your Board want to learn whether an imposter was posting scurrilous messages about other members on message boards, chat rooms, etc. I have had direct, recent experience with this kind of activity involving the alleged leaking of insider information in one case and the making of what were clearly defamatory comments about an individual. Short of a subpoena which generally can only be issued by a party after litigation has already commenced, or a warrant or similar authority from law enforcement, entities like Yahoo, AOL, Hotmail, MSN and Google will refuse to disclose any ownership or account holder's records. Even in cases where the posting violates the service provider's own rules, the best reaction one can get is the the allegedly offending postings are removed and the individual's account is shut down. But nothing prevents that individual from setting up another account with the same or a different provider.

I sympathize with the Board members who feel outrage at what they believe has happened. Realistically, however, I believe that an investigation would show possibilities, perhaps probabilities, but not certainties. And, if the Federation has not already done so, we would make recommendations to insure that the network and email system was less vulnerable to these kinds of attacks.

Please feel free to call or email with comments, questions...

Regards,

Mike

byte-metrics.com

 forensics advice

Hi Joel: I've asked my broker to give me a quote for $2 Mil / $4 Mil. Whatever the increase, my custom and practice is to accede to a client's demand for higher coverage but to absorb that increased cost within a higher rate. I do have a standard contract but let's get the insurance question answered and then let's talk. I want to make sure that I fully understand your concerns and expectations. In particular, if you believe that, regardless of the outcome of an investigation, my company and possibly me personally will be named in a current or new claim by a disgruntled member, I need to know this from the beginning. If that or similar was your belief, I would amend my contract to include an indemnity from the Federation in the event that ByteMetrics/I was sued for doing the Federation's bidding. On the other hand, what I've envisioned up to this point is that, assuming that we were engaged, we would be so through a law firm representing the USCF. We would report our findings to the law firm and it would report to the USCF. I think it highly unlikely, given what you've described of the situation to me thus far, that a "smoking gun" would be found, or, if one was, that it would have any "fingerprints" on it. Therefore, what I've imagined so far is that our report would detail what we found and opine on the likely explanations for those findings. We would also make recommendations for additional security measures if those

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

had not already been implemented. Assuming it was handled right, what we reported to the law firm and what it reported to the USCF would be privileged and confidential. We could have that discussion with the attorney representing the USCF, prior to our engagement. Anyway, let's talk, if you wish, of course. I'm reachable at --. Regards, Mike
byte-metrics.com
22 Oct 2008
Good Morning, Joel:
I hope you are doing well.
I saw the prior NY Times article. What a tangled
web...
Please let me know if I can help. And please bear in mind that the preferred way to do this is through a law firm to help insulate the USCF from having to reveal what it learns from any investigation.
Regards,
Mike
byte-metrics.com
First Forensic expert finds problems
11 Oct 2008
Hi Randy,
Please find attached 2 documents. One is our standard contract and the other is Schedule A (cost and time estimate). If all looks good simply sign the contract and send back with 1/2 payment.
As I noted in the "Comments" section of Schedule A, Leonard Stimmel, our expert, has already identified some technical discrepancies during his initial review.
I look forward to hearing back!
Greg
Greg Beckemeier
United Forensics

**KRONENBERGER BURGOYNE, LLP** CASE MANAGEMENT CONFERENCE SET
Karl S. Kronenberger (Bar No. 226112)
150 Post Street, Suite 520
San Francisco, CA 94108             NOV 2 6 2008  -9ᵃᵐ AM
Telephone: (415) 955-1155
Facsimile:  (415) 955-1158          DEPARTMENT 212

Attorneys for Plaintiff
United States of America Chess Federation, Inc.      NO SUMMONS ISSUED

F I L E D
San Francisco County Superior Court

JUN 2 5 2008

GORDON PARK-LI, Clerk
BY _____
Deputy Clerk

COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO

CGC-08-476777

UNITED STATES OF AMERICA
CHESS FEDERATION, INC., an Illinois
not-for-profit corporation,

    Plaintiff,

    v.

DOES 1-10, inclusive,

    Defendants.

CASE NO.

COMPLAINT

**JURY TRIAL DEMANDED**

BY FAX

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1

COMPLAINT

Plaintiff UNITED STATES OF AMERICA CHESS FEDERATION, INC. brings this Complaint against Defendants DOES 1 - 10 ("DOES").

## INTRODUCTION

1.     This matter involves highly confidential and sensitive communications of Executive Board members of the sixty-nine year old UNITED STATES OF AMERICA CHESS FEDERATION, INC., *aka* United States Chess Federation ("USCF").  On or about June 23, 2008, unknown Doe Defendants gained unlawful access to confidential emails of USCF Executive Board members and viewed, copied and distributed such confidential communications.  The USCF brings this action against said Doe Defendants for damages and injunctive relief.

## PARTIES

2.     Plaintiff USCF is an Illinois not-for-profit corporation in good standing with its principal place of business in Crossville, Tennessee.

3.     Plaintiff does not know the true names and capacities, whether individual, associate, corporate or otherwise, of Defendants sued herein as DOES 1-10, inclusive, and Plaintiff therefore sues said Defendants by such fictitious names pursuant to Section 474 of the California Code of Civil Procedure.

4.     Plaintiff will amend this Complaint to state the true names and capacities of these Defendants once they have been discovered.  Plaintiff is informed and believes, and, on that basis, alleges that each Defendant sued herein by a fictitious name is in some way liable and responsible to Plaintiff on the facts herein alleged for Plaintiff's damages.

## GENERAL ALLEGATIONS

5.     The USCF is the official, not-for-profit U.S. membership organization for chess players and chess supporters of all ages and strengths, from beginners to Grandmasters. The USCF represents the United States in the World Chess Federation (FIDE), linking U.S. members to chess players around the world. Founded in 1939 with

COMPLAINT

2

the merger of the American Chess Federation and the National Chess Federation, the USCF has grown to over 80,000 members and 2,000+ affiliated chess clubs and organizations today. The USCF sanctions thousands of tournaments with over half a million officially rated games annually. Twenty five USCF-sanctioned National Championship events award titles to both amateurs and professionals, ranging from elementary school students to senior citizens. Over fifty USCF-member Grandmasters (one out of every eight Grandmasters in the world) represent the U.S. internationally, and USCF supports the participation of Americans in official FIDE championship events at all levels. USCF also publishes the award-winning monthly magazine Chess Life and the bimonthly Chess Life for Kids.

6.    USCF is governed by a Board of Delegates, composed of a seven-member Executive Board, Delegates at Large, and 125 Delegates apportioned among U.S. states. The seven-member Executive Board functions as a "board of directors," tasked with managing the affairs of the USCF.

7.    Due to current federal litigation in which USCF is a party, the Executive Board designated a "Litigation Committee" in January 2008 that could communicate internally in a confidential manner, including on matters covered under the attorney client privilege.

8.    On June 22, Litigation Committee member Bill Goichberg sent a confidential email (the "Email") to Litigation Committee members Randy Hough and Jim Berry.

9.    On information and belief, on or about June 22 or June 23, 2008, Defendants gained unauthorized access to the email accounts of Goichberg, Hough and/or Berry and, without permission or privilege, viewed, copied and distributed the Email.

///

///

3

COMPLAINT

## FIRST CAUSE OF ACTION

### Computer Fraud Under the Comprehensive Computer Data and Access Act, California Penal Code Section 502(c)&(e)

10.   USCF repeats, realleges and incorporates each and every allegation set forth in paragraphs 1 through 9 of this Complaint.

11.   Defendants knowingly accessed and without permission used the computer, computer systems, computer networks or data of USCF with the intent of executing a scheme or artifice to defraud, deceive, or extort, or to wrongfully control or obtain money, property or data of USCF. For the purpose of California Penal Code Section 502(c)&(e), USCF was and is an owner of email data wrongfully viewed, copied and distributed in this action.

12.   Defendants knowingly accessed and without permission took or copied or made use of the information from USCF's computer, computer systems, computer networks or data.

13.   Defendants knowingly and without permission accessed, caused to be accessed, or provided or assisted in providing a means of accessing, USCF's computer, computer system, computer network or data in violation of California Penal Code §502(c)&(e).

14.   As a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, USCF has suffered, and will continue to suffer, damages and irreparable harm.

15.   USCF has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

16.   USCF repeats, realleges and incorporates each and every allegation set forth in paragraphs 1 through 9 of this Complaint.

17.   The email servers of USCF's Executive Board members are used in

1  interstate commerce and/or interstate communication and constitutes a protected

2  computer under 18 U.S.C. § 1030.

3      18.   Defendants have intentionally accessed USCF's protected computers

4  without authorization, or in excess of the scope of authorized access, and by doing so

5  and through interstate communication, have improperly obtained information.

6      19.   Defendants have knowingly, and with the intent to defraud, accessed

7  USCF's protected computers without authorization, or in excess of authorized access,

8  and by means of such conduct have furthered their intended fraud and obtained

9  confidential information of USCF.

10     20.   Defendants have intentionally accessed USCF's protected computers

11  without authorization and by doing so have caused a loss to USCF aggregating at least

12  $5,000 in value.

13     21.   As a direct and proximate result of the actions, conduct, and practices of

14  Defendants' alleged above, USCF has suffered, and will continue to suffer, damages and

15  irreparable harm.

16                          **THIRD CAUSE OF ACTION**

17                              **Conversion**

18     22.   USCF repeats, realleges and incorporates herein the allegations set forth in

19  paragraphs 1 through 9 of this Complaint.

20     23.   USCF and its Executive Board take and have taken reasonable steps to

21  maintain the confidentiality of its email communications.

22     24.   On or about June 22 or June 23, 2008, Defendants, through unlawful

23  means, gained dominion and control over confidential Email belonging to USCF and/or

24  its Executive Board. Defendants had no authorization or privilege to gain such dominion

25  and control over the Email.

26     25.   As a consequence, USCF has suffered and will continue to suffer

27  damages.

28

COMPLAINT

## FOURTH CAUSE OF ACTION

### Violation of California Constitutional Right to Privacy

26. USCF repeats, realleges and incorporates herein the allegations set forth in paragraphs 1 through 9 of this Complaint.

27. USCF and its Executive Board had and continue to have privacy rights in their email communications, pursuant to Article One, Section One of the California Constitution.

28. On or about June 22 or June 23, 2008, Defendants, through unlawful means, violated the California constitutional privacy rights of USCF in its email communications, by Defendants' unauthorized access, copying and distribution of USCF's confidential email communications. Defendants had no authorization or privilege to gain access, copy or distribute the USCF email.

