1  DENNIS F. MORIARTY, ESQ, (BAR NO. 118110)
   KRISTINA L. VELARDE, ESQ. (BAR NO. 199299)
2  CESARI, WERNER AND MORIARTY
   360 Post Street, Fifth Floor
3  San Francisco, CA 94108-4908
   Telephone: (415) 391-1113
4  Facsimile:  (415) 391-4626
   5255-3-2-15
5  Attorneys for Defendants and Counter-Defendants
   Randall Hough, Bill Goichberg, Bill Hall, Randy Bauer,
6  Jim Berry, and Karl Kronenberger

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA CHESS          )  No.  3:08-cv-05126-MHP
12 FEDERATION, INC., an Illinois not-for-profit )
   corporation, RANDAL D. HOUGH, an        )
13 individual                              )
                                           )  DECLARATION OF KRISTINA
14              Plaintiffs,                 )  VELARDE IN SUPPORT OF COUNTER
                                           )  AND THIRD-PARTY DEFENDANTS'
15 v.                                       )  HOUGH, BAUER, HALL, GOICHBERG,
                                           )  BERRY, & KRONENBERGER NOTICE
16 SUSAN POLGAR, an individual, GREGORY     )  OF MOTION & MOTION FOR FAILURE
   ALEXANDER, an individual, and DOES 1-    )  TO  STATE A CLAIM
17 20, inclusive,                           )    [FRCP 12(B)(6)]
                                           )
18              Defendants.                 )
                                           )
19 _____     )  Date:     September 28, 2009
                                           )  Time:     10:00 a.m.
20 SUSAN POLGAR                            )  Ctrm:     15, on the 18th Floor
                                           )  Judge:   The Hon. Marilyn Patel
21              Counter-Plaintiff,          )
                                           )
22 v.                                       )
                                           )
23 BILL GOICHBERG, BILL HALL, RANDY        )
   BAUER, JIM BERY, KARL                   )
24 KRONENBERGER,                           )
                                           )
25         third party defendants,          )
                                           )
26 RANDALL HOUGH,                          )
                                           )
27                                          )
                                           )
28         Counter-Defendant.               )

No.  3:08-cv-05126 USCF v. Polgar
Declaration of Kristina Velarde in Support of Counter-Defendants' 12(b)(6)
Motion for Dismissal for Failure to State a Claim

I, KRISTINA L. VEALRDE declare:

The following is of my own personal knowledge, unless stated under information and belief, and if called as a witness I would testify as follows:

1.      I am an attorney duly licensed to practice law in the State of California.  I am an attorney at the law offices of Cesari, Werner and Moriarty, 360 Post Street, Fifth Floor, San Francisco, CA 94108; (415) 391-1113, counsel of record for counter-defendant and third-party defendants Randall Hough, Bill Goichberg, Bill Hall, Randy Bauer, Jim Berry, and Karl Kronenberger in the above referenced matter.

2.      Attached hereto as Exhibit "A" is a true and correct copy of the Amended Answer and Counterclaims filed by Defendant and counter-Plaintiff Susan Polgar.

3.      Attached hereto as Exhibit "B" is a true and correct copy of Declaration of Bill Hall;

4.      Attached hereto as Exhibit "C" is a true and correct copy of Declaration of Bill Hall.

5.      Attached hereto as Exhibit "D" is a true and correct copy of the court's "Order".


I declare under the laws of the Untied States of America that the foregoing is true and correct.  Executed at San Francisco, California on July 24, 2009.

_____
Kristina L. Velarde

-2-

No.  3:08-cv-05126 USCF v. Polgar
Declaration of Kristina Velarde in Support of Counter-Defendants' 12(b)(6)
Motion for Dismissal for Failure to State a Claim

# *Exhibit "A"*

GONZALEZ & LEIGH, LLP
MATT GONZALEZ (SBN 153486)
G. WHITNEY LEIGH (SBN 153457)
MATT SPRINGMAN (SBN 252508)
Two Shaw Alley, 3rd Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile: (415) 512-2001

Attorneys for Defendant
SUSAN POLGAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA CHESS FEDERATION, INC., an Illinois not-for-profit corporation, RANDALL D. HOUGH, an individual,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>SUSAN POLGAR, an individual, GREGORY ALEXANDER, an individual, and DOES 1-10, inclusive,<br><br>　　　　　　Defendants<br><br>SUSAN POLGAR,<br><br>Counter-Plaintiff,<br><br>　　v.<br><br>BILL GOICHBERG, BILL HALL, RANDY BAUER, JIM BERRY, RANDALL HOUGH, KARL KRONENBERGER,<br><br>　　　　　　Counter-Defendants | Case No. 3:08-cv-05126-MHP\<br><br>[PROPOSED]<br><br>**DEFENDANT AND COUNTER-PLAINTIFF SUSAN POLGAR'S AMENDED ANSWER TO FIRST AMENDED COMPLAINT FOR VIOLATION FOR:**<br><br>1. **VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT;**<br>2. **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**<br>3. **CALIFORNIA STATUTORY COMPUTER FRAUD**<br>4. **CONVERSION**<br><br>**AND COUNTER-CLAIM FOR:**<br><br>1. **ABUSE OF PROCESS**<br>2. **BREACH OF FIDUCIARY DUTY**<br><br>**JURY TRIAL DEMANDED** |

# ANSWER

Susan Polgar responds as follows to the First Amended Complaint filed against her by the United States of America Chess Federation, Inc. ("USCF") and Randall D. Hough ("Hough"), (collectively, "Plaintiffs") as follows:

1.      Answering paragraph 1, Ms. Polgar admits that the USCF is a non-profit corporation. Except as expressly admitted, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 and on that basis generally and specifically denies the allegations.

2.      Answering paragraph 2, Ms. Polgar admits that she is a board member of the USCF. Ms. Polgar also admits that Hough is a board member of the USCF. Ms. Polgar denies that she used a stolen password to surreptitiously access the email account of Hough over 100 times during the course of eight months, and denies that she viewed, misappropriated and distributed to third parties any email content unlawfully. Except as expressly admitted and denied above, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 and on that basis generally and specifically denies the allegations.

3.      Answering paragraph 3, Ms. Polgar denies that she engaged in misconduct. Ms. Polgar admits that Defendants purport to bring this action under the Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, the California Computer Crimes Act, and common law conversion. Except as expressly admitted, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and on that basis generally and specifically denies the allegations.

4.      Answering paragraph 4, Ms. Polgar admits that the USCF is an Illinois not-for-profit corporation in good standing with its principal place of business in Crossville, Tennessee. Ms. Polgar also admits the USCF is governed by a seven-person executive board ("Executive Board").

1

1

2      5.     Answering paragraph 5, Ms. Polgar admits that she resides in Lubbock, Texas.

3  Except as expressly admitted, Ms. Polgar lacks knowledge or information sufficient to form a

4  belief as to the truth of the allegations in paragraph 5 and on that basis generally and specifically

5  denies the allegations.

6      6.     Answering paragraph 6, Ms. Polgar lacks knowledge or information sufficient to

7  form a belief as to the truth of the allegations in paragraph 6 and on that basis generally and

8  specifically denies the allegations.

9      7.     Answering paragraph 7, Ms. Polgar lacks knowledge or information sufficient to

10  form a belief as to the truth of the allegations that "Defendant Alexander has publicly admitted

11  that he is an agent for Defendant Polgar," or that Mr. Alexander "stat[ed] that Polgar 'hired

12  him'". Except as above denied for lack of knowledge and information, Ms. Polgar generally and

13  expressly denies the allegations of paragraph 7.

14      8.     Answering paragraph 8, Ms. Polgar lacks knowledge or information sufficient to

15  form a belief as to the truth of the allegations in paragraph 8 and on that basis generally and

16  specifically denies the allegations of paragraph 8.

17      9.     Answering paragraph 9, Ms. Polgar lacks knowledge or information sufficient to

18  form a belief as to the truth of the allegations in paragraph 9 and on that basis generally and

19  specifically denies the allegations of paragraph 9.

20      10.    Answering paragraph 10, Ms. Polgar lacks knowledge or information sufficient to

21  form a belief as to the truth of the allegations in paragraph 10 and on that basis generally and

22  specifically denies the allegations of paragraph 10.

23      11.    Answering paragraph 11, Ms. Polgar lacks knowledge or information sufficient to

24  form a belief as to the truth of the allegations in paragraph 11 and on that basis generally and

25  specifically denies the allegations of paragraph 11.

