**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Plaintiffs UNITED STATES OF
AMERICA CHESS FEDERATION, INC. and
RANDALL D. HOUGH

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA CHESS FEDERATION, INC.,** *et al,* <br><br> Plaintiffs, <br><br> v. <br><br> **SUSAN POLGAR,** *et al.*, <br><br> Defendants. <br><br>─────────────────────── <br><br> **SUSAN POLGAR,** <br><br> Counter-Plaintiff, <br><br> v. <br><br> **BILL GOICHBERG, BILL HALL, RANDY BAUER, JIM BERRY, KARL KRONENBERGER,** <br><br> Third Party Defendants, <br><br> v. <br><br> **RANDALL HOUGH,** <br><br> Counter-Defendant. | Case No. 3:08-CV-05126-MHP <br><br> **PLAINTIFFS UNITED STATES OF AMERICA CHESS FEDERATION, INC. AND RANDALL D. HOUGH'S OPPOSITION TO DEFENDANT POLGAR'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON AN INVALID ASSERTION OF THE ATTORNEY-CLIENT PRIVILEGE** <br><br> DATE:  September 14, 2009 <br> TIME:  2:00 p.m. <br> CTRM:  15, 18th Floor <br> JUDGE:  The Hon. Marilyn H. Patel |

**PLAINTIFFS' OPPOSITION TO MTN TO COMPEL**

*(Vertical text in left margin:)* KRONENBERGER BURGOYNE, LLP   150 Post Street, Suite 520   San Francisco, CA 94108   www.KBInternetLaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

# TABLE OF CONTENTS

I. Introduction...................................................................................................... 1

II. Argument........................................................................................................ 3

    A. If the Court grants Plaintiffs' Anti-SLAPP motion, most of Polgar's motion to compel will be moot or will seek documents not relevant to Plaintiffs' claims.. 3

    B. But for the Defendants' misconduct, the emails would not have been disclosed ........................................................................................................ 4

        i. Polgar and Alexander stole the emails at issue ...................................... 4

        ii. Polgar has engaged in a "Scheme" to make it appear that third parties stole and disclosed the USCF's communications, when in fact she is behind the misconduct .......................................................................... 5

    C. USCF used all reasonable means to protect the privileged materials both before and after the theft.................................................................................. 8

    D. Polgar's arguments fail regarding each of the categories of confidential emails that she seeks to compel................................................................................ 11

        i. The "Next Steps Email" was stolen and only later disclosed due to the misconduct of Polgar ...................................................................... 11

        ii. Polgar is not entitled to pre-November 4, 2007 documents.................. 12

        iii. The USCF did not disclose opinion of counsel regarding indemnification.................................................................................. 13

        iv. The USCF sought to destroy the two emails attached to the Sam Sloan complaint ....................................................................................... 14

        v. The attorney-client privilege protects communications made subject to a joint defense agreement .................................................................. 15

        vi. Polgar's generalized "fraud" argument must fail ................................. 17

III. Conclusion................................................................................................... 17

**TABLE OF AUTHORITIES**

*Aiken v. Texas Farm Bureau Mutual Insurance Company, et al.,* 151 F.R.D. 621, 624
(E.D. Tex. 1993) ................................................................................................. 16

*Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 665-66 (9th Cir. 2003) ................................. 4

*In re Auclair,* 961 F.2d 65, 69 (5th Cir. 1992) .................................................................. 16

*In re LTV Securities Litigation,* 89 F.R.D. 595, 604 (N.D. Tex. 1981) ............................ 16

*In re Skiles*, 102 S.W.3d 323, 326 (Tex.App.-Beaumont 2003) ....................................... 16

*Triple A Machine Shop, Inc. v. State of California,* 213 Cal. App. 3d 131, 144 (1989). ... 4

**Statutes**

Cal. Civ. Code §425.16 ("Anti-SLAPP statute") ........................................................ *passim*

TEX.R. EVID. 503(b)(1)(C) ............................................................................................ 16

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Plaintiffs United States of America Chess Federation ("USCF") and Randall D. Hough ("Hough") (collectively, "Plaintiffs") hereby oppose Defendant Susan Polgar ("Polgar")'s Motion to Compel Production of Documents Withheld on an Invalid Assertion of the Attorney Client Privilege (the "Motion").

## I.   INTRODUCTION

Over 3,000 emails were stolen from Plaintiffs.  Many of these emails contained highly sensitive, attorney-client privileged communications.  Upon the commencement of Polgar's Texas lawsuit, and again upon Polgar being named in this lawsuit, the USCF put Polgar's counsel on notice that these attorney-client privileged communications had been stolen.  The USCF even provided Polgar with affidavits describing the theft of the emails and explaining that none of the recipients has disclosed the emails.  The USCF repeatedly demanded that Polgar's counsel turn over the stolen communications and delete all copies in their possession.  Moreover, there could have been **no misunderstanding** by Polar and her counsel about the nature of the stolen emails. The faces of the documents clearly show that the documents are privileged communications. Moreover, Polgar's business associate, Gregory Alexander, has been criminally indicted for the theft of these emails.

