1   GONZALEZ & LEIGH, LLP
    MATT GONZALEZ (SBN 153486)
2   G. WHITNEY LEIGH (SBN 153457)
    MATT SPRINGMAN (SBN 252508)
3   Two Shaw Alley, Third Floor
    San Francisco, CA  94105
4   Telephone:  (415) 512-2000
    Facsimile:  (415) 512-2001
5
    Attorneys for Defendant
6   SUSAN POLGAR

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA CHESS        Case No. 3:08-cv-05126-MHP
    FEDERATION, INC., an Illinois not-for-
12  profit corporation, RANDALL D. HOUGH,  **DEFENDANT SUSAN POLGAR'S**
    an individual,                        **OPPOSITION TO CROSS-**
13                                        **DEFENDANTS' MOTION TO DISMISS**
                Plaintiffs,               **CROSS-COMPLAINT FOR LACK OF**
14                                        **PERSONAL JURISDICTION**
         v.
15                                        Hearing Date:   September 28, 2009
    SUSAN POLGAR, an individual,          Time:           10:00 a.m.
16  GREGORY ALEXANDER, an individual      Courtroom:      15, 18th Floor
    DOES 1-10, inclusive                  Judge:          Hon. Marilyn Hall Patel
17
                Defendants.
18

19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ...............................................................................................3

    A.   Plaintiffs Do Not Dispute That They Personally Directed The
        Filing Of the Instant Lawsuit In California, The Discovery In
        California, The Disclosure Of Facts Obtaiined During Discovery
        In California, Or The Denial Of Mrs. Polgar's Request For
        Indemnification Of Her Defense Of The Claims Filed Against
        Her In California .............................................................................................3

    B.   Since The Cross-Complaint, Plaintiffs Have Taken Additional
        Actions Specifically Designed To Cause Mrs. Polgar Harm In
        California ......................................................................................................5

    C.   The Plaintiffs' Actions Have Had And Will Have Other Immediate
        Effects In California......................................................................................6

        1.   The USCF's Extensive Contacts And Activities In California
            Directed By The Executive Board Which Plainitffs Have
            Sought To Retain Control Of Through Their Harm To Mrs.
            Polgar...................................................................................................7

        2.   Susan Polgar's Contacts In California................................................. 10

III.  LEGAL STANDARD........................................................................................ 11

IV.   SPECIFIC JURISDICTION EXISTS OVER PLAINTIFFS
     BECAUSE THEY WERE "PRIMARY PARTICIPANTS" IN THE
     ALLEGED WRONGDOING IN CALIFORNIA........................................... 12

    A.   Plaintiffs Purposely Availed Themselves Of This Forum ........................... 12

    B.   Mrs. Polgar's Claims "Arise Out Of And Relate To" Plaintiffs'
        Forum-Related Activities............................................................................ 18

    C.   Plaintiffs Have Failed To Meet Their Heavy Burden Of Showing
        That The Exercise Of Personal Jurisdiction Would Be
        "Unreasonable" Under The Due Proess Clause............................................. 19

    D.   Should The Court Find A Lack Of Sufficient Showing Of
        Personal Jurisdiction As To Any Of The Third Party Defendants,
        The Court Should Wait To Rule Until After Mrs. Polgar Is Able
        To Obtain Adequate Discovery Responses From Plaintiffs ........................... 21

V.    CONCLUSION................................................................................................. 22

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANT'S MOTION TO DISMISS
CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION
Case No. 3:08-cv-05126-MHP**

# TABLE OF AUTHORITIES

## CASES

Page

*American Tel. & Tel. Co. v. Compagnie Bruzelles Lambert*
94 F.3d 586 (9th Cir. 1996) ....................................................................12

*Burger King v. Rudzewicz*
471 U.S. 462 (1985)........................................................................13, 19

*Caldor v. Jones*
465 U.S. 783 (1984)..........................................................2 , 13, 15, 16, 17

*Cybersell, Inc. v. Cybersell, Inc.*
130 F.3d 414 (9th Cir. 1997) ..................................................................12

*Davis v. Metro Productions*
885 F.2d 515 (9th Cir. 1989) .................................................................2, 15

*Dole Food co., Inc. v. Watts*
303 F.3d 1104 (9th Cir. 2002) .................................................................11

*Global Communs., Inc. v. Blue Jay, Inc.*
2009 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 5, 2009) ...................................16

*Hanson v. Denckla*
357 U.S. 235 (1958)..............................................................................12

*j2 Global Communs., Inc. v. Blue jay, Inc.*
2009 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 5, 2009) ...................................17

*Keeton v. Hustler Magazine, Inc.*
465 U.S. 770 (1984)........................................................................2, 13, 15

*Lake v. Lake*
817 F.2d 1416 (9th Cir. 1987) ...........................................................13, 19

*Martin Ray Winery v. Graham*
2007 U.S. Dist LEXIS 22858 (N.D. Cal. Mar. 28, 2007)...........................11, 12, 16

*Minerva Marine, Inc. v. Spiliotes*
2006 U.S. Dist. LEXIS 13939 (D.N.J. mar. 13, 2006) .........................13, 14, 16, 17

*Resnick v. Rowe*
283 F.Supp. 2d 1128 (D. Haw. 2003) .......................................................13

*Seagate Tech. v. A.J. Kogyo Co.*
219 Cal. App.3d 696 (1990) ...................................................................16

*Shute v. Carnival Cruise Lines*
897 F.2d 377 (9th Cir. 1990) ..................................................................19

*Taylor-Rush v. Multitech Corp.*
217 Cal.App. 3d 103 (1990) ...................................................................16

*Towers v. Hughes*
1992 U.S. Dist. LEXIS 944 (D. Or. Jan. 22, 1992) ......................................14

*Transgo, Inc. v. Ajac Tansmission Parts Corp.*
768 F.2d 1001, (9th Cir. 1985) ...............................................................16

ii

1

# TABLE OF AUTHORITIES

2

## CASES (Continued)

**Page**

3

4

*Wolf Designs, Inc. v. DHR Co.*
   322 F. Supp. 2d 1065 (C.D. Cal. 2004) ........................................................................16, 17, 18

5

*World-Wide Volkswagen*
   444 U.S. 286 (1980).........................................................................................................12, 15

6

*Yahoo! Inc. v. La Lique Contre le Racism et L'Antisemitisme*
   145 F. Supp. 2d 1168 (N.D. Cal. 2001) ...................................................................................14

7

8

## STATUTES AND AUTHORITIES

9

California Code of Civil Procedure
   § 410.10................................................................................................................................ 12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANT'S MOTION TO DISMISS
CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION
Case No. 3:08-cv-05126-MHP**

1    I.    **INTRODUCTION**

2         Susan Polgar is currently ranked by the World Chess Federation as the number one

3    female chess player in the United States, and number four in the world.  She regularly travels to

4    California, and all over the world, to compete in tournaments and promote the game of chess.

5         In 2006, she was elected by an overwhelming majority of the USCF membership to a

6    position on the USCF Executive Board.  Thereafter, Plaintiffs and Cross-Defendants

7    ("Plaintiffs'"), each long-term members of the Executive Board, one of whom resides in

8    California, became threatened by Mrs. Polgar's insistence that they had been mismanaging the

9    USCF for their own personal benefit.  They began conspiring amongst themselves and another

10   California resident, Cross-Defendant Karl Kronenberger, to force Mrs. Polgar and her husband,

11   Paul Truong, from the board by, *inter alia,* hiring Karl Kronenberger to conduct an

12   "independent" investigation, while misrepresenting to Mrs. Polgar that they were  instituting an

13   unauthorized lawsuit in California against Mrs. Polgar in the USCF's name, lying to Mrs. Polgar

14   about the lawsuit, their ongoing "investigation," and Mrs. Polgar's requests for indemnification,

15   obtaining discovery in California against Mrs. Polgar without her authorization or a chance to

16   challenge it, and then directing Karl Kronenberger to send the results of this discovery obtained

17   in the California action to third parties with the intent to harm Mrs. Polgar and pressure her and

18   her husband to resign.

