| | |
|---|---|
| 1 | GONZALEZ & LEIGH, LLP |
| | MATT GONZALEZ (SBN 153486) |
| 2 | G. WHITNEY LEIGH (SBN 153457) |
| | MATT SPRINGMAN (SBN 252508) |
| 3 | Two Shaw Alley, Third Floor |
| | San Francisco, CA  94105 |
| 4 | Telephone:  (415) 512-2000 |
| | Facsimile:  (415) 512-2001 |
| 5 | |
| 6 | Attorneys for Defendant |
| | SUSAN POLGAR |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA CHESS FEDERATION, INC., an Illinois not-for-profit corporation, RANDALL D. HOUGH, an individual, | Case No. 3:08-cv-05126-MHP |
| | **DEFENDANT SUSAN POLGAR'S [PROPOSED] REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| Plaintiffs, | |
| v. | |
| SUSAN POLGAR, an individual, GREGORY ALEXANDER, an individual DOES 1-10, inclusive | Hearing Date:   September 28, 2009 |
| | Time:           2:00 p.m. |
| | Courtroom:      Courtroom 15, 18th Floor |
| Defendants. | Judge:          Hon. Marilyn Hall Patel |

**DEFENDANT'S [PROPOSED] REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL**
**Case No. 3:08-cv-05126-MHP**

## I. INTRODUCTION

If an organization learns that its privileged communications are available on the internet, does not seek the return of those communications, and refuses to open an investigation into how they were leaked to the web, did it take "all reasonable means" to preserve these communications' confidentiality? What if a party receives three different court filings that disclose their privileged communications, but fails to seek judicial assistance to remove any of them from public view for over ten months? What if a party turns over (and receives) 21 pages of documents containing its privileged communications—each one labeled in bold italics "***privileged communications***"—and does nothing to seek their return for months, nor explains how they were turned over in the first place? What if board members routinely share "litigation strategy" with third parties alleged to be adverse to the company? What if they share their counsel's "opinions" with the Court, third parties, and the general public in order to make their own case appear stronger? These are the facts. They are also each textbook examples of waiver.

Rather than addressing these issues, plaintiffs make allegations that are long on vitriol, but devoid of substance. Nearly every allegation in their opposition (especially the alleged "Scheme") is either a bald, unsupported assertion with no factual basis or a misrepresentation by (highly) selective omission.[1] Any of these allegations would fail to meet plaintiffs' burden of proving that the attorney-client privilege bars reliance on the documents at issue. Taken together, they do no better. Misrepresentations do not gain in merit when their numbers increase.

## II. ARGUMENT

### A. In *January 2008*, Polgar Identified the Website Where She Discovered the Communications.

Plaintiffs contend that Polgar (and her counsel!) "changed her story" by identifying "rec.games" as the website where the publicly-available communications appeared, and therefore that she "lied" about where she found them. *See* Opp. at 7. This is false. As set forth below,

---

[1] "A half-truth is the most cowardly of lies." - Mark Twain.

plaintiffs fail to mention the crucial fact that Polgar repeatedly identified "rec.games" in January of 2008 as the place where she saw the emails—in communications with plaintiffs and Kronenberger himself. Plaintiffs' omission of this fact, while accusing Polgar and her counsel of misconduct, is deceptive and improper.

Beginning in November 2007 and continuing through the first months of 2008, Polgar and her husband, Paul Truong, wrote several emails to the USCF's other Executive Board members and Kronenberger notifying them that these communications had appeared on the internet. *See* Declaration of Whitney Leigh ISO Reply ("Leigh Decl."), Exs. A – F. Polgar learned of the postings through the "Google alerts" service, which notifies users whenever designated words (i.e., "Susan Polgar") appear on the internet. *Id.* Ex. G at 271:15-272:21.

