United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA CHESS FEDERATION, INC., and RANDALL D. HOUGH, <br><br> Plaintiffs, <br><br> v. <br><br> SUSAN POLGAR and GREGORY ALEXANDER, <br><br> Defendants. | No. C 08-05126 MHP <br><br> **MEMORANDUM & ORDER** <br><br> **Re: Defendant's Motion to Disqualify Plaintiffs' Counsel; Defendant Alexander's Motion to Dismiss for Lack of Personal Jurisdiction; Transfer of Venue** |
| SUSAN POLGAR, <br><br> Counter-Claimant, <br><br> v. <br><br> RANDALL D. HOUGH, <br><br> Counter-Defendant, and <br><br> BILL GOICHBERG, BILL HALL, RANDY BAUER, JIM BERRY, and KARL KRONENBERGER, <br><br> Third-Party Defendants. | |

The individual parties in this case are chess players who are involved in the governance of the United States Chess Federation ("USCF"). Plaintiffs USCF and Hough allege in this civil action that defendants Alexander and Polgar violated state and federal law by accessing plaintiff Hough's

electronic mail without authorization, in order to intercept confidential information pertaining to a USCF investigation of Polgar's husband. Polgar counter-claimed against individual members of the USCF executive board, alleging that the filing of this action was improper. These parties and others are involved in related litigation in Texas and Illinois. Now before the court is defendant/counter-claimant Polgar's motion to disqualify plaintiffs'/counter-defendants' attorney Karl Kronenberger and his law firm (collectively "Kronenberger"). Polgar previously moved to transfer this action to the Northern District of Texas for consolidation with the related litigation in that forum. The court continued Polgar's motion until completion of a global mediation led by this court's Alternate Dispute Resolution (ADR) staff. Polgar later withdrew her motion to transfer. Seeing that the mediation has been unsuccessful, the court sua sponte addresses the question of transfer, for the reasons discussed below.

I.    Defendant's Motion to Disqualify Plaintiffs' Counsel

Kronenberger serves as counsel to the USCF and Hough. Polgar has named Kronenberger as a defendant in the action she filed in Texas federal court, see N.D. Tex. Case No. C 08-0169, and has counterclaimed against Kronenberger in the instant action. Polgar contends that disqualification of Kronenberger is appropriate for several alternative reasons, including alleged misstatements to the court and alleged failure to disclose his conflicts of interest. The court takes particularly seriously, and closely scrutinizes, allegations that an attorney has misrepresented facts to the court.

A.    Facts Pertaining to Kronenberger's Alleged Misstatements to the Court

On February 23, 2009, and April 13, 2009, the parties appeared for motion hearings. Kronenberger made statements at those hearings which Polgar contends constituted attempts to deceive the court. At the February 23 hearing on Polgar's motion for leave to amend her answer, the following exchange took place:

> THE COURT: And do any of these – does either of these organizations, either the World Chess Federation or the United States Chess Federation have any provisions at all for arbitrating internal disputes?
>
> MR. KRONENBERGER: No, your Honor. In fact, the delegates with the U.S. Chess Federation suggested that the board – the executive board bring this matter to a court, and that's why the Federation filed in the state of Illinois, because under the Illinois statute that's the only place they could file.

2

Docket No. 48 (Tr. of February 23 Hearing) at 14:24-15:8. While the USCF bylaws do not specify arbitration procedures, they do provide certain conflict resolution procedures, including a provision for the recall of executive board members and an ethics committee with the power to recommend the revocation of memberships. See Hall Dec., Exh. G at 26-33 ("USCF Bylaws") art. II § 12, art. VI § 11. There is no evidence that the USCF board of delegates had officially voted to approve, or otherwise acted to approve or ratify, the filing of the Illinois lawsuit at the time Kronenberger made the above statement.