29. As a consequence, USCF has suffered and will continue to suffer damages.

### PRAYER FOR RELIEF

WHEREFORE, USCF prays that this Court enter judgment in its favor on each and every cause of action set forth above and award it relief including, but not limited to, the following:

1. An injunction permanently restraining the Defendants from unlawfully accessing the email accounts of USCF and its employees, officers and directors;

2. An award of compensatory damages in an amount to be determined at trial;

3. An award of punitive damages, in an amount to be determined at trial, to serve as a punishment and deterrent in light of Defendants' substantial wrongful acts;

4. An award of pre- and post-judgment interest on all compensatory damages;

5. An award of reasonable costs and attorneys' fees incurred by UCSF in connection with litigation concerning Defendant's wrongful acts as alleged herein;

COMPLAINT

6

and

6.      Such other further relief to which USCF may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

## DEMAND FOR JURY TRIAL

USCF hereby demands a trial by jury of all issues so triable in this action.

Respectfully Submitted,

DATED: June 25, 2007.                    KRONENBERGER BURGOYNE, LLP

By:
    Karl S. Kronenberger
    Attorneys for Plaintiff
    UNITED STATES OF AMERICA
    CHESS FEDERATION

7

COMPLAINT

## AFFIDAVIT OF SERVICE

Kayo Kimura, being duly sworn, deposes and says that she is not a party to this action, is over 18 years of age and that on the 8th day of September 2008 she mailed the within answer and counterclaim to the other parties at the following addresses:

James L. Killion
2521 74th Street
P.O. Box 64670
Lubbock, Texas 79464

William P. Huttenbach
HIRSCH & WESTHEIMER, P.C.
Bank of America Center
700 Louisiana, 25th Floor
Houston, Texas 77002-2772

Bill LaFont and Brent Hamilton
LaFont, Tunnell, Formby, LaFont & Hamilton, L.L.P.
P.O. Box 1510
Plainview, Texas 79073-1510

Bill Goichberg and Continental Chess Incorporated
2094 Route 94
Salisbury Mills, New York 12577

Jim Berry
5614 W. Creekside Drive
Stillwater, Oklahoma 74074

Randy Bauer
3923 - 153rd Street
Urbandale, Iowa 50323

Randall Hough
1826 Garvey Avenue, Unit 5
Alhambra, California 91803

Bill Hall
1190 Fred Ford Road
Crossville, Tennessee 38571-0240

Brian Mottershead
118 Nowell Farme Road
Carlisle, MA 01741

Brian Lafferty
111 Cotton Place
Long Meadow, Mass. 01106

Hal Bogner and Chess Magnet, L.L.C.
468 Metzgar Street
Half Moon Bay, California 94019-2020

Jerome Hanken
2012 Yosemite #1
Los Angeles, California 90041

Kayo Kimura
Kayo Kimura

Sworn to before me this 8th
Day of September 2008

SAMUEL H. SLOAN
Notary Public State of New York
No. 01SL5068413
Qualified in Queens County
Commission Expires June 29, 2007



# EXHIBIT B

*ATTORNEY TO BE NOTICED*

**Brent B Hamilton**
(See above for address)
*TERMINATED: 02/02/2009*

**Christopher Bradley Slayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William P Huttenbach**
(See above for address)
*TERMINATED: 02/02/2009*

**William Harold LaFont**
(See above for address)
*TERMINATED: 02/02/2009*

V.

**ThirdParty Defendant**

**Hoainhan "Paul" Truong**                represented by    **Samantha Peabody Estrello**
*TERMINATED: 06/09/2009*                                   (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/20/2008 | 1 | NOTICE OF REMOVAL WITH JURY DEMAND from 72nd District Court of Lubbock County, Texas, case number 2008-544,292 filed by Karl S Kronenberger. (Filing fee $ 350.00; receipt number LU002394) (Attachments: # 1 pages 54-89, # 2 pages 90-137) (cb) (Entered: 08/20/2008) |
| 08/20/2008 | 2 | ORDER Designating Case for ECF - see order for specifics. (Signed by Judge Sam R Cummings on 9/1/2006) (cb) (Entered: 08/20/2008) |
| 08/29/2008 | 3 | Unopposed Motion for Extension of Time to File Answer filed by United States of America Chess Federation Inc with Brief/Memorandum in Support. (Attachments: # 1 Memorandum in Support, # 2 Proposed Order) (Huttenbach, William) (Entered: 08/29/2008) |
| 08/29/2008 | 4 | Corporate Disclosure *Statement* filed by United States of America Chess Federation Inc (Huttenbach, William) Modified Text and Event on 8/29/2008 (ebc). (Entered: 08/29/2008) |
| 09/02/2008 | 5 | ORDER granting 3 Unopposed Motion for Extension of Time to File Answer. The deadline for Defendants to file an answer is extended to September 19, 2008. (Signed by Judge Sam R Cummings on 9/2/08) (ebc) (Entered: 09/02/2008) |
| 09/04/2008 | 6 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Susan Polgar. (Killion, James) (Entered: 09/04/2008) |

| 09/09/2008 | 7 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by United States of America Chess Federation Inc. (Huttenbach, William) (Entered: 09/09/2008) |
|---|---|---|
| 09/10/2008 | 8 | ANSWER to Complaint filed by Sam Sloan, AND COUNTERCLAIM against Hoainhan "Paul" Truong, Susan Polgar filed by Sam Sloan (Attachments: # 1 Pages 23-43) (ebc) (Entered: 09/10/2008) |
| 09/18/2008 | 9 | Unopposed Motion for Extension of Time to File Answer filed by United States of America Chess Federation Inc with Brief/Memorandum in Support. (Attachments: # 1 Supplement Memoandum in support of motion to extend time, # 2 Text of Proposed Order proposed order) (Huttenbach, William) (Entered: 09/18/2008) |
| 09/19/2008 | 10 | ORDER granting 9 Motion for Extension of Time to File Answer. United States of America Chess Federation, Inc answer due 9/26/2008; Karl S. Kronenberger answer due 9/26/2008; Kronenberger Burgoyne, LLP due 9/26/2008; Randall Hough answer due 9/26/2008; Bill Hall answer due 9/26/2008; Jerome Hanken answer due 9/26/2008; Bill Goichberg answer due 9/26/2008; Jim Berry answer due 9/26/2008; Randy Bauer answer due 9/26/2008. (Signed by Judge Sam R Cummings on 9/19/08) Copy of Order mailed to Sam Sloan and atty William LaFont (ebc) Modified Text on 9/19/2008 (ebc). (Entered: 09/19/2008) |
| 09/19/2008 | | Answer due from Karl S Kronenberger on 9/26/2008; Kronenberger Burgoyne, LLP on 9/26/2008; United States of America Chess Federation Inc on 9/26/2008 per Order of 9/19/08. (ebc) (Entered: 09/19/2008) |
| 09/26/2008 | 11 | MOTION to Dismiss *for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by United States of America Chess Federation Inc with Brief/Memorandum in Support. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 12 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Continental Chess Incorporated. (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 13 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Bill Goichberg with Brief/Memorandum in Support. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 14 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Jim Berry with Brief/Memorandum in Support. (Attachments: # 1 Memo in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 15 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement* |

| | | |
|---|---|---|
| | | *Pursuant to Fed. R. Civ. P. 12(e)* filed by Randy Bauer with Brief/Memorandum in Support. (Attachments: # 1 Memo in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 16 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Randall Hough with Brief/Memorandum in Support. (Attachments: # 1 Memo in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 17 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Bill Hall with Brief/Memorandum in Support. (Attachments: # 1 Memo in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 18 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Continental Chess Incorporated with Brief/Memorandum in Support. (Attachments: # 1 Memo in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 19 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Jerome Hanken with Brief/Memorandum in Support. (Attachments: # 1 Memo in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 20 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Karl S Kronenberger with Brief/Memorandum in Support. (Attachments: # 1 Memo in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/26/2008 | 21 | MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Kronenberger Burgoyne, LLP with Brief/Memorandum in Support. (Attachments: # 1 Memo in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 09/26/2008) |
| 09/30/2008 | 22 | MOTION to Dismiss for Failure to State a Claim *Under FRCP 12(b)(6), or in the Alternative*, MOTION for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) re 8 Counterclaim filed by Susan Polgar with Brief/Memorandum in Support. (Attachments: # 1 Brief in Support) (Estrello, Samantha) Modified Text and Docket Entry Relationship on 9/30/2008 (ebc). (Entered: 09/30/2008) |
| 10/06/2008 | 23 | First MOTION for Summary Judgment filed by Sam Sloan (Sloan, Sam) (Entered: 10/06/2008) |
| 10/16/2008 | 24 | RESPONSE filed by Susan Polgar re 15 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in* |

| | | |
|---|---|---|
| | | *Support Thereof* (Estrello, Samantha) *Modified Text on 10/16/2008 (ebc).* (Entered: 10/16/2008) |
| 10/16/2008 | 25 | RESPONSE filed by Susan Polgar re 14 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/16/2008 | 26 | RESPONSE filed by Susan Polgar re 18 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/16/2008 | 27 | RESPONSE filed by Susan Polgar re 13 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/16/2008 | 28 | RESPONSE filed by Susan Polgar re 17 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/16/2008 | 29 | RESPONSE filed by Susan Polgar re 19 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/16/2008 | 30 | RESPONSE filed by Susan Polgar re 16 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/16/2008 | 31 | RESPONSE filed by Susan Polgar re 21 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)and Brief in Support Thereof (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/16/2008 | 32 | RESPONSE filed by Susan Polgar re 21 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Linkage and Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/16/2008 | 33 | RESPONSE filed by Susan Polgar re 11 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for* |