26

27

28

2

DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM
Case No. 3:08-cv-05126-MHP

1        12.    Answering paragraph 12, Ms. Polgar, denies that the San Francisco Superior

2    Court has jurisdiction over this matter, which has been removed to the United States District

3    Court for the Northern District of California.

4        13.    Answering paragraph 13, Ms. Polgar denies Plaintiffs' claim that she engaged in

5    the "unlawful conduct" alleged by Plaintiffs, that she unlawfully accessed, viewed, and copied

6    data on an email serve owned by Yahoo!, Inc., that she unlawfully distributed stolen data on a

7    Internet blog website, that she attempted to "'cover [her] digital tracks' through the use of an

8    Internet 'anonymizing' service located in California. Ms. Polgar also denies that she engaged in

9    any misconduct in California and denies Plaintiffs' claim that the San Francisco Superior Court

10   had jurisdiction based upon any of the above-listed allegations contained in paragraph 13.

11   Except as expressly denied above, Ms. Polgar lacks knowledge or information sufficient to form

12   a belief as to the truth of the allegations in paragraph 13 and on that basis generally and

13   specifically denies the allegations.

14       14.    Answering paragraph 14, Ms. Polgar admits that none of the Plaintiffs reside in

15   California. Except as expressly admitted, Ms. Polgar lacks knowledge or information sufficient

16   to form a belief as to the truth of the allegations in paragraph 14 and on that basis generally and

17   specifically denies the allegations. Ms. Polgar also denies that venue is proper in California,

18   because this matter arises out of facts already being litigated in the Northern District of Texas,

19   Case No. 5:08-CV-169-C and because Plaintiffs' claims largely implicate or duplicate

20   allegations raised in the counterclaim raised by one of the defendants in that action. This Court

21   therefore may transfer this matter to the Northern District of Texas under 28 U.S.C. Section

22   1406(a) and 28 U.S.C. Section 1404(a).

23       15.    Answering paragraph 15, Ms. Polgar admits the allegations of paragraph 15.

24       16.    Answering paragraph 16, Ms. Polgar admits the allegations of paragraph 16.

25       17.    Answering paragraph 17, Ms. Polgar admits that false allegations of misconduct

26   were raised against her in September 2007. Except as expressly admitted, Ms. Polgar lacks

27

28

**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
Case No. 3:08-cv-05126-MHP

1  knowledge or information sufficient to form a belief as to the truth of the allegations in

2  paragraph 17 and on that basis generally and specifically denies the allegations.

3       18.     Answering paragraph 18, Ms. Polgar lacks knowledge or information sufficient to

4  form a belief as to the truth of the allegations in paragraph 18 and on that basis generally and

5  specifically denies the allegations.

6       19.     Answering paragraph 19, Ms. Polgar lacks knowledge or information sufficient to

7  form a belief as to the truth of the allegations in paragraph 19 and on that basis generally and

8  specifically denies the allegations.

9       20.     Answering paragraph 20, Ms. Polgar lacks knowledge or information sufficient to

10  form a belief as to the truth of the allegations in paragraph 20 and on that basis generally and

11  specifically denies the allegations.

12       21.     Answering paragraph 21, Ms. Polgar lacks knowledge or information sufficient to

13  form a belief as to the truth of the allegations in paragraph 18 and on that basis generally and

14  specifically denies the allegations.

15       22.     Answering paragraph 22, Ms. Polgar admits that at some point in time she was

16  aware that USCF purported to have retained Kronenberger as counsel.   Except as expressly

17  admitted above, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the

18  truth of the allegations in paragraph 22 and on that basis generally and specifically denies the

19  allegations.

20       23.     Answering paragraph 23, Ms. Polgar generally and specifically denies the

21  allegations thereof. Without limiting the generality of the foregoing denial, Ms. Polgar denies

22  that she or her husband unlawfully accessed Hough's email. Ms. Polgar also denies that she or

23  her husband viewed or copied any confidential emails between Kronenberger and the Litigation

24  Committee. Ms. Polgar also denies that any effective Litigation Committee was ever established

25  by the USCF under the governing rules of the USCF's by-laws. Ms. Polgar also denies that she

26  or her husband distributed "[those] confidential communications" to third parties.

27

28

4

DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM
Case No. 3:08-cv-05126-MHP

24.    Answering paragraph 23, Admits that USCF maintains a message board system on its servers located at www.uschess.org.  Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegation that "Goichberg never provided his password to Defendants and never consented to any use of his password by any third party", as Plaintiffs allege the existence of Doe defendants unknown to Ms. Polgar.  Except as expressly admitted and denied for lack of knowledge and information above, Ms. Polgar generally and specifically denies the allegations thereof.

25.    Answering paragraph 25, Ms. Polgar generally and specifically denies the allegations thereof.

## FIRST CAUSE OF ACTION

26.    Answering paragraph 26, Ms. Polgar admits that Plaintiffs state that they repeat, reallege and incorporate the preceding paragraphs. Except as expressly admitted or denied for lack of knowledge and information above, Ms. Polgar generally and specifically denies the allegations of paragraph 26.

27.    Answering paragraph 27, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegations thereof.

28.    Answering paragraph 29, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegations thereof.  Ms. Polgar generally and specifically denies the allegations thereof.

29.    Answering paragraph 29, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegations thereof.

30.    Answering paragraph 30, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegation generally and specifically denies the allegations thereof.

31.    Answering paragraph 31, Ms. Polgar lacks knowledge or information sufficient to form a belief as to the truth of the allegations thereof.

**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
**Case No. 3:08-cv-05126-MHP**

1    32.    Answering paragraph 32, Ms. Polgar generally and specifically denies the
2    allegations thereof.

3                    **SECOND CAUSE OF ACTION**

4    33.    Answering paragraph 33, Ms. Polgar admits that Plaintiffs state that they repeat,
5    reallege and incorporate the preceding paragraphs. Except as expressly admitted or denied for
6    lack of knowledge and information above, Ms. Polgar generally and specifically denies the
7    allegations of paragraph 33.

8    34.    Answering paragraph 34, Ms. Polgar lacks knowledge or information sufficient to
9    form a belief as to the truth of the allegations thereof.

10    35.    Answering paragraph 35, Ms. Polgar generally and specifically denies the
11    allegations thereof.

12    36.    Answering paragraph 36, Ms. Polgar generally and specifically denies the
13    allegations thereof.

14    37.    Answering paragraph 37, Ms. Polgar generally and specifically denies the
15    allegations thereof.

16    38.    Answering paragraph 38, Ms. Polgar generally and specifically denies the
17    allegations thereof.

18                    **THIRD CAUSE OF ACTION**

19    39.    Answering paragraph 39, Ms. Polgar admits that Plaintiffs state that they repeat,
20    reallege and incorporate the preceding paragraphs. Except as expressly admitted or denied for
21    lack of knowledge and information above, Ms. Polgar generally and specifically denies the
22    allegations of paragraph 39.

23    40.    Answering paragraph 40, Ms. Polgar generally and specifically denies the
24    allegations thereof.

25    41.    Answering paragraph 41, Ms. Polgar generally and specifically denies the
26    allegations thereof.

27

28

**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
**Case No. 3:08-cv-05126-MHP**

42.   Answering paragraph 42, Ms. Polgar generally and specifically denies the allegations thereof.

43.   Answering paragraph 43, Ms. Polgar generally and specifically denies the allegations thereof.

## FOURTH CAUSE OF ACTION

44.   Answering paragraph 44, Ms. Polgar admits that Plaintiffs state that they repeat, reallege and incorporate the preceding paragraphs. Except as expressly admitted or denied for lack of knowledge and information above, Ms. Polgar generally and specifically denies the allegations of paragraph 44.

45.   Answering paragraph 45, Ms. Polgar generally and specifically denies the allegations thereof.

46.   Answering paragraph 46, Ms. Polgar generally and specifically denies the allegations thereof.

47.   Answering paragraph 47, Ms. Polgar generally and specifically denies the allegations thereof.

## SUSAN POLGAR'S AFFIRMATIVE DEFNSES TO PLAINTIFFS' COMPLAINT

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Cause of Action)

48.   Plaintiffs' Complaint fails to state a claim upon which relief can be granted against Ms. Polgar.

### SECOND AFFIRMATIVE DEFENSE
(Fair Use)

49.   Plaintiffs' Complaint is barred by the defense of fair use.

### THIRD AFFIRMATIVE DEFENSE
(Estoppel)

50.   Plaintiffs' Complaint is barred by the equitable doctrine of waiver.

### FOURTH AFFIRMATIVE DEFENSE
(First Amendment)

7

1    51.    Plaintiffs' Complaint is barred by the First Amendment to the United States

2   Constitution.

**FIFTH AFFIRMATIVE DEFENSE**
3                              **(Unclean Hands)**

4    52.    Plaintiffs' Complaint is barred due to Plaintiffs' unclean hands.

5
**SIXTH AFFIRMATIVE DEFENSE**
6                  **(Knowledge, Consent and Acquiescence)**

7    53.    Plaintiffs' Complaint is barred by Plaintiffs' knowledge, consent and

8   acquiescence.