Despite this knowledge by Polgar and her counsel, Polgar has continually and in bad faith disclosed portions of these stolen, privileged emails throughout this litigation. Instead of waiting for a judicial determination of privilege related to the emails, counsel intentionally and repeatedly disseminated highly sensitive documents over the objections of the USCF.  This misconduct is simply inexcusable.  The Court should impose the most severe sanction available on Polgar and her counsel, to punish this egregious misconduct.

To cover up their misconduct, Polgar and Alexander ("Defendants"), and their civil defense counsel, created a straw man scheme (hereinafter, the "**Scheme**") to make it appear that persons other than Polgar and Alexander had stolen and later disclosed USCF emails.  The Scheme involved anonymously posting the stolen emails to the

1

**PLAINTIFFS' OPPOSITION TO MTN TO COMPEL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Internet, printing pages from such website, then deleting content from such website, and thereafter submitting the printouts to the Court on a theory that privilege has been waived.  Clumsy written admissions by Polgar's counsel serve as an incontrovertible admission to this Scheme, as detailed below.  The Court should impose the heaviest sanction possible on Polgar due to her intentional interference with her adversary's attorney client relationship.

Making a bad situation worse, the statements in Polgar's Motion are highly misleading.  Of the over 3,000 emails stolen, only <u>two</u> privileged emails were attached to Mr. Sloan's Texas counterclaims, and Polgar has not used either of those emails in her arguments.  Polgar then implies that **<u>all</u>** of USCF's counsel's emails had been posted to the ECF-Pacer system by Mr. Sloan, thus destroying privilege across the board, despite the fact that only <u>two</u> emails have been attached to court filings and despite the fact that the USCF has requested that the court in Texas remove these two emails from the ECF-Pacer system.

Further, Polgar has produced multiple versions of a stolen email (the so-called, "Next Steps" email) from USCF counsel to the USCF Legal Subcommittee.  In Polgar's versions of the Next Steps email, the date has been altered, the subject line has been changed, the sender and recipients have been masked, and content has actually been deleted from the email.  Polgar's first story is that she, and her counsel, pursuant to the Scheme, discovered the Next Steps email on a blog, even though, at the time of Polgar's statement, the content had been deleted.  Now Polgar's counsel has changed the story and claims that Polgar got the Next Steps email at a certain Google Groups hyperlink on the Internet, even though Polgar admits that the document no longer exists at that link.  Importantly, no one has seen this stolen email on the Internet other than Polgar, and she does not even bother to claim that the Next Steps email has been intentionally or negligently disclosed by the USCF.  Despite Polgar's complete lack of any basis for claiming waiver of privilege of the Next Steps email, and despite her and her counsel being on notice that such email was stolen, Polgar has repeatedly disclosed

**PLAINTIFFS' OPPOSITION TO MTN TO COMPEL**

this email in court filings, over the objection of USCF counsel.  This conduct must be sanctioned by the Court.

Polgar also makes a variety of other arguments about privilege waivers for other categories of documents.   Polgar a) objects to privilege under a joint defense agreement regarding communications between the USCF and persons Polgar has sued in Texas; b) objects to the assertion of privilege regarding communications prior to the formation of the Legal Subcommittee, despite the multiple threats by Polgar to sue the USCF prior to the formation of such committee; and c) objects to the assertion of privilege concerning communications between Illinois counsel and the USCF about indemnification, due to a comment made in the case at hand.   These arguments demonstrate a desperate attempt by Polgar to give up evidence for her SLAPP counterclaims where none exists.  There is no evidence of any waiver of privilege, and the Court should accordingly deny Polgar's Motion.

## II.    ARGUMENT

### A. If the Court grants Plaintiffs' Anti-SLAPP motion, most of Polgar's motion to compel will be moot or will seek documents not relevant to Plaintiffs' claims.

On August 24, 2009, Plaintiff Hough and the third party defendants in this case filed an anti-SLAPP motion to strike Polgar's counterclaims.  In accordance with Code of Civil Procedure section 425.16(g), and in the interest of judicial economy, Plaintiffs request that the Court refrain from ruling on the evidentiary issues in Polgar's Motion.  If the Court grants Plaintiff's anti-SLAPP motion, the permissible discovery for Polgar will be greatly limited.