19        Plaintiffs now bring the instant motion to dismiss, arguing that because they did not

20   personally file the instant lawsuit, or hold their meetings in California, the court lacks personal

21   jurisdiction over Mrs. Polgar's claims against them.  Plaintiffs' motion ignores most of the

22   allegations in Mrs. Polgar's Cross Complaint and the holdings of the few cases they cite.

23   Numerous cases—many cited by Plaintiffs themselves—hold that where the directors or officers

24   of an organization are the personally involved in directing harmful activity that take place in a

25   forum State, personal jurisdiction over such directors or officers is proper in that forum.  *See,*

26   *e.g., Caldor v. Jones*, 465 U.S. 783, 789-90 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S.

27   770, 781 (1984); *Davis v. Metro Productions,* 885 F.2d 515, 521 (9th Cir. 1989).  As these courts

28

1   held, a person who intentionally take actions in a forum and cause harms in a forum is subject to

2   personal jurisdiction in that forum, and simply because they were acting in their "official

3   capacity" and causing harms in the name of an organization does not shield them from personal

4   jurisdiction. In those cases, there was no allegation that these officers were in violation of the

5   organization's bylaws, or acting in violation of their fiduciary duties. Here, the case for personal

6   jurisdiction is even stronger: Mrs. Polgar alleges cross-claims against these individual Plaintiffs,

7   rather than against the USCF, because the USCF never authorized the instant lawsuit in

8   California, nor the vigorous discovery in the USCF's name into Mrs. Polgar's affairs in

9   California, nor the USCF's denial of her request for indemnification for defense of the lawsuit in

10  California, nor the other improper acts that have arisen in connection with the California lawsuit.

11  *Every one of these acts* was directed by Plaintiffs to take place in California, and under

12  Plaintiffs' own cases and many others, personal jurisdiction over Mrs. Polgar's claims against

13  them is proper.

14          Plaintiffs also make numerous factual allegations in their motion and declarations to their

15  Rule 12(b)(2) motion. Almost all of them are either unsupported, transparent attempts to mislead

16  the Court as to the nature of the USCF's and Mrs. Polgar's contacts with California. To suggest

17  that the USCF—which has literally thousands of members, hundreds of chess clubs, and

18  numerous tournament directors and organizers in California—"does not perform any business in

19  California," or that Susan Polgar, who is the number one female chess player in the United States

20  and who regularly travels to California to make appearances and sells goods there and has a

21  warehouse full of merchandise there has no "business interests" in California, is preposterous.

22          Moreover, this is a Rule 12(b)(2) motion; absent an evidentiary hearing or trial on the

23  merits, the complaints' uncontroverted factual allegations must be accepted as true, any factual

24  conflicts resolved in Mrs. Polgar's favor. In any event, the few actual facts that Plaintiffs

25  actually allege are *irrelevant*. Where Bill Goichberg, Bill Hall, and James Berry live or work

26  does not change the fact that they purposely and knowingly caused substantial harm to Mrs.

27  Polgar through actions they chose to take, and continue to take, here in California. Whether they

28

2

1  should be held liable for these actions is a question of law.  But under Plaintiffs' own cases, and

2  many others, whether this Court has personal jurisdiction over them for claims arising from these

3  actions is not even a close question.

4  **II.     BACKGROUND**

5      **A.     Plaintiffs Do Not Dispute That They Personally Directed The Filing Of The Instant Lawsuit In California, The Discovery In California, The Disclosure**

6          **Of Facts Obtained During Discovery In California, Or The Denial Of Mrs. Polgar's Request For Indemnification Of Her Defense Of The Claims Filed**

7          **Against Her In California.**

8      Mrs. Polgar alleges in her Cross-Complaint that Plaintiffs, two of whom are California

9  residents, are engaged in an ongoing conspiracy to use the USCF as a vehicle to harm her for

10  their own personal benefit in violation of the USCF's bylaws, their fiduciary duties to Mrs.

11  Polgar and USCF members, and the laws of California.  Mrs. Polgar alleges that Plaintiffs

12  improperly and without authorization conspired with parties (located in California) to file a

13  lawsuit (in California) against Mrs. Polgar.  Mrs. Polgar alleges that this lawsuit was never

14  authorized in compliance with the USCF bylaws, and, in fact, violates them in several ways.

15  Importantly, Plaintiffs *do not dispute* that they personally directed the purported "independent"

16  investigation, the filing of the lawsuit, or the use of the "Jane Doe" procedure in California state

17  court.  In fact, they have *repeatedly admitted* that they did.  *See* Hall Declaration In Response To

18  Civil Minute Order Dated April 13, 2009; Hall Declaration In Support of Pls' Request To File

19  Sur-Reply.  Plaintiffs only allege that (i) they were within their power to file this lawsuit and (ii)

20  they directed that this lawsuit be filed in meetings that were not held in California.

21      Mrs. Polgar also alleges that Plaintiffs improperly and without authorization used their

22  lawsuit in California to improperly and fraudulently obtain third-party discovery of Mrs. Polgar's

23  personal records in California without her knowledge.  This discovery includes over twenty

24  subpoenas to third parties seeking electronic data and financial information relating to Mrs.

25  Polgar's personal affairs.  *See* Declaration of M. Springman In Support Of Defendant Susan

26  Polgar's Motion To Transfer (Docket No. 54) Ex. N.  Nearly every one of these entities has

27  offices, registered agents, and a substantial presence in California, and at least five are

28

1  incorporated here, including Yahoo, Inc. (2 subpoenas), Google, Anonymizer, Inc., and

2  American Express Company. *See id.* Mrs. Polgar alleges that this was in direct violation of the

3  USCF bylaws as well as the laws of the state of California, which prohibit the filing of "doe"

4  lawsuits where, as here, a plaintiff knows who the defendant is, but seeks to conceal the lawsuit

5  from the defendant in order to take third party discovery without the defendants' knowledge or

6  ability to seek relief in California courts.[1]  Again, Plaintiffs *do not dispute* that they directed and

7  authorized the taking of this discovery.  In fact, they admit it.  They only allege that (i) the use of

8  the Jane Doe procedure and the numerous subpoenas did not violate California law and (ii) they

9  directed these efforts in meetings that took place outside of California.

10       Mrs. Polgar alleges that Plaintiffs then directed Mr. Kronenberger (located in California)

11  to improperly disseminate information improperly obtained (through the California lawsuit) to

12  cause harm to Mrs. Polgar and pressure her and her husband to resign.  Again, Plaintiffs *do not*

13  *dispute* that Mr. Kronenberger transmitted this evidence to third parties, or that they authorized

14  such transmittal. *Compare* Susan Polgar Motion To Disqualify (describing in detail these

15  actions) *with* Pls.' Opp. To Mot. To Disqualify (failing to deny or dispute transmittal of

16  information, or suggest that transmittal of information was not authorized); Declaration of

17  Whitney Leigh In Support Of Motion To Compel The Production Of Documents Withheld On

18  An Invalid Assertion Of Privilege Exhs. I & J (Plaintiffs' "privilege logs" showing numerous,

19

20  ───────────────

21  [1] Plaintiffs allegations in their motion (with no supporting declaration) that they only amended
    the lawsuit to name Mrs. Polgar "after sufficient discovery". Pls.' Mot. To Dismiss For Lack of
    Personal Jurisdiction ("MTD") at 1; *id.* at 8 (claiming that they did not "identify" Mrs. Polgar as
22  an "appropriate defendant" until "after the initial discovery was completed").  This directly
    contradicts Mrs. Polgar's Cross-Complaint, is not supported by any declaration filed by
23  Plaintiffs, and should not be considered in any way in deciding this motion.  It is also simply
    untrue.  Mrs. Polgar has repeatedly requested that Plaintiffs specify what facts they learned
24  through this discovery that rendered her an "appropriate defendant."  Plaintiffs have repeatedly
    refused to do this.  Moreover, the *only* evidence Plaintiffs have produced demonstrates that, in
25  fact, they did not discovery *any evidence* against Mrs. Polgar during the Doe period that would
    cause them to name Mrs. Polgar.  Mrs. Polgar has already submitted a detailed record, supported
26  by competent evidence, of Kronenberger's and the Director Defendants' misconduct during the
    Superior Court "doe" discovery period. See, e.g., Docket No. 53 at 6-14; Docket No. 83 at 3-9.
27

28

1  repeated communications between Kronenberger and Plaintiffs).