Polgar and Truong expressly responded to plaintiffs' questions regarding the identity of the websites where the communications appeared, repeatedly identified this website as "rec.games," provided the "user names" who had posted on the site, and repeatedly demanded that plaintiffs and counter-defendants investigate the source of the leaked communications. Examples of such communications include the following:

On December 3, 2007, Polgar wrote to Kronenberger and asked him about the publicly-available communications. *See* Leigh Decl., Ex. E. Kronenberger wrote back to propose a 11:00 phone call. *Id.* Thereafter, on December 5, 2007, Polgar wrote Kronenberger with a "summary . . . from our conversation." *Id.* Ex. F at KRON000596. She stated:

> We will also officially ask for a full investigation of leaks of confidential information from board members / ED, including your discussion with them about Chubb. There are also a number of vicious leaks from a character by the name of Chesster Molesster and others with confidential information which only the other 5 board members and the ED would know.

*Id.*

On January 12, 2008, Truong wrote to the other Executive Board members and Kronenberger, stating:

> One of you leaked out to your circle of "friends" the request from Mr. Kronenberger to speak to Chubb to convince Chubb not to insure Susan and me so we are forced to hire "inferior" attorneys. . . . **Susan has informed Mr. Kronenberger of a number of these leaks.** Have you investigated your own

team? Did your lawyer investigate this board? Isn't this also your fiduciary duty?

*Id.* Ex. B at KRON000767 (emphasis added).

On January 15, 2009, Polgar and Truong responded to Executive Board member Randy Bauer's question as to where the publicly available communications had appeared:

> We obtained the information from postings on various web sites. **Susan gave some of the names (handles) who posted confidential information on these sites to Mr. Kronenberger when they spoke a while back.**
>
> . . . .
>
> **It was posted on rec.games**. Some were by ChessterMolester handle (not sure of the exact spelling), some were by OdessaChess handle (again not sure of the exact spelling), and some were by other handles. I do not recall the dates and which handle posted which. Some of these anonymous posters made posts with the following:
>
> Note: The author of this message requested that it not be archived. This message will be removed from Google Groups in XX days.

*Id.* Ex. A at KRON000297 (emphasis added).[2]

Polgar and Truong again demanded an investigation into how this information was leaked to the internet. *See id.* at KRON000298 ("Are you, Randy Hough, and Jim Berry willing to step aside and let this board form another sub-committee to investigate this matter to avoid any possible conflict of interest just as Paul and I did with the other investigation?"). Randy Bauer responded: "For the record, I would be happy to respond to the same questions Mr. Kronenberger asked of you . . . ." *Id.* at KRON000299.

On January 24, 2009, Polgar wrote another email to Kronenberger and the present counter and third-party defendants. She again referenced the leaked communications, again demanded an investigation into how they were leaked, and again provided information about the "handles" on rec.games used to post the communications:

> Can this board state that there were no leaks of confidential information to Jerry Hanken, Sam Sloan, Harry Payne, Brian Lafferty, John Hillery . . . ? Can this board state that the rumour regarding a 5-0 vote to authorize Mr. Kronenberger to contact Chubb to cancel our representation is false? Can this board state that

---

[2] A copy of this email exchange was produced at least twice by plaintiffs and counter-defendants through their attorney, Karl Kronenberger; Polgar attaches both copies.

> there were no internal discussions to investigate the fabricated child abuse charges that my ex-husband was trying to pin on Paul and me to gain full custody? How did Mr. Kronenberger know this?
>
> . . . .
>
> There were a lot of issues that were kept secret from each other by fellow sub-committee members. But ChessterMolester and Odessachess seem to know quite a bit. By the way, ChessterMolester has changed his handle. We have his new handles, IPs and other information on the Chess Discussion forum and Usenet. However, we cannot pinpoint his identity without access to the USCF database which has the real names.

*Id.* Ex. C at KRON000501.

On January 29, 2008, Polgar wrote again to the same parties. She stated: "It is quite obvious from the beginning that the leaks of confidential information can only come from the board majority." *Id.* Ex. D at KRON000531. She added "I am still asking for a full investigation of the leaks of confidential information," (*id.*), and requested two agenda items for the next board meeting, one of which was entitled "Investigation of leaks of confidential information by board members to their friends." *Id.* at KRON000532. The response from plaintiffs is telling:

> Bill Goichberg: "our attorney says we should not discuss matters related to the Mottershead allegations with you or Paul." *Id.*
>
> Polgar: "Are you saying that there will be no investigation since many of the leaks directly involves this matter?" *Id.*
>
> Goichberg: I can't speak for the board regarding what there will or won't be. I would like to know how you apparently obtained confidential material that was intended only for the subcommittee . . . , **but we have asked you and you have responded, so what else can we do to investigate?**

*Id.* (emphasis added).