The following exchange took place at the April 13 hearing on Polgar's motion to transfer this action to the Northern District of Texas, Lubbock Division:

> THE COURT: Well, you anticipate one of the questions I was going to ask, and that is, was there a resolution by the board authorizing this lawsuit?
>
> MR. KRONENBERGER: Absolutely, your Honor.
>
> MR. LEIGH [counsel for Polgar]: There was not.
>
> THE COURT: Well, I would presume that if there is one it would be in the minutes of the – I presume they take minutes or is that too optimistic?
>
> MR. KRONENBERGER: Your Honor, we have a record of everything, and we were actually going to be turning over things in discovery before it was stayed. Of course, there was a vote. Even if there was not a vote it's something that could be ratified within an hour. It's just a non-issue.
>
> THE COURT: No, no. It is an issue . . .

Docket No. 91 (Tr. of April 13 Hearing) at 12:15-13:3. Later in the hearing, Kronenberger again asserted, "Your Honor, there was a vote. I was there. I was on the phone and it was verified by e-mail." Id. at 16:1-2. The court ordered the USCF to produce minutes, resolutions, bylaws or other documents that would show that the USCF had authorized the instant action. Id. at 44:8-13; Docket No. 90 (Minute Order). In response to the court's order, USCF executive director Bill Hall filed a declaration, on April 27, 2009.[1] Polgar argues Hall's declaration shows that Kronenberger misrepresented the existence and nature of the purported vote. The evidence submitted by Hall shows that Hall made a unilateral decision to file the instant action in California state court.[2] Docket No. 97 (Hall Dec.) ¶ 16 (". . . I directed the filing by USCF counsel of a 'John Doe' lawsuit in California . . . ."). The action was filed on June 25, 2008. The evidence also shows that a vote did

3

1  take place by e-mail to ratify the action.  Specifically, the four members of the executive board's
2  "legal subcommittee" voted in December 2008 to officially ratify the decision to file this action.  Id.,
3  Exh. C (e-mails).  The e-mails cc:ed Kronenberger.  See id.

4      Kronenberger also represented to the court during the April 13, 2009, hearing that the USCF
5  did not have independent counsel to advise it on Polgar's request for indemnification, but that
6  USCF's counsel in Illinois handled "all of these corporate issues."  See Tr. of April 13 Hearing at
7  27:12-28:15, 30:8-32:10.  He also stated that the issue was "in their [Illinois counsel's] hands."  Id.
8  at 28:10-11.  Per the court's instructions, counsel for Polgar contacted David A. Herman, the Illinois
9  attorney Kronenberger mentioned at the hearing, to inquire about the status of Polgar's
10 indemnification request.  Docket No. 108 (Springman Dec.), Exh. J.  Herman indicated that he could
11 not act as the USCF's independent counsel.  He also stated, "While we have been retained to
12 represent the USCF in the pending Illinois litigation and to advise it on certain Illinois legal matters,
13 because of our ethical obligations to our client we are unable to disclose to you those specific legal
14 matters."  Id.  Polgar believes that Kronenberger's representations to the court on the issue were
15 misleading.

16     B.    <u>Facts Pertaining to Kronenberger's Alleged Conflicts of Interest</u>

17     Kronenberger represents both the USCF and individual plaintiff/counter-defendant Hough,
18 who is a former member of the USCF executive board.  Additionally, Kronenberger is a third-party
19 defendant in the instant action.  One of Polgar's defenses is that the four members of the executive
20 board "legal subcommittee," including Hough, acted ultra vires when they initiated this lawsuit.
21 Resolution of the question of whether Hough and the other executive board members acted with
22 authority will impact whether they are entitled to indemnification from the USCF for claims arising
23 from their actions.  The USCF board of delegates apparently voted in August 2009 to ratify the
24 instant action.  According to Kronenberger and plaintiffs, such vote moots any ultra vires defense;
25 however, Polgar challenges the legitimacy of the vote.  In Polgar's view, the USCF and Hough
26 therefore have a conflict of interest concerning the indemnification of Hough, and both are

4

represented by Kronenberger. Polgar asserts that Kronenberger has not fully disclosed the conflicts to his clients.