| | | |
|---|---|---|
| | | *a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof* (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008) |
| 10/16/2008 | 34 | RESPONSE filed by Susan Polgar re 20 MOTION to Dismiss *for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Text on 10/16/2008 (ebc). (Entered: 10/16/2008)* |
| 10/27/2008 | 35 | CERTIFICATE OF SERVICE by Susan Polgar *Plaintiff's First Set of Requests for Production to Defendants* (Estrello, Samantha) (Entered: 10/27/2008) |
| 10/27/2008 | 36 | CERTIFICATE OF SERVICE by Susan Polgar *Plaintiff's First Set of Requests for Production to Defendant Sloan* (Estrello, Samantha) (Entered: 10/27/2008) |
| 10/27/2008 | 37 | Supplemental Affidavit in Support re: 23 Motion for Summary Judgment filed by Sam Sloan (Sloan, Sam) Modified Text and Docket Entry Relationship on 10/27/2008 (ebc). (Entered: 10/27/2008) |
| 10/30/2008 | 38 | WAIVER OF SERVICE Returned Executed as to Hal Bogner. Waiver sent on 9/24/2008. (Estrello, Samantha) (Entered: 10/30/2008) |
| 10/30/2008 | 39 | WAIVER OF SERVICE Returned Executed as to Chess Magnet LLC. Waiver sent on 9/24/2008. (Estrello, Samantha) (Entered: 10/30/2008) |
| 10/30/2008 | 40 | WAIVER OF SERVICE Returned Executed as to Brian Laferty. Waiver sent on 9/24/2008. (Estrello, Samantha) (Entered: 10/30/2008) |
| 10/30/2008 | 41 | ***UNFILED PER ORDER OF 10/31/08*** WAIVER OF SERVICE Returned Executed as to Brian Mottershead. Waiver sent on 9/24/2008. (Estrello, Samantha) Modified Text on 10/31/2008 (ebc). (Entered: 10/30/2008) |
| 10/30/2008 | 42 | *Defendant Continental Chess Incorporated's* REPLY to *Plaintiff's Response* re: 18 MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) MOTION to Dismiss for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Continental Chess Incorporated (Attachments: # 1 Exhibit Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 43 | *Defendant Randall Hough's* REPLY to *Plaintiff's Response* re: 16 MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) MOTION to Dismiss for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Randall Hough (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 44 | *Defendant Jim Berry's* REPLY to *Plaintiff's Response* re: 14 MOTION to |

| | | |
|---|---|---|
| | | Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Jim Berry (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 45 | *Defendant Bill Goichberg's* REPLY *to Plaintiff's Response* re: 13 MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Bill Goichberg (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 46 | *Defendant Bill Hall's* REPLY *to Plaintiff's Response* re: 17 MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Bill Hall (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 47 | *Defendant Jerome Hanken's* REPLY *to Plaintiff's Response* re: 19 MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Jerome Hanken (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 48 | *Defendant Randy Bauer's* REPLY *to Plaintiff's Response* re: 15 MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Randy Bauer (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 49 | *Defendant Kronenberger Burgoyne, LLP's* REPLY *to Plaintiff's Response* re: 21 MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Kronenberger Burgoyne, LLP (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 50 | *Defendant United States of America Chess Federation Inc.'s* REPLY *to Plaintiff's Response* re: 11 MOTION to Dismiss *for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* MOTION to |

| | | |
|---|---|---|
| | | Dismiss *for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by United States of America Chess Federation Inc (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/30/2008 | 51 | *Defendant Karl S. Kronenberger's* REPLY *to Plaintiff's Response* re: 20 MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* MOTION to Dismiss *for Plaintiffs Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Karl S Kronenberger (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 10/30/2008) |
| 10/31/2008 | 52 | Order Unfiling 41 Waiver of Service Executed due to the following deficiency: There is no date provided as to when the request for Waiver of Service of Summons was sent. (Ordered by Judge Sam R Cummings on 10/31/08) (ebc) (Entered: 10/31/2008) |
| 11/19/2008 | 53 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Brian Laferty with Brief/Memorandum in Support. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 11/19/2008) |
| 11/21/2008 | 54 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Brian Mottershead with Brief/Memorandum in Support. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 11/21/2008) |
| 11/21/2008 | 55 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civl P. 12(e)* filed by Hal Bogner with Brief/Memorandum in Support. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 11/21/2008) |
| 11/21/2008 | 56 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Chess Magnet LLC with Brief/Memorandum in Support. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 11/21/2008) |
| 11/24/2008 | 57 | *Corporate Disclosure Statement* filed by Chess Magnet LLC (Huttenbach, |

| | | William) Modified Event and Text on 11/24/2008 (ebc). (Entered: 11/24/2008) |
|---|---|---|
| 11/24/2008 | 58 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Chess Magnet LLC. (Huttenbach, William) (Entered: 11/24/2008) |
| 11/25/2008 | 59 | RESPONSE filed by Susan Polgar re 23 First MOTION for Summary Judgment (Estrello, Samantha) (Entered: 11/25/2008) |
| 11/25/2008 | 60 | Brief/Memorandum in Support filed by Susan Polgar re 59 Response to Motion *for Summary Judgment* (Estrello, Samantha) (Entered: 11/25/2008) |
| 12/09/2008 | 61 | RESPONSE in Opposition filed by Susan Polgar re 53 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof* (Attachments: # 1 Appendix) (Estrello, Samantha) Modified Text on 12/9/2008 (ebc). (Entered: 12/09/2008) |
| 12/11/2008 | 62 | RESPONSE in Opposition filed by Susan Polgar re 55 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Attachments: # 1 Appendix) (Estrello, Samantha) Modified Text on 12/11/2008 (ebc). (Entered: 12/11/2008)* |
| 12/11/2008 | 63 | RESPONSE in Opposition filed by Susan Polgar re 56 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) ( and Brief in Support Thereof (Attachments: # 1 Appendix) (Estrello, Samantha) Modified Text on 12/11/2008 (ebc). (Entered: 12/11/2008)* |
| 12/11/2008 | 64 | RESPONSE in Opposition filed by Susan Polgar re 54 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) and Brief in Support Thereof (Estrello, Samantha) Modified Text on 12/12/2008 (ebc). (Entered: 12/11/2008)* |
| 12/22/2008 | 65 | INITIAL SCHEDULING ORDER: Joinder of Parties due by 3:00 p.m. on 3/16/2009. Amended Pleadings due by 3:00 p.m. on 3/16/2009. Discovery due by 3:00 p.m. on 6/15/2009. Motions due by 3:00 p.m. on 10/15/2009. Experts to be disclosed by 3:00 p.m. on 6/15/2009. See order for further specifics. (Ordered by Judge Sam R Cummings on 12/22/2008) (cb) (Entered: 12/22/2008) |
| 12/24/2008 | 66 | REPLY *to Plaintiff's Response* re: 53 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the* |

| | | |
|---|---|---|
| | | *Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) filed by Brian Laferty (Attachments: # 1 Exhibit A) (Huttenbach, William) Modified Text on 12/24/2008 (ebc). (Entered: 12/24/2008)* |
| 12/24/2008 | 67 | REPLY *to Plaintiff's Response* re: 54 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) filed by Brian Mottershead (Attachments: # 1 Exhibit A) (Huttenbach, William) Modified Text on 12/24/2008 (ebc). (Entered: 12/24/2008)* |
| 12/24/2008 | 68 | REPLY *to Plaintiff's Response* re: 55 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion f MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) filed by Hal Bogner (Attachments: # 1 Exhibit A) (Huttenbach, William) Modified Text on 12/24/2008 (ebc). (Entered: 12/24/2008)* |
| 12/24/2008 | 69 | REPLY *to Plaintiff's Response* re: 56 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion f MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) filed by Chess Magnet LLC (Attachments: # 1 Exhibit A) (Huttenbach, William) Modified Text on 12/24/2008 (ebc). (Entered: 12/24/2008)* |
| 12/24/2008 | 70 | MOTION to Strike *Plaintiff's Improper Evidence* filed by Brian Laferty with Brief/Memorandum in Support. (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 12/24/2008) |
| 12/24/2008 | 71 | MOTION to Strike *Plaintiff's Improper Evidence* filed by Hal Bogner with Brief/Memorandum in Support. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 12/24/2008) |
| 12/24/2008 | 72 | MOTION to Strike *Plaintiff's Improper Evidence* filed by Chess Magnet LLC with Brief/Memorandum in Support. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order) (Huttenbach, William) (Entered: 12/24/2008) |
| 01/30/2009 | 73 | Unopposed MOTION to Substitute Attorney. Added attorney Jeffrey B Jones for United States of America Chess Federation, Inc., Randall Hough, Bill Hall, Bill Goichberg, Jim Berry and Randy Bauer. Motion Filed filed by United States of America Chess Federation, Inc., Randall Hough, Bill Hall, Bill |

| | | |
|---|---|---|
| | | Goichberg, Jim Berry, Randy Bauer (Huttenbach, William) Modified Text and Filer on 1/30/2009 (ebc). (Entered: 01/30/2009) |
| 01/30/2009 | <u>74</u> | Unopposed Amended MOTION to Substitute Attorney. Added attorney Jeffrey B Jones for Randall Hough, Bill Hall, United States of America Chess Federation Inc, Bill Goichberg, Jim Berry and Randy Bauer. Motion Filed filed by Randall Hough, Bill Hall, United States of America Chess Federation Inc, Bill Goichberg, Jim Berry, Randy Bauer (Huttenbach, William) Modified Text on 1/30/2009 (ebc). (Entered: 01/30/2009) |
| 02/02/2009 | <u>75</u> | ORDER granting <u>73</u> Motion to Substitute Counsel. IT IS THEREFORE ORDERED that Jeffrey B. Jones of the law firm Jones, Flygare, Brown & Wharton, P.C., P. O. Box 2426, Lubbock, Texas 79408, be substituted as counsel of record for Defendants: United States of America Chess Federation, Inc.; Bill Goichberg; JimBerry; Randy Bauer; Randall Hough; and Bill Hall, Individually and in his Representative Capacity as Executive Director of the United States of America Chess Federation. (Ordered by Judge Sam R Cummings on 2/2/09) (ebc) (Entered: 02/02/2009) |
| 02/02/2009 | <u>76</u> | ORDER granting <u>74</u> Amended Motion to Substitute Attorney. IT IS THEREFORE ORDERED that JEFFREY B. JONES of the law firm JONES, FLYGARE, BROWN & WHARTON, P.C., P.O. Box 2426, Lubbock, Texas 79408, be substituted as counsel of record for Defendants: United States of America Chess Federation, Inc.; Bill Goichberg,individually and in his representative capacity as a member of the Executive Board of the United States of America Chess Federation; Jim Berry, individually and in his representative capacity as a member of the Executive Board of the United States of America Chess Federation; Randy Bauer, individually and in his representative capacity as a member of the Executive Board of the United States of America Chess Federation; Randall Hough, individually and in his representative capacity as a member of the Executive Board of the United States of America Chess Federation; and Bill Hall, Individually and in his Representative Capacity as Executive Director of the United States of America Chess Federation. (Ordered by Judge Sam R Cummings on 2/2/09) (ebc) (Entered: 02/02/2009) |
| 02/19/2009 | <u>77</u> | ORDER: Plaintiff's causes of action for negligence, negligence per se, negligent infliction of emotional distress, and intentional infliction of emotional distress are DISMISSED as against all Defendants; Plaintiff shall file an amended pleading in conformity with this Order and setting forth the bases for jurisdiction and venue over Defendants Lafferty, Mottershead, Bogner, and Chess Magnet, LLC on or before 3:00 p.m. March 16, 2009; granting in part <u>11</u> Motion to Dismiss; granting in part <u>13</u> Motion to Dismiss; granting in part <u>14</u> Motion to Dismiss; granting in part <u>15</u> Motion to Dismiss; granting in part <u>16</u> Motion to Dismiss; granting in part <u>17</u> Motion to Dismiss; granting in part <u>18</u> Motion to Dismiss; granting in part <u>19</u> Motion to Dismiss; granting in part <u>20</u> Motion to Dismiss; granting in part <u>21</u> Motion to Dismiss; denying <u>22</u> Motion to Dismiss; granting <u>22</u> Motion for More Definite Statement; denying <u>23</u> Motion for Summary Judgment; granting in part <u>53</u> Motion to Dismiss; granting in part and denying in part <u>54</u> Motion to Dismiss; granting in part <u>55</u> Motion to Dismiss; granting in part <u>56</u> Motion to Dismiss; |