**SEVENTH AFFIRMATIVE DEFENSE**
9                              **(Authorization)**

10    54.    Ms. Polgar is informed and believes that Plaintiffs and thereon alleges that

11   Plaintiffs' complaint is premised upon the alleged acquisition, review and /or disclosure of

12   electronic communications to which all members of the USCF's Executive Board, including Ms.

13   Polgar, had authorized access.

14
**EIGHTH AFFIRMATIVE DEFENSE**
15                              **(Privilege)**

16    55.    Plaintiffs' claims are barred under the litigation privilege provided under

17   California Civil Code Section 47(b).

18
**NINTH AFFIRMATIVE DEFENSE**
19                              **(Ultra Vires Act)**

20    56.    Plaintiffs' formation of a legal subcommittee, decision to file the present suit, the

21   filing of the initial complaint in this matter, and denial of Ms. Polgar's request for

22   indemnification, are all barred as ultra vires acts.

23

24                              **PRAYER FOR RELIEF**

25   Susan Polgar respectfully requests judgment as follows:

26    57.    That Plaintiffs recover nothing by their Complaint;

27    58.    For costs and attorneys fees as allowed by statute; and

28    59.    Such other and further relief as the Court shall find just and proper.

8
**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
Case No. 3:08-cv-05126-MHP

## DEMAND FOR JURY TRIAL

Under Rule 38(b) of the Federal Rules of Civil Procedure and Civil Local Rules 3-6 of the United States District Court for the Northern District of California. Susan Polgar hereby demands a trial by jury of all issues properly triable by jury.

## COUNTER-CLAIM

## PARTIES

1.      Counter-Plaintiff Susan Polgar is an internationally recognized women's world chess champion and was the first woman ever to earn the title of men's chess Grandmaster and first to qualify for the men's world chess championship cycle.  She now resides in Lubbock, TX. Ms. Polgar is currently an elected Executive Board member of the United States Chess Federation (USCF), a non-profit corporation organized under Illinois law, and a shareholder in that corporation.

2.      Counter-Defendant Bill Goichberg is the President of the USCF, and a member of the Executive Board legal subcommittee.

3.      Counter-Defendant Bill Hall is the Executive Director of USCF is a non-voting member of the USCF Executive Board, and a member of the Executive Board legal subcommittee.

4.      Counter-defendant Randy Bauer is the Vice President of Finance for the USCF, a member of the USCF Executive Board, and a member of the Executive Board legal subcommittee.

5.      Counter-defendant Jim Berry is the Vice President of the USCF, a member of the USCF Executive Board, and a member of the Executive Board legal subcommittee.

6.      Counter-defendant Randy Hough is the Secretary of the USCF, a member of the USCF Executive Board, and a member of the Executive Board legal subcommittee.

7.      Counter-Defendant Karl Kronenberger was retained by the USCF to investigate the allegations by the plaintiff in *Sloan v. USCF*, et al., Case No. 1:07-cv-08537-DC (S.D.N.Y),

**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
**Case No. 3:08-cv-05126-MHP**

counsel for plaintiffs in the present case, and a named defendant in a related action, *Polgar v. UCSF*, et al., Case No. 5:08-cv-00169-C (N.D. Texas).

## JURISDICTION AND VENUE

8.      Jurisdiction is proper here under 28 U.S.C. § 1331 and 1367.  Venue is proper under 28 U.S.C. 1391.

## FACTUAL BACKGROUND

**August 2007 United States Chess Federation Executive Board election and Sloan suit**

9.      In August of 2007, Susan Polgar, a Hungarian-born internationally recognized women's world chess champion, the first woman ever to achieve the title of Grandmaster, the first woman to qualify for the men's world chess championship cycle, and a popular figure in the chess community, ran for, and was overwhelming elected to the Executive Board of the United States Chess Federation ("USCF") by the voting members of the USCF.

10.      Ms. Polgar's husband, Paul Truong was elected to the USCF Executive Board in the same August 2007 election.

11.      On October 2, 2007, Sam Sloan, a former member of the USCF Executive Board who lost his seat in the same USCF Executive Board election of August, 2007, initiated a law suit in the United States District Court for the Southern District of New York against the USCF, Texas Tech University, The United States of America, and several Executive Board members, including Ms. Polgar and Mr. Truong. The suit alleged identity theft, fraud, insider wrong doing, and violation of the Communications Decency Act.

12.      On August 29, 2008 Sloan's suit was dismissed.

//
//
//
//
//

**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
**Case No. 3:08-cv-05126-MHP**

## USCF BY-LAWS

The rights, responsibilities, and procedures of the United States Chess Federation are governed by the Bylaws of the institution. Those Bylaws provide several terms germane to this lawsuit. Specifically, the Bylaws provide as follows:

- **The Executive Board may only act within the Bylaws**

  "All actions taken by the Executive Board must be consistent with the Bylaws of the USCF[.]"

  Bylaws, Delegate Actions of Continuing Interest, 27(3)(a)

- **All Executive Board members must be notified of all Executive Board meetings**

  "Reasonable efforts to notify all Executive Board members of the meeting shall be made by mail, fax, telephone, email, or other means approved by the Executive Board."

  Bylaws of the USCF, Art. VI, section 3

- **Members have right to participation in all board decisions; and the Board has no authority absent a majority vote at properly noticed meeting**

  "All Board members have the right to be involved in the determination of all Board decisions. A Board majority has no authority except as a majority vote within the context of a properly called Board meeting in which all members have had the opportunity to participate."

  Bylaws, Delegate Actions at 27(1)(b)

- **Taking of meeting minutes and recordings of all meetings is required; and dissemination of all minutes and recordings to all Board members mandated**

  "*The minutes of the Executive Board shall be sent to all USCF delegates* [Ms. Polgar, as an Executive Board Member, is a delegate] and Alternate Delegates, and posted on the USCF's Internet web site, within six weeks of the meeting...All meetings of the Executive Board, including conference calls, shall be recorded in their entirety with a clear, permanent record by a means determined by the Executive Board. *All Executive Board members shall receive copies of any audio tapes or video tapes within two weeks of those meetings.*" (emphases added)

  Bylaws at Art. VI, section 3

11

**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
**Case No. 3:08-cv-05126-MHP**

- **Transcripts of all open session Executive Board meetings must be made available on the USCF website, and must include all open session activity**

   "The transcript of all Open session meetings are to be posted on the USCF website as soon as practical so that anyone who has any questions can access the basic documentation for all motions and can access Open session discussions that are not likely to be in the published minutes...the transcripts will be sufficient to document all motions."

   Bylaws, Delegate Actions, at 31(3)-(4)

- **All motions made in closed sessions must be voted on in open sessions; If a vote is not recorded in the open session transcript the vote is invalid**

   "Since any motions made in Closed session must be voted in Open session as well, the Open session transcripts will be sufficient to document all motions...No motions are to be voted on the absence of the stenographer. If it is not on the Open session transcripts it did not happen!"

   Bylaws, Delegate Actions, at 31(3)-(4)

- **Board members are entitled to unrestricted access to all pertinent documents and information**

   "All Board members have the right to receive all information pertinent to the making, monitoring, and implementation of USCF policy. Board member(s) should not withhold full and accurate information from other Board members when that information is relevant to Board decisions. Where decision-making authority has been given to a specific officer by the Board or the Bylaws, that officer must keep all Board members fully and accurately informed of all decisions made and factors influencing those decisions

   Bylaws, Delegate Actions, at 27(1)(b)

- **A Vote of the Executive Board is required for any action**

   "The affirmative votes of at least three different Executive Board members will be required to approve *any action*, as long as there are at least four members on the Executive Board."

   Bylaws at Art. VI, section 3

12

DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM
Case No. 3:08-cv-05126-MHP

- **Hiring of Legal Counsel is the within the ambit of the Executive Board only**

  "Legal Counsel shall be appointed by the Executive Board."

  Bylaws at Art. VII, section 4

- **A decision to indemnify a USCF official can be made only by a vote of the Board of Delegates, or disinterested directors and independent legal counsel**

  "Any indemnification against any and all claims (unless ordered by a court) shall be made by the corporation only as authorized in the specific case upon a determination that the indemnification of the director, officer, or employee is proper under the circumstances because he or she acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the corporation, and with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful. Such determination shall be made (A) by the Board of Delegates by a majority vote of a quorum consisting of directors who were not parties to such action, suit, proceeding or claim, or (B), if such a quorum is not obtainable, or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion."

  Bylaws at Art. IX, section 12

- **A closed session of an Executive Board meeting may be called when the privacy rights of any individual may be at risk; and given the privacy rights at issue, all board members must observe that confidentiality**

  "[C]losed sessions [of an Executive Board Meeting] are proper [when] the privacy rights of an individual may be at risk [and]...[a]ll Board members must strictly observe confidentiality of closed sessions."