The significance of these anti-SLAPP motions has escalated due to the USCF Board of Delegates' recent actions.  Specifically, the Delegates recently a) unanimously ratified the prior actions of the Executive Board concerning this litigation, and b) unanimously denied Polgar's indemnification request, which largely if not entirely moots Polgar's counterclaims.  Based on the Delegates' ratification, Plaintiff's anti-SLAPP motion has become irrefutable, and Polgar's evidentiary requests have become moot.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**B. But for the Defendants' misconduct, the emails would not have been disclosed.**

**i.      Polgar and Alexander stole the emails at issue.**

If it weren't for the theft of over 3,000 emails from the USCF and Randall Hough, the privileged emails at issue would never have been disclosed.  The theft was clearly wrong, and in fact criminal, as reflected in the indictment of Polgar's co-defendant, Alexander.  [D.E. 146.]  Further, the USCF has alleged that Polgar was Alexander's accomplice, as evidence demonstrates that Polgar directed Alexander to unlawfully access Hough's email account.[1]    Simply put, Polgar stole Plaintiffs' privileged communications.  Thus, Polgar cannot introduce this stolen evidence to support her claims.

Where a party's procurement of evidence is sufficiently egregious, a court can exclude the improperly obtained evidence or take other appropriate action to achieve justice and ameliorate the effect of the improper conduct.  *Triple A Machine Shop, Inc. v. State of California*, 213 Cal. App. 3d 131, 144 (1989).  The general rule regarding unlawfully obtained evidence in federal court is that such evidence will be excluded when the procurement of the evidence violated federal protections.  *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665-66 (9th Cir. 2003).

The simple fact that the emails at issue in Polgar's Motion were stolen should be dispositive by itself.  The fact that the Defendants are the ones actually responsible for the theft is an additional reason to reject Polgar's Motion.  Polgar cannot steal Plaintiffs' privileged emails, publish them to the world, and then claim that Plaintiffs' waived their privilege.

//

//

//

---

[1] Polar has admitted sending Alexander this message:  "BTW, I sent to the board a confidential letter about Hanken yesterday.  Can you check to see if Randy H forwarded to Hanken?"  (Declaration of Susan Polgar in Support of Defendant's Reply to Plaintiff's Opposition to Motion to Transfer, p. 7 at Ex. A [D.E. 81].)

**PLAINTIFFS' OPPOSITION TO MTN TO COMPEL**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

ii.   **Polgar has engaged in a "Scheme" to make it appear that third parties stole and disclosed the USCF's communications, when in fact she is behind the misconduct.**

To hide evidence of their misconduct, Defendants, and their civil defense counsel, created a straw man Scheme to make it appear that persons other than Polgar and Alexander had stolen and disclosed USCF emails.  The Scheme involved four steps.  First, the Defendants anonymously posted the stolen, privileged emails an Internet website.  Second, the Defendants, or their counsel, printed pages from this website, immediately after Defendants uploaded the stolen emails to the website.  Third, the Defendants deleted the stolen emails from the website.  Fourth, Defendants have submitted these printouts from the website to the Court as "evidence" that the stolen emails cannot be privileged because the emails were at one point on the "public" Internet.  The inherent flaws with Defendants' Scheme are apparent.  <u>But for</u> the wrongful actions of the Defendants (i.e. the theft of the emails and the lies about the emails that followed), the emails would never have left the possession of the USCF.  Moreover, the Defendants cannot create their own "evidence" of waiver by themselves posting the stolen emails to the Internet.

Despite their planning, Defendants Scheme was exposed in the fall of 2008.  Polgar filed her complaint in Texas on August 7, 2008.  On August 25, 2008, counsel for the USCF informed Polgar's Texas counsel that Polgar had referenced stolen, attorney-client privileged emails in Polgar's complaint in Texas.  The letter demanded that Polgar refrain from using all such privileged materials, and that Polgar segregate the same into sealed envelopes until the issue could be ruled upon by the judge.  (Declaration of Karl Kronenberger in Support of Opposition to Motion to Compel ("Kronenberger Decl.") ¶2, Ex. A.)

Polgar's counsel was indignant and responded by providing printouts from a blog entitled, http://uscf-said.blogspot.com ("Blog"), containing copies of the stolen emails.  (Kronenberger Decl. ¶3, Ex. B.)  At the time USCF counsel received these printouts, all content had been deleted from the Blog, and, to date, the USCF is aware of no persons

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

other than Polgar and her counsel who have seen the contents of the Blog live on the Internet.  (Declaration of Bill Hall in Support of Opposition to Motion to Compel ("Hall Decl.").  ¶2.)  Further, Polgar's counsel indignantly stated, on October 15, 2008:

> "I have previously provided to your office by private U.S. Mail, copies of internet postings which were posted publically all as reflected on the face of those documents.  My office obtained those copies of postings <u>solely</u> through the public internet posting and <u>after</u> they had been published to the world on the public internet site.  More particularly, the internet site was http://uscf-said.blogspot.com entitled, 'To Fall on the Ground From the Sky.'  Prior to the public posting, neither Susan Polgar nor Paul Truong had knowledge of the content of any of the referenced e-mails or information.  Likewise, at no time did either Susan Polgar or Paul Truong have access or privileges to enter any of the claimed secure e-mails sites (Kronenberger Decl. ¶4, Ex. C.) (emphasis added by Polgar counsel, not USCF counsel).