2  Mrs. Polgar alleges that Plaintiffs—acting through Mr. Kronenberger (located in

3  California) have improperly denied, delayed, and otherwise unfairly obstructed her request for

4  indemnification for her defense of this lawsuit (located in California), while at the same time

5  using the USCF to indemnify Plaintiffs against her cross-claims in this lawsuit (located in

6  California) and to pay for this lawsuit (in California) without the USCF's authorization. Again,

7  Plaintiffs *do not dispute* that they have directed the USCF to deny her request for

8  indemnification, nor the decision to grant themselves indemnification. *See* Leigh Decl. ISO Mot.

9  To Compel Exhs. L, M, and N.

**B.  Since The Cross-Complaint, Plaintiffs Have Taken Additional Actions Specifically Designed To Cause Mrs. Polgar Harm In California.**

Since Mrs. Polgar filed the Cross-Complaint against Plaintiffs, Plaintiffs have taken

further actions in direct violation of their fiduciary duties to her and the USCF that have had an

immediate and long-term impact on Mrs. Polgar in California and throughout the world. As Mrs.

Polgar recently explained in her Opposition to Plaintiffs' request to file a Sur-reply, through

violations of nearly every applicable provision of the USCF bylaws, Plaintiffs recently purported

to, *inter alia,* revoke Mrs. Polgar's basic membership of the USCF and deny her request for

indemnification of the claims in this lawsuit. *See* Polgar Opp. to Plaintiffs' Req. To File Sur-

Reply; Decl. of Bill Hall In Support of Plaintiffs' Request For Leave To File Sur-Reply.

These actions are a direct continuation of the conspiracy among the Plaintiffs to use the

baseless, unauthorized lawsuit filed here to cause her harm. Plaintiffs' only justification to the

Board of Delegates for these actions (that Mrs. Polgar is aware of—she was denied access to

nearly all of Plaintiffs' meetings with the Board of Delegates in direct violation of the USCF

bylaws) were the baseless allegations in their California lawsuit, the "evidence" Plaintiffs

repeatedly claim to have obtained through their discovery conducted in California, and the

mounting legal bills their lawsuit in California is causing the USCF. *See* Leigh Decl. ISO Polgar

1   Opp. To Plts'. Mot. For Leave To File Sur-Reply Ex. H;[2]   Again, *Plaintiffs do not dispute* that

2   they relied on the instant lawsuit to effect the revocation of Mrs. Polgar's USCF membership and

3   her purported "automatic" expulsion from the Board of Directors.   In fact, they admit it both in

4   filings with this Court and through publication on their own website of a partial recording of one

5   of their meetings with the Board of Delegates.   *See id.*

6         If left unchecked, these actions will have the effect of causing Mrs. Polgar to become

7   further liable for legal fees incurred in defending this lawsuit in California, while, at the same

8   time making it difficult, if not impossible, for Mrs. Polgar to compete in chess tournaments in the

9   United States (including California) and the throughout the world, because membership in the

10   USCF is a requirement in USCF-sanctioned tournaments, USCF official tournaments in the

11   United States, and FIFE official tournaments abroad.   *See* Decl. of S. Polgar In Support of Opp.

12   To Mot. To Dismiss For Lack of Personal Jurisdiction Ex. D, ¶ 18-21.   Again, *Plaintiffs do not*

13   *dispute that they personally directed these actions.*   Rather, they only dispute whether they were

14   "authorized" to take these actions under the USCF bylaws.

15        **C.**     **The Plaintiffs' Actions Have Had And Will Have Other Immediate Effects In**
            **California.**

16         Aside from utilizing California's courts and discovery procedures in direct violation of

17   California's discovery rules in order to harm Mrs. Polgar, Plaintiffs' acts at issue have had, and

18   will have, other immediate in California due to the harm caused both to the USCF, the USCF

19   members throughout the state and to Mrs. Polgar herself.   Plaintiffs claim that the USCF "lacks

20   any real contacts with California."   MTD at 4.   They have each filed declarations claiming that

21   "the USCF does not perform any business in California, with the exception of dealing with chess

22

23   _____

24   [2] Plaintiffs can no longer hide the fact that their improperly authorized lawsuit against Mrs.
     Polgar has nearly bankrupted the USCF; what they can do is baselessly lay the blame for these

25   costs on Mrs. Polgar, by claiming that these expenses arose because of her claims in the Texas
     Action against them for libel.   What Plaintiffs fail to mention is that their defense of that action is

26   provided for by a third party indemnity insurance company, whereas their legal expenses in their
     action against Mrs. Polgar must be paid by the USCF (or, more specifically, the USCF's

27   members).

28

1   clubs, tournament directors and organizers, and enrolling members that *happen* to be located in

2   California." *See, e.g.,* Goichberg Declaration ¶ 4 (emphasis in original). As explained below,

3   this statement is outrageous, and akin to claiming that that the Boy Scouts, or the National

4   Basketball Association, do not "perform any business" in California, with the "exception of

5   dealing with" scout troops or basketball teams.

6          Mr. Goichberg also states in his declaration that his own "business" in California (hosting

7   many of these tournaments through his company, Continental Chess) is "unrelated" to the USCF

8   and that "Continental Chess" has "no ownership or other special relationship with USCF." *See*

9   Goichberg Decl. ¶¶ 1&3.[3] As explained below, these statements are extremely misleading, if not

10   outright falsities, and akin to claiming that the Golden State Warriors, or their games at the

11   Oakland Arena, are "unrelated" to the National Basketball Association.

12          Finally, Plaintiffs also allege (with no supporting declaration) that "Polgar does not

13   reside, work, or otherwise conduct business or personal relations within California". MTD at 6.

14   This is an unsupported statement in a pleading and should not be considered; in any event, it is

15   untrue. As explained below, Mrs. Polgar is the number one-ranked woman chess player in the

16   United States. She regularly travels to California to perform in chess tournaments and to appear

17   in chess-related activities. *See* Polgar Decl. Exhs. A & B, ¶¶ 14-16.

18                **1.**    **The USCF's Extensive Contacts And Activities In California.**

19          Mrs. Polgar, in seeking election to the USCF Executive Board in 2007, sought to change

20   the way the USCF did business. *See id.* ¶ H. Such changes would undoubtedly have had an

21   effect on California. The USCF is the official national chess federation of the United States and

22   the official federation representing the United States with the World Chess Federation ("FIDE").

23   It has 78,589 members as of August 31, 2009. *See* Polgar Decl. Ex. C at 1. Approximately

24   8,722 of these members reside in California, the most of any state. *See id.* at 3. Membership

25    

────────────────────

26   [3] The other Cross-Defendants' declarations similarly imply that these "tournaments" are
     somehow unrelated to the USCF.