These communications establish that in January 2008, Polgar specifically identified Google's "rec.games" as a website where she first saw the emails. Plaintiffs admit that she did so in these communications. Plaintiffs produced these communications in discovery. Plaintiffs' allegations that Polgar "changed her story" or "lied" are false.

**B.     Plaintiffs Did Not Take "All Reasonable Means" Following Polgar's Identification Of Rec.Games In January 2008.**

Plaintiffs contend that when they asked Polgar where she obtained the emails in January 2008, "she would not respond with specificity." Opp. at 8 (quoting Hall Decl. ¶ 5). This is

another falsehood: as documented above, Polgar *specifically identified* the "newsgroup" in question and *specifically identified* the "handles" of posters who posted the communications on this "newsgroup."

Plaintiffs also contend that they took "all reasonable means" to prevent the communications from remaining available to the public on "the newsgroup on the internet." *See* Opp. at 8. They offer Bill Hall's statement that "the USCF conducted a search of these newsgroups for these emails, but could not locate any evidence of the stolen emails within the Internet newsgroups at that time." Hall Decl. ¶ 5. This fails to establish that no waiver occurred for a simple reason: plaintiffs implicitly concede that they *never asked Polgar to return the emails to them*. That is the first thing that a party seeking to protect a privileged communication is supposed to do. Plaintiffs didn't. End of story.

Even if plaintiffs or their counsel had asked for the communications, their showing would be insufficient: the Hall Declaration provides no detail as to what other, if any, steps the USCF took to locate and prevent the communications from being posted online at rec.games. It omits the glaring fact that the communications remained available at rec.games: Sam Sloan obviously found them posted by another "handle" (nobody@nowhere.com) and filed them publicly in the Texas Action. *See* Leigh Decl., Ex. H and Docket No. 8 (N.D.TX 5:08cv00169). Moreover, as Polgar demonstrated in her motion to compel, the communications *remain available on rec.games to this day*. Docket No. 185 at ¶7, Ex. F. In fact, as the evidence demonstrates, Polgar *did not want the communications on the internet, and repeatedly demanded that plaintiffs investigate the posts, but plaintiffs refused her requests*. Goichberg encapsulated plaintiffs' blasé attitude towards the disclosures: "we have asked you and you have responded, so what else can we do to investigate?" Leigh Decl., Ex. D (January 29, 2009 email at KRON000532). Plaintiffs answered their own question in September 2008, when they issued subpoenas to third parties, including Google, to investigate the "fell to the ground from the sky" blog. *See* Leigh Decl. Ex. I at USCF000141-149. But plaintiffs have *never once contacted Google* to demand that rec.games posts be taken down, or to discover the identities of the rec.games posters "chesttermolester," "odessachess," or "nobody@nowhere.com," or find out the histories of these postings. This is

hardly taking "all reasonable means" to preserve their confidentiality.[3]

### C. Plaintiffs Utterly Fail To Establish That Polgar "Stole" The Communications In Question.

Plaintiffs also allege, on almost every page of the opposition, that Polgar "stole" the publicly-available communications. But repeating baseless allegations does not make them true.

*First,* as discussed above, Polgar did not "change her story" about where she found the emails in question. She stated from the beginning that they had been posted on the "rec.games" forum and noted the "handles" of the posters who'd put them there. Plaintiffs' claim that "no one else saw them" is unsubstantiated and should be stricken; it is also demonstrably false. Sam Sloan has repeatedly stated that he saw them there, posted by another "handle," nobody@nowhere.com." *See* Leigh Decl. Ex. H.

*Second,* plaintiffs contend that because Polgar's Texas counsel later found these communications on a different website (uscf-said.blogspot.com) and referenced this site to plaintiffs as evidence that the communications had been disseminated to the public, Polgar has somehow been inconsistent. This is not the case. Plaintiffs deceptively conflate Polgar's statements with those of her Texas counsel ("Polgar lied about getting the stolen emails from the Blog, as it would have been impossible for her to do so before the July 31, 2008 creation of the Blog). To state the obvious, that Polgar's attorney in Texas (James Killion) was able to locate the emails on a different website in August 2008 does not mean that they were not also posted at rec.games in December of 2007.