C.     Discussion

This court applies California law and looks to California standards of professional responsibility in determining matters of disqualification. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000) (holding state law governs disqualification); N.D. Cal. Civ. L. R. 11-4(a)(1) (attorneys must comply with standards of professional conduct required of members of the State Bar of California). A trial court's authority to disqualify an attorney derives from the power inherent in every court to control the conduct of its ministerial officers, in the furtherance of justice. In re Charlisse C., 45 Cal.4th 145, 159 (Cal. 2008). The trial court's determination is generally reviewed for abuse of discretion. Id. A disqualification motion may involve considerations such as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on the client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion. People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal.4th 1135, 1145 (Cal. 1999). Such motions may themselves threaten the integrity of the judicial process when they are used to harass an adversary or its counsel. See Gregori v. Bank of America, 207 Cal. App. 3d 291, 300-301 (1989). "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." SpeeDee, 20 Cal.4th at 1145 (internal citation omitted).

A court may disqualify an attorney who has a conflict of interest. Id. at 1139. Conflicts of interest commonly arise as a consequence of either successive or simultaneous representation of potentially adverse clients. In re Charlisse C., 45 Cal.4th at 159. The former situation implicates the attorney's duty of confidentiality, while the second implicates the attorney's duty of loyalty. See generally Flatt v. Superior Ct. of Sonoma County, 9 Cal.4th 275, 283-284 (Cal. 1994). With few exceptions, disqualification follows automatically where a lawyer represents litigation adversaries,

5

even in unrelated actions. See In re Charlisse C., 45 Cal.4th at 160. The disqualification of an attorney due to a conflict of interest will normally extend vicariously to the attorney's entire law firm. See SpeeDee, 20 Cal. 4th at 1139.

Preliminarily, Kronenberger argues that Polgar "lacks standing" to bring the instant motion because "it is evident from the face" of California Rule of Professional Conduct 3-310(C) that only a client or former client of an attorney may move to disqualify him. The court does not find this to be evident from the face of the rule.[3] Considering the court's inherent duty to manage the conduct of attorneys before it and to ensure the fair administration of justice, it makes little sense to assert that a court must ignore evidence of ethical breaches or conflicts of interest merely because such evidence has been brought forward by a third-party litigant. See Colyer v. Smith, 50 F. Supp. 2d 966, 971-972 (C.D. Cal. 1999). Moreover, Polgar has Article III standing because the questions her motion presents implicate her "interest in a just and lawful determination of her claims." Id. at 971.

The court has carefully reviewed the statements which Polgar asserts constitute misrepresentations to the court. Kronenberger did not misrepresent the status of David Herman vis-à-vis the indemnification issue. Kronenberger clearly stated that Herman was not the independent counsel—and indeed could not be, since he represents the USCF in the Illinois action against Polgar. Nor does Herman's response to the inquiries of Polgar's counsel contradict Kronenberger's assertion that Herman's firm advises the USCF regarding procedures for making indemnification decisions under Illinois law. Herman confirmed that his firm had been retained "to advise [the USCF] on certain Illinois legal matters" but stated that he could not say more about them due to his ethical obligations to his client. While this does not confirm Herman is involved with the indemnification issue, it also does not demonstrate Kronenberger's statements to the court to be false. Nor does Kronenberger's statement regarding arbitration provisions appear to be a misrepresentation. The court specifically asked about mechanisms for arbitrating disputes, not mechanisms for removing USCF members or recalling executive board members. While it would have been enlightening for Kronenberger (or for that matter, Polgar's counsel, Mr. Leigh) to note these provisions of the USCF bylaws, failing to note them did not constitute an affirmative misrepresentation to the court.[4]

6

Finally, Kronenberger stated that the board had taken a vote to authorize the instant lawsuit. As noted, the Hall Declaration includes copies of e-mails showing a vote in December 2008 to ratify the action. Polgar apparently challenges Kronenberger's literal assertion that the "board" voted to authorize the suit in December 2008, since in fact only a part of the board (the "legal subcommittee," i.e., everyone but Polgar and her husband, Paul Truong) was given an opportunity to vote. While Polgar may or may not ultimately succeed in showing that the board acted ultra vires, such has not been established. At this stage it would be parsing it far too finely for the court to find that Kronenberger's arguable misstatement rises to a level of deception meriting disqualification.