|  |  | denying 70 Motion to Strike ; denying 71 Motion to Strike ; denying 72 Motion to Strike. Counter-Plaintiff Sloan SHALL FILE an amended counterclaim on or before 3:00 p.m. on March 16, 2009, conforming to Federal Rule of Civil Procedure 8(a)'s requirement of a "short and plain" statement of the claim showing that Counter-Plaintiff Sloan is entitled to relief. Plaintiff's request for temporary injunction remains pending until the issue of personal jurisdiction is resolved as to Defendants Lafferty, Mottershead, Bogner, and Chess Magnet, LLC. A failure by Plaintiff or Counter-Plaintiff to file said amended pleadings by the deadline set forth herein may result in the imposition of sanctions, including the striking of all or portions of their current pleadings. All relief not granted herein is denied. See Order for further specifics. (Ordered by Judge Sam R Cummings on 2/19/09) (ebc) (Entered: 02/19/2009) |
|---|---|---|
| 03/02/2009 | 78 | ANSWER to Complaint filed by United States of America Chess Federation Inc (Slayton, Christopher) (Entered: 03/02/2009) |
| 03/02/2009 | 79 | ANSWER to Complaint filed by Bill Goichberg (Slayton, Christopher) (Entered: 03/02/2009) |
| 03/02/2009 | 80 | ANSWER to Complaint filed by Jim Berry (Slayton, Christopher) (Entered: 03/02/2009) |
| 03/02/2009 | 81 | ANSWER to Complaint filed by Randy Bauer (Slayton, Christopher) (Entered: 03/02/2009) |
| 03/02/2009 | 82 | ANSWER to Complaint filed by Randall Hough (Slayton, Christopher) (Entered: 03/02/2009) |
| 03/02/2009 | 83 | ANSWER to Complaint filed by Bill Hall (Slayton, Christopher) (Entered: 03/02/2009) |
| 03/05/2009 | 84 | ANSWER to Complaint with Jury Demand filed by Jerome Hanken (Huttenbach, William) (Entered: 03/05/2009) |
| 03/05/2009 | 85 | ANSWER to Complaint with Jury Demand filed by Continental Chess Incorporated (Huttenbach, William) (Entered: 03/05/2009) |
| 03/05/2009 | 86 | ANSWER to Complaint with Jury Demand filed by Karl S Kronenberger (Huttenbach, William) (Entered: 03/05/2009) |
| 03/05/2009 | 87 | ANSWER to Complaint with Jury Demand filed by Kronenberger Burgoyne, LLP (Huttenbach, William) (Entered: 03/05/2009) |
| 03/05/2009 | 88 | THIRD PARTY COMPLAINT against Hoainhan "Paul" Truong filed by United States of America Chess Federation Inc. Third-party summons(es) not requested at this time. (Attachments: # 1 Exhibit A) (Huttenbach, William) (Entered: 03/05/2009) |
| 03/12/2009 | 89 | MOTION to Quash Subpoena filed by Susan Polgar with Brief/Memorandum in Support. (Attachments: # 1 Exhibit Exhibits A and B, # 2 Exhibit Exhibits C, D, and E) (Estrello, Samantha) (Entered: 03/12/2009) |
| 03/13/2009 | 90 | ORDER: Set Deadline as to 89 Motion to Quash Subpoena. (Responses due |

| | | by 3/20/2009 at 9:00 a.m.) No reply will be considered. (Ordered by Judge Sam R Cummings on 3/13/09) (ebc) (Entered: 03/13/2009) |
|---|---|---|
| 03/16/2009 | 91 | AMENDED COMPLAINT WITH JURY DEMAND against Randall Hough, Bill Hall, Brian Mottershead, Hal Bogner, Chess Magnet LLC, Continental Chess Incorporated, Jerome Hanken, Brian Laferty, Sam Sloan, Karl S Kronenberger, Kronenberger Burgoyne, LLP, United States of America Chess Federation Inc, Bill Goichberg, Jim Berry, Randy Bauer filed by Susan Polgar. (Estrello, Samantha) (Entered: 03/16/2009) |
| 03/17/2009 | 92 | *Letter regarding Answer to Complaint*/ANSWER to Amended Complaint filed by Sam Sloan (Sloan, Sam) Modified Text on 3/18/2009 (ebc). (Entered: 03/17/2009) |
| 03/19/2009 | 93 | MOTION for Extension of Time to File Response/Reply re: 89 MOTION to Quash *Subpoena* filed by Continental Chess Incorporated (Huttenbach, William) Modified Text and Relationship on 3/19/2009 (ebc). (Entered: 03/19/2009) |
| 03/19/2009 | 94 | Supplemental Document by Continental Chess Incorporated as to 93 MOTION for Extension of Time to File Response/Reply re: 89 MOTION to Quash *Subpoena*, (Huttenbach, William) Modified Text on 3/19/2009 (ebc). (Entered: 03/19/2009) |
| 03/19/2009 | 95 | ORDER granting 93 Motion to Extend Time to File Response to Plaintiff's Motion to Quash Subpoena. Responses due by 9:00 a.m. on 3/25/2009. (Ordered by Judge Sam R Cummings on 03/19/09) (bdg) (Entered: 03/19/2009) |
| 03/24/2009 | 96 | RESPONSE in Opposition filed by Continental Chess Incorporated re 89 MOTION to Quash *Subpoena*, 95 Order on Motion to Extend Time to File Response/Reply (Attachments: # 1 Appendix, # 2 Appendix Exhibits A-C, # 3 Appendix Exhibits D-E, # 4 Appendix Exhibits F-H, # 5 Appendix Exhibit I (Part 1 of 2), # 6 Appendix Exhibit I (Part 2 of 2), # 7 Appendix Exhibits J-N) (Huttenbach, William) (Entered: 03/24/2009) |
| 03/26/2009 | 97 | WAIVER OF SERVICE Returned Executed as to Hoainhan "Paul" Truong. Waiver sent on 3/6/2009. (Huttenbach, William) Modified Text on 3/26/2009 (ebc). (Entered: 03/26/2009) |
| 03/30/2009 | 98 | *First Amended* ANSWER to 91 Amended Complaint, filed by United States of America Chess Federation Inc (Slayton, Christopher) (Entered: 03/30/2009) |
| 03/30/2009 | 99 | *First Amended* ANSWER to 91 Amended Complaint, filed by Randy Bauer (Slayton, Christopher) (Entered: 03/30/2009) |
| 03/30/2009 | 100 | *First Amended* ANSWER to 91 Amended Complaint, filed by Jim Berry (Slayton, Christopher) (Entered: 03/30/2009) |
| 03/30/2009 | 101 | *First Amended* ANSWER to 91 Amended Complaint, filed by Bill Goichberg (Slayton, Christopher) (Entered: 03/30/2009) |
| 03/30/2009 | 102 | *First Amended* ANSWER to 91 Amended Complaint, filed by Bill Hall (Slayton, Christopher) (Entered: 03/30/2009) |

| 03/30/2009 | 103 | *First Amended* ANSWER to 91 Amended Complaint, filed by Randall Hough (Slayton, Christopher) (Entered: 03/30/2009) |
|---|---|---|
| 03/30/2009 | 104 | Supplement to 53 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Brian Lafferty with Brief/Memorandum in Support. (Huttenbach, William) Modified Text and Relationship on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | 105 | Supplement to re 54 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Brian Mottershead with Brief/Memorandum in Support. (Huttenbach, William) Modified Text and Relationship on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | 106 | Supplement to 55 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Hal Bogner with Brief/Memorandum in Support. (Huttenbach, William) Modified Text and Relationship on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | 107 | Supplement to 56 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)* filed by Chess Magnet LLC with Brief/Memorandum in Support. (Huttenbach, William) Modified Text and Relationship on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | 108 | Second MOTION to Dismiss *Subject to the Court's Ruling on the Supplement to the Motion to Dismiss, Defendant Brian Lafferty's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2)* filed by Brian Lafferty with Brief/Memorandum in Support. (Huttenbach, William) Modified Text on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | 109 | Second MOTION to Dismiss *Subject to the Court's Ruling on the Supplement to the Motion to Dismiss, Defendant Brian Mottershead's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2)* filed by Brian Mottershead with Brief/Memorandum in Support. (Huttenbach, William) Modified Text on 3/30/2009 (ebc). (Entered: 03/30/2009) |

| | | |
|---|---|---|
| 03/30/2009 | <u>110</u> | Second MOTION to Dismiss *Subject to the Court's Ruling on the Supplement to the Motion to Dismiss, Defendant Hal Bogner's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2)* filed by Hal Bogner with Brief/Memorandum in Support. (Huttenbach, William) Modified Text on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | <u>111</u> | Second MOTION to Dismiss *Subject to the Court's Ruling on the Supplement to the Motion to Dismiss, Defendant Chess Magnet, LLC's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2)* filed by Chess Magnet LLC with Brief/Memorandum in Support. (Huttenbach, William) Modified Text on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | <u>112</u> | Second MOTION to Dismiss *Defendant Karl S. Kronenberger's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2)* filed by Karl S Kronenberger with Brief/Memorandum in Support. (Huttenbach, William) Modified Text on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | <u>113</u> | Second MOTION to Dismiss *Defendant Kronenberger Burgoyne, LLP's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2)* filed by Kronenberger Burgoyne, LLP with Brief/Memorandum in Support. (Huttenbach, William) Modified Text on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | <u>114</u> | Second MOTION to Dismiss *Defendant Continental Chess Incorporated's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2)* filed by Continental Chess Incorporated with Brief/Memorandum in Support. (Huttenbach, William) Modified Text on 3/30/2009 (ebc). (Entered: 03/30/2009) |
| 03/30/2009 | <u>115</u> | Second MOTION to Dismiss *Defendant Jerome Hanken's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2)* filed by Jerome Hanken with Brief/Memorandum in Support. (Huttenbach, William) Modified Text on 3/30/2009 (ebc). (Entered: 03/30/2009) |