  Bylaws, Delegate Actions, at 27(3)(c)-(e)

## CONDUCT OF COUNTER-DEFENDANTS

**In October 2007, the USCF retained Karl Kronenberger to investigate Sloan's allegations. Kronenberger then urges, and counter-defendants decide, without participation by Ms. Polgar or Mr. Truong, to form a legal subcommittee to investigate the allegations**

1.     In October 2007, the USCF Executive Board hired Karl Kronenberger for purposes of investigating the Sloan allegations.

13

DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM
Case No. 3:08-cv-05126-MHP

2.     On information and belief Ms. Polgar alleges that Kronenberger subsequently urged the USCF to create a "Legal Subcommittee" for the purposes of investigating the Sloan allegations.

3.     At a November 4, 2007 Executive Board Meeting, counter-defendants authorized Kronenberger to create a legal subcommittee for purposes of investigating the Sloan allegations. However, on information and belief, Ms. Polgar alleges that the decision was made only after Ms. Polgar and Mr. Truong left the meeting to travel to a prior obligation.

4.     Neither Ms. Polgar nor Mr. Truong were notified of the vote, or given a chance to participate in the decision.  And they did not consent to any such vote before leaving the meeting.

5.     The decision to create a legal subcommittee without notifying two Executive of Board members of the vote, or providing them the opportunity to participate was a violation of the USCF by-laws. Bylaws at 27(1)(b).

6.     At some point, members the of subcommittee began to use their purported powers as a means to subvert the powers granted exclusively to the Executive Board to take make determinations and take actions, both ostensibly legitimate, as a pretext to harass, defame, and ultimately force Ms. Polgar and Mr. Truong from the Board.  Among other things, these members proceeded to approve a series of acts purportedly on behalf of the USCF, without presenting those decisions to the Executive Board for a vote, in violation of the Bylaws.

**Mr. Truong and Ms. Polgar confidentially provide private information to the subcommittee and Kronenberger; Kronenberger publishes the information to third parties in an effort to defame and harass Mr. Truong and Ms. Polgar**

7.     After formation of the subcommittee, Kronenberger asked Paul Truong, an Executive Board Member and the husband of Ms. Polgar, to provide evidence to the subcommittee that he was not involved in the impersonation of Sam Sloan on web discussion boards, the allegations of the Sloan lawsuit, most of which were posted from IP addresses in New York City.

8.     In an effort to cooperate with the investigation, Mr. Truong provided confidential

14

1    and personal information of both Mr. Truong and Ms. Polgar to the subcommittee and

2    Kronenberger based on assurances that the information would be treated as confidential.

3        9.      On information and belief, Kronenberger then provided some of those documents

4    to a third party, Brian Lafferty. Neither Mr. Truong nor Ms. Polgar ever authorized the

5    subcommittee or Kronenberger to publish this information to any third party.

6        10.     Lafferty proceeded to provide this information to other USCF Delegates, the

7    district attorney's office in Queens, NY, as well as the U.S. Bankruptcy Court, Eastern District of

8    New York in an effort to persuade these entities that Mr. Truong's June 2007 Bankruptcy

9    proceeding was somehow fraudulent, and to pressure Ms. Polgar and Mr. Truong to resign from

10   the Executive Board.

11

12   **Prior to June 25, 2008, Counter-Defendants, purporting to represent the USCF, authorized Karl Kronenberger to file a lawsuit in San Francisco Superior Court.**

13       11.     Sometime prior to June 25, 2008, counter-defendants, purporting to represent the

14   USCF, authorized Mr. Kronenberger to file a lawsuit on behalf of the USCF related to the

15   alleged unlawful access to the email account of an Executive Board Member, and the alleged

16   impersonation of Sam Sloan, a former Executive Board Member, on web discussion boards.

17       12.     Ms. Polgar was never provided an opportunity to vote on the issue of filing a

18   lawsuit, never notified of any such meeting where a vote would take place, and never provided,

19   despite repeated requests, of the meeting minutes, transcripts or recordings – a meeting which

20   did not occur –wherein the decision was made to file a lawsuit. Bylaws at Art. IV, section 3;

21   31(3)-(4); and 27(1)(b).

22       13.     The decision to file a lawsuit was in express violation of the USCF by-laws,

23   which require notification of any Executive Board Meeting to all Board members, and a vote at

24   an officially noticed meeting for "approval of any action." Bylaws at Art. IV, section 3; *See also*

25   Art. VII, section 4.

26   //

27   //

28

15

**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
**Case No. 3:08-cv-05126-MHP**

1

2   **Despite his intention, all along, to name Susan Polgar as a defendant, counter-defendants
3   filed suit against doe defendants in an attempt to surreptitiously obtain private information
    before Polgar had an opportunity to retain counsel, or object to early discovery.**

4       14.    On June 25, 2008, plaintiffs filed the present lawsuit in San Francisco Superior

5   Court which includes causes of action for fraud under CA Penal Code § 502(c) and (e), violation

6   of the Computer Fraud and Abuse Act, among others.  Plaintiffs filed the suit against doe

7   defendants only despite their intent, all along, to amend the lawsuit to name Ms. Polgar as a

8   defendant.

9       15.    Counter-defendants' decision to file the suit against doe defendants only was a

10  pretextual attempt to obtain private and confidential documents related to Ms. Polgar's, and

11  numerous third parties, credit card and internet accounts without providing her the opportunity to

12  retain counsel or to object to early discovery.

13      16.    On July 7, 2008, plaintiffs sought and received an ex parte order allowing them to

14  conduct early third-party discovery in a purported attempt to ascertain the proper defendants in

15  the matter.

16      17.    On October 31, 2008 counter-defendants sought and received an ex parte order

17  allowing them to issue immediate discovery on Comcast Cable in a purported attempt to obtain

18  the identify a certain Comcast account holder.

19      18.    Pursuant to the above-mentioned orders to conduct early discovery, plaintiffs

20  issued subpoenas to American Express and Comcast Cable, among others.

21      19.    Additionally, in violation of well-established law, defendants did not timely notify

22  Ms. Polgar of the issuance of those subpoenas, and even when notified of the violation, refused

23  to withdraw them.  Finally, only by order of this Court, were defendants forced to withdraw

24  them.

25  //

26  //

27  //

28  //

DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM
Case No. 3:08-cv-05126-MHP

Ms. Polgar's request to the Executive Board for indemnification is effectively denied after Kronenberger, without providing any basis, or assertion that he represents the USCF for purposes of indemnification, directs that all requests go through him. Neither Kronenberger nor a representative from the USCF has responded to Ms. Polgar's request.

20. On November 17, 2008, Ms. Polgar's counsel requested indemnification under Article IX, Section 12 of the by-laws through counter-defendant Bill Hall, USCF Executive Director.

21. Without providing any basis, Kronenberger responded that all further correspondence regarding indemnification go through him.

22. When asked for evidence that he had been retained as independent legal counsel to advise the USCF or provide a written opinion concerning the determination required under Section12 of the USCF's by-laws, Kronenberger provided no substantive response.

23. Additionally, neither Hall, as Executive Director, nor any other Executive Board member has attempted to comply with the by-laws by conducting a vote of the Board of Delegates, by conducting a vote of disinterested directors, or by appointing independent legal counsel to offer a written opinion regarding Ms. Polgar's indemnification request. Bylaws at Art. IX, section 12.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### ABUSE OF PROCESS
### (Against all Counter-Defendants)

24. Defendant and counter-plaintiff Susan Polgar incorporate by reference paragraphs 1-24.

25. At a November 4, 2007 Executive Board Meeting, counter-defendants authorized Kronenberger to create a legal subcommittee for purposes of investigating the Sloan allegations. However, the decision was made only after Ms. Polgar and Mr. Truong left the meeting to travel to a prior obligation.

26. The decision to create a legal subcommittee without notifying two Executive of Board members of the vote, or providing them the opportunity to participate was a violation of

17

1  the USCF by-laws.

2      27.    At the request of Kronenberger Mr. Truong provided confidential and personal

3  information of both Mr. Truong and Ms. Polgar to the subcommittee and Kronenberger based on

4  assurances that the information would be treated as confidential. On information and belief,

5  Kronenberger then provided some of those documents to third parties.

6      28.    The disclosure of private information to third parties was done with the intent to

7  defame, harass, and force the resignation of Ms. Polgar and Mr. Truong.

8      29.    Sometime prior to June 25, 2008, counter-defendants, purporting to represent the

9  USCF, authorized Mr. Kronenberger to file a lawsuit on behalf of the USCF related to the

10  alleged unlawful access to the email account of an Executive Board Member, and the alleged

11  impersonation of Sam Sloan, a former Executive Board Member.

12      30.    The decision to file a lawsuit which requires notification of any Executive Board

13  Meeting, and a vote at an officially noticed meeting for "approval of any action", was a violation

14  of the USCF by-laws.