After receiving a copy of the printouts from the Blog, the USCF served a subpoena on Google, which owns the Blog service in question.  The subpoena asked Google to provide information on the identity of the owner of the Blog and when it was created.  Google responded with documents that show that the Blog was <u>created</u> on **July 31, 2008**, just seven days before Polgar filed her complaint in Texas.  (Declaration of Sumeena Birdi in Support of Plaintiffs' Opposition to Defendant Polgar's Motion to Compel ("Birdi Decl.") ¶2, Ex. A.)  More importantly, Polgar had possession of the stolen emails contained on the Blog dating back to **December 2007**, by Polgar's own admission.  (Motion, p. 14.)  Further, the USCF has presented evidence, which Polgar has not disputed, that Polgar had in her possession some of the stolen emails in January and June 2008, **months before the Blog was even created**.  (Hall Decl. ¶3.)  In fact, the final act that precipitated the filing of this lawsuit was when Polgar emailed the USCF Executive Board in June 2008, before the creation of the Blog, quoting from stolen emails.  (*Id.* ¶4.)  Defendants' Blog story simply doesn't hold water.

Casting further doubt upon the Scheme is the fact that the Blog has been forensically linked to Alexander, Polgar's business partner.  The USCF has produced evidence to Polgar, which Polgar fails to bring to the Court's attention, that the Blog was created using an IP address owned by the University of Washington and associated

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

with Alexander.  (Birdi Decl. ¶3, Ex. B-C.)  Alexander is an employee of the University of Washington (Kronenberger Decl. ¶5), and, as stated above, has been indicted for his theft of the emails.  (*See supra.*)  Alexander has admitted that Polgar "hired" him, (Kronenberger Decl. ¶6, Ex. L) and the USCF has alleged that Alexander is the business partner of and agent for Polgar.  (FAC ¶8.)  Simply put, the Blog, at the center of Polgar's straw man Scheme, has been forensically linked to Polgar and her business partner, Alexander, who has been indicted.

Polgar lied about getting the stolen emails from the Blog, as it would have been impossible for her to do so before the July 31, 2008 creation of the Blog.  When the USCF produced copies of the Google Blog information, containing the Blog creation date, Polgar and her counsel changed their story.

Tucked away in a footnote to Whitney Leigh's declaration is Polgar's and Leigh's underline current story about where Polgar supposedly obtained the stolen email to which they primarily refer.  Mr. Leigh states that the stolen email was obtained from the link http://groups.google.com/group/rec.games.chess.politics/browse_thread/thread/401b45 c548d5860f9b80lnk=gst&q=kronenberger#9b805b3a94a5b64a, but that the content "***has since been removed***."  (Declaration of G. Whitney Leigh in Support of Defendant Susan Polgar's Motion to Compel Production of Documents withheld on an Invalid Assertion of the Attorney-Client Privilege, fn. 2.) (emphasis added)   In another declaration filed by Mr. Leigh, he very carefully worded his explanation about how and where he obtained the stolen emails, stating, "I have never read any email correspondence between Karl Kronenberger or any other counsel for the USCF and the USCF or its Executive Board (the "subject emails") **that has not been published on the internet**."  (Declaration of G. Whitney Leigh [D.E. 170] ¶2.) (emphasis added) Under the Scheme, however, Defendants placed the stolen emails on the Internet in a lame attempt to hide their source, for just long enough for their counsel to print them, thereby allowing counsel to say that they obtained the stolen emails "from the Internet."  Accordingly, Mr. Leigh's declarations are useless.  This is more than gamesmanship by

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    Mr. Leigh.  It is unethical attorney conduct.  Making Polgar's explanation even more

2    unbelievable, the USCF is aware of no persons other than Polgar and her counsel who

3    saw the content supposedly existing at the above inactive Internet hyperlink.

4        Casting even further doubt on Polgar's flimsy explanation is the fact that Polgar

5    has redacted the header information on this email, without any explanation, and Polgar

6    has not provided a digital copy of this stolen email.  (*See*, Declaration of G. Whitney

7    Leigh in Support of Defendant Susan Polgar's Motion to Compel Production of

8    Documents withheld on an Invalid Assertion of the Attorney-Client Privilege, Ex. E.)

9    The header information and a full digital copy of the email may contain information that

10   would further implicate the Defendants, and accordingly, Polgar should be ordered by

11   the Court to turn over this information immediately.