27    

28    

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS**
**CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION**
**Case No. 3:08-cv-05126-MHP**

1   requires payment of annual fees to the USCF.  *See* Polgar Decl. Ex. H.  Membership status

2   accords a person the right to a number of things, including, *inter alia,* representation on the

3   Executive Board and the Board of Delegates and participation in the election of these positions.

4   *See id.* Ex. D.  The USCF regularly advertises USCF membership on the internet and in Chess

5   Life magazine, both of which are available in California.  *See id.* ¶ 6.

6           The USCF regularly promotes tournaments in California, runs these tournaments, and

7   strongly encourages membership to play in them.  The USCF tracks the "rating" of chess players

8   throughout the country; in order for a player's games in a tournament to count in these ratings,

9   the tournament must be officially "sanctioned" by the USCF.  *See* Polgar ¶ 7; Ex. D.  To be

10  sanctioned, a tournament must be organized by a USCF "affiliate" or the USCF itself.  *See id.*

11  Ex. D.  To become a USCF "affiliate," an organizer must provide dues to the USCF, pay for the

12  advertising and listing of the tournament on the USCF website and Chess Life, the official

13  magazine published by the USCF, and pay for "rating fees" for each game played during these

14  tournaments.  *See id.* Ex. D.  Mr. Goichberg's Continental Chess Association is a USCF

15  "affiliate," according to Continental Chess Association's website.  *See* Polgar Decl. Ex. E.

16          The USCF promotes tournaments throughout California held by its "affiliates" by, *inter*

17  *alia,* publishing a monthly list of chess tournaments in California on its website and advertising

18  these tournaments in its publication Chess Life.  *See* Polgar Decl. Ex. F.  Aside from actively

19  promoting them, the USCF's entire rating system strongly promotes USCF membership and

20  participation in these tournaments.  As noted above, the USCF will not "rate" games played in

21  tournaments it has not "sanctioned."  *See* Polgar Decl. ¶ 7.  Because players want the results of

22  their games to count towards their rankings, players join the USCF and play in USCF sanctioned

23  and rated events.  *See id.*

24          The current list on the USCF website of USCF-sanctioned tournaments in California

25  reflects *over thirty tournaments* in California scheduled from August to December of 2009.  *See*

26  Polgar Decl. Ex. E.  Mr. Goichberg is the organizer for two major tournaments in California

27  listed on the USCF's website:  the Central California Open, which lists its prize fund as $15,000,

28

1   and the Golden State Open, with a prize fund of $60,000. *See id.* These tournaments have by far

2   the largest prize funds of all the tournaments listed on the USCF website for California. *See id.*

3        Aside from coordinating, sanctioning, co-hosting and extensively promoting these

4   tournaments, the USCF is extensively involved in every facet of their operation. The USCF

5   requires these tournaments to scrupulously adhere to an official comprehensive rule book that is

6   over 370 pages long and sets forth rules governing every aspect of tournament play. *See* Polgar

7   Decl. ¶ 5, Ex. D. To assure compliance with these rules, the USCF require all tournaments to

8   have a certain number of USCF-sanctioned tournament directors. *See id.* These tournament

9   directors attend the tournaments and make sure the USCF rules book is followed. Among other

10  things, the USCF directors (i) perform the pairings; (ii) monitor the games; (iii) monitor the

11  results and the next rounds' pairings; and (iv) rule on any disputes concerning USCF rules

12  before, during, or after games. *See id.* After the tournament, the tournament director then sends

13  the results of every game in the tournament to the USCF to be rated. *See id.*

14       The USCF then "rates" the games, i.e., publishes updates on its web site of every player's

15  rating based on the results of every game the player played in the tournament. *See* Polgar Decl. ¶

16  7. The ratings of these players are used by the USCF to select players to compete in the US

17  Championship and US Women's Championship, as well as representing the U.S. in International

18  events such as the PanAm Youth Championship, World Youth Championship, World Junior

19  Championship, Olympiad, Women's Olympiad, World Team Championship, Women's World

20  Championship, and World Championship. *See id.* Many of these events offer significant prizes.

21  *See id.*

22       The USCF itself also regularly holds and promotes its own tournaments in California.

23  The USCF has held "U.S. Open" in 2003 in Los Angeles, and the 2004-2006 U.S. Championship

24  in San Diego, California. *See* Polgar Decl. ¶ 10. The 2010 U.S. Open, hosted by the USCF, is

25  currently scheduled to be held in Irvine, California from July 31-August 8, 2010. *See id.*

26       The USCF also currently affiliates with more than 2,000 chess clubs nationwide.

27  Approximately 105 of these chess clubs are located in California. *See* Polgar Decl. Ex. G. To

28

1  become affiliates of the USCF, a chess club pays an annual fee.  *See* Polgar Decl. Ex. D.

2  Affiliation provides rights to sponsor tournaments, collect commissions on membership dues

3  collected, discounts on chess books and equipment, a monthly subscription to Chess Life, the

4  USCF rating list and supplements, which provide monthly updates of members' ratings, and the

5  right to announce their tournaments in Chess Life, and discounts on advertisements in Chess Life

6  to promote their tournaments.  *See id.*  The USCF advertises affiliation to chess clubs in

7  California on its web site and Chess Life magazine.  *See id.*

8       The USCF derives the substantial portion of its revenues from tournaments,

9  memberships, and affiliations.  *See* Polgar Decl. ¶ 13.  The USCF Executive Board, to which

10  Mrs. Polgar was elected in a vote of the USCF membership in 2006, controls and directs these

11  activities.

12         **2.     Susan Polgar's Repeated Contacts In California.**

13       Mrs. Polgar is currently the number one-ranked woman chess player in the United States.

14  *See* Polgar Decl. Ex. A & B.  She regularly travels to California to perform in chess tournaments

15  and to appear in chess-related activities.  For example, Mrs. Polgar has made four appearances in

16  California (in Los Angeles, Fullerton, and Fresno) since 2008 to give simultaneous exhibitions

17  and lectures.  *See* Polgar Decl. ¶ 14.  Mrs. Polgar also won the U.S. Open Blitz Championship

18  held in California in August of 2003.  *See id.* ¶ 15.  She also operates an online web chess store

19  at www.polgarchess.com available in California, and the warehouse which houses the things sold

20  through this store is located in Anaheim, California.  *See id.* ¶ 16.  The Plaintiffs are aware of

21  Mrs. Polgar's activities in California.  They served her with a copy of the summons and

22  complaint in this action when she was visiting the Fresno Chess club in 2008 to give a

23  simultaneous exhibition and series of lectures.  *See id.* ¶ 14.

24         **3.     USCF Membership And Tournament Play.**

25       To play in any of the USCF-sanctioned tournaments scheduled in California, or

26  throughout the country, the USCF rulebook *requires an active USCF membership.*  *See* Polgar

27  Decl. Ex. D at 100; ¶ 18.  Similarly, a person cannot play in any official USCF / FIDE (World

28

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS
CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION
Case No. 3:08-cv-05126-MHP**

1  Chess Federation) tournaments such as the U.S. Championship, U.S. Women's Championship,

2  World Championship, Women's World Championship, Olympiad, Continental Championship,

3  and World Mind Games unless she is nominated by her own national federation (in Mrs. Polgar's

4  case, the USCF).[4]  *See* Polgar Decl. ¶ 19.  These official events are considered in the chess

5  community as some, if not the, most important tournaments available and normally have some of

6  the highest prize purses.  *See id.* ¶ 19.[5]

7  **III.   LEGAL STANDARD**

8          When a motion pursuant to Rule 12(b)(2) for lack of personal jurisdiction is based on

9  written materials rather than an evidentiary hearing, the claimant need only make a prima facie

10 showing of jurisdictional facts.  *See, e.g., Martin Ray Winery v. Graham,* 2007 U.S. Dist. LEXIS

11 22858, at *14 (N.D. Cal. Mar. 28, 2007) (Patel, J.).  A prima facie means that the plaintiff need

12 only demonstrate facts that if true would support jurisdiction over the defendant.  *Id.*  "While the

13 plaintiff cannot rely solely on the complaint to establish personal jurisdiction, the court must take

14 uncontroverted allegations as true and resolve conflicts between the facts contained in the

15 parties' affidavits in favor of the plaintiff."  *Id.  See also Dole Food Co., Inc. v. Watts,* 303 F.3d

16 1104, 1108 (9th Cir. 2002).