*Third,* plaintiffs argue that because this second website (uscf-said.blogspot.com) was "created" in July of 2008, Polgar must have posted the communications there. Again, even assuming the evidence establishes a date certain for the creation of the blog, no evidence suggests that the same communications weren't earlier posted on rec.games by "chesstermolester," odessachess," or "nobody@nowhere.com." Plaintiffs have offered no proof

---

[3] Instead of taking any actions to determine who posted the emails on rec.games, plaintiffs make bald accusations accusing Polgar herself of posting the communications online. *See* Opp. at 4.

of any kind that Polgar was behind these "handles." *In fact, they have no such evidence.*

*Fourth,* plaintiffs do not, in any event, offer evidence that establishes that the "uscf-said.blogspot.com" blog was in fact created in July 2008. *See* Leigh Decl. ¶ 11, Ex. J.

*Fifth,* plaintiffs' allegation that Polgar is somehow behind the postings on USCF-said.blogspot.com is further belied by the fact that *Polgar herself* filed a petition in the Texas Action to subpoena Google to find out more than the limited information offered by plaintiffs, has issued that subpoena, and is pursuing discovery on this issue. *See* Leigh Decl. ¶ 12, Ex. K.

*Sixth,* plaintiffs' claim that there is come kind of connection between Gregory Alexander and Polgar has no basis in fact. A cursory review of the scant evidence upon which plaintiffs rely demonstrates the tenuousness of this allegation. Incredibly, plaintiffs chiefly rely on their allegations in their complaint (*see* Opp. at 4 and 6), which is obviously not evidence, and Alexander's indictment (*see id.* at 6), which *is also* obviously not evidence, and, in any event, does not even *mention* the USCF, individual counter-defendants, "3,000 emails," or a "scheme" involving Susan Polgar in any way. *See* Leigh Decl. Ex. L.

In fact, Plaintiffs have only been able to point to only two things connecting her to Alexander: a message Polgar sent to Alexander (*see* Opp. at 4 fn. 1), who was at that time a volunteer administrator of Polgar's online chess forum, and the mere fact that Alexander served in this capacity for a brief period. Neither come close to establishing the elaborate criminal "scheme" alleged in plaintiffs' opposition. The email (which, it should be noted, plaintiffs obtained after the close of the "doe" discovery period, *see* Docket No. 83 at 7-9) is taken out of context: as Polgar explained months ago, under oath, she was asking Alexander to check the federation's *public forum for her*, to see if a third party, Jerry Hanken, had commented on a confidential email Polgar had sent to Hough and the rest of the Executive Board. *See* Docket No. 8. At the time, Polgar was concerned that Hough was leaking her confidential communications to other parties—and, in fact, Hanken *did* comment on Polgar's message on the public forum, confirming Polgar's suspicions. *See* Docket No. 81 (Polgar Reply Decl. re Motion to Transfer). Polgar has produced to plaintiffs every communication she has ever had with Alexander, and none demonstrates any malfeasance on her part whatsoever. As for plaintiffs'

7
**DEFENDANT'S [PROPOSED] REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL**
**Case No. 3:08-cv-05126-MHP**

claim that Polgar "hired" Alexander, this claim is based on an email taken even more out of context, and is contrary to the actual facts, namely that he was an unpaid volunteer, who only met Polgar once, who served as one of five volunteer administrator on her website, and who actually *worked* for the USCF as a volunteer web administrator for plaintiffs *for over four years*. Leigh Dec., Ex. G at 204:1-17. Polgar has less of a connection with Alexander than *Plaintiffs themselves*.