As regards Kronenberger's alleged conflicts of interest, Polgar does not appear to argue that Kronenberger should be disqualified merely because she brought claims against him. Nor does the court find this to be the case here. She instead contends that a conflict of interest exists between the USCF and "certain members" of the executive board Kronenberger represents. The court understands her theory to run as follows: the "rogue" executive board members, i.e., all members except Polgar and Truong, filed this action without proper authorization; accordingly, the USCF should not indemnify them; but Kronenberger has advocated indemnification, which is in the board members' interest but not in the interest of the USCF, which must pay the indemnification; therefore, there is a conflict between the USCF and the board member(s) who are Kronenberger's clients. It is first to be noted that Kronenberger only represents the USCF and Hough. Counsel from the law firm of Cesari, Werner and Moriarty now represent Goichberg, Hall, Bauer, Berry and Kronenberger himself in his capacity as a third-party defendant. The question is whether Kronenberger may represent both the USCF and Hough consistent with his professional obligations. This court declines the invitation to reach this issue. As discussed below, the court is transferring this action to the Northern District of Texas. Accordingly, it will be the decision of Judge Cummings whether Kronenberger can continue to represent parties in that action in light of the conflicts of interest alleged by Polgar.

Finally, the court notes that Polgar has advanced several other reasons why Kronenberger should be disqualified, namely: his alleged abuse of California's "Doe" discovery procedures; his

7

alleged obstruction of Polgar's request for indemnification; and his alleged failure to safeguard the confidentiality of certain information.  None of these issues provides grounds for disqualification.  The first issue goes to the merits of Polgar's abuse of process counterclaim and should be addressed in that context.  The second issue may be moot in light of the USCF board of delegates purported August 2009 decision not to indemnify Polgar.  See Docket No. 182 (Supplemental Hall Dec.) ¶ 9.[5]  In any event, Polgar has failed to substantiate her assertion that Kronenberger's approach to the issue rises to the level of an ethical violation.  Finally, the court finds Polgar's argument concerning the confidentiality of certain information to be without merit.  Polgar asserts she and Truong, who were USCF directors, gave Kronenberger information in response to a November 29, 2007, letter, unaware that Kronenberger had taken a position adverse to them.  See Cal. R. Prof. Conduct 3-600(D) (organization's attorney shall not mislead director to believe confidential information will not be used against director if organization becomes adverse to her).  In fact, the letter states that Kronenberger's firm represents the USCF; accuses Truong and Polgar of inappropriate behavior; and threatens them with several causes of action.  Springman Dec., Exh. K.  No reasonable person would fail to recognize that Kronenberger represented a client that had taken an adverse position to Polgar and Truong.  The self-serving declarations of Polgar and Truong do not compel a contrary conclusion.

     The only question presented by this motion is whether an attorney should be disqualified, not whether his tactics to date have represented the best traditions of the bar.  The instant motion is not frivolous, but it is denied.[6]

     The court would have been untroubled had it been necessary to disqualify either Kronenberger Burgoyne, LLP, or Gonzalez & Leigh, LLP.  For reasons unknown to the court, the attorneys from these two firms have conducted this litigation in a vituperative manner more consistent with a cage fight than with zealous representation of clients in a court of law.  Counsel would do well to bear in mind that the attorney's role is not only to advocate, but to lubricate: to help the wheels of justice turn efficiently and economically as well as fairly, so that the attorney's client will be able to achieve a resolution without undue expenditure of time and money.