| 03/30/2009 | 116 | *First* AMENDED ANSWER to 91 Amended Complaint, with Jury Demand filed by Jerome Hanken (Huttenbach, William) (Entered: 03/30/2009) |
|---|---|---|
| 03/30/2009 | 117 | *FIRST* AMENDED ANSWER to 91 Amended Complaint, with Jury Demand filed by Continental Chess Incorporated (Huttenbach, William) (Entered: 03/30/2009) |
| 03/30/2009 | 118 | *FIRST* AMENDED ANSWER to 91 Amended Complaint, with Jury Demand filed by Karl S Kronenberger (Huttenbach, William) (Entered: 03/30/2009) |
| 03/30/2009 | 119 | *FIRST* AMENDED ANSWER to 91 Amended Complaint, with Jury Demand filed by Kronenberger Burgoyne, LLP (Huttenbach, William) (Entered: 03/30/2009) |
| 03/30/2009 | 120 | MOTION to Consolidate Cases filed by Sam Sloan with Brief/Memorandum in Support. (Sloan, Sam) (Entered: 03/30/2009) |
| 03/31/2009 | 121 | ORDER denying 89 Motion to Quash. See Order for further specifics. (Ordered by Judge Sam R Cummings on 3/31/09) (ebc) (Entered: 03/31/2009) |
| 04/10/2009 | 122 | REPLY *Affidavit* and Exhibit in Support of Motion to Remand and to Transfer to the Northern District of Texas re: 120 MOTION to Consolidate Cases filed by Sam Sloan (Sloan, Sam) Modified Text on 4/13/2009 (ebc). (Entered: 04/10/2009) |
| 04/17/2009 | 123 | RESPONSE in Opposition filed by Susan Polgar to the Supplemental MOTIONS to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) of Defendants Bogener, Chess Magnet, Lafferty and Mottershead and Brief in Support re: 104 , 105 , 106 and 107 Motions. (Attachments: # 1 Exhibit Exhibits A-C, # 2 Exhibit Exhibits D-E) (Estrello, Samantha) Modified text on 4/17/2009 (bdg). (Entered: 04/17/2009) |
| 04/17/2009 | 124 | Joint MOTION for Protective Order filed by Randall Hough, Bill Hall, Continental Chess Incorporated, Jerome Hanken, Karl S Kronenberger, Kronenberger Burgoyne, LLP, United States of America Chess Federation Inc, Bill Goichberg, Jim Berry, Randy Bauer (Slayton, Christopher) (Entered: 04/17/2009) |
| 04/17/2009 | 125 | Brief/Memorandum in Support filed by Randall Hough, Bill Hall, Continental Chess Incorporated, Jerome Hanken, Karl S Kronenberger, Kronenberger Burgoyne, LLP, United States of America Chess Federation Inc, Bill Goichberg, Jim Berry, Randy Bauer re 124 Joint MOTION for Protective Order (Attachments: # 1 Affidavit) (Slayton, Christopher) (Entered: 04/17/2009) |
| 04/18/2009 | 126 | RESPONSE in Opposition filed by Susan Polgar to re 109 , 110 , 111 , 112 , 113 , 114 , and 115 Second MOTION to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12 (b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(a)(2) Filed by Defendants Bogerner, Chess Magnet, Lafferty, |

| | | Continental Chess, Hanken, Kronenberger Burgoyne, Kronenberger, and Mottershead and Brief in Support. (Estrello, Samantha) Modified text on 4/20/2009 (bdg). Modified Text on 4/20/2009 (ebc). (Entered: 04/18/2009) |
|---|---|---|
| 04/29/2009 | 127 | ORDER denying 104 Motion to Dismiss and Supplements; denying 105 Motion to Dismiss and Supplements; denying 106 Motion to Dismiss and Supplements; granting 107 Motion to Dismiss and Supplement. Chess Magnet, LLC's alternative Motion to Dismiss premised on Federal Rule of Civil Procedure 12(b)(3) is denied as moot. See Order for further specifics. (Ordered by Judge Sam R Cummings on 4/29/09) (ebc) (Entered: 04/29/2009) |
| 04/29/2009 | 128 | MOTION for Leave to File Reply Briefs filed by Brian Mottershead, Hal Bogner, Chess Magnet LLC, Continental Chess Incorporated, Jerome Hanken, Brian Lafferty, Karl S Kronenberger, Kronenberger Burgoyne, LLP (Huttenbach, William) (Entered: 04/29/2009) |
| 04/29/2009 | 129 | ***UNFILED PER ORDER OF 4/30/09*** *DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE* re: 108 , 109 , 110 , 111 , 112 , 113 , 114 , 115 Second MOTION to Dismiss Subject to the Court's Ruling on the Supplement to the Motion to Dismiss, Defendant Hal Bogner's Second Motion to Dismiss and Memorandum in Support of Defendant's Second Motion to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2) filed by Brian Mottershead, Hal Bogner, Chess Magnet LLC, Continental Chess Incorporated, Jerome Hanken, Brian Lafferty, Karl S Kronenberger, Kronenberger Burgoyne, LLP (Attachments: # 1 Exhibit A) (Huttenbach, William) Modified Text on 4/30/2009 (ebc). (Entered: 04/29/2009) |
| 04/29/2009 | 130 | ***UNFILED PER ORDER OF 4/30/09*** *DEFENDANT'S* REPLY *to Plaintiff's Response* re: 104 Supplement to 53 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) filed by Brian Lafferty (Huttenbach, William) Modified Text on 4/30/2009 (ebc). (Entered: 04/29/2009) |
| 04/29/2009 | 131 | ***UNFILED PER ORDER OF 4/30/09*** *Defendant Brian Mottershead's* REPLY *to Plaintiff's Response* re: 105 Supplement to re 54 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in th e Alternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) filed by Brian Mottershead (Huttenbach, William) Modified Text on 4/30/2009 (ebc). (Entered: 04/29/2009) |
| 04/29/2009 | 132 | ***UNFILED PER ORDER OF 4/30/09*** *Defendant Hal Bogner's* REPLY *to Plaintiff's Response* re: 106 Supplement to 55 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the A lternative, Motion for a More |

| | | |
|---|---|---|
| | | Definite Statement Pursuant to Fed. R. Civ. P. 12(e) filed by Hal Bogner (Huttenbach, William) Modified Text on 4/30/2009 (ebc). (Entered: 04/29/2009) |
| 04/29/2009 | 133 | ***UNFILED PER ORDER OF 4/30/09*** *Defendant Chess Magnet, LLC's* REPLY *to Plaintiff's Response* re: 107 Supplement to 56 MOTION to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and Subject to the Court's Ruling on the Same, Motion to Dismiss for Plaintiff's Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), or in the A lternative, Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) filed by Chess Magnet LLC (Huttenbach, William) Modified Text on 4/30/2009 (ebc). (Entered: 04/29/2009) |
| 04/30/2009 | 134 | ORDER denying 128 Motion for Leave to File Reply Briefs. The replies filed as Documents 129, 130, 131, 132, and 133 are UNFILED. (Ordered by Judge Sam R Cummings on 4/30/09) (ebc) (Entered: 04/30/2009) |
| 04/30/2009 | 135 | ORDER denying 108 , 109 , 110 , 112 , 113 , 114 , and 115 Second MOTION n to Dismiss for Plaintiff's Failure to State a Claim in Plaintiff's First Amended Complaint Under Fed. R. Civ. P. 12(b)(6), and Failure to Seek Leave to Amend Plaintiff's Pleading Under Fed. R. Civ. P. 15(A)(2). (Ordered by Judge Sam R Cummings on 4/30/09) (ebc) (Entered: 04/30/2009) |
| 05/05/2009 | 136 | MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, Motion to Strike Under FRCP 14(a)(4)* filed by Hoainhan "Paul" Truong with Brief/Memorandum in Support. (Attachments: # 1 Exhibit A - part 1, # 2 Exhibit A - part 2) (Estrello, Samantha) (Entered: 05/05/2009) |
| 05/07/2009 | 137 | RESPONSE in Opposition filed by Susan Polgar re 124 Joint MOTION for Protective Order (Attachments: # 1 Exhibit A, # 2 Exhibit B and C) (Estrello, Samantha) (Entered: 05/07/2009) |
| 05/12/2009 | 138 | ORDER denying in part and granting in part 124 Joint Motion for Protective Order. The Court specifically GRANTS the Defendants' alternative request for an extension of time of 45 days from April 17, 2009, the original due date for Defendants' responses. Thus, Defendants' responses to Plaintiff's March 3, 2009 discovery requests are due on or before June 1, 2009, to the extent not modified below. Furthermore, Defendants SHALL, on or before June 1, 2009, "produce a privilege log of privileged communications." Finally, as to the objections and Motion for Protective Order relating to Defendants' argument of "federal investigation," the Court has insufficient evidence to make a ruling on those specific objections at this time. Thus, Defendant are ORDERED to provide the Court, on or before June 1, 2009, with documentation and any additional evidence relating to Defendants' objections on the grounds of a federal investigation for an in camera review so that the Court may make an informed ruling. See Order for further specifics. (Ordered by Judge Sam R Cummings on 5/12/09) (ebc) (Entered: 05/12/2009) |
| 05/13/2009 | 139 | *Hal Bogner's* ANSWER to 91 Amended Complaint, with Jury Demand filed by Hal Bogner (Huttenbach, William) (Entered: 05/13/2009) |
| 05/13/2009 | 140 | *Brian Lafferty's* ANSWER to 91 Amended Complaint, with Jury Demand filed by Brian Lafferty (Huttenbach, William) (Entered: 05/13/2009) |