15      31.    On June 25, 2008, plaintiffs filed the present lawsuit in San Francisco Superior

16  Court which includes causes of action for fraud under CA Penal Code § 502(c) and (e), violation

17  of the Computer Fraud and Abuse Act, among others. Plaintiffs filed the suit against doe

18  defendants only despite their intent, all along, to amend the lawsuit to name Ms. Polgar as a

19  defendant. The suit against does was a pretextual attempt to obtain private and confidential

20  documents related to Ms. Polgar's credit card and internet accounts without providing her the

21  opportunity to retain counsel or to object.

22      32.    Pursuant to the above-mentioned orders to conduct early discovery, plaintiffs

23  issued subpoenas to American Express and Comcast Cable, among others. In violation of CA

24  law defendants did not timely notify Ms. Polgar if the issuance of those subpoenas.

25      33.    On November 17, 2008, Ms. Polgar's counsel requested indemnification under

26  Article IX, Section 12 of the by-laws through counter-defendant Bill Hall, USCF Executive

27  Director.

28

18

34.     Without providing any basis, Kronenberger and other counter-defendants effectively denied Ms. Polgar's request by not substantively responding to the request and by not conducting a vote of the Board of Delegates, by conducting a vote of disinterested directors, or by appointing independent legal counsel to offer a written opinion, as required by the Bylaws.

35.     Counter-defendants circumvention and misuse of established organizational procedure and the courts, all described above, were done with the intent to defame, harass, and ultimately force Ms. Polgar and her husband from the Executive Board.

36.     Ms. Polgar suffered, and continues to suffer harm as a direct result of defendants' actions described above.

### SECOND CAUSE OF ACTION:
### BREACH OF FIDUCIARY DUTY
**(Against Counter-Defendants Bill Goichberg, Bill Hall, Randy Bauer, Randall Hough)**

37.     Defendant and counter-plaintiff Susan Polgar incorporate by reference paragraphs 1-36.

38.     At a November 4, 2007 Executive Board Meeting, counter-defendants authorized Kronenberger to create a legal subcommittee for purposes of investigating the Sloan allegations. However, the decision was made only after Ms. Polgar and Mr. Truong left the meeting to travel to a prior obligation.

39.     The decision to create a legal subcommittee without notifying two Executive of Board members of the vote, or providing them the opportunity to participate was a violation of the USCF by-laws.

40.     At the request of Kronenberger Mr. Truong provided confidential and personal information of both Mr. Truong and Ms. Polgar to the subcommittee and Kronenberger based on assurances that the information would be treated as confidential. On information and belief, Kronenberger then provided some of those documents to third parties.

41.     The disclosure of private information to third parties was done with the intent to defame, harass, and force the resignation of Ms. Polgar and Mr. Truong.

**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
**Case No. 3:08-cv-05126-MHP**

42.     Sometime prior to June 25, 2008, counter-defendants, purporting to represent the USCF, authorized Mr. Kronenberger to file a lawsuit on behalf of the USCF related to the alleged unlawful access to the email account of an Executive Board Member, and the alleged impersonation of Sam Sloan, a former Executive Board Member.

43.     The decision to file a lawsuit which requires notification of any Executive Board Meeting, and a vote at an officially noticed meeting for "approval of any action", was a violation of the USCF by-laws.

44.     On November 17, 2008, Ms. Polgar's counsel requested indemnification under Article IX, Section 12 of the by-laws through counter-defendant Bill Hall, USCF Executive Director.

45.     Without providing any basis, Kronenberger and other counter-defendants effectively denied Ms. Polgar's request by not substantively responding to the request and by not conducting a vote of the Board of Delegates, by conducting a vote of disinterested directors, or by appointing independent legal counsel to offer a written opinion, as required by the Bylaws.

46.     Counter-defendants circumvention and misuse of established organizational procedure and the courts, all described above, were done with the intent to defame, harass, and ultimately force Ms. Polgar and her husband from the Executive Board.

47.     Ms. Polgar, as well all members of the USCF, are shareholders in the corporation in the USCF.

48.     As members of the Executive Board Counter-Defendants owed a fiduciary to Ms. Polgar and the members of the USCF.

49.     A fiduciary has the duty to act with the utmost good faith and loyalty in managing the corporation and in the best interests of the corporation.

50.     Counter-Defendants acted on behalf of the USCF when they engaged in the above-described conduct.

51.     Counter-Defendants actions were not in good faith or in the best in interests of the corporation.

DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM
Case No. 3:08-cv-05126-MHP

1    52.    Ms. Polgar suffered, and continues to suffer harm as a direct result of defendants'

2   actions described above.

3

4                              **PRAYER FOR RELIEF**

5    53.    Wherefore, counter-plaintiff Susan Polgar respectfully requests that this Court

6   grant the following relief:

7    54.    Compensatory, general and special damages, in an amount to be determined at

8   trial against all counter-defendants.

9    55.    Punitive damages against all counter-defendants in an amount sufficient to deter

10   and make an example of defendants and in an amount to be determined at trial.

11   56.    Attorneys' fees and costs according to statute.

12   57.    Prejudgment interest at the maximum legal rate.

13   58.    Such other relief as the court deems just and proper.

14

15                             **DEMAND FOR JURY TRIAL**

16   Under Rule 38(b) of the Federal Rules of Civil Procedure and Civil Local Rules 3-6 of

17   the United States District Court for the Northern District of California, Susan Polgar hereby

18   demands a trial by jury of all issues properly triable by jury.

19

20   Dated:                              GONZALEZ & LEIGH, LLP

21

22                           By:  _/s/ Matt Springman_
                                  Matt Springman
23                                Attorneys for Defendant
                                  SUSAN POLGAR
24

25

26

27

28

────────────────────────────────────────
**DEFENDANT SUSAN POLGAR'S AMENDED ANSWER AND COUNTER-CLAIM**
Case No. 3:08-cv-05126-MHP

*Exhibit "B"*

1  **KRONENBERGER BURGOYNE, LLP**
   Karl S. Kronenberger (CA Bar No. 226112)
2  Jeffrey M. Rosenfeld (CA Bar No. 222187)
   150 Post Street, Suite 520
3  San Francisco, CA 94108
   Telephone: (415) 955-1155
4  Facsimile:  (415) 955-1158
   karl@KBInternetLaw.com
5  jeff@KBInternetLaw.com

6

7  Attorneys for Plaintiffs UNITED STATES OF
   AMERICA CHESS FEDERATION, INC. and
8  RANDALL D. HOUGH

9

10                  **UNITED STATES DISTRICT COURT**
11                  **NORTHERN DISTRICT OF CALIFORNIA**

12

13  **UNITED STATES OF AMERICA**          Case No. 3:08-CV-05126-MHP
    **CHESS FEDERATION, INC.**, *et al*,
14                                         **DECLARATION OF BILL HALL RE:**
            Plaintiffs,                    **A) COMPREHENSIVE**
15                                         **RATIFICATION BY USCF BOARD OF**
         v.                               **DELEGATES OF ALL ACTS OF**
16                                         **USCF EXECUTIVE BOARD, B)**
    **SUSAN POLGAR**, *et al.*,            **EXPULSION OF SUSAN POLGAR**
17                                         **FROM THE U.S. CHESS**
            Defendants.                    **FEDERATION, AND C) DENIAL OF**
18                                         **POLGAR'S INDEMNIFICATION**
                                           **REQUESTS, IN RESPONSE TO**
19                                         **CIVIL MINUTE ORDER DATED**
                                           **APRIL 13, 2009**
20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

I, Bill Hall, declare as follows:

1.      I serve as the Executive Director of the United States of America Chess Federation, Inc. ("USCF"), a party to this action.  I also serve as the corporate secretary for the USCF.  Unless otherwise stated, I have personal knowledge of the facts stated herein.

2.      On April 13, 2009, the Court ordered the USCF "to produce evidence re votes/authorizations/minutes/bylaws by 4/27/2009".   On April 27, 2009, the USCF provided the Court with documents reflecting the authorizations and later ratifications of the USCF Executive Board relating to the case at hand.  Thereafter, the USCF Board of Delegates held its annual meeting and voted on ratification on the exact matters the Court requested in its initial minute order.  This declaration summarizes such new evidence, with attachments.

3.      Pursuant to USCF Bylaws Article V, the USCF is governed by the Board of Delegates, which is composed of the Executive Board members, the Delegates at Large, and 125 Delegates.  Pursuant to USCF Bylaws Article VI, Section 2, the seven-person Executive Board manages USCF's affairs between meetings of the Board of Delegates.  The Board of Delegates meets annually for the purposes of, among other things, ratifying the acts of the USCF Executive Board made between meetings of the Board of Delegates.