12       Due to the misconduct as reflected in the Scheme, the Court should deny

13   Polgar's Motion.  Further, the Court should levy the most severe sanction possible on

14   Polgar both to punish and to deter Polgar and her attorneys from engaging in further

15   unethical misconduct.

16       **C. USCF used all reasonable means to protect the privileged materials both before and after the theft.**

17   

18       Upon Polgar first disclosing snippets of USCF confidential emails in December

19   2007 and January 2008, the USCF asked Polgar where she obtained the emails.

20   Polgar would not respond with specificity, instead stating that she had obtained them

21   from a newsgroup on the Internet.  The USCF conducted a search of these newsgroups

22   for these emails, but could not locate any evidence of the stolen emails within Internet

23   newsgroups at that time.  (Hall Decl. ¶5.)

24       Upon Polgar referencing privileged materials in her complaint filed in Texas

25   action, the USCF promptly sent a letter to Polgar's counsel demanding that Polgar, a)

26   identify all attorney-client communications in Polgar's possession, b) segregate the

27   privileged materials into an envelope, c) destroy all other copies of the materials, d)

28   inform the USCF who has viewed the materials, and e) amend their complaint to

remove references to such materials.  (Kronenberger Decl. ¶2, Ex. A.)  As a follow up to Texas counsel, USCF counsel restated its demands and provided affidavits of the recipients of the emails at issue, all stating that they did not disclose the emails to any third parties.  (Kronenberger Decl. ¶7, Ex. D.)

And when Polgar made an appearance in the case at hand, through attorney Whitney Leigh, USCF counsel sent Mr. Leigh an email on November 7, 2008, asking Mr. Leigh to "stay vigilant about some attorney client emails" that were stolen; informing Mr. Leigh that attorney-client communications had been stolen from the USCF; informing Mr. Leigh that the USCF has waived no privilege; and attaching affidavits of the recipients of the stolen emails stating that they did not disclose the emails to any third parties.  (Kronenberger Decl. ¶8, Ex. E.)

Moreover, during a meet and confer session on April 21, 2009 that the parties recorded, counsel for Polgar, Whitney Leigh, admitted that he was in possession of some of the 3,000 stolen emails that were never actually published to the Internet.  In fact, he admitted reading from some of these very confidential emails.  (Kronenberger Decl. Ex. F, p. 40.)   Shockingly, when cornered about when and where Mr. Leigh himself had obtained the stolen emails, he responded, "I got them off the Web," again reverting to the strategy under the Scheme.  (*Id.*)  Still cornered and pressed to explain where exactly "on the Web" he got the stolen emails, Mr. Leigh changed course and stated that they were somehow attached to a filing by Mr. Sloan.  (*Id.* p.41.)  However, the emails attached to Mr. Sloan's complaint were unrelated to the privileged emails from which Mr. Leigh was reading (i.e. emails concerning Mr. Mottershead supposedly "hacking" into Mr. Alexander's USCF account).  (Kronenberger Decl. ¶10, and Ex. F, p. 42.)

Following this meet and confer session, USCF counsel sent three separate letters to Mr. Leigh, demanding that he turn over the stolen emails that he admitted he had read.  (Kronenberger Decl. ¶11, Exs. G-I.)  To date, Mr. Leigh has not returned or confirmed destruction of any of these stolen emails. (*Id.*)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Despite Polgar's refusal to cooperate, the USCF diligently sought to destroy any public copies of their privileged communications.  In the Texas litigation, the USCF made a voluminous document production to Polgar of 13,617 pages.[2]  As Polgar requested, the USCF's production included all emails received by all USCF parties from Sam Sloan.  Sam Sloan is a defendant and counterclaimant in the Texas action, and upon filing his counterclaim and exhibits, he emailed as a PDF document his counterclaim and exhibits to all the USCF parties.  Thus, in response to discovery requests from Polgar, the USCF turned over all correspondence to the USCF from Sloan, including his counterclaims and exhibits exactly how they were uploaded into the ECF-Pacer system.  Unbeknownst to the USCF, in one of the many attachments to Sloan's counterclaims were two emails stolen from the USCF and posted to the Internet.  The USCF was simply <u>not aware</u> that Sloan had attached these to his counterclaims or that the USCF had inadvertently provided these stolen emails to Polgar by handing over copies of the counterclaims exhibits.  (Kronenberger Decl. ¶12.)  Within days of the USCF becoming aware that Mr. Sloan's filings had contained copies of two stolen emails, the USCF a) informed Polgar's counsel of the inadvertent disclosure, and thereafter b) filed an objection with the court in Texas about Sloan's objectionable exhibits, noting how Mr. Sloan has consented to the removal of the two privileged emails from the public ECF-Pacer system.  The court has not yet ruled on this matter.  (*Id.* ¶13, Ex. J, and *Polgar v. United States of America Chess Federation Inc et al*, 5:08-cv-00169-C, D.E. 163, par. 35 and 39.)