17

18

19

20  ────────────────

21 [4] Other national federations have various requirements to become nominated to compete on their behalf in official FIDE events, such as, *inter alia,* citizenship.  *See* Polgar Decl. ¶ 20.

22 [5] Plaintiffs have claimed that their revocation of Mrs. Polgar's USCF membership does not affect her ability to "participate" in "USCF-rated" events.  For example, during the portion of the one

23 meeting with the Board of Delegates that Plaintiffs allowed Mrs. Polgar to attend following their wrongful expulsion of her, Plaintiff Bill Hall claimed to the Delegates that revoking Mrs.

24 Polgar's membership would not affect her ability to "participate" in USCF rated events.  *See* Polgar Decl. ¶ 21.  Plaintiffs have never explained how this can be so given the USCF rules, nor

25 the extent of this alleged "participation." *See id.*  It is thus entirely unclear whether this alleged "exception" exists and is enforceable, whether Mrs. Polgar's "participation" will includes being

26 "rated," or whether Mrs. Polgar will be able to actually compete in official USCF or FIFE tournaments as a representative of the USCF.

27

28

1

IV.   **ARGUMENT:  SPECIFIC JURISDICTION EXISTS OVER PLAINTIFFS BECAUSE THEY WERE "PRIMARY PARTICIPANTS" IN THE WRONGOING IN CALIFORNIA.**

2

3      A federal court can assert personal jurisdiction over any defendant "who could be

4  subjected to the jurisdiction of a court of general jurisdiction in the state in which the district

5  court is located." Fed. R. Civ. 4(k)(1)(A).  The California long-arm statute provides that "[a]

6  court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of

7  this state or the United States." *See* Cal. Code Civ. Proc. § 410.10.  Thus, personal jurisdiction is

8  available in California to the fullest extent due process permits.  *Martin Ray Winery*, 2007 U.S.

9  Dist. LEXIS 22858, at *10-11.

10      Personal jurisdiction under the Due Process Clause may be based on either general or

11  specific jurisdiction.  *American Tel. & Tel. Co. v. Compagnie Bruzelles Lambert*, 94 F.3d 586,

12  588 (9th Cir. 1996).  Specific jurisdiction exists where (1) the nonresident performs some act or

13  consummates some transaction which purposefully avails him of the privilege of conducting

14  activities in the forum so as to invoke the benefits and protections of the state's laws; (2) the

15  claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

16  jurisdiction is reasonable."  *Martin Ray Winery*, 2007 U.S. Dist. LEXIS 22858, at *12 (citing

17  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997)).  Here, all three elements

18  exist.

19      A.     **Plaintiffs Purposely Availed Themselves Of This Forum.**

20      Whether a party "purposely directed" his activities at a forum depends on whether the

21  party took "some act by which the defendant purposefully avails itself of the privilege of

22  conducting activities within the forum State, thus invoking the benefits and protections of its

23  laws." *Lake v. Lake*, 817 F. 2d at 1421 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

24  This requirement is the test for the fundamental determination of whether "the defendant's

25  conduct and connection with the forum State are such that he should reasonably anticipate being

26  haled into court there."  *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. 286, 297 (1980).

27

28

1    This requirement "is based on the presumption that it is not unreasonable to require a

2  defendant who purposefully conducts business in a state, thereby using the benefits and

3  protections of the forum state's laws, 'to submit to the burdens of litigation in that forum as

4  well.'" *Id.* (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 476 (1985). "Jurisdiction may not

5  be avoided by a lack of physical contact with the forum state." *Id.* Even where there was no

6  physical contact relating to the claim, the Supreme Court has upheld the assertion of jurisdiction

7  over a defendant whose efforts were "intentionally directed" towards the forum state. *See*

8  *Calder v. Jones,* 465 U.S. 783, 790 (1984). On the other hand, "a defendant may not be haled

9  into a jurisdiction as the result of random, fortuitous or attenuated contacts or based upon the

10  unilateral acts of third parties." *Lake,* 817 F.2d at 1421.

11    "[T]he plaintiff's residence in the forum State is not a separate requirement, and lack of

12  residence will not defeat jurisdiction established on the basis of defendant's contacts." *Keeton v.*

13  *Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984). *Keeton* held that personal jurisdiction existed

14  even though the plaintiff in that case was not a forum resident. *Id. See also Resnick v. Rowe,*

15  283 F. Supp. 2d 1128, 1137-38 (D. Haw. 2003) (holding that the plaintiff's "out-of-state

16  residency does not, by itself, defeat jurisdiction.").

17    There may be no better example of "purposely availing" oneself of the benefits and

18  protections of a forum State's laws than filing a lawsuit in the forum State's courts. Where a

19  nonresident is alleged to have improperly brought a lawsuit in the forum, courts have held that

20  personal jurisdiction is appropriate over claims against the nonresident arising from the improper

21  lawsuit. *See, e.g., Minerva Marine, Inc. v .Spiliotes,* 2006 U.S. Dist. LEXIS 13939, at *20-21

22  (D.N.J. Mar. 13, 2006) (finding personal jurisdiction over claims against officer and director of

23  corporation alleged to have authorized and directed the corporation's improper filing of lawsuit

24  against defendants/third-party plaintiffs, on grounds that "by authorizing the lawsuit, it is clear

25  that [the officer] has purposely availed himself of the forum.").

26    Indeed, even when non-residents obtain *ex parte* court orders in courts *outside the forum*

27  and then attempt to use the forum's law enforcement officers or other enforcement procedures to

28

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS**
**CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION**
**Case No. 3:08-cv-05126-MHP**

1   enforce such orders, courts have found personal jurisdiction against the non-resident party. *See,*

2   *e.g., Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987) (finding personal jurisdiction in Idaho

3   over attorney who wrongfully obtained *ex parte* order in California state court for purpose of

4   enforcement in Idaho by others, even though attorney never entered Idaho).[6]

5          In *Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987), the court addressed the question of

6   whether a non-resident attorney who obtained an allegedly *ex parte* order in California for use in

7   Idaho was subject to personal jurisdiction in Idaho for the tort of abuse-of-process.  The non-

8   resident attorney, working with the mother of a child living in Idaho, obtained an *ex parte* order

9   in California awarding temporary custody of a child.  The mother then travelled to Idaho, used

10  the ex parte order to secure the assistance of law enforcement officials, and forcibly took custody

11  of the child.  The district court dismissed the father's claims against the attorney on the grounds

12  that the attorney had not "purposely availed" himself of the laws of Idaho because he had

13  obtained the *ex parte* order in California.  The court of appeals reversed, holding that the attorney

14  knew that the mother "would take the order to Idaho in attempting to gain custody of Brian" and

15  that the attorney "intended [the mother] to use the order to obtain the assistance of the

16  appropriate authorities there." *Lake,* 817 F.2d at 1423.