*Finally,* plaintiffs claim that Polgar's counsel, Whitney Leigh, "admitted" that he was in possession of "stolen" emails. Opp. at 9. This is a serious accusation. It is also false, and in making this accusation, plaintiffs actively conceal evidence demonstrating its falsity. Polgar's counsel and plaintiffs' counsel conducted an in-person discovery conference on April 21, 2009. At Polgar's counsel's insistence, the conference was recorded and a transcript made. *See* Leigh Decl., ¶14 and Ex. M (transcript). After the conference, plaintiffs' counsel accused Mr. Leigh of having "admitted" to having been in possession of privileged communications on the internet between Mr. Kronenberger and Joel Channing, a former member of the USCF's Executive Board. *Id*., Ex. N. Mr. Leigh responded to this accusation by letter,[4] explaining that the emails to which he referred during the conference had been filed in the related Texas action *and remained on file with the Texas Court's internet website*:

> If you personally do not know the emails to which I referred, Karl Kronenberger surely does. There are on file with the court in Texas. They were available on the internet when my firm retrieved them originally; they remain so.

*Id*., Ex. O. Plaintiffs' counsel responded by letter on April 30, 2009. In their April 30 letter, plaintiffs simply ignored Mr. Leigh's notice to them of the emails on file with the Texas Court. *Id.* Instead, plaintiffs belligerently restated their assertion that Mr. Leigh had obtained unpublished emails, and contended that any correspondence between Mr. Kronenberger and Mr. Channing was made to the so-called USCF Legal Subcommittee (which excluded Ms. Polgar and Paul Truong), and therefore privileged. *Id*., Ex. P. In a responding letter dated May 1, 2009, Mr.

---

[4] In what is a disturbing pattern, plaintiffs have failed to provide the Court with multiple letters from Ms. Polgar's counsel directly relating to issues raised in their opposition.

Leigh reminded plaintiffs' counsel that Mr. Kronenberger had been originally retained by the USCF's Executive Board, before the "Legal Subcommittee" was created, and that such communications with the Board were therefore not privileged as to Ms. Polgar. *Id.*, Ex. Q.

Following this letter, plaintiffs' counsel produced all emails between Mr. Kronenberger and USCF Executive Board members in his or Ms. Polgar's possession. *Id.*, Ex. R and ¶18. This production also included copies of plaintiffs' counsel's correspondence with Mr. Channing. Mr. Leigh also filed a declaration, under penalty of perjury, attesting to the production of all correspondence in his possession between Mr. Kronenberger and any USCF Executive Board member. *See* Docket Entry No. 185. For plaintiffs to continue to repeat this accusation, while concealing from the Court the relevant correspondence, is dishonest.[5]

### D. Plaintiffs and Counter-Defendants Did Not Take "All Reasonable Means" Of Preventing The Publicly-Available Communications From Remaining Part Of The Public Record In The Texas Case Or In This Litigation.

Plaintiffs also allege in their opposition that they took "all reasonable means" to prevent the dissemination of the publicly-available communications in the Texas action and in this action. They again leave out numerous details. Any one of these details establishes that they did not take "all reasonable means" of preserving these emails' confidentiality.

**(1) Plaintiffs failed (and continue to fail) to seek removal of the allegedly privileged communications in the Texas Action Complaint.** Case No. 5:08-CV-00169-C (N.D.TX), Docket No. 1. Polgar filed the complaint on August 7, 2008, and specifically references the emails in question. On August 25, 2008, Plaintiffs acknowledged that the complaint revealed their communications, and demanded that Polgar's counsel "[a]mend the Original Petition to

---

[5] In their opposition, plaintiffs also for the first time complain that Polgar redacted information contained in an email exhibit attached to her motion to compel, and argue that this redaction somehow "casts doubt" on Ms. Polgar's case, because it lacks explanation. Opp., at 8. This is a red herring argument. Ms. Polgar produced the email to plaintiffs in redacted form—which redacted attorney client and work product communications—on May 8, 2009. See Leigh Decl. Ex. R. Prior to filing their opposition to her motion to compel, plaintiffs never contested the redaction, notwithstanding the Local Rules and this Court's standing orders, which expressly delimit parties' obligations to raise and meet and confer regarding discovery disputes. Civil Local Rule 37-1; Standing Orders, Judge Marilynn Hall Patel, Order No. 6. The law is well settled in this regard: parties cannot "lay in wait" regarding perceived discovery violations.