8

## II. Venue

The court has serious concerns about the continued litigation of the instant action and Polgar's action in separate fora. Polgar has withdrawn her motion to transfer; however, the issue of transfer of venue has been fully briefed, and the court finds it appropriate to take up the question sua sponte.

### A. The Texas Action

On August 7, 2008, Polgar filed an action in state court in Lubbock, Texas. The complaint named the USCF, each of the USCF's executive board members aside from Polgar and Truong, the USCF's legal counsel, Karl Kronenberger, former board member Sam Sloan and several other defendants. It alleged slander, defamation, business disparagement and a host of related claims stemming from comments and accusations directed against Polgar. Polgar and Truong live in Lubbock. The action was removed to federal court on August 20, 2008, on the basis of diversity jurisdiction. Sloan counterclaimed. The defendants then filed a bevy of motions to dismiss, motions for a more definite statement and motions to strike. The federal court, Judge Sam R. Cummings presiding, disposed of these motions in an order dated February 19, 2009. Now pending before Judge Cummings is a motion for summary judgment as to all claims against Kronenberger. Judge Cummings has set a trial date.

### B. Personal Jurisdiction Over Defendant Alexander

As a preliminary matter, Alexander, a resident of the State of Washington, has challenged the jurisdiction over his person of a court sitting in California. This court cannot transfer this civil action as against Alexander unless it has jurisdiction in the first instance.

It is undisputed that Alexander has no real or personal property or bank account in California. The basis plaintiffs assert for the exercise of jurisdiction is Alexander's alleged purposeful availment of California for the purposes of violating Hough's email account. Plaintiffs allege and Alexander does not deny that the Yahoo! server utilized by Hough's email is located in this district. Alexander has been indicted criminally in the Northern District of California for the activity which is the basis of the claims against him in the instant civil action.

9

In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008); Schwarzenegger v. Fred Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). If the jurisdictional challenge is based solely on written papers, plaintiff need only make a prima facie showing of the jurisdictional facts. Boschetto at 1015. Uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. Id. (citation omitted).

Where there is no federal standard establishing personal jurisdiction, district courts apply the jurisdictional standards of the state in which the district court sits. Id. (citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998)). California courts may properly exercise personal jurisdiction to the extent allowed by federal constitutional due process. Boschetto at 1015. A court's exercise of personal jurisdiction over a nonresident defendant is consistent with due process if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted). Basic due process for this purpose requires that a defendant has fair warning that a particular activity may subject him to jurisdiction in the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

If a nonresident defendant has contacts with the forum state that are "substantial" or "continuous and systematic," then courts may exercise general personal jurisdiction over the defendant without regard to whether the action arises from the defendant's activities in the forum state. Perkins v. Benguet, 342 U.S. 437 (1952). If a nonresident defendant's activities within the forum state are less substantial, then courts may still exercise specific personal jurisdiction where the action arises out of or is related to the defendant's particular activities within the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). For specific jurisdiction over such a defendant to lie, the following is required: (1) the nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby

10

invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001) (citation omitted).

When an intentional tort claim is asserted, purposeful availment of the privilege of conducting activities in the forum state can be met by the purposeful direction of a foreign act having effect in the forum state. CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1111 (9th Cir. 2004) (citation omitted). This so-called "effects test" is satisfied if the defendant (1) commits an intentional act (2) expressly aimed at the foreign state (3) causing harm in the foreign state that the defendant knew was likely to be suffered in that state. Id. (citing Calder v. Jones, 465 U.S. 783 (1984)).

Defendant Alexander argues that personal jurisdiction does not lie in this forum because he has no contact with California. Plaintiffs do not assert that California courts have general jurisdiction, but rather argue that the events underlying their claims represent the purposeful direction of acts having effects in California. Specifically, plaintiffs allege that Alexander: accessed Hough's Yahoo! email account, located on a server in this district, without authorization; in some instances, used an "anonymizer" service based in southern California to attempt to hide his identity; and posted the illicitly-acquired emails on a blog page maintained in this district on Google's servers. Plaintiffs also note that the terms of use for each of these services contain forum selection provisions requiring the user to agree to submit himself to jurisdiction in California for the purposes of any disputes between the user and the respective service.