| 05/13/2009 | 141 | *Brian Mottershead's* ANSWER to 91 Amended Complaint, with Jury Demand filed by Brian Mottershead (Huttenbach, William) (Entered: 05/13/2009) |
|---|---|---|
| 05/20/2009 | 142 | ORDER regarding 120 Notice of Motion and Motion to Transfer Pursuant to 28 U.S.C. Section 1404(a). See Order for further specifics. (Ordered by Judge Sam R Cummings on 5/20/09) (ebc) (Entered: 05/20/2009) |
| 05/22/2009 | 143 | RESPONSE filed by United States of America Chess Federation Inc re 136 MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, Motion to Strike Under FRCP 14(a)(4)* MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, Motion to Strike Under FRCP 14(a)(4)* (Attachments: # 1 Appendix) (Huttenbach, William) (Entered: 05/22/2009) |
| 05/29/2009 | 144 | MOTION to Quash *Subpoenas Issued by Continental Chess* filed by Susan Polgar with Brief/Memorandum in Support. (Attachments: # 1 Exhibit A-D, # 2 Exhibit E, # 3 Exhibit F, # 4 Exhibit G, # 5 Exhibit H, # 6 Errata I) (Estrello, Samantha) (Entered: 05/29/2009) |
| 06/01/2009 | 145 | ORDER: Set Deadline as to 144 Motion to Quash and Modify Subpoenas Issued by Defendant Continental Chess, Inc. (Responses due by 6/12/2009 at 9:00 a.m.) (Ordered by Judge Sam R Cummings on 6/1/09) (ebc) (Entered: 06/01/2009) |
| 06/02/2009 | 146 | ORDER: On May 12, 2009, the Court considered Defendants' Joint Motion for Protective Order (Doc. # 124), filed April 17, 2009. The Court further considered Plaintiff's Response in Opposition (Doc. #137), filed May 7, 2009. By Order dated May 12, 2009, the Court required Defendants to produce "documentation and any additional evidence relating to Defendants' objections on the grounds of a federal investigation for an in camera review so that the Court may make an informed ruling." (Order dated May 12, 2009.) In their Motion, the Defendants object that certain discovery requests "seek[] to discover documentation which is the subject of a federal investigation and not able to be produced by the Defendants." (Defs.' Mot. 2-3.) They further elaborate by arguing that "Defendants have been advised by law enforcement agencies conducting a federal investigation of Susan Polgar and PaulTruong not to disseminate information or documentation pertaining to the investigation to third parties." (ld. at 3.) The requests specifically objected to on these grounds are Nos. 56, 57,62,63,64,65,66,67,68,69, and 70.On June 1,2009, Defendants provided certain documents to the Court for an in camera review. After reviewing the documents, the Court is in agreement with the Defendants' arguments on this issue contained in their Motion for Protective Order. Therefore, the Court finds that Defendants need not produce the documents requested by Plaintiff in requests Nos. 56,57,62,63,64,65,66,67,68,69, and 70. (Ordered by Judge Sam R Cummings on 6/2/09) (ebc) (Entered: 06/02/2009) |
| 06/08/2009 | 147 | Unopposed MOTION for Subpoena to Google, Inc. filed by Susan Polgar with Brief/Memorandum in Support. (Attachments: # 1 Exhibit A-B, # 2 Exhibit C) (Estrello, Samantha) (Entered: 06/08/2009) |
| 06/09/2009 | 149 | ORDER granting 136 Motion to Dismiss Under Rule 12(b)(1), or in the Alternative, Rule 14(a)(4) Motion to Strike Third-Party Plaintiff United States |

| | | |
|---|---|---|
| | | of America Chess Federation, Inc.'s Third-Party Complaint. USCF's Third-party claims against Paul Truong are DISMISSED without prejudice. See Order for further specifics. (Ordered by Judge Sam R Cummings on 6/9/09) (ebc) (Entered: 06/09/2009) |
| 06/09/2009 | 150 | ORDER granting 147 Unopposed Motion for Subpoena to Google, Inc. and Brief in Support (Ordered by Judge Sam R Cummings on 6/9/09) (ebc) (Entered: 06/09/2009) |
| 06/11/2009 | 151 | Joint MOTION to Extend Time for Expert Disclosure and All Discovery filed by Susan Polgar, Randall Hough, Bill Hall, Brian Mottershead, Hal Bogner, Continental Chess Incorporated, Jerome Hanken, Brian Lafferty, Karl S Kronenberger, Kronenberger Burgoyne, LLP, United States of America Chess Federation Inc, Bill Goichberg, Jim Berry, Randy Bauer (Estrello, Samantha) (Entered: 06/11/2009) |
| 06/11/2009 | 152 | ORDER granting 151 Joint Motion for Extension of Deadlines. The deadline for the disclosure of experts is extended to September 15, 2009 and the deadline for the completion of all discovery is extended to December 31, 2009. (Ordered by Judge Sam R Cummings on 6/11/09) (ebc) (Entered: 06/11/2009) |
| 06/11/2009 | 153 | RESPONSE filed by Brian Mottershead, Hal Bogner, Continental Chess Incorporated, Jerome Hanken, Brian Lafferty, Karl S Kronenberger, Kronenberger Burgoyne, LLP re 144 MOTION to Quash *Subpoenas Issued by Continental Chess and Alternative Motion to Confirm Such Subpoenas Were Properly Issued and, if Necessary, Alternative Motion to Allow New Subpoenas to be Issued Pursuant to This Court's Order and Brief in Support* (Huttenbach, William) (Entered: 06/11/2009) |
| 06/11/2009 | 154 | MOTION for Partial Summary Judgment filed by Karl S Kronenberger, Kronenberger Burgoyne, LLP (Huttenbach, William) (Entered: 06/11/2009) |
| 06/11/2009 | 155 | Brief/Memorandum in Support filed by Karl S Kronenberger, Kronenberger Burgoyne, LLP re 154 MOTION for Summary Judgment (Attachments: # 1 Appendix, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I) (Huttenbach, William) (Entered: 06/11/2009) |
| 06/16/2009 | 156 | ORDER regarding 144 Motion to Quash and Modify Subpoenas. See Order for further specifics. (Ordered by Judge Sam R Cummings on 6/16/09) (ebc) (Entered: 06/16/2009) |
| 06/18/2009 | 157 | MOTION to Confirm That The Relevant Information Can Be Accessed From The CrystalTech DVD and The Other Portions Of The Information On The DVD Will Be Returned And/or Destroyed and/or Defendants Alternative Motion to Allow Defendants to Access DVD as Specifically Ordered by the Court, in its Discretion, as Requested in this Motion, and, in an Abundance of Caution and in the Alternative, Motion to Allow Defendants to Send a New Subpoena to CrystalTech to Get Said Discoverable Information *and Brief in Support* filed by Brian Mottershead, Hal Bogner, Continental Chess Incorporated, Jerome Hanken, Brian Lafferty, Karl S Kronenberger, Kronenberger Burgoyne, LLP with Brief/Memorandum in Support. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Appendix Exhibits A-C, # 2 Appendix Exhibits D-F) (Huttenbach, William) (Entered: 06/18/2009) |
| 06/18/2009 | 158 | Objection to Statements in Plaintiffs Previously Unopposed Motion for Subpoena to Google, Inc. and Brief in Support and Defendants Motion to Remove Various Documents from the Courts Record and Brief in Support re 147 Unopposed MOTION Subpoena to Google, Inc. filed by Brian Mottershead, Hal Bogner, Continental Chess Incorporated, Jerome Hanken, Brian Lafferty, Karl S Kronenberger, Kronenberger Burgoyne, LLP with Brief/Memorandum in Support. (Attachments: # 1 Appendix Exhibits A-C, # 2 Affidavit Exhibit D) (Huttenbach, William) Modified Text on 6/19/2009 (ebc). Modified on 6/19/2009 (ebc). (Entered: 06/18/2009) |
| 06/22/2009 | 159 | Proof of Service for Subpoena served on Google Inc. c/o Corporation Service Company DBA CSC on 6/16/09. (ebc) (Entered: 06/22/2009) |
| 07/01/2009 | 160 | RESPONSE in Opposition filed by Susan Polgar re 155 Brief/Memorandum in Support of Motion, 154 MOTION for Summary Judgment (Attachments: # 1 Brief in Support, # 2 Appendix Appendix Cover, # 3 Exhibit part 1, # 4 Exhibit part 2, # 5 Exhibit part 3, # 6 Exhibit part 4, # 7 Exhibit part 5, # 8 Exhibit part 6, # 9 Exhibit part 7, # 10 Exhibit part 8, # 11 Exhibit part 9, # 12 Exhibit part 10, # 13 Exhibit part 11) (Estrello, Samantha) (Entered: 07/01/2009) |
| 07/08/2009 | 161 | RESPONSE filed by Susan Polgar re 157 MOTION to Confirm That The Relevant Information Can be Accessed From The CrystalTech DVD and The Other Portions Of The Information On The DVD Will Be Returned And/or Destroyed and/or Defendants Alternative Motion to Allow Defendants to Access DVD as S (Attachments: # 1 Exhibit Exhibits A and B) (Estrello, Samantha) (Entered: 07/08/2009) |
| 07/08/2009 | 162 | RESPONSE filed by Susan Polgar re 158 MOTION Objection to Statements in Plaintiffs Previously Unopposed Motion for Subpoena to Google, Inc. and Brief in Support and Defendants Motion to Remove Various Documents from the Courts Record and Brief in Support re 147 Unopposed MOTION Subpoena MOTION Objection to Statements in Plaintiffs Previously Unopposed Motion for Subpoena to Google, Inc. and Brief in Support and Defendants Motion to Remove Various Documents from the Courts Record and Brief in Support re 147 Unopposed MOTION Subpoena MOTION Objection to Statements in Plaintiffs Previously Unopposed Motion for Subpoena to Google, Inc. and Brief in Support and Defendants Motion to Remove Various Documents from the Courts Record and Brief in Support re 147 Unopposed MOTION Subpoena (Attachments: # 1 Appendix Cover, # 2 Appendix part 1, # 3 Appendix part 2, # 4 Appendix part 3, # 5 Appendix part 4, # 6 Appendix part 5, # 7 Appendix part 6, # 8 Appendix part 7, # 9 Appendix part 8, # 10 Exhibit part 9, # 11 Appendix part 10, # 12 Appendix part 11, # 13 Appendix part 12) (Estrello, Samantha) (Entered: 07/08/2009) |
| 07/14/2009 | 163 | MOTION to Strike Improper Summary Judgment Evidence and/or Objections to Improper Summary Judgment Evidence and Brief in Support of Same re: 160 Response in Opposition, filed by Karl S Kronenberger, Kronenberger Burgoyne, LLP with Brief/Memorandum in Support. (Attachments: # 1 |