4.      On August 8-9, 2009, the Board of Delegates held its annual meeting in Indianapolis, Indiana.   At the meeting, the Executive Board informed the Board of Delegates about a) multiple Executive Board ratification resolutions made over the past year, b) the allegations by Polgar that that Executive Board members and their counsel had acted in an *Ultra Vires* manner, c) the allegations by Polgar that Executive Board members were "interested parties" and thus should not manage litigation involving Polgar, d) the allegations by Polgar that conflicts of interest of USCF's counsel had not been properly disclosed and waived, and e) a significant amount of other background information about the litigation involving the USCF and Polgar pending in multiple states.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. 3:08-CV-05126-MHP                    1              DECL. OF B. HALL RESPONSE TO
                                                             CIVIL MINUTE ORDER

1   Attached at **Exhibit A** is an Executive Board ratification motion dated August 6, 2009

2   which were provided to the Board of Delegates.   Also provided to the Board of

3   Delegates was an Executive Board motion dated April 18, 2009 [D.E. 97-2, Ex. D].

4   Attached to the August 6, 2009 ratification in **Exhibit A** are pleadings and briefing

5   distributed to the delegates, which included, from the case at hand, Polgar's Motion for

6   Summary Judgment [D.E. 121-1], Polgar's Reply in Support of her Motion for Summary

7   Judgment [D.E. 151], Polgar's Motion to Disqualify Karl Kronenberger and Kronenberger

8   Burgoyne, LLP [D.E. 112], Polgar's Answer and Counterclaims [D.E. 114]; from the case

9   of *Polgar v. United States of America Chess Federation Inc et al.*, 5:08-cv-00169-C

10   (District Court for the Northern District of Texas), Polgar's First Amended Complaint

11   [D.E. 91]; from the case of *United States Chess Federation, Inc. v. Susan Polgar and*

12   *Paul Truong*, 2008MR000751 (Circuit Court for the Seventh Judicial Circuit, Sangamon

13   County, Illinois), Polgar's and Truong's Motion to Dismiss Complaint.

14          5.       On August 8, 2009, the Board of Delegates fully ratified all of the prior acts

15   of Executive Board, which included all prior acts embodied in Executive Board

16   ratification resolutions and minutes, with a vote of approximately 90% voting to ratify.

17   After this ratification, a USCF delegate made a motion to reconsider the ratification, to

18   ensure that all delegates had had time to fully review all of the materials involving the

19   litigation between Polgar and the USCF, which included, among many other documents,

20   Polgar's Motions, Polgar's First Amended Complaint in the Texas action, and Polgar's

21   motion to dismiss the complaint in the Illinois action.[1]   Later that day, the Board of

22   Delegates **_unanimously ratified_** all prior acts of the Executive Board, with one delegate

23   abstaining.   At the meeting, over 80 delegates were seated, and 48 were needed for a

24   quorum.

25

26   [1] The Texas action is entitled, *Polgar v. United States of America Chess Federation Inc et al.*, 5:08-cv-00169-C (District Court for the Northern District of Texas), and the Illinois

27   action is entitled, *United States Chess Federation, Inc. v. Susan Polgar and Paul Truong*, 2008MR000751 (Circuit Court for the Seventh Judicial Circuit, Sangamon

28   County, Illinois)(this case was removed and thereafter remanded to state court).

Case No. 3:08-CV-05126-MHP                    2              DECL. OF B. HALL RESPONSE TO
                                                            CIVIL MINUTE ORDER

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

6.    On July 6, 2009, the Executive Board passed two resolutions entitled Resolution Directing Notification of Possible Membership Suspension or Revocation of Susan Polgar and Paul Truong, respectively, and served these resolutions on Polgar and Truong the next day.  Attached to each resolution were charges and specifications detailing the basis for each suspension / revocation hearing.  On August 7, 2009, the USCF held a hearing regarding possible suspension or revocation of Polgar and Truong's membership, which was attended by Polgar, Truong, and their counsel, Whitney Leigh.  After hours of argument and deliberation, the Executive Board voted to revoke the membership of Polgar and Truong, and the Executive Board provided a report to the Board of Delegates of this hearing and vote.  Attached as **Exhibit B** is the report to the Executive Board to the Board of Delegates regarding this hearing.

7.    On August 8, 2009, Polgar and Truong had the opportunity to appeal the revocation of their membership to the full Board of Delegates.  In this closed-session appeal, Polgar, Truong and their attorney were given one hour and 15 minutes to present their case.  After deliberation, the Board of Delegates denied the appeals of Polgar (55 votes in favor of denying the appeal, 21 votes in favor of granting the appeal, with 5 abstentions) and Truong (58 votes in favor of denying the appeal, 18 votes in favor of granting the appeal, with 5 abstentions).  This denial of Polgar's and Truong's appeals affirmed the revocation of their USCF memberships and all rights and privileges associated with membership, including their ability to sit on the Executive Board.  Accordingly, the expulsion of Polgar and Truong from the USCF removed Polgar and Truong from the Executive Board.

8.    The USCF plans to hold a special election in January 2010 in order to elect two new members to the Executive Board.

9.    Polgar has made requests of the USCF for indemnification on November 19, 2008 and December 2, 2008, related to the case at hand.  On August 8, 2009, the Board of Delegates ***unanimously*** denied Polgar's requests for indemnification.

10.    The USCF held three days of committee meetings leading up to the

1   delegates meeting on August 8-9, 2009.  As part of these meetings, the USCF held a

2   three-hour "Legal Issues Workshop" on August 6, 2009 to discuss in detail various legal

3   issues.   This workshop was well attended by USCF delegates, and the topic of the

4   Polgar litigation dominated the discussion.  For unknown reasons, Polgar and Truong

5   did not attend this important workshop, which was attended by all other Executive Board

6   members.   Delegates had the opportunity to question, and did indeed question, the

7   Executive Board about details of the Polgar litigation.   Further, before any vote on

8   ratification, starting on August 6, 2009, the USCF distributed to the delegates actual

9   copies of Polgar's pleadings and briefing (as detailed above in paragraph 4), wherein

10  she made her arguments about *Ultra Vires* acts, self-interested Executive Board

11  members, among many other Polgar accusations.

13      I declare under penalty of perjury under the laws of the United States of America

14  that the foregoing is true and correct and that this Declaration was executed on August

15  14, 2009, in Crossville, Tennessee.

16                                          s/Bill Hall
17                                          Bill Hall
                                            Secretary of USCF

18  **ATTESTATION OF CONCURRENCE IN FILING**

19      Pursuant to the General Order No. 45, section 45 X(B), for The United States

20  District Court for the Northern District of California, I, Karl S. Kronenberger, hereby attest

21  that the concurrence to the filing of this DECLARATION OF BILL HALL RE: A)

22  COMPREHENSIVE RATIFICATION BY USCF BOARD OF DELEGATES OF ALL ACTS

23  OF USCF EXECUTIVE BOARD, B) EXPULSION OF SUSAN POLGAR FROM THE

24  U.S. CHESS FEDERATION, AND C) DENIAL OF POLGAR'S INDEMNIFICATION

25  REQUESTS, IN RESPONSE TO CIVIL MINUTE ORDER DATED APRIL 13, 2009 has

26  been obtained from Bill Hall who has provided the conformed signature above.

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. 3:08-CV-05126-MHP              4           DECL. OF B. HALL RESPONSE TO
                                                    CIVIL MINUTE ORDER

*Exhibit "C"*

1  **KRONENBERGER BURGOYNE, LLP**
   Karl S. Kronenberger (CA Bar No. 226112)
2  Jeffrey M. Rosenfeld (CA Bar No. 222187)
   150 Post Street, Suite 520
3  San Francisco, CA 94108
   Telephone: (415) 955-1155
4  Facsimile: (415) 955-1158
   karl@KBInternetLaw.com
5  jeff@KBInternetLaw.com

6
7  Attorneys for Plaintiffs UNITED STATES OF
   AMERICA CHESS FEDERATION, INC. and
   RANDALL D. HOUGH
8

9

10
                    **UNITED STATES DISTRICT COURT**
11                **NORTHERN DISTRICT OF CALIFORNIA**

12
   **UNITED STATES OF AMERICA**              Case No. 3:08-CV-05126-MHP
13  **CHESS FEDERATION, INC.,** *et al,*

14          Plaintiffs,                       **DECLARATION OF BILL HALL IN**
                                              **SUPPORT OF ANTI-SLAPP MOTION**
15      v.

16  **SUSAN POLGAR,** *et al.,*

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

*KRONENBERGER BURGOYNE, LLP*
*150 Post Street, Suite 520*
*San Francisco, CA 94108*
*www.KBInternetLaw.com*

Case3:08-cv-05126-MHP  Document203  Filed08/24/09  Page34 of 45

I, Bill Hall, declare as follows:

 1.  I serve as the Executive Director of the United States of America Chess Federation, Inc. ("USCF"), a party to this action. I also serve as the corporate secretary for the USCF. Unless otherwise stated, I have personal knowledge of the facts stated herein.

 2.  Randall Hough did not run for reelection to the Executive Board, and accordingly his term ended on August 9, 2009. The Board of Delegates ratified all conduct by the Executive Board during Randall Hough's tenure.