When these two emails were marked as exhibits in Texas depositions, the USCF marked the documents as "CONFIDENTIAL" under the Texas protective order.  Despite

---

[2] As an aside, Polgar claims that, "[t]o date, plaintiffs have not produced any documents in this action in response to document requests in this case." (Motion, p. 8.)  This statement, however, is misleading for two reasons.  The USCF produced over 461 documents in initial disclosures and 191 documents in response to Polgar's discovery request.  Bates numbers in the California action run from USCF000001-USCF000652.  Further, the USCF had already produced in Texas 13,617 pages of documents before Polgar's California requests. (Kronenberger Decl. ¶19.)

Case No. 3:08-CV-05126-MHP

**PLAINTIFFS' OPPOSITION TO MTN TO COMPEL**

10

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

the USCF's request to the Texas court to remove these two emails from the ECF-Pacer system, and despite the CONFIDENTIAL designation of these documents, Polgar has continued to refer to these two emails in court filings and actually attach these emails to court filings. (Kronenberger Decl. ¶14.)   The USCF has brought this to the attention of Polgar's counsel, Mr. Leigh, but he has ignored the USCF's requests to amend his filings.   (Plaintiffs' Opposition to Polgar's Administrative Motion to Seal Certain Documents and to Withdraw the Declaration of G. Whitney Leigh in Support of Polgar's Response to Plaintiff's Objection to Evidence, D.E. 174.)   Further, the USCF has petitioned this Court to extend a recent sealing motion by Mr. Leigh to cover these two emails. (*Id.*)

Simply put, the USCF has done all it possibly could do to identify what emails where stolen and to keep them off the Internet.  Moreover, but for the misconduct of Polgar and Alexander, these emails would not have been stolen.  Simply put, the Defendants should not benefit from their own misconduct, while the USCF has strove to fix Defendants' misconduct.  Thus, the Court should deny Polgar's Motion.

**D. Polgar's arguments fail regarding each of the categories of confidential emails that she seeks to compel.**

**i) The "Next Steps Email" was stolen and only later disclosed due to the misconduct of Polgar.**

The so-called "Next Steps" email, which is attached to the declaration of Whitney Leigh at Exhibit E, has never been, to the knowledge of the USCF, attached to any court filing or otherwise disclosed to the public, except for the action of Mr. Leigh attaching this stolen email to his motion to compel and his motion to disqualify counsel (D.E. 108-5, Ex. Y).  The USCF has presented affidavits of the recipients of this email, stating that they did not disclose the email to any third parties.  The only persons who have ever seen this email on the Internet as claimed by Polgar are Polgar and her attorney Mr. Leigh.  Further, Alexander, Polgar's business partner, has been indicted for stealing this email.  Notably, Mr. Leigh, while he claims that he does not represent

Alexander, does have some relationship with him, as Mr. Leigh has efiled in this case multiple documents for Alexander. (*See, for e.g.* docket entries 16, 18, 25.)

To reiterate, the Next Steps email was only disclosed due to the misconduct of the Defendants, and Defendants are the only ones who have ever seen it posted to the Internet. Mr. Leigh knew this document was privileged, but he made the clear decision to attach it, unsealed, to his declaration filed with the Court. The Court must address this misconduct.

As Polgar has no basis to argue that privilege has been waived regarding the Next Steps email, the Court should find that this email is privileged. The USCF also requests that the Court order Polgar to destroy all copies of this email, not file copies of the email as attachments to briefing to the Court, and not refer to the email in any way in court filings. Last, the USCF requests that the Court remove this email (Exhibit E to Mr. Leigh's declaration) from the ECF-Pacer system.

### ii) Polgar is not entitled to pre-November 4, 2007 documents.

While Polgar argues that pre-November 2007 emails could not be privileged, her argument fails when such communications were made in anticipation of litigation and discuss legal strategy.

When the Mottershead Report was disclosed in the fall of 2007, Polgar <u>immediately</u> started making threats to sue the USCF and other USCF-related parties. She repeated these threats many times verbally and in email exchanges. The USCF hired counsel to, among other things, assess the threats by Polgar and perform a risk analysis for the USCF regarding Polgar's threats. (Hall Decl. ¶6.)