17         Similarly, in *Minerva Marine, Inc. v .Spiliotes*, 2006 U.S. Dist. LEXIS 13939, at *20-21

18  (D.N.J. Mar. 13, 2006) a non-resident managing director of a corporation directed the filing of a

19  lawsuit against the defendant, and the defendant filed counterclaims naming the director.  The

20  director filed a motion to dismiss for lack of personal jurisdiction, alleging that because he had

21  never set foot in the forum.  The court rejected this argument, holding that "[b]y authorizing the

22  lawsuit, it is clear that Martinos has purposefully availed himself of this forum." 2006 U.S. Dist.

23  ――――――――――――――――――

24  [6] *See also Towers v. Hughes,* 1992 U.S. Dist. LEXIS 944, at *5-7 (D. Or. Jan. 22, 1992) (finding
    personal jurisdiction in Oregon over attorneys who obtained *ex parte* order in New York courts
25  for purpose of enforcement in Oregon); *Yahoo! Inc. v. La Lique Contre Le Racisme et
    L'Antisemitisme,* 145 F. Supp. 2d 1168, 1173-74 (N.D. Cal. 2001) (finding personal jurisdiction
26  in California over French citizens who obtained court order in French court and attempted to
    enforce order in California).

27

28
                                            14

1   LEXIS 13939 at *21.  "If there was a malicious motive to the lawsuit, it would have been

2   foreseeable that Martinos' conduct and connection with the forum State were such that he should

3   reasonably anticipate being haled into court there." *Id.* (internal quotations omitted) (quoting

4   *World Wide Volkswagen Corp.*, 444 U.S. at 297).

5        Here, Defendants do not appear to seriously dispute that the USCF's filing of the instant

6   lawsuit against Mrs. Polgar is "purposeful availment" sufficient to establish personal jurisdiction

7   for claims arising from this activity.  Nor do they contest Mrs. Polgar's allegations that they

8   personally directed the filing of this lawsuit at every step of the process.  Rather, they contend

9   that their status as officers of the USCF does not provide the Court with personal jurisdiction

10  over them.  *See* MTD at 4 ("That some of the third-party defendants are on the board of the

11  USCF is insufficient to subject them to personal jurisdiction in California.").  This is true, but

12  misses the point entirely.  Personal jurisdiction over Plaintiffs does not arise *merely* because they

13  are on the USCF board:  it arises because Plaintiffs purposely directed and directly participated

14  in all of the actions at issue here.

15       As the Supreme Court, Ninth Circuit courts, California courts, and this Court have all

16  recognized, while a corporate officer's mere status as an officer is insufficient to establish

17  personal jurisdiction, if the officer authorized, directed, or participated in the corporate conduct

18  at issue, personal jurisdiction arises for claims arising from this conduct.  *See, e.g., Calder v.*

19  *Jones,* 465 U.S. 783, 789-90 (1984) (finding personal liability where employees alleged to have

20  directly participated in tortuous acts, holding "[p]etitioners are correct that their contacts with

21  California are not to be judged according to their employer's activities there.  On the other hand,

22  their status as employees does not somehow insulate them from jurisdiction."); *Keeton v. Huster*

23  *Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (stating that in *Calder* "reject[ed] the suggestion

24  that employees who act in their official capacity are somehow shielded from suit in their

25  individual capacity."); *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 521-22 (9th Cir. 1989)

26  (holding *Calder* rejected the argument that "the existence of a state-created corporate form

27  [creates] a due process limit on jurisdiction" and finding personal jurisdiction over corporate

28

1   directors that directed corporation's activity into the forum state); *j2 Global Communs., Inc. v.*

2   *Blue Jay, Inc.*, 2009 U.S. Dist. LEXIS 1616, *15 (N.D. Cal. Jan. 5, 2009) ("If acts taken by a

3   corporate officer subjects the officer to personal liability (i.e., the corporate officer authorized,

4   directed or participated in tortious conduct), and those acts create contact with the forum state,

5   such acts are not only acts of the corporation but also acts of the individual, and may be

6   considered contacts of the individual for purposes of determining whether long-arm jurisdiction

7   may be exercised over the individual."); *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103,

8   118 (1990) ("The essence of *Calder* is intentional tortfeasors should be prepared to defend

9   themselves in any jurisdiction where they direct their alleged tortious activity"); *Seagate Tech. v.*

10  *A.J.Kogyo Co.,* 219 Cal. App. 3d 696, 701-02 (1990) ("Directors are jointly liable with the

11  corporation and may be joined as defendants if they personally directed or participated in the

12  tortious conduct.  Directors are liable to third persons injured by their own tortious conduct

13  regardless of whether they acted on behalf of the corporation and regardless of whether the

14  corporation is also liable. This liability does not depend upon the same grounds as 'piercing the

15  corporate veil,' on account of inadequate capitalization for instance, but rather on the officer or

16  director's personal participation or specific authorization of the tortious act.").

17      Thus, as this Court has explained:

18      Though employees are not necessarily subject to liability in a given jurisdiction
19      due to the contacts of their employers, "their status as employees does not
        somehow insulate them from jurisdiction. Each defendant's contacts with the
20      forum State must be assessed individually." *Calder v. Jones,* 465 U.S. 783, 790
        (1984).  Accordingly, an employee, officer or director may be subject to personal
21      jurisdiction where the individual is a "primary participant" in the alleged
        wrongdoing.  *Id.* The assertion of personal jurisdiction based on the primary
22      participant theory is appropriate where the individual had "control of, and direct
        participation in the alleged activities."  *Wolf Designs, Inc. v. DHR Co.*, 322 F.
23      Supp. 2d 1065, 1072 (C.D. Cal. 2004) (citing *Transgo, Inc. v. Ajac Tansmission
        Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)).
24

25  *Martin Ray Winery,* 2007 U.S. Dist. LEXIS 22858, at *15-16.

26      Because of its similarities, *Minerva Marine* is instructive.  There, the cross-defendant was

27  a nonresident managing director of a nonresident company that had brought suit against the

28  defendant and counter-plaintiff in the forum.  The defendant and counter-plaintiff alleged

1  counterclaims against the company and the managing director for, among other things, abuse of

2  process. The managing director argued that the court lacked personal jurisdiction over counter-

3  plaintiff's claims against him because his company had brought the action against the defendant,

4  not him. He further alleged that he was not a United States citizen, had never resided in the

5  United States, owns no bank accounts or personal property in the forum State, nor recalled ever

6  travelling there even once. *Minerva Marine, Inc. v. Spiliotes,* 2006 U.S. Dist. LEXIS 13939, at

7  *16-17 (D.N.J. Mar. 13, 2006). The counter-plaintiff, however, alleged that the managing

8  director had "personally" ordered the lawsuit, and the managing director admitted that "he made

9  the final decision to file the lawsuit." *Id.* at *21. The court held that under *Caldor, Keeton,* and

10  many other cases, the managing director "cannot shield himself from jurisdiction through

11  Minerva if he is alleged to have individually participated in the tort," and that by "authorizing the

12  lawsuit," he left himself open to personal jurisdiction for the tort of abuse of process. *See id.*

13      Also relevant is *Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065 (C.D. Cal.

14  2004). There, the defendant individual officer admitted that he was the "prime moving force" in

15  the polices and decisions of the company, and, moreover, was the specific officer who made the

16  decisions to direct the company's acts giving rise to jurisdiction over the company and the

17  plaintiffs' claims. *See Wolf,* 322 F. Supp. 2d at 1072-73. The court held that his "control of, and

18  direct participation in the alleged activities" gave rise to personal jurisdiction.