strike any and all references to any and all privileged information." Plaintiff's counsel responded by letter on August 28, 2008, but refused to voluntarily remove these allegations from their complaint on the grounds that the allegations concerned communications which had been available to the public for over six months. Thereafter, plaintiffs have done nothing to contest their publication within Polgar's petition. They remain available to the public to this day. As Polgar established in her opening brief, numerous cases establish that this alone is sufficient to constitute waiver. Here is one more: *In re Oracle Sec. Litig.,* 2005 U.S. Dist. LEXIS 46931, at *36 (N.D. Cal. Aug. 5, 2005) (holding Oracle "waived any attorney-client and work product privileged over the SLC report when it allowed Delaware Plaintiffs to repeatedly refer to the contents of the report in open court without objecting to the references or moving to seal the transcript of the summary judgment hearing. . . . When a party waives a privilege over parts of a document by allowing those parts to be aired in open court, that party waives the privilege over the entire document.").

**(2) Plaintiffs failed to seek removal of the communications in the Sloan Counterclaim for 10 months.** On September 10, 2008, Sam Sloan, a defendant in the Texas action, filed copies of the publicly-available communications along with his counter-claim. Leigh Decl., Ex. H. These communications are set forth in 14 pages of emails. *See id.* In the Opposition, Plaintiffs contend that "the USCF" was "not aware" that these communications were attached to the Sloan Counterclaim until "within days" of July 6, 2008. Opp. at 10. Their only support for this statement is the same word-for-word statement in a declaration by Kronenberger. *See* Kronenberger Decl. ¶ 12, Ex. J. This fails to explain or excuse ten months of inaction for several independent reasons.

First, as an initial matter, this declaration *only discusses "the USCF."* As plaintiffs must admit, copies of the Sloan Counterclaim and its attachments were sent to all parties in the Texas Action when it was filed including individual Plaintiff Randy Hough and counter-defendants Jim Berry, Randy Bauer, Bill Goichberg, and Bill Hall. This vague, conclusory statement does not address these individuals.

Second, this declaration does not explain how "the USCF" "became aware" of these

emails or when exactly this took place. Kronenberger simply states that "within days" of this awareness, he "informed" Polgar's counsel of this "inadvertent disclosure." Kronenberger Decl. Ex. J. Yet, the July 6, 2009 letter identified by Kronenberger does not even *mention* the Sloan Counterclaim. And the motion identified by Plaintiffs as the first time they requested that the Sloan Counterclaim emails be "removed" from the docket—an objection to evidence included in opposition to defendants' motion for summary judgment in which the Sloan Counterclaim emails are mentioned in a footnote—was not even filed until over a week later, on July 14th. *See* Pls.' Obj. to Ev. Supporting Defs' Mot. For S.J. And Mot. To Disqualify (CA Docket No. 156), fn 1 (citing to Tx. Docket No. 163).

Third, any reasonable person would have been "aware" of the existence of these emails. As noted and admitted by plaintiffs and counter-defendants, each of them was emailed a copy of the Sloan Counterclaim and its attachments when it was filed. *See* Kronenberger Decl. ¶ 12. Kronenberger says the emails were in "one of many" attachments and were only "two emails." This omits the following facts. The Sloan Counterclaim itself specifically makes reference to these emails in paragraph 10: "the text of confidential emails from Karl S. Kronenberger to defendants Goichberg, Berry and Hough, dated mostly January 17, 2008, appeared on the internet newsgroup reg.games.chess.politics by an anonymous poster, 'nobody@nowhere.com' . . ." *See* Leigh Decl. Ex. H at ¶10. At the top of each of these 22 pages is the following description in bold and italicized letters:

> ***Confidential emails from Karl Kronenberger to the USCF Committee of Goichberg, Berry and Hough, posted on rec.games.chess.politics. by nobody@nowhere.com.***

*Id*.[6]

As discussed below, Kronenberger and Plaintiffs *produced copies of these documents to Polgar in the Texas action. See* Leigh Dec, Ex. S. Kronenberger does not explain how these

---

[6] Plaintiffs contend that they simply did not read Sloan's countercomplaint for ten months (*See* Opp.  ), even though they produced that counterclaim to Ms. Polgar in response to her discovery requests in the Texas action.