While Alexander denies plaintiffs' allegations that he illicitly accessed emails, he does not dispute the location of the servers in California or the existence of the forum selection provisions. Alexander instead argues in his papers that certain USCF officials have conspired against him as part of a program to harm their political opposition. While such a showing might or might not help Alexander defend himself on the merits, it is irrelevant to the personal jurisdiction inquiry.[7]

On a motion to dismiss for lack of personal jurisdiction, Alexander's conclusory declaration that he did not access any email account without authorization cannot overcome plaintiffs'

11

declarations and exhibits evidencing such violations. Resolving the conflicts among the parties' declarations in favor of plaintiffs, there is no doubt that plaintiffs have made out a prima facie case that Alexander unlawfully authorized Hough's email account.[8] See Boschetto, 539 F.3d at 1015.

This does not, however, end the inquiry. Even if Alexander did access Hough's email account using the services based in California, it is necessary to determine whether such action amounted to "purposeful availment" of the California forum for purposes of the due process analysis. Plaintiffs urge that Alexander's alleged actions meet the "effects test" of Calder v. Jones. Logging into an email program using someone else's information and intercepting that person's email is undoubtedly an intentional act. The question is whether a prima facie case exists that such activity was expressly aimed at California and caused harm in California that the defendant knew was likely to be suffered there. See CE Distribution, 380 F.3d at 1111 (citing Calder, 465 U.S. 783).

According to plaintiffs, Alexander knew that Hough was a resident of California. Hough has lived at his current address in Alhambra, California, for the past twenty years. See Docket No. 23 (Hough Dec.) ¶ 2. Alexander does not deny such knowledge. As noted, he has also not denied knowledge that the various services at issue here—Yahoo!, Google, Anonymizer.com—maintain servers in California and have forum selection clauses in their terms of use. Such clauses represent contractual agreements between a user and the respective service and do not necessarily subject a user to jurisdiction in California in disputes between the user and a third party. However, they provide evidence that Alexander may have adverted to the fact that he was carrying out activities with an impact and interest in California. Plaintiffs have shown enough to make out a prima facie that Alexander expressly aimed his conduct at a California resident and at California more generally. Certainly, it cannot be maintained that the violation of Hough's email had no effect on Hough, who is a California resident. Most likely, if Alexander did invade Hough's account, Hough was never intended to know about it; nevertheless, the violation of Hough's privacy was intended to affect events related to the USCF investigation in which Hough was involved. In summary, in view of plaintiffs' prima facie showing of the aforementioned jurisdiction facts, the court concludes that the

12

activity of Alexander at issue in this case meets the "effects test." Alexander's alleged conduct meets the purposeful availment prong of the personal jurisdiction inquiry.

Furthermore, the claims at issue arise directly from the activity upon which such purposeful availment is based—i.e., the alleged accessing of Hough's email account. See Doe v. Unocal, 248 F.3d at 923. Finally, there is nothing unreasonable about the court's exercise of jurisdiction over Alexander. Plaintiffs have levied serious accusations against Alexander, and although he would undoubtedly prefer to defend himself in Washington, there is nothing unreasonable about adjudicating this case in California, in light of the circumstances. Alexander has the appropriate minimum contacts to California, and haling him into a California court would not offend traditional notions of fair play and substantial justice. See Int'l Shoe, 326 U.S. at 316.