| | | Appendix) (Huttenbach, William) Modified Text on 7/14/2009 (ebc). (Entered: 07/14/2009) |
|---|---|---|
| 07/23/2009 | 164 | NOTICE *Request for Court to Take Judicial Notice of Criminal Indictment* filed by Brian Mottershead, Hal Bogner, Continental Chess Incorporated, Jerome Hanken, Brian Lafferty, Karl S Kronenberger, Kronenberger Burgoyne, LLP (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Huttenbach, William) (Entered: 07/23/2009) |
| 07/29/2009 | 165 | RESPONSE in Opposition filed by Susan Polgar re 163 MOTION to Strike Improper Summary Judgment Evidence and/or Objections to Improper Summary Judgment Evidence re: 160 Response in Opposition (Attachments: # 1 Appendix Exhibits A and B) (Estrello, Samantha) Modified Text on 7/30/2009 (ebc). (Entered: 07/29/2009) |
| 07/29/2009 | 166 | *Plaintiff's* OBJECTION to re: 164 Request for Court to Take Judicial Notice of Criminal Indictment filed by Susan Polgar (Attachments: # 1 Appendix) (Estrello, Samantha) Modified Text on 7/30/2009 (ebc) (Entered: 07/29/2009) |
| 07/30/2009 | 167 | ORDER granting in part as to the alternative relief sought re: 157 Motion to Confirm That The Relevant Information Can Be Accessed From The Crystal Tech DVD and The Other Portions Of The Information On The DVD Will Be Returned And/or Destroyed and/or Defendants Alternative Motion to Allow Defendants to Access DVD as Specifically Ordered by the Court, in its Discretion, as Requested in this Motion, and, in an Abundance of Caution and in the Alternative, Motion to Allow Defendants to Send a New Subpoena to Crystal Tech to Get Said Discoverable Information. See Order for further specifics. (Ordered by Judge Sam R Cummings on 7/30/09) (ebc) (Entered: 07/30/2009) |
| 08/10/2009 | 168 | PRETRIAL NOTICE AND ORDER: Jury Trial set for 3/1/2010 09:00 AM in US Courthouse, Courtroom C-216, 1205 Texas Avenue, Lubbock, TX 79401-4091 before Judge Sam R Cummings. See Order for further specifics. (Ordered by Judge Sam R Cummings on 8/10/09) (ebc) (Entered: 08/10/2009) |
| 08/13/2009 | 169 | MOTION for Leave to File *Supplemental Response to Defendants' Motion for Summary Judgment* filed by Susan Polgar with Brief/Memorandum in Support. (Attachments: # 1 Appendix part 1, # 2 Appendix part 2, # 3 Appendix part 3, # 4 Appendix part 4, # 5 Appendix part 5, # 6 Appendix part 6, # 7 Appendix part 7, # 8 Appendix part 8, # 9 Appendix part 9, # 10 Appendix part 10, # 11 Appendix part 11, # 12 Appendix part 12, # 13 Appendix part 13) (Estrello, Samantha) (Entered: 08/13/2009) |
| 08/13/2009 | 170 | MOTION to Deny Defendants' re 154 MOTION for Summary Judgment Under Rule 56(f)(1), or in the Alternative, Rule 41(a)(2) Motion for Voluntary Dismissal of Certain Claims Without Prejudice filed by Susan Polgar with Brief/Memorandum in Support. (Attachments: # 1 Appendix part 1, # 2 Appendix part 2, # 3 Appendix part 3, # 4 Appendix part 4, # 5 Appendix part 5) (Estrello, Samantha) Modified on 8/14/2009 (ebc). (Entered: 08/13/2009) |

## PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 08/14/2009 13:13:44 | | | |
| **PACER Login:** | gl0903 | **Client Code:** | office |
| **Description:** | Docket Report | **Search Criteria:** | 5:08-cv-00169-C |
| **Billable Pages:** | 25 | **Cost:** | 2.00 |

ECF, JURY

# U.S. District Court
## Northern District of Texas (Lubbock)
## CIVIL DOCKET FOR CASE #: 5:08-cv-00169-C

Polgar v. United States of America Chess Federation Inc et al
Assigned to: Judge Sam R Cummings
Cause: 28:1446 Petition for Removal- Personal Injury

Date Filed: 08/20/2008
Jury Demand: Both
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: Diversity

### Plaintiff
**Susan Polgar**

represented by **James L Killion**
Killion Law Firm
2521 74th St
Lubbock , TX 79423
806/748-5500
Fax: 806/748-5505 FAX
Email: jim@killionlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samantha Peabody Estrello**
Killion Law Firm
2521 74th St
Lubbock , TX 79423
806/748-5500
Fax: 806/748-5505
Email: samantha@killionlaw.com
*ATTORNEY TO BE NOTICED*

V.

### Defendant
**United States of America Chess Federation Inc**

represented by **Jeffrey B Jones**
Jones Flygare Brown & Wharton
PO Box 2426
Lubbock , TX 79408-2426
806/765-8851
Email: jeff.jones@jonesflygare.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brent B Hamilton**
LaFont Tunnell Formby LaFont

Hamilton
1st Floor Skaggs Building
701 Broadway
Plainview , TX 79072
806/293-5361
Fax: 806/293-5366 FAX
Email: brent@lafontlaw.com
*TERMINATED: 02/02/2009*

**Christopher Bradley Slayton**
Jones Flygare Brown & Wharton
Suite 1600
PO Box 2426
Lubbock , TX 79408-2428
806/765-8851
Email: chris.slayton@jonesflygare.com
*ATTORNEY TO BE NOTICED*

**William P Huttenbach**
Hirsch & Westheimer
700 Louisiana
25th Floor
Houston , TX 77002
713/220-9184
Fax: 713/223-9319 FAX
Email: phuttenbach@hirschwest.com
*TERMINATED: 02/02/2009*

**William Harold LaFont**
LaFont Tunnell Formby LaFont
Hamilton
PO Box 1510
4th Floor Skaggs Bldg
Plainview , TX 79073-1510
806/293-5361
Fax: 806/293-5366
Email: jstovall@lafontlaw.com
*TERMINATED: 02/02/2009*

**Defendant**

**Bill Goichberg**
*Individually and in his Representative Capacities as Member of the Executive Board of the United States of America Chess Federation*

represented by **Jeffrey B Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brent B Hamilton**
(See above for address)
*TERMINATED: 02/02/2009*

**Christopher Bradley Slayton**

(See above for address)
*ATTORNEY TO BE NOTICED*

**William P Huttenbach**
(See above for address)
*TERMINATED: 02/02/2009*

**William Harold LaFont**
(See above for address)
*TERMINATED: 02/02/2009*

**Defendant**
**Jim Berry**
*Individually and in his Representative
Capacities as Member of the Executive
Board of the United States of America
Chess Federation*

represented by **Jeffrey B Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brent B Hamilton**
(See above for address)
*TERMINATED: 02/02/2009*

**Christopher Bradley Slayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William P Huttenbach**
(See above for address)
*TERMINATED: 02/02/2009*

**William Harold LaFont**
(See above for address)
*TERMINATED: 02/02/2009*

**Defendant**
**Randy Bauer**
*Individually and in his Representative
Capacities as Member of the Executive
Board of the United States of America
Chess Federation*

represented by **Jeffrey B Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brent B Hamilton**
(See above for address)
*TERMINATED: 02/02/2009*

**Christopher Bradley Slayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William P Huttenbach**
(See above for address)
*TERMINATED: 02/02/2009*

William Harold LaFont
(See above for address)
*TERMINATED: 02/02/2009*

**Defendant**

**Randall Hough**                          represented by **Jeffrey B Jones**
*Individually and in his Representative*                  (See above for address)
*Capacities as Member of the Executive*                  *LEAD ATTORNEY*
*Board of the United States of America*                  *ATTORNEY TO BE NOTICED*
*Chess Federation*

**Brent B Hamilton**
(See above for address)
*TERMINATED: 02/02/2009*

**Christopher Bradley Slayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William P Huttenbach**
(See above for address)
*TERMINATED: 02/02/2009*

**William Harold LaFont**
(See above for address)
*TERMINATED: 02/02/2009*

**Defendant**

**Bill Hall**                              represented by **Jeffrey B Jones**
*Individually and in his Representative*                  (See above for address)
*Capacity as Executive Director of the*                  *LEAD ATTORNEY*
*United States of America Chess*                          *ATTORNEY TO BE NOTICED*
*Federation*

**Brent B Hamilton**
(See above for address)
*TERMINATED: 02/02/2009*

**Christopher Bradley Slayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William P Huttenbach**
(See above for address)
*TERMINATED: 02/02/2009*

**William Harold LaFont**
(See above for address)
*TERMINATED: 02/02/2009*

**Defendant**

**Brian Mottershead**                     represented by **William P Huttenbach**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brent B Hamilton**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **William Harold LaFont**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**
**Hal Bogner**                            represented by **William P Huttenbach**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brent B Hamilton**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **William Harold LaFont**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**
**Chess Magnet LLC**                      represented by **William P Huttenbach**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brent B Hamilton**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **William Harold LaFont**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**
**Continental Chess Incorporated**        represented by **William P Huttenbach**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brent B Hamilton**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**William Harold LaFont**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Jerome Hanken**                    represented by    **William P Huttenbach**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brent B Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Harold LaFont**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Brian Lafferty**                   represented by    **William P Huttenbach**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brent B Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Harold LaFont**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Sam Sloan**                        represented by    **Sam Sloan**
1664 Davidson Ave
Apt 1B
Bronx, NY 10453-7877
917/507-7226
Email: samhsloan@gmail.com
PRO SE

<u>Defendant</u>

**Karl S Kronenberger**              represented by    **William P Huttenbach**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brent B Hamilton**
(See above for address)

*ATTORNEY TO BE NOTICED*

**William Harold LaFont**
(See above for address)
*ATTORNEY TO BE NOTICED*

---

**Defendant**
**Kronenberger Burgoyne, LLP**          represented by **William P Huttenbach**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Brent B Hamilton**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

                                         **William Harold LaFont**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**ThirdParty Defendant**
**Hoainhan "Paul" Truong**               represented by **Samantha Peabody Estrello**
*TERMINATED: 06/09/2009*                 (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**
**Sam Sloan**                            represented by **Sam Sloan**
                                         (See above for address)
                                         PRO SE

V.