 3.  The allegation in Polgar's counterclaims that, "[Counter-Defendants] filed the suit against doe defendants only despite their intent, all along, to amend the lawsuit to name Ms. Polgar as a defendant," is false. Neither I, nor the USCF, nor any of the counter-defendants or third party defendants, had any intent to name Polgar at the time this lawsuit was filed. After the USCF conducted discovery, which was obviously after the filing of the lawsuit, the USCF discovered that Gregory Alexander was responsible for gaining unauthorized access to Randall Hough's email account. This was new information that was gained after the filing of the doe lawsuit.

 4.  Neither the USCF, nor any of the counter-defendants or third party defendants in this action, ever actually obtained information from American Express pursuant to subpoenas issued in this case. There was a subpoena issued to American Express in the Texas litigation by the USCF, to which American Express has responded.

 5.  The salaries of employees of Texas Tech University are published by the university for public review. Thus, Texas Tech University has published the following: TRUONG, HOAINHAN MINH $75,000.00 UNIT ASSOCIATE DIRECTOR, as published by, among other publishers, a media outlet in Lubbock, Texas (http://newsradio1420.com/public/ttuSalaryList2008.html; see also, http://cid-86b79dba52fa4b4e.skydrive.live.com/self.aspx/Public%20Record/Texas%20Tech%20campus%20employees%20payscales.XLS). Moreover, according to Texas Tech

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. 3:08-CV-05126-MHP  1  **DECL. OF B. HALL ISO ANTI-SLAPP MOTION**

1  University's Office of Communications, Truong's start date as June 1, 2007.  See,

2  http://www.lubbockonline.com/stories/031109/loc_407742251.shtml.

3

4      I declare under penalty of perjury under the laws of the United States of America

5  that the foregoing is true and correct and that this Declaration was executed on August

6  24, 2009, in Crossville, Tennessee.

7                                    s/Bill Hall

                                   Bill Hall

8                                  Secretary of USCF

9

10                **ATTESTATION OF CONCURRENCE IN FILING**

11      Pursuant to the General Order No. 45, section 45 X(B), for The United States

District Court for the Northern District of California, I, Karl S. Kronenberger, hereby attest

12  that the concurrence to the filing of this DECLARATION OF BILL HALL IN SUPPORT

13  OF ANTI-SLAPP MOTION has been obtained from Bill Hall who has provided the

14  conformed signature above.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. 3:08-CV-05126-MHP        2        **DECL. OF B. HALL ISO ANTI-SLAPP MOTION**

*Exhibit "D"*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA CHESS
FEDERATION, INC., and RANDALL D.
HOUGH,

    Plaintiffs,

  v.

SUSAN POLGAR and GREGORY
ALEXANDER,

    Defendants.

_____/

No. C 08-05126 MHP

**AMENDED MEMORANDUM & ORDER**[1]

**Re: Defendant Polgar's Motion for Leave to
Amend Answer and Assert Counterclaim**

  The United States of America Chess Federation, Inc. ("USCF") and Randall D. Hough
brought this action against Susan Polgar and Gregory Alexander, advancing claims related to alleged
incidents of unauthorized entry into Hough's electronic mail account. Now before the court is
defendant Polgar's motion for leave to amend her answer and assert counterclaims against plaintiff
Hough and several other individuals. Having considered the arguments and submissions of the
parties, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

  Plaintiffs filed their complaint in the Superior Court for the State of California, County of
San Francisco, on October 24, 2008. Defendants removed the case to this court on November 10,
2008. Defendant Polgar filed her answer, which contained eight affirmative defenses and no
counterclaims, on December 1, 2008. Docket No. 13. On January 19, 2009, Polgar moved to amend

1   her answer to add an affirmative defense of ultra vires act and a counterclaim for abuse of process.

2   Plaintiffs opposed the motion, and Polgar, in her reply brief, requested leave to add a second

3   counterclaim, for breach of fiduciary duty.  The abuse of process counterclaim is directed at Karl S.

4   Kronenberger, who is counsel of record for the USCF in this case, and five USCF executive board

5   members: Bill Goichberg, Bill Hall, Randy Bauer, Jim Berry and plaintiff Randy Hough.  The

6   breach of fiduciary duty counterclaim is directed at Goichberg, Hall, Bauer and Hough.  Polgar

7   argues that she can and must counterclaim against individual board members rather than the USCF

8   because these board members do not have the authority to bring suit on behalf of the USCF, having

9   purportedly acted beyond the scope of their authority as provided by the USCF's bylaws.

10

11   **LEGAL STANDARD**

12   I.      Leave to Amend

13          The court should freely give leave to amend pleadings when justice so requires.  Fed. R. Civ.

14   P. 15(a)(2).  This policy is "to be applied with extreme liberality."  Eminence Capital LLC v.

15   Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted).  The Ninth Circuit has stressed

16   that, in considering motions to amend, district courts must bear in mind the underlying purpose of

17   Rule 15, which is to "facilitate decisions on the merits, rather than on the pleadings or

18   technicalities."  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) (citation omitted).

19   Nevertheless, a district court does not abuse its discretion in denying a motion to amend when the

20   movant has presented no new facts and provided no satisfactory explanation for her failure to

21   develop her contentions in her original pleading.  Id. (citation omitted).  In assessing the propriety

22   of a motion for leave to amend, the court considers five factors: (1) bad faith; (2) undue delay;

23   (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has

24   previously amended her pleading.  Futility alone can justify the denial of a motion for leave to

25   amend.  See id., citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

26

27

28

United States District Court
For the Northern District of California

II.   Counterclaims

"The court may permit a party to amend a pleading to add a counterclaim if it was omitted through oversight, inadvertence, or excusable neglect or if justice so requires." Fed. R. Civ. P. 13(f). A counterclaim is not compulsory unless, among other things, it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). The same factors that are used to assess the propriety of granting leave to amend a pleading generally also apply to amendments to pleadings that assert counterclaims. See Nunes, 375 F.3d at 808. As is true in relation to any claim, the court must also have subject matter jurisdiction over the counterclaim. "Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1 [of the United States Constitution]. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." Williams v. United Airlines, Inc., 500 F.3d 1019 (9th Cir. 2007), quoting Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 649, 701 (1982).

DISCUSSION

I.   Affirmative Defense

Defendant Polgar has given no specific reason why she was unaware at the time of her initial answer of the factual basis for an abuse of process claim. However, she has filed her motion at a very early stage in the proceedings, before issuance of a scheduling order or start of discovery. Plaintiffs cannot claim that they are unfairly prejudiced by amendment at this time. This is also the first request to amend filed by Polgar. Finally, the court cannot say that amending the answer to include the ultra vires act affirmative defense would be futile. Polgar's answer alleges in detail how the USCF bylaws operate to restrict the executive board's authority, and plaintiffs do not materially dispute Polgar's characterization of those bylaws' effect. In light of the "extreme liberality" with which the Ninth Circuit has instructed district courts to view requests to amend pleadings, see

United States District Court
For the Northern District of California

3

1   Eminence Capital, 316 F.3d at 1051, granting the motion to amend the answer to include the

2   affirmative defense is warranted.

3

4   II.      Counterclaims

5          A.      Supplemental Jurisdiction

6          In addition to amending her answer defendant Polgar seeks to add two counterclaims, one for

7   abuse of process and another for breach of fiduciary duty, added at the time of filing her reply.  She

8   asserts these claims against one named plaintiff in this action and against a number of third parties

9   who are USCF executive board members and their attorney.   These claims are alleged under

10  California state law and asserted under this court's supplemental jurisdiction.  The complaint in this

11  action is premised on three federal statutory provisions.  Whether this court may exercise jurisdction

12  over the counterclaims is governed by section 1367 of Title 28.

13         Prior to the enactment of section 1367 in 1990, a substantial body of case law had evolved

14  regarding pendent claim and pendent party jurisdiction which the Supreme Court described as

15  "subtle and complex."  Moor v. County of Alameda, 411 U.S. 693, 715 (1973).  Section 1367

16  changed all of that by providing what had been lacking, a statutory grant of pendent or, thanks to

17  section 1367, what is now known as supplemental jurisdiction.  Section 1367 (a) provides as

18  follows:

19         ...in any civil action of which the district courts have original jurisdiction, the district
           courts shall have supplemental jurisdiction over all other claims that are so related to
20         claims in the action within such original jurisdiction that they form part of the same
           case or controversy under Article III of the United States Constitution. *Such*
21         *supplemental jurisdiction shall include claims that involve joinder or intervention*
           *of additional parties.* (Emphasis added)
22
           The critical inquiry is whether "the federal and state law claims 'derive from a
23
    common nucleus of operative fact' and comprise 'but one constitutional case.'"  Raygor v. Regents
24
    of the University of Minnesota, 534 U.S. 533, 539 (2002) (quoting United Mine Workers of America
25
    v. Gibbs, 383 U.S. 715, 725 (1966)).  This Circuit has stated that the constitutional standard
26
    articulated in Gibbs is the only limitation on supplemental jurisdiction under section 1367 in non-
27

28
                                                    4

United States District Court
For the Northern District of California

1    diversity cases, subsection (b) providing some limits on cases brought under the court's diversity

2    jurisdiction. Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1173-75 (9th Cir. 2002). Thus, the

3    question is whether the proposed counterclaims "share significant factual elements" such that they

4    are part of the same case or controversy. See, e.g., HB Gen'l Corp. v. Manchester Partners, L.P., 95

5    F.3d 1185, 1198 (3d Cir. 1996) (cited with approval in Mendoza, 201 F.3d at 1174).

6            The counterclaims asserted here involve, at least in part, activities that occurred after those

7    alleged in plaintiff's complaint. The abuse of process claims allege actions that were taken in

8    initiating this very action. The allegations in both the abuse of process and breach of fiduciary duty

9    claims describe a continuing stream of activities among various board members and others involved

10   in USCF. They involve many of the "same facts, occurrences, witnesses and evidence: as are

11   involved in the original complaint. See, e.g., Palmer v. Hosp. Auth., 22 F.3d 1559, 1567 (11th Cir.