All pre-November 4, 2007 communications between the USCF, its board members and counsel are protected as joint defense communications. Any such communications were between various potential co-defendants and their counsel concerning actual threats of litigation by Polgar. Accordingly, these are protected by the joint defense privilege.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Moreover, emails dated before November 4, 2007 (i.e. before the formation of the Legal Subcommittee) could not be relevant to the unauthorized access allegations in this case, which didn't even start to occur until late November 2007. Further, the Court should delay determining whether these emails should be disclosed until after the Court rules on Plaintiffs' anti-SLAPP motion to strike because if the Court grants the motion to strike, none of the pre-November 4, 2007 emails could potentially be relevant or reasonably lead to relevant material for Polgar.

Lastly, Polgar is no longer an Executive Board member, nor even a member, of the USCF. Accordingly, Polgar has no right to these confidential communications concerning Polgar's threats to sue the USCF.

### iii) The USCF did not disclose opinion of counsel regarding indemnification.

USCF counsel's comment to the Court on April 15, 2009 was an opinion regarding the fact that Polgar had not yet provided information to the USCF to support her request or details about how the USCF had supposedly mishandled her request. Simply put, the comment by counsel was not a legal opinion and did not reference a legal opinion.

As a preliminary matter, all issues regarding Polgar's indemnification are now moot, as the USCF Board of Delegates has unanimously denied Polgar's request for indemnification. (Declaration of Bill Hall Regarding Comprehensive Ratification by the USCF Board of Delegates, [D.E. 182] ¶9.) Further, to the extent that Polgar requests information to support her counterclaims, the Court should delay in ruling on this matter until after the Court has ruled on the Plaintiffs' anti-SLAPP motion.

Regarding Polgar's allegations, Polgar at the time of the April 15, 2009 hearing had not, and to date still has not, provided facts to the USCF regarding her request for indemnification or why it was supposedly mishandled. (Kronenberger Decl. ¶15.) While the comment by USCF counsel at the hearing was admittedly disjointed, the comment ("that it's premature" [D.E. 91, p.27-28]) reflects that fact that Polgar had not yet

provided factual information to the USCF to support her request or details about how the USCF had supposedly mishandled her request.  What Polgar omits from her Motion is that this factual request, which is clearly not a legal opinion, has <u>already been</u> <u>disclosed</u> to Polgar in the form of a letter from Illinois counsel to Polgar.  (Kronenberger Decl. ¶16, Ex. K.)  In that letter, Illinois counsel states to Polgar's counsel,

> "I ask that you  provide me with your client's position in writing as to how she believes she is entitled to indemnification for each of the separate lawsuits she seeks indemnification for and how each of her requests for indemnification were handled inappropriately."

(*Id.*)  Accordingly, USCF's counsel's statement to the court about Polgar's request being premature had nothing to do with any <u>legal</u> opinion.  As an important side note, Polgar never responded to this letter from Illinois counsel, despite all her protestations to the Court about how her indemnification request had been mishandled.  (*Id.* ¶17.)

The USCF counsel never publicly commented on any "opinion letter," nor have they invoked counsel's advice selectively.   USCF counsel have not, as case law prohibits, used the comment, "that it's premature," as a sword, and then used privilege as a shield.  Counsel's comment to the court simply was not a legal opinion, but instead pointed out that any action was premature until Polgar provided more information to the USCF.  For these reasons, the USCF did not waive any privilege on this topic by USCF's counsel's comment.

### iv) The USCF sought to destroy the two emails attached to the Sam Sloan complaint.

As stated above, the only stolen emails that were filed with a Court, other than those filed by Polgar, were filed by Sam Sloan in the Texas litigation.   Mr. Sloan attached two of the stolen emails to his counterclaims, and emailed a voluminous PDF of the counterclaims and attachments to many parties, including the USCF.  When the USCF became aware that Sloan had attached these stolen emails to his counterclaim, the USCF, a) immediately informed Polgar that a copy of Sloan's attachments that included the stolen email had been inadvertently produced to her in discovery, b) asked Polgar to return the documents, c) obtained the consent of Sloan to remove the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

14

PLAINTIFFS' OPPOSITION TO MTN TO COMPEL

documents, and d) asked the Texas court to remove the documents from the ECF-Pacer system.  (*See, supra*, at Section C.)

There simply are not any other actions the USCF could have taken to protect the privilege associated with these two stolen emails, and the USCF acted immediately upon getting notice of this disclosure.  Most importantly, but for the misconduct of the Defendants, these emails never would have been stolen in the first place, and accordingly the Defendants should not be able to benefit from their own misconduct.