19      In *j2 Global Communs., Inc. v. Blue Jay, Inc.*, 2009 U.S. Dist. LEXIS 1616, *15 (N.D.

20  Cal. Jan. 5, 2009), plaintiffs, the owner of "efax" services, brought various tort claims against the

21  defendant, a non-resident unsolicited "junk fax" advertiser that was responsible for sending

22  thousands of faxes to the plaintiffs' customers. The plaintiff included one of the defendant's

23  officers as a co-defendant. The officer, a nonresident, contended that the court lacked personal

24  jurisdiction over the plaintiffs' claims because he did not live in the forum and did not send the

25  faxes at issue. 2009 U.S. Dist. LEXIS 1616, at *21-22. The court rejected this argument,

26  holding that personal jurisdiction was proper because the defendant was alleged to have hired

27  agents to send the faxes, directed these agents to send the faxes, and was otherwise the "guiding

28

1   spirit" and the "central figure" behind the faxes. *Id.* at *23-25.

2         Here, Mrs. Polgar has alleged that Plaintiffs took control of USCF and improperly

3   authorized the lawsuit and controlled it every step of the way.  Plaintiffs do not contest that they

4   were the ones directing the filing of the instant lawsuit, the use of the "Jane Doe" procedures, the

5   vigorous discovery pursued in California, or their interference with Mrs. Polgar's

6   indemnification of the California lawsuit.  In fact, they have offered numerous declarations and

7   pleadings throughout this litigation in which they have repeatedly admitted that they were the

8   ones that directed these actions.

9         Plaintiffs contend that Mrs. Polgar's Cross-Complaint "does not allege that [they]

10   performed any activities within or towards individuals or events within the State of California

11   [sic]."  MTD at 5.  They appear to be claiming that because their "meetings" were held outside of

12   California, there are no "forum related" activities.  Literally every case cited above contradicts

13   this point.  The fact that they did not *personally* enter California to meet together or personally

14   themselves file the instant lawsuit is *irrelevant* to the issue of whether they *directed* the filing of

15   a lawsuit in California state courts and other acts within the State of California.  They did.

16         In fact, if anything, the case for personal jurisdiction over Plaintiffs is even stronger here

17   than in any of the cases cited above, because Plaintiffs acted without the authorization of the

18   USCF to take any of these acts and in direct violation of numerous USCF bylaws.  A finding of

19   *ultra vires,* however, is not a requirement for personal jurisdiction.  As the cases cited above

20   demonstrate, officers and directors of a corporation may be held liable for acts taken by a

21   corporation *even where ultra vires* is not issue.  So long as the individual officers were the ones

22   directing that the acts take place or were the "moving force" behind these acts, personal

23   jurisdiction is appropriate.  That is the case here.  Personal jurisdiction is therefore appropriate.

24   **B.**    **Mrs. Polgar's Claims "Arise Out Of And Relate To" Plaintiffs' Forum-Related Activities.**

25         The second requirement for specific jurisdiction is that Plaintiffs' forum-related activities

26   must be the ones that give rise to the current suit.  Courts measure this requirement in terms of

27   "but for" causation.  *See, e.g., Wolf Designs,* 322 F. Supp. 2d at 1973.  Plaintiffs' only argument

28

1   on this point is that because their "meetings" took place outside of California, there can be no

2   causation. This argument fails for the reasons discussed above.

3       **C.**    **Plaintiffs Have Failed To Meet Their Heavy Buren Of Showing That The**
    **Exercise Of Personal Jurisdiction Would Be "Unreasonable" Under The Due**

4               **Process Clause.**

5         The final requirement for specific jurisdiction is reasonableness. For jurisdiction to be

6   reasonable, it must comport with fair play and substantial justice. *See Burger King,* 471 U.S. at

7   476. As the Ninth Circuit has stated, "once purposeful availment has been established, the

8   forum's exercise of jurisdiction is presumptively reasonable." *Shute v. Carnival Cruise Lines,*

9   897 F.2d 377, 386 (9th Cir. 1990). "To rebut that presumption, a defendant 'must present a

10  compelling case' that the exercise of jurisdiction would, in fact, be unreasonable." *Id.* (citing

11  *Burger King,* 471 U.S. at 476).

12        The "reasonableness" determination requires the consideration of several specific factors:

13  (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on

14  the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the

15  defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient

16  judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in

17  convenient and effective relief, and (7) the existence of an alternative forum. *Burger King,* 471

18  U.S. at 476-77.

19        Here, the extent of the defendants' purposeful interjection into California, and

20  California's interest in adjudicating this dispute here, weigh heavily in favor of reasonableness.

21  Purposely "tak[ing] advantage of [the forum's] laws and authorities" is probably the perfect

22  example of purposely availing the benefits of a forum. *See Lake,* 817 F.2d at 1423 (finding

23  exercise of personal jurisdictional reasonable in light of defendant's "purposeful direction of his

24  efforts in procuring the ex parte order to take advantage of Idaho's laws and authorities."). The

25  extent of Plaintiffs' purposeful interjection, and the interest of the forum state in adjudicating the

26  dispute, is *even stronger* here than in *Lake* because here, the Plaintiffs' *ex parte* legal actions

27  were taken in the forum state, and Plaintiffs took them *repeatedly* by both filing a "Jane Doe"

28

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS**
**CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION**
**Case No. 3:08-cv-05126-MHP**

1   lawsuit and then taking vigorous discovery through subpoenas to numerous businesses, many of

2   which have offices and/or are incorporated in California.  As *Plaintiffs themselves* have

3   recognized, California has a "significant interest" in preventing "unauthorized access" into the

4   accounts of internet companies such as Yahoo!, Google, and Anonymizer.  *See* Pls.' Opp. to

5   Mot. To Transfer (Docket No. 68) at 14-15.   That is *exactly what Plaintiffs themselves did* when

6   they misused the "Jane Doe" procedures and sought vigorous discovery against these very

7   companies into Mrs. Polgar's private affairs without notice to her.  As Plaintiffs themselves

8   recognize, "these companies, and Northern California as a whole, have an interest in addressing

9   such misconduct in California." *Id. See also id.* ("California has an interest in having its own

10  courts apply its laws, particularly when they affect businesses residing in California.").

11          Plaintiffs also contend that Texas would be a more "convenient" and "appropriate"

12  forum.  First of all, Plaintiffs' claims concerning any hardship in litigating in this forum fail out

13  of the gate.  They admit that they chose this forum.  They even fought vigorously to prevent the

14  transfer to the very court they now propose should here it.  Moreover, as this Court has implicitly

15  held, transfer of this action to Texas would be inappropriate.  Plaintiffs themselves have noted

16  that the convenience of the "majority of third party witnesses" are located here in California.

17  Pls.' Opp. To Mot. To Transfer (Docket No. 68) at 9-11.  These witnesses are important to Mrs.

18  Polgar's claims, because they will further establish that Plaintiffs learned *nothing* that would

19  cause them to amend their fake "Jane Doe" lawsuit to name her, and had instead been planning

20  to name her prior to filing.

21          As for "efficiency," this factor weighs very strongly in personal jurisdiction here.  The

22  Plaintiffs' actions leading up to and during the pendency of this lawsuit and their decision to file

23  the instant lawsuit are all directly relevant to Mrs. Polgar's claims here.  It cannot seriously be

24  contended that adjudication of her counterclaims for abuse of process and breach of fiduciary

25  duty in Texas while adjudication of the instant lawsuit proceeds here would be "efficient."  To

26  even state this premise is to show its falsity.

27          Finally, Plaintiffs repeatedly claim that the USCF and Mrs. Polgar have virtually no

28

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS
CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION
Case No. 3:08-cv-05126-MHP**

1 | contracts and that their actions have no effects at all in California.  As demonstrated above, this

2 | is simply not the case.  The USCF has extensive contacts in California.  Moreover, Mrs. Polgar,

3 | as the number one female chess player in the United States, regularly travels here, and does

4 | business here.  The effect of Plaintiffs' breaches of fiduciary duty to Mrs. Polgar and their

5 | ongoing campaign to harass her and deny her the ability to perform her duties as an elected board

6 | member on the USCF has an obvious impact on the over 9,000 USCF members located in

7 | California and the USCF's extensive activities in this state.  Plaintiffs' contentions that they and

8 | Mrs. Polgar are strangers to California is simply wrong, and, while not the principal basis of

9 | personal jurisdiction, Mrs. Polgar believes it is important to correct Plaintiffs' misrepresentations

10 | on this issue.