emails could be reviewed by plaintiffs and counter-defendants and himself, and then produced by them without someone becoming "aware" of their existence. Moreover, Polgar has repeatedly notified plaintiffs and counter-defendants of the emails attached to the Sloan Counterclaim. Mr. Leigh did so verbally on April 21, 2009, when he met with Kronenberger to discuss various discovery disputes. *See* Leigh Decl., Ex. M at 41 (Kronenberger: "Where did you get them?" Leigh: "At [Sloane Offit].").  Thereafter, on April 29 and May 1, 2009, Mr. Leigh again explained to plaintiffs, this time in writing, that, *inter alia*, the subject emails were available on the court docket in Texas. *Id*., Ex. O and Q. Then, on May 4 and May 8, 2009, Polgar produced copies of all emails correspondence between Kronenberger and the Executive Board in her possession, including the emails in dispute.[7] Included in Ms. Polgar's production were copies of the emails published with Sloan's counter-claim—w*hich bore the "PACER" filing line identifying the document as a court-filed document, and specifying the federal case number under which the document appeared.* Leigh Decl., Ex. R.

Then, on June 1, 2009, Polgar moved to disqualify plaintiffs' counsel. *See* Docket Entries Nos. 108-112. Concurrent with her motion, Polgar filed copies of communications between Kronenberger and members of the Executive Board that, *inter alia*, evinced Kronenberger's efforts adverse to Polgar at the same time he was representing himself as an independent counsel for the USCF, who was conducting an investigation for which he had reached no conclusion. Docket Entries Nos. 106 (Motion to Disqualify) and 108 (Springman Decl. Ex. T)  In his declaration in support of the motion to disqualify, Polgar's counsel expressly noted (1) that Sloan had attached communications from Kronenberger to other members of the Executive Board in Sloan's counter-complaint in the Texas action and (2) that the emails remained publicly available on the Court's website in that action:

> Attached as Exhibit T is a January 17, 2008 email from Karl Kronenberger to

---

[7] Plaintiffs have repeatedly alleged to "3,000" emails that were stolen by Ms. Polgar. But plaintiffs have never produced any evidence of the "3,000" emails. Ms. Polgar, for her part, has repeatedly confirmed that she has produced all emails in her possession. Leigh Decl., Ex. O, Q, R. Plaintiffs have refused to explain the basis for this wild accusation.

several USCF Executive Board members that was attached to Sam Sloan's cross-complaint in the related action in the Northern District of Texas and that is publicly available on the U.S.District Court's PACER. Ms. Polgar produce to the plaintiffs the entire set of emails attached to Mr. Sloan's cross complaint on May 4, 2009.

See Docket Entry No. 108, at pp.2-5 and ¶21 and Ex. T (emphasis added).

Then, on or about June 5, 2009, plaintiffs produced documents to Polgar in the related Texas Action.[8] As a part of plaintiffs' Texas production, *they produced all of Mr. Sloan's counterclaim, including the subject emails. See* Leigh Decl., Ex. S (KRON 1113-1128).

**(3) Plaintiffs failed to seek the removal of the communications (or even immediately object to them) and they remain on the public docket in this case.** Plaintiffs filed their opposition to Polgar's motion to disqualify on June 22, 2009. *See* Docket Entry No. 134. In their opposition, plaintiffs did not object to the email correspondence submitted in support of her motion or seek its sealing or withdrawal. *See* Docket Entry No. 112 (plaintiffs' opposition to motion to disqualify). They have never sought their removal, and each of the emails remains publicly available on this Court's PACER docket. *See,, e.g., In re Oracle Sec .Litig.,* 2005 U.S. Dist. LEXIS 46931, at *36 (N.D. Cal. Aug. 5, 2005) ("When a party waives a privilege over parts of a document by allowing those parts to be aired in open court, that party waives the privilege over the entire document.").

E.     **Plaintiffs Have Not Offered Evidence Sufficient To Establish A "Joint Defense" Exception For The Hundreds, If Not Thousands, Of Emails Listed In Their Privilege Logs.**

Plaintiffs contend that all pre-November 4, 2007 communications listed in their privilege logs, and all communications with any of the defendants in the Texas Action, were not waived when disclosed to parties outside the "investigatory subcommittee" because of the "joint defense" exception. Under both Fifth Circuit and Ninth Circuit law, this exception applies where "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not

---

[8] Plaintiffs have taken the position that by producing documents in the Texas action they have responded to Ms. Polgar's document requests in this case.

been waived." *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575 (D. Cal. 2007). Plaintiffs offer vague, conclusory statements that they claim demonstrate this exception's applicability to the numerous communications at issue. They do not meet their burden for several reasons.