### C. Transfer

This court has personal jurisdiction over defendants.[9] The next question is whether the instant action is related to the Texas action and should be transferred to the Northern District of Texas pursuant to 28 U.S.C section 1404(a). When Polgar moved to transfer earlier this year, the court delayed action on the motion to allow time for this court's ADR staff to conduct a global mediation involving all parties to all related lawsuits. Despite heroic efforts by Mr. Bowling and this district's ADR program, no settlement has been reached. It is now time to consider whether the action should be transferred.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A motion to transfer venue lies within the broad discretion of the district court and must be determined on an individualized basis. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). District courts use a two-step analysis to determine whether a transfer is proper. The threshold question under section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought. 28 U.S.C. § 1404(a); Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). If venue would be appropriate in the would-be transferee court, then the

13

court must make an "individualized, case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498. Among the factors that a district court may consider in deciding whether a transfer is in the interest of justice are: the location where any relevant agreements were negotiated and executed; the state that is most familiar with the governing law; the plaintiff's choice of forum; the respective parties' contacts with the forum; the contacts relating to the plaintiff's cause of action in the chosen forum; the differences in the costs of litigation in the two forums; the availability of compulsory process to compel attendance of unwilling non-party witnesses; the ease of access to sources of proof; any forum selection clause; and relevant public policy of the forum state. Id. at 498-99 (citing Stewart, 487 U.S. at 29-31).

As a threshold matter, this action could have been brought in the Northern District of Texas. Polgar has declared that she used her home computer in Lubbock to access the internet throughout the period in which plaintiffs allege she participated in a scheme to improperly view, copy and distribute Hough's emails. Docket No. 61 (Polgar Dec.) ¶ 10. This being the case, a substantial part of the events giving rise to the claim occurred in the Northern District of Texas, making venue proper in that district. See 28 U.S.C. § 1391(b)(2).

Since venue lies in the Northern District of Texas, as well as in this district, the pertinent question is whether the factors of convenience and justice weigh in favor of transfer. See Jones, 211 F.3d at 498-499. Plaintiffs chose to file suit in this district. "Although plaintiffs have chosen this district, and their choice of forum is certainly entitled to some deference, the weight of this consideration is mitigated where a plaintiff has commenced an action in a forum that is not his or her residence." Tulare County Audubon Soc. v. Espy, 1993 WL 204326, at *2 (N.D. Cal. June 3, 1993) (Lynch, J.) (citing New Image Inc. v. Travelers Indem. Co., 536 F. Supp. 58 (E.D. Pa. 1981)). The USCF is an Illinois corporation based in Tennessee. Hough is a California resident but not a resident of this judicial district. As such, plaintiffs' choice of forum is entitled to somewhat less deference.

The other Jones factors weigh only somewhat in favor of maintaining the action in this district, if at all. Northern California is probably slightly more convenient to third-party witnesses

from the internet services allegedly used by Alexander, but there has been no showing, and there is no reason to believe, that these major corporations are not amenable to service of process in the Northern District of Texas. The contacts of the parties to various fora are dispersed, so there is no forum having a center of gravity of contacts. Factors like ease of access to sources of proof and familiarity with the governing law are basically neutral. None of the other factors strongly militate against transfer.

Importantly, the case at bar deals not simply with the question of whether to transfer a case from one district to another. Since a related action is proceeding in Texas, the question of whether these two cases are properly consolidated in the same district is implicated. The Jones case does not set forth an exclusive list of factors, and the issue of conservation of judicial resources arises in a case such as this. Where actions are related, proceeding with two cases in two separate forums undermines this priority. It is for this reason that an attorney who multiplies proceedings unreasonably and vexatiously is subject to sanctions. See 28 U.S.C. § 1927.