**Counter Defendant**
**Hoainhan "Paul" Truong**

**Counter Defendant**
**Susan Polgar**                         represented by **James L Killion**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Samantha Peabody Estrello**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**
**United States of America Chess**       represented by **Jeffrey B Jones**
**Federation Inc**                       (See above for address)
*TERMINATED: 06/09/2009*                 *LEAD ATTORNEY*

**EXHIBIT C**

*She was to be in charge of trying to find sponsors, but there is no sign that she has approached anyone on behalf of USCF. In August she agreed to contact Eric Anderson, but never followed through (even before the Mottershead allegations, she told me she would not contact Anderson unless the board put her in charge of the Forum so that she could ban her critics.) At our February phone meeting, when I wanted Channng to contact Anderson and Joel suggested that Susan do it instead, I should have objected but she got a second chance, and again did nothing. Probably just as well, as if she did speak to him it's not likely she would have been working in the interests of USCF.*

*Military is not as important a liaison as Scholastic and College, which Susan has and uses to promote herself, but it's a further small step in the wrong direction. I wish we could remove her as Scholastic liaison, but don't know who could replace her. At least, one of you should become military liaison. If you could discuss this with each other and one of you make a motion that the other be the liaison, that would be very good.*

*Bill"*

This is another one which was leaked to Jerry Hanken back in November 2007 and he told others about it. One USCF insider even posted this on the Internet for a few days before removing it.

*"To put additional pressure on Truong and Polgar, I would like to contact the insurer, Chubb, and argue that they should not extend coverage to Truong and Polgar because the complaint does not allege that their wrongdoing arises from their status as directors and because Truong and Polgar both deny that they played any part in the postings. If Chubb does not cover them, then USCF benefits from Truong and Polgar hiring potentially lower quality (less expensive) counsel."*

And then there is the one about the false charges that Paul and I abused my children. This is exactly what I said for many months and I obviously can prove everything I said. What do you think the 84,000 USCF members will think when dozens and dozens of pieces of evidence will become public to show what board members do behind the scene? If the board will proceed with this nonsense, I will have no choice but to do what I have to do to protect myself and my family and to expose corruption and illegal conduct.

I am letting you know this as a friend. I hope it will not come to that.

Best wishes,
Susan Polgar

Susan
The President offered the Military Laison to veterans Randy H or I. Randy said "Take it away Jim."
So I accepted. How is this hurting USCF?
I am trying to be friends with everyone and not choose emotional sides.
I have not sided with Bill G. on numerous EB votes....such as I supported $500 for the Scholastic seminar at Dallas coming up ....against Bill's no vote.
You always say that you rarely believe what you read on the internet....so I take all these opinions against you and Paul with a grain of salt.
I don't know if Paul is the FSS, but he did not cooperate as well as he should have when asked by the hired USCF lawyer.

KRON000114

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

> Sam Sloan postings, and the only response was a fax from his wife
> containing a plane ticket and his pay stub for his new job; this fax is not
> persuasive for me because we only need to show that Truong was behind any
> one of the many Fake Sam Sloan posting to meet our objectives (for USCF to
> defend itself in litigation, for USCF to persuade Truong to resign, and,
> potentially, for USCF to convince a judge to remove Truong as a director).

> We did also receive some allegations of him abusing the child of his
> current wife, Polgar. While these allegations are not relevant to the
> inquiry into whether he is involved in the Fake Sam Sloan postings, they
> could perhaps be relevant in a later inquiry about whether his removal from
> the board is "in the best interest of the corporation."

> It looks like Chubb recently told US Chess that it would not be covering
> litigation costs after the 12b6 motion; I do not know the details of this,
> as I just saw it referenced in a recent email to me.
> Lastly, the Board feels like it needs to take action on this matter
> fairly quickly, and the proposed action is to ask Truong publicly to resign
> – additionally, the Board wants to determine if Sloan would drop his suit
> against Truong if Truong resigns.
> My Talks with Proskauer. As you know, it took me a number of weeks before
> I could get Proskauer on the phone, due to a number of reasons, including
> Proskauer's then pending termination of Truong and Polgar. I was able to
> have a phone conference with both Jeremy Brown and one of their corporate
> law attorneys. First, Jeremy was clear that he did not think Chubb would
> pay for an expert now, so he rebuffed me quickly on that. Second, Jeremy
> was unwilling to have any of their corporate law attorneys perform some key
> research about the ability to remove Truong as a board member because,
> again, he did not believe Chubb would pay for it. I did quiz their
> corporate attorney on the phone about her opinion about Illinois law on
> this subject, and she was not really helpful.

> My Firm's Research re: Illinois Law. We did some very basic research
> in-house here, and we quickly started to focus on a particular Illinois
> statute that allows a nonprofit organization with voting members to file a
> lawsuit requesting that a court remove a director. The standard is whether
> the board member "engaged in fraudulent or dishonest conduct or has grossly
> abused his position to the detriment of the corporation," and "removal is
> in the best interest of the corporation." This would be in the form of a
> cross claim in the current litigation or a new lawsuit with a fairly simple
> complaint, asking a judge to remove Truong, based on the Illinois statute
> that allows a court to do so. Illinois Compiled Statutes Annotated, Ch.
> 805, Act 105 (105/108.35 Removal of Directors). Importantly, the Board
> cannot take any action on its own to remove a director.
> Expert Assistance. If the Board feels like it is essential to determine
> whether one of its directors, Truong, has engaged in misconduct, and the
> Board feels as if it must know this before April/May/June of 2008 (after a

KRON001114

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

> decision on the motion to dismiss), then the Board should hire an expert
> now. I was hoping that Proskauer would be able to hire the expert, which
> would be paid through Chubb. However, this decision is many months away,
> and it looks like Chubb may be denying coverage. Proskauer feels that it
> must try to use procedural arguments first, as a way to obtain a dismissal,
> in which case an expert would not be needed at all. The hearing on the
> motion to dismiss is not scheduled until February, and assuming any
> dismissal would be granted with leave to amend, we are looking at many
> months before a potential dismissal without leave to amend.
>  What sort of expert? I feel strongly that the Board should engage a
> litigation expert who can not only vet the current "Fake Sam Sloan"
> investigative reports, but also a) conduct his own brief investigation and
> b) testify at trial if necessary. Dr. Cohen is an ideal candidate. He has
> a very strong forensic investigation background, and he is very strong in
> the area of SMTP / IP addresses / Usenet. I have used him recently in a
> significant spam litigation case in federal court, and, simply stated, he
> is head and shoulders above the other expert in terms of experience and
> persuasive abilities.  Due to his background in technical forensics, he
> will be uniquely qualified to comment on the "chain of evidence," and his
> past research and own personal technical projects make him uniquely
> qualified to investigate the potential for spoofing or other allegations
> that Truong has been "set up."
>  All this said, here are some options to consider:

> 1. Do Nothing.  With this option the board lets the NY litigation take
> its course, informing its membership that the Board cannot make any
> comments on this matter while litigation is pending. US Chess will be
> pointing the finger directly at Truong, in the form of a cross action, if
> the lawsuit survives the motion to dismiss.
> 2. Ask Truong Publicly to Step Down.  There are two things to use
> potentially as leverage after you ask Truong to step down. First, if you
> can get Sloan to drop the lawsuit, that would obviously be best; however,
> my gut tells me that that will be difficult.  Also, if Sloan keeps the
> defamation allegations in the lawsuit, the Board may want to cross claim
> against Truong, which will be more difficult if he has been dismissed by
> Sloan (i.e. the Board would have to add Truong as a party).  It sounds like
> you have other counsel that has dealt with Sloan before who could contact
> Sloan; if he cannot do it, I would be happy to contact Sloan (keep in mind
> I will not be back in the office until Jan 10). Second, the board could
> threaten to initiate a separate action against Truong, in Illinois, to
> remove him from the Board, if Truong does not resign.  We could even
> provide Truong with a simple draft complaint that we will threaten to file
> if he does not step down.
>  I have provided some comments on your proposed letter in redline format,
> attached.
>  3. Plan to Ask the Court in NY to Remove Truong.  Even though a NY court

*Confidential Emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough and responses, posted to rec.games.chess.politics by nobody@nowhere.com*

expected, the Executive Board takes these allegations and this lawsuit very seriously. As a result, the USCF Executive Board formed a Committee, consisting of Randy Bauer (chair), Bill Goichberg, Joel Channing, Randy Hough and Jim Berry to investigate the alleged wrongdoing. The USCF Executive Board also hired outside legal counsel with Internet law expertise, Kronenberger Burgoyne, to advise the Committee.

Because the allegations against Paul Truong include a period of time in which he was a member of the Executive Board, it is vitally important that he affirmatively assist the USCF in defending against this lawsuit. Based on the advice of counsel, a letter was sent via both email and Federal Express to Paul Truong on November 29, 2007, seeking information that counsel deems critical to the USCF, both for defending this lawsuit and any other legal actions that may arise based on the allegations.

Specifically, the USCF asked Paul Truong to provide, by December 7, 2007, the following:

Formally admit or deny, in writing, whether he was involved in the "Fake Sam Sloan's postings, or had knowledge of who made such postings; Provide the IP address of all his home and work Internet connections since 2005, or provide consent for the Board to obtain and cooperate in the Board obtaining, such IP addresses from ISPs and other entities; Provide all information that would support his argument that he was not located at his computer(s) at the time of alleged Fake Sam Sloan postings, to include information relating to his travel.

To date, the USCF has not received a response to items 1 and 2 and incomplete information relating to item 3.

As an Executive Board member, Paul Truong has a clear fiduciary duty to the USCF and its membership to cooperate in the USCF investigation and defense relating to the allegations. Regardless of the merits of the claims, Mr. Truong has neglected his fiduciary duties, and based on discussions between him and our attorney, there seems little likelihood this situation will change in the near future.

Given the many issues facing the USCF and the need to focus its time and attention on, among other things, its finances, organization of national events and support for US players in major international competitions, we believe that the interests of the USCF would best be served by Paul Truong voluntarily resigning from the Executive Board.

This is not and has not been our desired outcome. We each hoped that Paul Truong would cooperate with the USCF in a) formally denying the allegations, and b) expeditiously refuting the allegations that have been made, but this has not been the case. We also recognize that the original allegations against Truong were raised by Mr. Mottershead, despite a valid, written non-disclosure agreement that Mottershead entered with USCF

Regardless of the circumstances, the fact is that a lawsuit has been filed, and all Executive Board members have a duty to help us defend against it. Given Paul Truong's unwillingness to do so, we believe that there is no other recourse than to ask that he resign from the Executive Board of the USCF.

The Committee asks Randy Bauer as chairman to post this statement on the USCF Issues Forum three days after passage of this motion, and to send the motion to Paul Truong as soon as possible after

KRON001122