12   1994). Even a "loose factual connection between the claims is generally sufficient." Ammerman v.

13   Sween, 54 F.3d 423, 424 (7th Cir. 1995) (citing 13B Charles A. Wright, Arthur R. Miller & Edward

14   H. Cooper, Federal Practice and Procedure, §3567.1, at 117 (2d ed. 1984)).

15           Defendant's counterclaims name as counter-defendants not only one of the plaintiffs in the

16   original action, but a number of third parties who may or may not be diverse since there are no

17   citizenship allegations made with respect to them. Prior to the adoption of section 1367 these were

18   referred to as pendent parties and treated more strictly than pendent claims since there was not an

19   independent basis to assert jurisdiction over persons not already parties to the original action.

20   Again, in Mendoza v. Zirkle this Circuit found that its earlier holding proscribing pendent party

21   jurisdiction "does not survive the 1990 passage of §1367." 301 F.3d at 1173. The Mendoza court

22   noted that in Ayala v. United States, 550 F.2d 1196 (9th Cir. 1977), "we held that federal courts

23   were without power to exercise pendent party jurisdiction." Id. The Circuit then pointed to the

24   Supreme Court's 2002 decision in Raygor v. Regents as "putting to rest" the restriction on pendent

25   party jurisdiction, id., instructing that if the district court finds the counterclaims meet the Gibbs

26   standard the court has the power to exercise supplemental jurisdiction under section 1367.

27

28

                                                     5

1      Other circuits agree, finding that section 1367 applies even to claims asserted by or against

2 additional parties such as a "*defendant's* counterclaims against non-diverse parties joined as third-

3 party defendants to the counterclaims." HB Gen'l Corp., 95 F.3d at 1197-98; see also Hinson v.

4 Norwest Financial S.C., Inc., 239 F.3d 611, 615 (4th Cir. 2001); Ammerman v. Sween, 54 F.3d at

5 424; Palmer v. Hosp. Auth., 22 F.3d at 1566-67. The only limitation is where jurisdiction over the

6 original claim is based on diversity and additional claims are brought by the *plaintiffs* in the original

7 complaint, not defendants asserting counter-claims or third-party claims.

8      Thus, the only question is whether the counter-claims or third-party claims form part of the

9 same case or controversy. If so, the court has the power to exercise jurisdiction but may decline to

10 exercise that jurisdiction "in the interest of judicial economy, convenience, fairness, and comity."

11 Mendoza v. Zirkle, 301 F.3d at 1174. As explained above, given the nature of defendant Polgar's

12 claims and their relationship to the claims of the original complaint in this action, the court finds that

13 it has the power to assert supplemental jurisdiction over the counter-claims and third-party claims

14 and should use its discretion in favor of jurisdiction. The facts, parties, witnesses and discovery will

15 be of a piece with the original complaint. The activities are a continuum with those alleged in the

16 original complaint. The duplication of litigation will be avoided and greater fairness achieved with

17 the entire dispute among the parties in one forum. Comity is not jeopardized since none of the

18 supplemental parties have a right to expect a state court to adjudicate these disputes and the State of

19 California has no particular interest in the ongoing dispute.

20      This does not end the matter, however, with respect to defendant Polgar's motion to amend.

21 While the motion to amend the answer is granted and the court has satisfied itself that it has

22 jurisdiction to and should entertain the counterclaims, the court must review the proposed

23 counterclaims under Rule 15(a) standards.

24

25      B.    Abuse of Process

26      Defendant Polgar alleges that the USCF executive board members and their attorney abused

27 the judicial process by, among other things, falsely representing to the Superior Court that they did

28

United States District Court
For the Northern District of California

1   not know whom to name as defendants in the instant suit.  This alleged misrepresentation, according

2   to Polgar, allowed plaintiffs to obtain a subpoena from the court and thereby gain access to Polgar's

3   private records, which Polgar maintains was plaintiffs' actual aim.

4         Abuse of process is a common law cause of action.  A claimant must establish that a

5   defendant "misused the machinery of the legal system for an ulterior motive."  Competitive

6   Technologies v. Fujitsu Ltd., 286 F. Supp. 2d 1118, 1155 (N.D. Cal. 2003) (Spero, Mag. J.) (internal

7   quotation marks omitted), citing ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1014

8   (2001).  To succeed in an action for abuse of process, a litigant must establish that the defendant

9   (1) contemplated an ulterior motive in using the judicial process, and (2) committed a willful act in

10  the use of that process not proper in the regular conduct of the proceedings.  Estate of Tucker ex rel.

11  Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1037 (9th Cir. 2008), quoting Oren Royal Oaks

12  Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal.3d 1157, 1168 (1986).

13        Polgar's allegations suffice to state an abuse of process claim; however, they state much

14  more.  They include "immaterial" and "impertinent" allegations having nothing to do with the actual

15  abuse of process claim.  Pursuant to Federal Civil Procedure Rule 12(f) the court may, and does, on

16  its own motion strike such allegations.   Therefore, references to defendant Polgar's self-proclaimed

17  reputation, and allegations about the conduct of the counter-defendants and third parties having

18  nothing to do with the actual abuse of process claim, are stricken.

19

20        C.    Breach of Fiduciary Duty

21        Defendant Polgar attempts to add a breach of fiduciary duty claim by way of her reply

22  memorandum.  This claim suffers from some of the same problems as the abuse of process claim.

23  Thus, allegations unrelated to the breach of fiduciary duty claim are stricken pursuant to Rule 12(f)

24  However, this claim suffers more fundamental flaws.  Nowhere in the claim does defendant

25  spell out what duty is owed to her and in what capacity that duty arises.  The court notes that it is

26  doubtful plaintiff could allege a fiduciary duty that is owed by any of the counter-defendants or third

27  party defendants.  Normally, officers and directors of a corporation owe a duty to the corporation

28

7

United States District Court
For the Northern District of California

1   itself, rather than to individual shareholders, members or other directors.[2]   Nonetheless, the court

2   will allow defendant Polgar to amend this counterclaim, if she can do so, to make the necessary duty

3   and breach allegations now absent.

4

5   <u>CONCLUSION</u>

6          Defendant Polgar's motion to amend her answer to add an affirmative defense of ultra vires

7   is GRANTED.  Defendant Polgar's motion to amend her answer to add two counterclaims is

8   GRANTED with respect to the abuse of process claim and DENIED with leave to amend as to the

9   breach of fiduciary duty claim.  The court further strikes "immaterial" and "impertinent" language

10  from the abuse of process claim and the breach of fiduciary duty claim.

11         The court will allow plaintiff to amend her counterclaims to clean up the pleadings in

12  accordance with the preceding order striking allegations under Rule 12(f) and to allege a basis for

13  her breach of fiduciary duty claim.  Plaintiff shall file her amended counterclaim(s) within thirty (30)

14  days of the date of this order and counter-defendants and third-party defendants shall file their

15  answers within thirty (30) days thereafter.

16

17         IT IS SO ORDERED.

18

19

20  Dated: May 4, 2009

                                    MARILYN HALL PATEL
21                                  United States District Court Judge
                                    Northern District of California

22

23

24

25

26

27

28

8

<i>United States District Court</i>
<i>For the Northern District of California</i>

1

### ENDNOTES

2  1.  An earlier version of this memorandum and order was entered on April 13, 2009.  Docket No. 89.

3  This amended memorandum and order merely makes minor corrections to the document's format and punctuation.  It makes no substantive changes.

4  2.  The California cases that have found a breach of a fiduciary duty to an individual shareholder have

5  typically involved allegations of majority shareholder self-dealing that diminishes the value of minority shareholders' shares.  See, e.g., Jones v. H. F. Ahmanson & Co., 1 Cal.3d 93 (1969).  This is not such a case.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California