### v) The attorney-client privilege protects communications made subject to a joint defense agreement.

Polgar attacks the USCF claims of privilege as to emails sent to third parties, including "Brian Mottershead, Brian Lafferty, and Jerry Hanken." (Motion, p. 17.)  What Polgar fails to explain to the court is that Polgar is referring to entries in two privilege logs that were created and produced for the <u>Texas action.</u>  Importantly, in Texas, Polgar sued not only the USCF, its board members and counsel, but also a handful of third parties, including Brian Mottershead, Brian Lafferty, and Jerry Hanken.  These third parties have all needed to coordinate with USCF counsel for the Texas litigation.  Specifically, because Polgar did not specify in her Texas complaint how the supposedly wrongful acts were attributed to the defendants, the defendants have coordinated on their defense.  Further, Polgar has sent nearly identical discovery requests to all the parties in Texas, and the Texas defendants have coordinated in responding to discovery.  (Hall Decl. ¶7.)  In short, there has been a common legal interest held by all the defendants in the Texas action, supporting the existence of a joint defense privilege.

Polgar is attempting to circumvent the requirement of addressing these discovery concerns in Texas with Judge Cummings by bringing them to the attention of the Court in California.  Moreover, the joint defense communications between parties in the defamation action in Texas are not in any way relevant to the unauthorized access case pending here in California.  For these reasons, Polgar should be prohibited from obtaining this sort of broad discovery without going through Judge Cummings.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Furthermore, the defendants in the Texas action have been relying on clear case law in the Fifth Circuit that prohibits the discovery of any consultations among defendants, or their counsel, and any sharing or pooling of work product or other confidential documents in reliance on the joint defense privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992) (the joint defense privilege extends the attorney client privilege to any third party made privy to privileged communications if that party "has a common legal interest with respect to the subject matter of the communication"); *Aiken v. Texas Farm Bureau Mutual Insurance Company, et al.,* 151 F.R.D. 621, 624 (E.D. Tex. 1993) ) ("The privilege encompasses shared communications between various co-defendants, actual or potential, and their attorneys, prompted by threatened or actual, civil or criminal proceedings, 'to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings.'" *citing In re LTV Securities Litigation*, 89 F.R.D. 595, 604 (N.D. Tex. 1981)); *In re Skiles,* 102 S.W.3d 323, 326 (Tex.App.-Beaumont 2003) ("The joint defense privilege is part of the attorney client privilege recognized in Texas Rule of Evidence 503."); TEX.R. EVID. 503(b)(1)(C) (the "joint-defense" privilege protects "confidential communications made for the purpose of facilitating the rendition of legal services ... by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein.").

Polgar makes the argument that she should be able to obtain in California what she cannot obtain in Texas. However, Polgar has no authority for such a proposition, and none of her case law citations deal with matters where parallel litigation is pending in multiple jurisdictions.

The Texas defendants do have a written joint defense agreement, which the USCF has withheld from Polgar due to privilege. However, the USCF will submit this document to the Court for *in camera* review if necessary.

//

**vi) Polgar's generalized "fraud" argument must fail.**

Polgar makes a generalized argument that as a result of supposed fraud in which the Plaintiffs engaged, that all attorney client communications of Plaintiffs should be disclosed.  For her fraud argument, Polgar relies exclusively on the "Next Steps" email that, as detailed above, was never attached to any of Sam Sloan's court filings.  No one has ever actually seen this email on the Internet other than Polgar and her counsel. Further, the email at issue a) has had its subject line, recipients and sender information deleted; b) a fake subject line has been inserted, c) content in the email has been changed, d) portions of the email have been deleted, and, e) in the latest version of the email provided to the USCF by counsel, Polgar has redacted the header of the email, obscuring key information about where the email came from.  (Kronenberger Decl., ¶18.)  So, in addition to the serious questions about how Polgar and her counsel came into possession of this email, the email is impossible to authenticate.

The USCF will not comment on the content of its privileged communications, and Polgar's fantastical allegations based on doctored, stolen, attorney-client communications obviously fail if she is barred from referring to such stolen communications, as her argument is based solely on material that was stolen.  More importantly, Polgar must not be able to benefit from her misconduct by getting to use in any way the communications which she played a part in stealing and disclosing to the public.

### III.    CONCLUSION

For the reasons stated herein, the Court should:

a.  deny Polgar's Motion;

b.  order that Polgar turn over all copies of correspondence between the USCF and its counsel, unredacted and in paper and digital format, and after USCF has confirmed receipt of materials, delete all copies in Polgar's possession;

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

c. order that Polgar cease referring to, or attaching as exhibits to Polgar court filings, USCF materials that are protected under the attorney-client privilege;

d. order the removal of all privileged materials from the ECF-Pacer system;

e. impose sanctions against Polgar and/or her counsel i) for intentionally misrepresenting the source of stolen emails, and ii) knowingly and repeatedly attaching and referring to privileged material in Polgar court filings.

Dated: August 31, 2009                          **KRONENBERGER BURGOYNE, LLP**

By:  s/ Karl S. Kronenberger
          Karl S. Kronenberger

Attorneys for UNITED STATES OF AMERICA CHESS FEDERATION, INC. and RANDALL D. HOUGH