**D.    Should The Court Find A Lack Of Sufficient Showing Of Personal Jurisdiction As To Any Of The Third Party Defendants, Mrs. Polgar Respectfully Requests The Court To Wait To Rule Until After Mrs. Polgar Is Able To Obtain Adequate Discovery Responses From Plaintiffs.**

If, for any reason, the Court finds that an insufficient showing at this stage as to any of the Third Party Defendants, Mrs. Polgar respectfully requests that the Court wait to rule in order until such time as Mrs. Polgar obtains proper responses to its outstanding discovery requests.  As set forth in more detail in Mrs. Polgar's pending motion to compel, as well as the June 11, 2009 letter to the Court pursuant to Standing Order No. 6, Plaintiffs have refused to provide numerous documents and emails that are extremely likely to demonstrate even more clearly the Plaintiffs' personal, direct role in directing the filing of the lawsuit in California, the discovery taken in California, and the denial of Mrs. Polgar's request(s) for indemnification of the California action. They have also refused to provide any responses to Mrs. Polgar's interrogatories other than blanket objections and referrals to unspecified documents.

Alternatively, Mrs. Polgar requests that the Court grant her leave to amend in the event Plaintiffs' motion is granted in any way.

//

//

//

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION Case No. 3:08-cv-05126-MHP**

1   **V.      CONCLUSION**

2          For the reasons set forth above, the Court should deny Plaintiffs' motion to dismiss for

3   lack of personal jurisdiction in its entirety.

4   Dated:  September 8, 2009                    GONZALEZ & LEIGH, LLP

5

6                                               By:   /s/ Matthew R. Schultz

7                                                    Matthew R. Schultz
                                                    Attorneys for Defendant
8                                                    SUSAN POLGAR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANTS' MOTION TO DISMISS**
**CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION**
**Case No. 3:08-cv-05126-MHP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................1

II.   BACKGROUND ....................................................................3

    A.  Plaintiffs Do Not Dispute That They Personally Directed The Filing Of the Instant Lawsuit In California, The Discovery In California, The Disclosure Of Facts Obtaiined During Discovery In California, Or The Denial Of Mrs. Polgar's Request For Indemnification Of Her Defense Of The Claims Filed Against Her In California....................................................................3

    B.  Since The Cross-Complaint, Plaintiffs Have Taken Additional Actions Specifically Designed To Cause Mrs. Polgar Harm In California ...............................................................................5

    C.  The Plaintiffs' Actions Have Had And Will Have Other Immediate Effects In California ..........................................................6

        1.  The USCF's Extensive Contacts And Activities In California Directed By The Executive Board Which Plainitffs Have Sought To Retain Control Of Through Their Harm To Mrs. Polgar .........................................................................7

        2.  Susan Polgar's Contacts In California ...............................10

III.  LEGAL STANDARD ...........................................................11

IV.  SPECIFIC JURISDICTION EXISTS OVER PLAINTIFFS BECAUSE THEY WERE "PRIMARY PARTICIPANTS" IN THE ALLEGED WRONGDOING IN CALIFORNIA ....................................12

    A.  Plaintiffs Purposely Availed Themselves Of This Forum...............12

    B.  Mrs. Polgar's Claims "Arise Out Of And Relate To" Plaintiffs' Forum-Related Activities ......................................................18

    C.  Plaintiffs Have Failed To Meet Their Heavy Burden Of Showing That The Exercise Of Personal Jurisdiction Would Be "Unreasonable" Under The Due Proess Clause .................................19

    D.  Should The Court Find A Lack Of Sufficient Showing Of Personal Jurisdiction As To Any Of The Third Party Defendants, The Court Should Wait To Rule Until After Mrs. Polgar Is Able To Obtain Adequate Discovery Responses From Plaintiffs...................21

V.  CONCLUSION.....................................................................22

i

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANT'S MOTION TO DISMISS CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION**
Case No. 3:08-cv-05126-MHP

# TABLE OF AUTHORITIES

## CASES

Page

*American Tel. & Tel. Co. v. Compagnie Bruzelles Lambert*
94 F.3d 586 (9th Cir. 1996) ..................................................................................12

*Burger King v. Rudzewicz*
471 U.S. 462 (1985) .........................................................................................13, 19

*Caldor v. Jones*
465 U.S. 783 (1984) .......................................................................2 , 13, 15, 16, 17

*Cybersell, Inc. v. Cybersell, Inc.*
130 F.3d 414 (9th Cir. 1997) ...............................................................................12

*Davis v. Metro Productions*
885 F.2d 515 (9th Cir. 1989) ............................................................................2, 15

*Dole Food co., Inc. v. Watts*
303 F.3d 1104 (9th Cir. 2002) .............................................................................11

*Global Communs., Inc. v. Blue Jay, Inc.*
2009 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 5, 2009) .......................................16

*Hanson v. Denckla*
357 U.S. 235 (1958) .............................................................................................12

*j2 Global Communs., Inc. v. Blue jay, Inc.*
2009 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 5, 2009) .......................................17

*Keeton v. Hustler Magazine, Inc.*
465 U.S. 770 (1984) ....................................................................................2, 13, 15

*Lake v. Lake*
817 F.2d 1416 (9th Cir. 1987) ........................................................................13, 19

*Martin Ray Winery v. Graham*
2007 U.S. Dist LEXIS 22858 (N.D. Cal. Mar. 28, 2007) .........................11, 12, 16

*Minerva Marine, Inc. v. Spiliotes*
2006 U.S. Dist. LEXIS 13939 (D.N.J. mar. 13, 2006)..........................13, 14, 16, 17

*Resnick v. Rowe*
283 F.Supp. 2d 1128 (D. Haw. 2003)....................................................................13

*Seagate Tech. v. A.J. Kogyo Co.*
219 Cal. App.3d 696 (1990) .................................................................................16

*Shute v. Carnival Cruise Lines*
897 F.2d 377 (9th Cir. 1990) ................................................................................19

*Taylor-Rush v. Multitech Corp.*
217 Cal.App. 3d 103 (1990) .................................................................................16

*Towers v. Hughes*
1992 U.S. Dist. LEXIS 944 (D. Or. Jan. 22, 1992) ..............................................14

*Transgo, Inc. v. Ajac Tansmission Parts Corp.*
768 F.2d 1001, (9th Cir. 1985) .............................................................................16

DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANT'S MOTION TO DISMISS
CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION
Case No. 3:08-cv-05126-MHP

1

## TABLE OF AUTHORITIES

2

### CASES (Continued)

Page

3

4

*Wolf Designs, Inc. v. DHR Co.*
  322 F. Supp. 2d 1065 (C.D. Cal. 2004) ........................................................ 16, 17, 18

5

*World-Wide Volkswagen*
  444 U.S. 286 (1980) ................................................................................ 12, 15

6

*Yahoo! Inc. v. La Lique Contre le Racism et L'Antisemitisme*
  145 F. Supp. 2d 1168 (N.D. Cal. 2001) ................................................................ 14

7

8

### STATUTES AND AUTHORITIES

9

California Code of Civil Procedure
  § 410.10 ................................................................................................ 12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT SUSAN POLGAR'S OPPOSITION TO CROSS-DEFENDANT'S MOTION TO DISMISS
CROSS-COMPLAINT FOR LACK OF PERSONAL JURISDICTION
Case No. 3:08-cv-05126-MHP**