First, to establish a joint defense, there has to be an agreement. *See, e.g., U.S. v. Weissman,* 195 F.3d 96, 99 (2d Cir. 1999); *Durkin v. Shields (In re Imperial Corp. of Am.),* 167 F.R.D. 447, 455 (D. Cal. 1995). Plaintiffs say there is one, but they have not produced it, and have refused to say when they established it; any communications prior to this agreement are not covered by this exception. *See King v. Deutsche Bank AG*, 2005 Dist. LEXIS 11317, at *36 (D. Or. 2005).

Second, they have to show that the specific communications at issue fall the requirements. As Polgar established in her opening brief, simply because a party is "interested" in the outcome of a litigation does not mean that all communications with that party are thereafter privileged. *See, e.g., Nidec,* 249 F.R.D. at 579 (mere "commercial" interest in outcome insufficient). Moreover, this exception does not *extend* the privilege to a party's attorney's communications with a third party—it simply *prevents* waiver. Plaintiffs' privilege log provides no information of any kind concerning these communications other than the parties, the dates, and the fact that the communications involved in some way "litigation strategy." The conclusory, vague statement in the Hall Declaration is similarly bereft of any detail concerning these communications. Plaintiffs' showing does not come near to establishing that the numerous communications at issue fall within the exception to the privilege. Mere evocation of the joint defense exception and a "fear" of litigation is not enough. *See Avago Techs. Gen. IP PTE LTD v. Elan Microelectronics Corp.*, 2007 U.S. Dist. LEXIS 24419, at *10 (D. Cal. 2007) ("Elan does not cite the leading case in the Federal Circuit on the joint defense / common interest privilege, or attempt to show that its standards are met."). Plaintiffs have had months to establish this burden; they have failed; they should be ordered to turn these documents over.

Finally, Plaintiffs' allegations that they have a "common interest" with other individuals outside of the "Investigatory Committee" fails for a separate, independent reason: in addition to their own interests as individuals, as board members on the "Investigatory Committee," they

represent the USCF as well. Numerous cases have held that no "common interest" exception applies when board members on such committees disclose privileged communications to other, interested board members of corporate constituents accused of wrongdoing *because the inherent interest of the corporation are not aligned with these board members.* That is exactly what the communications here consist of. *See, e.g., New Jersey v. Spring Corp.*, 2009 U.S. Dist. LEXIS 56780, at *56-61 (D. Kan. July 2, 2009) (holding committee's disclosure of legal advice to board members waived privilege and that no common interest existed); *Ryan v. Gifford,* 2007 Del. Ch. LEXIS 168, at *3 (Del. Ch. Nov. 30, 2007) (same); *Ryan v. Gifford,* 2008 Del. Ch. LEXIS 2 (Del. Ch. Jan. 2, 2008) (same). In fact, plaintiffs' arguments—that they were using these communications to further a "common legal strategy" against Polgar—establish that no such common interest existed. These cases s*pecifically hold* that where the outside board directors or corporate constituents were using the legal advice to further *their own interests*, the joint defense/common interest exception does not apply. *Id.*

      F.      **Plaintiffs Repeatedly Invoked The "Advice" Of Their Counsel In The August 2008 Board Of Directors' Meeting.**

Finally, a partial transcript of the August 2008 Board of Delegates meeting that the USCF made available to the public after Polgar's motion was filed shows plaintiffs repeatedly invoking the "advice" of counsel to the Board of Delegates. *See* Docket Entries Nos. 216-217. This is an express waiver of the USCF's privilege with respect to this advice. It also directly contradicts plaintiffs' statements in the Opposition, which was filed after this meeting.

**III.    CONCLUSION**

For the reasons set forth above, Polgar respectfully request that the Court grant her motion to compel.

Dated: September 17, 2009                   Respectfully Submitted,

                                                  GONZALEZ & LEIGH, LLP

                                                  By:__/s/ *G. Whitney Leigh*_____
                                                        G. Whitney Leigh
                                                        Attorneys for Defendant
                                                        SUSAN POLGAR