The issues in this action and the Texas action are not identical, but they are intertwined. More to the point, the litigants have so far used the existence of two separate civil actions to whipsaw the two courts, for instance by complaining in this court about alleged discovery abuse pertaining to the Texas action and, apparently, vice-versa. It appears to this court that the litigants and their attorneys have taken every opportunity to exploit the fact that two civil proceedings between many of the same parties are currently ongoing. Consolidating these actions before one judge would greatly aid the federal courts in establishing some measure of appropriate guidance and control over the progress of these lawsuits. Additionally, the operative complaint in the Texas case alleges causes of action based in part on alleged misconduct in prosecuting this action. Proceeding with two independent actions risks inconsistent adjudication of the merits. The Texas court has already dealt with several motions to dismiss and related motions. See, e.g., Springman Dec., Exh. H (Feb. 19, 2009, order). It makes little sense for separate courts to spend time sorting through the same web of accusations and counter-accusations.[10] This action is part of the same fray as the Texas action, and there is no reason to draw the resources of multiple courts into it.

Accordingly, it is now time for parties to embrace the words of Mac Davis's classic country tune:

> "I guess happiness was Lubbock, Texas,
>
> in my rear view mirror.
>
> But now happiness is Lubbock, Texas,
>
> growing nearer and dearer."

CONCLUSION

For the foregoing reasons, defendant/counter-claimant Polgar's motion to disqualify opposing counsel is DENIED. Defendant Alexander's motion to dismiss for lack of personal jurisdiction is DENIED. This action is TRANSFERRED forthwith to the Northern District of Texas, Lubbock Division. The Clerk shall close the file.[11]

IT IS SO ORDERED.

Dated: October 14, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

16

**ENDNOTES**

1.   Polgar contends that this submission was untimely. Although the court set an earlier deadline at the hearing, the court's minute order reflected a deadline of April 27, 2009. Accordingly, the submission is deemed timely.

2.   Polgar was subsequently named as a defendant and removed the action to federal court.

3.   Subsection 3-310(C) reads in its entirety: "(C) A member [of the bar] shall not, without the informed written consent of each client: (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." Cal. R. Prof. Conduct 3-310(C). The rule does not appear on its face to address standing at all but merely states that an attorney "shall not" engage in any of the listed actions. Nor does Rule 3-600(D) address the issue of standing. See Rule 3-600(D).
    Polgar also asserts Kronenberger has violated Rules 3-310(B) (written disclosure of conflict) and 3-310 (E) (protecting confidential information in a successive representation).

4.   Kronenberger's representation that "the delegates with the U.S. Chess Federation suggested" the executive board file suit in Illinois is perhaps more questionable. There is no evidence that the idea of initiating the Illinois action originated with the board of delegates. See Hall. Dec. ¶ 28. However, considering the proliferation of lawsuits and USCF internal proceedings, the court infers that Kronenberger simply misspoke.

5.   Hall's supplemental declaration includes only a copy of the recommendation by the executive board to the board of delegates to expel Polgar and Truong; no record of the delegates' vote was attached to the declaration. Polgar does not dispute that the delegates voted unanimously not to indemnify her but instead challenges the circumstances of the vote.

6.   Of course, Judge Cummings may disqualify or sanction any attorney as he finds appropriate following the transfer of this action to Texas.

7.   Alexander also argues that plaintiffs' counsel, Kronenberger, attempted to mislead the court by redacting pertinent information in one of his exhibits. See Docket No. 20, Exh. G. Kronenberger did redact a portion of the Anonymizer.com employee's message stating that he was "unable to find anything concerning the requested ip addresses." The import of this remark is uncertain, since the exhibit does not include the language of the request from Kronenberger to Anonymizer.com. In any event, the unredacted Exhibit G does not exculpate Alexander, since it provides evidence of a link between him and the 76.121.230.165 IP address used to access Hough's email account. See id., Exh. A.

8.   To be clear, holding merely that a prima facie case exists is not a decision that plaintiffs can prevail on their claims. "Prima facie" literally means "at first sight." As noted, this is all that is required to find personal jurisdiction.

9.   Defendant Polgar has waived any challenge to personal jurisdiction.

10.   These considerations outweigh any benefit to be derived from adjudicating the criminal and civil cases against Alexander in the same district.

11.   Nothing in this order affects the criminal case against defendant Alexander proceeding in the Northern District of California.